SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

B.D. COOKE & PARTNERS LIMITED, AS
ASSIGNEE OF CITIZENS CASUALTY COMPANY
OF NEW YORK (IN LIQUIDATION),

                                Plaintiff,

-against-

NATIONWIDE MUTUAL INSURANCE COMPANY,

                              Defendant.

Index No. 600655/02

IAS Part 56

Justice Richard B. Lowe, III

AFFIDAVIT OF SIMON
JANES IN OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR
SUMMARY JUDGMENT

STATE OF NEW YORK     )
                       : ss.:
COUNTY OF NEW YORK  )

             SIMON JANES, being duly sworn, deposes and says:

       1.      I submit this affidavit in opposition to the Motion For Summary Judgment

submitted by Nationwide Mutual Insurance Company ("Nationwide") and in support of the

Cross-Motion For Summary Judgment submitted by B.D. Cooke and Partners Limited ("BDC").

I am a Director of BDC and Managing Director of The Dominion Insurance Company Limited

("Dominion").  I also assisted Steve McCann in connection with the negotiation of the

assignment at issue in this action.  As such, I make this affidavit on the basis of my personal

knowledge and belief gained through the performance of my duties and from my review of

records maintained by BDC and Dominion (collectively "B.D. Cooke"). All exhibits attached hereto are true and correct copies of the documents they represent.

**The Agency Managers Pool, Citizens, and Nationwide**

2.      B.D. Cooke is the representative of a pool of U.K. insurers led by Dominion and formerly managed by Underwriting Management Agency Ltd. and C.F.&A.U. Ltd. (the "B.D. Cooke Pool"). Among other things, the B.D. Cooke Pool obtained reinsurance from the "Agency Managers Pool," a casualty reinsurance pool managed by Agency Managers Ltd., later known as Agency Managers, Inc. (collectively "Agency Managers"). Upon the bankruptcy of Agency Managers, ROM Reinsurance Management Co., Inc. ("ROM") succeeded to the books, records, and certain management duties concerning the Agency Managers Pool. I have reviewed and audited such books and records at ROM on behalf of B.D. Cooke.

3.      Exhibit 1 and Exhibit 2 are Agency Managers contracts reinsuring members of the B.D. Cooke Pool. Although Addendum No. 6 to Exhibit 1 and Addendum No. 9 to Exhibit 2 contract make Agency Managers Pool member Citizens Casualty Company of New York ("Citizens") the only reinsurer under those contracts beginning January 1, 1962, it was understood that Citizens was acting as a "front" for the other members of the Agency Managers Pool, who stood behind and reinsured Citizens by way of "Inter-Office Reinsurance." In that regard, Exhibit 3 is a copy of a Casualty Reinsurance Pooling Agreement provided to B.D. Cooke evidencing agreement of the various Agency Managers Pool members to participate in specified shares in Agency Managers Pool business. Pursuant to Addendum No. 6 various companies were Agency Managers Pool members as of January 1, 1962, including Nationwide, such that Citizens' ultimate share was only 25%. Exhibit 3 at BDC01435.

**The Citizens Liquidation**

4.    Citizens eventually became insolvent and was placed into liquidation.  B.D. Cooke, on behalf of the B.D. Cooke Pool, filed a claim with the Liquidation Bureau of the New York State Department of Insurance, which served as liquidator of Citizens (the "Liquidator"). Exhibit 4 is a copy of that claim, which is acknowledged as timely-filed by the Liquidator on the page labeled BDC01383.  B.D. Cooke was the largest creditor of Citizens, and thereafter received through counsel various notices, pleadings and other documents relating to the liquidation proceedings.

5.    Exhibit 5 is a true and correct copy of a verified Petition dated October 11, 1996 (the "Petition") from the liquidation proceedings received by B.D. Cooke and maintained in its files.

6.    Exhibit 6 is a true and correct copy of a March 6, 1997 Corrected Order from the liquidation proceedings received by B.D. Cooke and maintained in its files.

**The Liquidator's Plan, The Petition And The Assignment**

7.    As reflected in the Petition, the claims of B.D. Cooke and other reinsurance creditors of Citizens included not only claims for amounts that had been paid by the reinsured/claimant, but also for outstanding losses and Incurred But Not Reported or "IBNR" losses. Exhibit 5 at ¶ 12.  IBNR losses are losses where the incident giving rise to the loss (and therefore to Citizens' liability) had already occurred, but had not yet been reported to the insurer.  Id.  In that regard, B.D. Cooke and its reinsurers, like Citizens, faced increasing IBNR liabilities during the 1970s, 1980s and 1990s due to claims, such as those for asbestos and

environmental pollution, where injury occurred (and liability was therefore incurred) before Citizens was placed into liquidation, but was not manifest or reported until decades later.

8.    As reflected in the Petition, as of June 1994, B.D. Cooke not only had the largest dollar value (by far) claim for "paid" losses, but also the largest dollar value (by far) outstanding and IBNR claims, with its outstanding losses of nearly $31 million and additional millions of dollars of IBNR losses. See Exhibit 5 at ¶ 19(d). As reflected in the Petition, the Liquidator recognized that "it could take years to resolve the outstanding and IBNR reinsurance liabilities of Citizens" (Exhibit 5 at ¶¶ 12), which meant that the Liquidator's ability to close the estate and make a distribution to claimants would be similarly delayed.

9.    Thus, B.D. Cooke began discussing with the Liquidator the possibility that the Liquidator would vest B.D. Cooke with Citizens' reinsurance assets and B.D. Cooke would in exchange withdraw its outstanding and IBNR claims against the estate of Citizens. Vesting the reinsurance assets with B.D. Cooke would relieve the Liquidator of the need to collect on the reinsurance assets over time as outstanding and as IBNR claims matured, while B.D. Cooke's withdrawal of its outstanding and IBNR as claims against the estate of Citizens would mean that those claims would no longer be among the group of claims to which the Liquidator was required to make a distribution from proceeds held by the estate.

10.    After some initial discussions with the Liquidator, B.D. Cooke wrote to the Liquidator on the 4th of October, 1993 and set forth a written proposal. A copy of that proposal is attached as Exhibit 7, which set forth the premises of the discussions as follows:

> "I write further to the discussions held in your offices on 14th September regarding the possibility of vesting Citizens' reinsurance assets to the benefit of Dominion [B.D. Cooke].

Dominion has large amounts of outstanding claims and IBNR reserves reinsured by Citizens and these would enable Citizens to trigger substantial reinsurance recoveries. The proposal to vest in Dominion the benefit of Citizens' reinsurance programme allows Dominion to acquiesce to the closure to the rest of the Citizens Estate. This is because Dominion will not then be subject to the prejudicial and discriminatory effect of an early closure of the Citizens Estate. . . .

Overall, we appear to have developed an outline which allow the [Liquidation] Bureau to move substantially towards its goal of closing the Citizens Estate, without prejudicing Dominion's future claims. This can be achieved if Dominion is allowed to take Citizens' reinsurance assets in respect of claims which have not yet been paid." Exhibit 7 at 1.

11.    The proposal went on to state that it "is important that we both have a clear view of what we are trying to achieve and, as far as possible, how we will get there. Accordingly, this letter attempts to set down my understanding of the proposals we discussed." Id. With respect to the unpaid losses which would be withdrawn as claims against the estate in exchange for vesting Citizens reinsurance rights with B.D. Cooke, the "twin keys" to the proposal were identified as follows on page 3 (emphasis added):

"The twin keys to this overall proposal are:-

(a)    In order that we can temporarily withdraw Dominion's outstanding loss reserves and IBNR from the Estate, thereby allowing settlement with current creditors at an enhanced dividend rate, we must be assured of future recoveries from Citizens' Reinsurers. *It is absolutely crucial to the continuation of this proposal that the appropriate legal framework be established so that Reinsurers can be compelled to honour valid claims made against them.*

(b)    I have been informed that it is essential that the Bureau satisfies itself that Dominion would not obtain advantage, compared with other creditors, from this proposal."

12.     With respect to the second "twin key" to the proposal, ensuring that B.D. Cooke "would not obtain advantage compared with other creditors," B.D. Cooke had calculated its asbestos IBNR reserves on a "policy by policy" basis. This allowed B.D. Cooke to apply those reserves against a model of Citizens' reinsurance and to estimate "how much money would be recoverable from each reinsurer." Exhibit 7 at 3-6. This included a specific estimate that $2,435,000 would be recovered from Nationwide under its Inter-Office Reinsurance of Citizens. Id. at 4.

13.     The Liquidator responded nearly four months later, on January 28, 1994. Exhibit 8 is a copy of the Liquidator's letter of that date in which the Liquidator advised that "We have reviewed your proposal concerning Citizens Casualty Company" and "feel it is a feasible solution to our problems in the Citizen[s] Casualty estate." The only concern expressed by the Liquidator related to the dividend rate for B.D. Cooke's paid claims (which would continue to be asserted against the estate and share in the distribution from the Liquidator). The Liquidator proposed that such claims receive a smaller distribution than had been discussed, but did confirm that in addition to that distribution, "all future reinsurance recoverables on billings after 3/31/92 would be assigned over to Dominion U.K. as we had discussed." Id.

14.     B.D. Cooke responded on the 8th of February, 1994 by questioning the basis for the Liquidator's conclusion that it would be necessary for B.D. Cooke to accept a smaller distribution for the paid claims. A copy of that letter is attached as Exhibit 9.

15.     Upon further analysis, the Liquidator agreed, as set forth in Exhibit 10, his letter dated February 18, 1994:

> "After further review of the books and records of Citizens Casualty it is our opinion that we will be able to go through with the plan and pay you a dividend of 50%.

The difference from our January 21, 1994 [sic] letter and now include additional reinsurance collections and further review of outstanding liabilities.

If you are in agreement with our dividend payment I can continue meeting with our legal staff to expedit[e] this matter."

16.     B.D. Cooke was "in agreement," which was confirmed on the 24th of February, 1994, in the letter attached as Exhibit 11.  The parties' attorneys were thereafter charged with preparing the appropriate papers, and the Petition was eventually submitted to, and approved by the liquidation court.  Although that process took some time, the basic premises of the agreement in principle reflected in the foregoing exhibits was not renegotiated.

17.     Following approval of the Petition, the Liquidator executed an assignment of Citizens' reinsurance assets, as approved by the Court (the "Assignment").  A copy of the Assignment is attached as Exhibit 12.

**Billings To Nationwide Under The Assignment**

18.     As discussed above, the Inter-Office Reinsurance, which was included in the Assignment, and by which Nationwide reinsured Citizens, was arranged by Agency Managers pursuant to the Casualty Reinsurance Pooling Agreement.  One of the advantages of operating as a pool with a single manager was that Agency Managers could keep such books and records on a joint or "pool" basis, thereby avoiding the costs of keeping separate records for each member for each contract or claim.  After Agency Managers itself ceased operations, ROM succeeded to those books and records.

19.     However, because the records had been kept on a "pool" basis, it was impracticable for another entity to separately process the Inter-Office Reinsurance, and the Liquidator of Citizens contracted with ROM to continue administering the Citizens'

7

participation, including billing of amounts due by or to Citizens under the Inter-Office Reinsurance, as reflected in the Petition. Exhibit 5 at ¶ 8. After the Assignment, B.D. Cooke entered into a similar arrangement with ROM, a copy of which is attached as Exhibit 13. Under that arrangement, ROM — expressly as an independent contractor — continued to administer Citizens' participation, and to prepare billings to Inter-Office Reinsurers such as Nationwide.

20.    Based on the accountings received from ROM, the amount due from Nationwide to B.D. Cooke under the assignment from the Liquidator as of December 31, 2001 was $2,020,430.14, exclusive of interest and costs. I understand that the updated total as of September 30, 2002 is $2,020,858.71, exclusive of interest and costs. Despite demand, Nationwide has refused to pay such amounts.

_____
Simon Janes

Sworn to before me this
5th day of February, 2003.

_____
Notary Public

BARBARA J. VITALE
Notary Public, State of New York
No. 01-VI4740851
Qualified in New York County
Commission Expires NOVEMBER 30, 20 05

8

MEMORANDUM OF AGREEMENT made between the following Companies:-

The World Marine & General Insurance Company Limited.
The Royal Scottish Insurance Company Limited.
Trent Insurance Company Limited.

Underwritten for by Underwriting Management Agency Limited of 154/156, Fenchurch Street, London, E.C.3. (hereinafter called the "Ceding Company") of the one part and the following Companies:-

Citizens Casualty Company of New York.
The Northern Assurance Company Limited.

Underwritten for by Agency Managers Limited of 102, Maiden Lane, New York 5, New York, (hereinafter called the "Reinsurers") of the other part.

THE Reinsurers agree in consideration of the Premiums to be declared hereunder to accept by way of reinsurance lines on Casualty Risks situated in the United States of America up to but not exceeding $1,000,000 (ONE MILLION DOLLARS) any one risk, provided always, however, that the joint liability of the Reinsurers under this Agreement, and the Agreement on the identical Terms and Conditions entered into by the Reinsurers with The Dominion Insurance Company Limited, The London and Edinburgh Insurance Company Limited, Anglo Saxon Insurance Association Limited and Vanguard Insurance Company Limited, underwritten for by C.F. & A.U. Ltd., shall not exceed $1,000,000 (ONE MILLION DOLLARS) any one risk.

THE Ceding Company shall render to the Reinsurers monthly new business, renewal and Endorsement Bordereaux in the agreed form stating inter alia the Policies reinsured hereunder and the proportion thereof accepted by the Reinsurers.

BDC 00668

THE Premium to be paid hereon shall be calculated at the Reinsurers' proportion of the Original Gross Premium received by the Ceding Company for the Policies reinsured hereunder. The Reinsurers will allow to the Ceding Company the same commission, brokerage and expenses in respect of each Policy as is allowed by the Ceding Company.

THE Ceding Company will advise the Reinsurers of any claim of which the Ceding Company is notified and in which the Reinsurers are interested. The Reinsurers shall have the right to co-operate with the Ceding Company in the investigation, settlement or defense of any claim in which the Reinsurers are interested, and shall pay their proportion of all costs and expenses relating thereto.

All amounts due from the Reinsurers to the Ceding Company in regard to the investigation, settlement or defense of claims will be included in the accounts rendered by the Ceding Company to the Reinsurers under this Agreement.

Provided always that where the amount due from the Reinsurers to the Ceding Company in respect of any claim shall exceed the sum of $5,000 (FIVE THOUSAND DOLLARS) then the reinsurers shall upon written or cabled request remit forthwith the sum due to the Ceding Company.

WITHIN thirty days after the close of each month the Ceding Company will render to the Reinsurers an account relating to the transactions under this Agreement for such month. The Reinsurers shall confirm such account within fifteen days after its receipt by them and the balance due by the debtor party shall thereupon become due and shall be paid forthwith.

THIS Agreement shall only apply to risks attaching on and after the 1st day of January 1955 and shall continue in force until cancelled by either party giving to the other thirty days notice of their intention so to do. Cessions to remain in force until the next anniversary or expiry date whichever is the sooner.

BDC 00669

IF any question or difference shall arise touching meaning of this Agreement or as to the rights, obligations or liability of either party hereunder, the same shall be referred to the arbitration of some person to be appointed both parties, or, if they cannot agree upon a single

Arbitrator, to the decision of two arbitrators, one to be appointed in writing by each party, or in the case of disagreement between the arbitrators to the decision of an umpire who shall have been appointed in writing by the arbitrators before entering on the reference and an award shall be a condition precedent of any liability of the Reinsurers.

The Seat of Arbitration shall be LONDON.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The World Marine & General Insurance Company Limited
        for its 50% participation.
The Royal Scottish Insurance Company Limited
        for its 33.1/3% participation.
Trent Insurance Company Limited
        for its 16.2/3% participation.

Signed this _86_ day of May 1955 on behalf of the Ceding Company.

Per UNDERWRITING MANAGEMENT AGENCY LIMITED

Accident Underwriter.

Citizens Casualty Company of New York
        for its 50% participation.
The Northern Assurance Company Limited
        for its 50% participation.

Signed this _9th_ day of _May_. 1955 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED.

Manager.

N. J.

(3)

BDC 00670

ADDENDUM NO. 1 TO MEMORANDUM OF AGREEMENT made between the following

Companies:-

    The World Marine & General Insurance Company Limited.
    The Royal Scottish Insurance Company Limited.
    Trent Insurance Company Limited.

Underwritten for by Underwriting Management Agency Limited, of the one part and

the following Companies:-

    Citizens Casualty Company of New York.
    The Northern Assurance Company Limited.

Underwritten for by Agency Managers Limited of the other part.

       It is hereby mutually understood and agreed that effective the 1st

day of July, 1955 the "Reinsurers" participating in this agreement are amended

to read as follows:

    Citizens Casualty Company of New York,
    The Northern Assurance Company Limited,
    American Home Assurance Company,

each for its own proportion of 33.1/3% and not one for another.

       It is further understood and agreed that the American Home Assurance

Company shall only participate in risks ceded hereunder which attach on and after

the 1st day of July 1955.

       All other terms and conditions remaining unchanged.

       Signed for and on behalf of the Companies specified below each for its

own proportion and not one for another.

    The World Marine & General Insurance Company Limited
       for its 50% participation.
    The Royal Scottish Insurance Company Limited
       for its 33.1/3% participation.
    Trent Insurance Company Limited
       for its 16.2/3% participation.

    Signed this 10th day of July 1955 on behalf of the

Ceding Company.

    For UNDERWRITING MANAGEMENT AGENCY LIMITED

BDC 00671

Accident Underwriter.

(1)

Citizens Casualty Company of New York
for its 33.1/3% participation.
The Northern Assurance Company Limited
for its 33.1/3% participation.
American Home Assurance Company
for its 33.1/3% participation.

Signed this 30th day of June. 1955 on behalf of
the Reinsurers.

Per AGENCY MANAGERS LIMITED.

Manager.

BDC 00672

ADDENDUM NO. 2 TO MEMORANDUM OF AGREEMENT made between the following

Companies:-

    The World Marine & General Insurance Company Limited,
    The Royal Scottish Insurance Company Limited,
    Trent Insurance Company Limited,

Underwritten for by Underwriting Management Agency Limited, of the one part and

the following Companies:-

    Citizens Casualty Company of New York,
    The Northern Assurance Company Limited,
    American Home Assurance Company,

Underwritten for by Agency Managers Limited of the other part.

    It is hereby mutually understood and agreed that effective the 1st day

of January, 1957 the "Reinsurers" participating in this agreement are amended to

read as follows:-

    Citizens Casualty Company of New York,
    American Home Assurance Company,

each for its own proportion of 50% and not one for another.

    It is further understood and agreed that The Northern Assurance Company

Limited shall not participate in risks ceded hereunder which attach on and after

the 1st day of January 1957.

    All other terms and conditions remaining unchanged.

    Signed for and on behalf of the Companies specified below each for its

own proportion and not one for another.

    The World Marine & General Insurance Company Limited
        for its 50% participation.
    The Royal Scottish Insurance Company Limited
        for its 33.1/3% participation.
    Trent Insurance Company Limited
        for its 16.2/3% participation.

    Signed this  31st  day of  January  1957 on behalf of the

Ceding Company.

        Per UNDERWRITING MANAGEMENT AGENCY LIMITED

                        Accident Underwriter.

BDC 00673

                    (1)

Citizens Casualty Company of New York
for its 50% participation.
American Home Assurance Company
for its 50% participation.

Signed this 2nd day of January 1957 on behalf
of the Reinsurers.

Per AGENCY MANAGERS LIMITED

Manager.

BDC 00674

Underwritten for by Underwriting Management Agency Limited, of the one part and the following Companies:-

Citizens Casualty Company of New York,
American Home Assurance Company,

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective the 1st day of May, 1958, the following Nuclear Incident Exclusion Clauses are incorporated into and form part of this Agreement.

(1)  "Nuclear Incident Exclusion Clause-Liability-Reinsurance"
(2)  "Nuclear Incident Exclusion Clause-Physical Damage-Reinsurance"
(3)  "Nuclear Incident Exclusion Clause-Physical Damage and Liability
      (Boiler and Machinery Policies)-Reinsurance"

It is further mutually agreed that as respects (1) "Nuclear Incident Exclusion Clause-Liability-Reinsurance" the following words be added to be read as if (a) appears at the end of paragraph (2) sub-paragraph III and (b) appears at the end of paragraph (3) sub-paragraph V:-

(a)  "and provided that this paragraph (2) shall not be applicable to Family Automobile Policies (liability only) issued by the Company on Massachusetts and New York risks which are effective prior to 1st January 1959, if at the date the policies are issued the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company of the Limited Exclusion Provision in said policies."

(b)  "and provided that this paragraph (3) shall not be applicable to Automobile Liability Policies issued by the Company on Massachusetts and New York risks which are effective prior to 1st January 1959, if at the date the policies are issued the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company of the Broad Exclusion provision in said policies."

All other terms and conditions remaining unchanged.


Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The World Marine & General Insurance Company Limited
     for its 50% participation.
The Royal Scottish Insurance Company Limited
     for its 33.1/3% participation.
Trent Insurance Company Limited
     for its 16.2/3% participation.

Company    Signed this   14th   day of   August   1958 on behalf of the Ceding

Per UNDERWRITING MANAGEMENT AGENCY LIMITED

Accident Underwriter.

Citizens Casualty Company of New York
     for its 50% participation
American Home Assurance Company
     for its 50% participation

Signed this   22nd   day of   July   1958 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED

BDC 00675

VICE PRESIDENT

1.  This Reinsurance does not cover any loss or liability accruing to the Company, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2.  Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Company, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I.  Nuclear reactor power plants including all auxiliary property on the site, or

    II.  Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III.  Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV.  Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3.  Without in any way restricting the operations of paragraphs(1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Company, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a)  where Company does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b)  where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused.  However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4.  Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Company, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5.  It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Company to be the primary hazard.

6.  The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7.  Company to be sole judge of what constitutes:

    (a)  substantial quantities, and

    (b)  the extent of installation, plant or site.

BDC 00676

Note.---Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a)  all policies issued by the Company on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b)  with respect to any risk located in Canada policies issued by the Company on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

BDC 00677

NUCLEAR INCIDENT EXCLUSION CLAUSE — LIABILITY — REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original contracts of the Company (new, renewal and replacement) of the classes specified in clause II of this paragraph (2) from the time specified in clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.
It is agreed that the policy does not apply to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and is in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Farmers' Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the three classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Home-Owners Policies.

III. The inception date and thereafter of all original contracts as described in II above, whether new, renewal or replacement, which become effective on or after 1st June 1958; provided this paragraph (2) shall not be applicable to policies issued by the Company(ies) which are effective prior to 1st January 1959 if the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company(ies) of the Limited Exclusion Provision in the policies specified in clause II foregoing.

(3) Except for those classes of contracts specified in clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability contracts of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability, shall be deemed to include with respect to such coverages, from the time specified in clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

IV. Broad Exclusion Provision.
It is agreed that the policy does not apply:
(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and is in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability.
(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard; provided that except for liability insurance for bodily injury, this paragraph (b) shall not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility after sale or distribution to others;
(c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance, operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America, its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard;
(d) to the transportation, handling, use, sale, distribution or disposal of product material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard.
As used herein:
1. The term "nuclear energy hazard" means the radioactive, toxic, explosive or other hazardous properties of source material, special nuclear material or byproduct material.
2. The terms "source material", "special nuclear material" and "byproduct material" shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided, except for byproduct material (a) contained in or combined with special nuclear material or (b) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, "byproduct material" shall not include any radioactive isotope away from a nuclear facility.
3. The term "nuclear facility" means:
(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
(b) any equipment or device (i) designed or used for the separation of the isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or of irradiated materials containing special nuclear material, (iii) incorporating or making use of such irradiated materials, or (iv) designed or used for processing waste byproduct material;
(c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material or waste consisting of or containing special nuclear material or byproduct material; and includes the site on which any of the foregoing is located, together with all operations conducted thereat and all premises used for such operations. Subdivision (ii) of paragraph (b) foregoing is not applicable to a location which contains no equipment, device or apparatus otherwise defined herein as a nuclear facility, where special nuclear or byproduct material is not regularly handled, stored, or disposed of, and which is principally used for other operations not related to the handling, fabricating or use of special nuclear material.
4. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception date and thereafter of the original liability contracts affording coverages specified in paragraph (3) hereof, whether new, renewal or replacement, which become effective on or after 1st March 1958; provided this paragraph (3) shall not be applicable to policies issued by the Company(ies) which are effective prior to 1st January 1959 if the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company(ies) of the Broad Exclusion Provision in the policies specified in paragraph (3).

(4) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that their natural expiry dates from the application of the other paragraphs of this Clause with respect to all original liability contracts of the Company(ies) effective on or before 31st December 1958 shall be free until located in Canada.

NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY
(BOILER AND MACHINERY POLICIES)—REINSURANCE

(1)  This reinsurance does not cover any loss
or liability accruing to the Company as a member of, or
subscriber to, any association of insurers or reinsurers
formed for the purpose of covering nuclear energy risks
or as a direct or indirect reinsurer of any such member,
subscriber or association.

(2)  Without in any way restricting the operation
of paragraph (1) of this Clause it is understood and agreed
that for all purposes of this reinsurance all original
Boiler and Machinery Insurance contracts of the Company
(new, renewal and replacement) shall be deemed to include
the following provisions of this paragraph;

This Policy does not apply to "loss", whether it
be direct or indirect, proximate or remote

(a)  from an Accident caused directly or
indirectly by nuclear reaction,
nuclear radiation or radioactive
contamination, all whether controlled
or uncontrolled; or

(b)  from nuclear reaction, nuclear
radiation or radioactive contamination,
all whether controlled or uncontrolled,
caused directly or indirectly by
contributed to or aggravated by an
Accident.

(3)  However, it is agreed that loss arising out of
the use of Radioactive Isotopes in any form is not hereby ex-
cluded from reinsurance protection.

(4)  Without in any way restricting the operation
of paragraph (1) hereof, it is understood and agreed that

(a)  all policies issued by the Company
to become affective on or before 30th
April, 1958, shall be free from the
application of the other provisions
of this Clause until expiry date or
30th April, 1961, whichever first
occurs, whereupon all the provisions
of this Clause shall apply,

(b)  with respect to any risk located in
Canada policies issued by the Company
to become effective on or before 31st
December, 1958, shall be free from the
application of the other provisions
of this Clause until expiry date or
31st December, 1960, whichever first
occurs, whereupon all the provisions
of this clause shall apply.

BDC 00678

The World Marine & General Insurance Company Limited.
The Royal Scottish Insurance Company Limited.
Trent Insurance Company Limited,

Underwritten for by Underwriting Management Agency Limited, of the one part and the
following Companies:-

    Citizens Casualty Company of New York,
      American Home Assurance Company,

underwritten for by Agency Managers Limited of the other part.

    It is hereby mutually understood and agreed that effective May 1, 1958,
No. (3) Nuclear Incident Exclusion Clause-Physical Damage and Liability (Boiler and
Machinery Policies)-Reinsurance which was incorporated into and formed part of this
agreement under Addendum No. 3 is cancelled and the following clause substituted in
lieu thereof.

    "NUCLEAR INCIDENT EXCLUSION CLAUSE-PHYSICAL DAMAGE AND LIABILITY
        (BOILER AND MACHINERY POLICIES)-REINSURANCE

    (1) This reinsurance does not cover any loss or liability accruing to the
Company as a member of, or subscriber to, any association of insurers or reinsurers
formed for the purpose of covering nuclear energy risks or as a direct or indirect
reinsurer of any such member, subscriber or association.

    (2) Without in any way restricting the operation of paragraph (1) of this Clause
it is understood and agreed that for all purposes of this reinsurance all original
Boiler and Machinery Insurance or Reinsurance contracts of the Company shall be
deemed to include the following provisions of this paragraph;

    This Policy does not apply to "loss", whether it be direct or indirect, proximate
or remote

        (a) from an Accident caused directly or indirectly by nuclear
           reaction, nuclear radiation or radioactive contamination,
           all whether controlled or uncontrolled; or
        (b) from nuclear reaction, nuclear radiation or radioactive
           contamination, all whether controlled or uncontrolled,
           caused directly or indirectly by, contributed to or
           aggravated by an Accident.

    (3) However, it is agreed that loss arising out of the use of Radioactive Isotopes
in any form is not hereby excluded from reinsurance protection.

    (4) Without in any way restricting the operation of paragraph (1) hereof, it is
understood and agreed that

        (a) all policies issued by the Company effective on or before 30th
           April, 1958, shall be free from the application of the other
           provisions of this clause until expiry date or 30th, April, 1961,
           whichever first occurs, whereupon all the provisions of this
           Clause shall apply,
        (b) with respect to any risk located in Canada policies issued by the
           Company effective on or before 30th June, 1958, shall be free from
           the application of the other provisions of this Clause until expiry
           date or 30th June, 1961, whichever first occurs, whereupon all the
           provisions of this Clause shall apply."

    All other terms and conditions remaining unchanged.

    Signed for and on behalf of the Companies specified below each for its own
proportion and not one for another.
    The World Marine & General Insurance Company Limited
        for its 50% participation.
    The Royal Scottish Insurance Company Limited
        for its 33.1/3% participation.          **BDC 00679**
    Trent Insurance Company Limited
        for its 16.2/3% participation.

    Signed this 18th day of September 1958 on behalf of the
Ceding Company
        Per UNDERWRITING MANAGEMENT AGENCY LIMITED

Citizens Casualty Company of New York
for its 50% participation
American Home Assurance Company
for its 50% participation.

Signed this        5th        day of   September  1958 on behalf of the
in insurers.

For AGENCY MANAGERS LIMITED

Vice President

- 2 -

BDC 00680

ADDENDUM NO. 5 TO MEMORANDUM OF AGREEMENT made between the following Companies:-

The World Marine & General Insurance Company Limited
The Royal Scottish Insurance Company Limited
Trent Insurance Company Limited

hereinafter called together as the Agent, Insured, of the one part and the Full and Companies:-

Citizens Casualty Company of New York
American Home Insurance Company

underwritten for by Agency Managers limited of the other part.

It is hereby understood and agreed that effective from the 1st day of January 196_ the "Reinsurers" participating in this agreement are amended to read as follows:-

Citizens Casualty Company of New York
American Home Assurance Company
The Constitution Insurance Corporation of New York

each for its own proportion and not one for another

All other terms and conditions remain unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.
The World Marine & General Insurance Company Limited
    for its 50% participation
The Royal Scottish Insurance Company Limited
    for its 33-1/3% participation
Trent Insurance Company Limited
    for its 16-2/3% participation

Signed this 25th        day of November,  1960 on behalf of the Ceding Company

                    For UNDERWRITERS MANAGEMENT AGENCY
                                        LIMITED

                        *signature*

                    ___ Accident Underwriter


Citizens Casualty Company of New York
    for its 6/11ths participation
American Home Assurance Company
    for its 3/11ths participation
Constitution Insurance Corporation of New York
    for its 2/11ths participation

Signed this    7th        day of December 1960 on behalf of the Reinsurers.

                    For AGENCY MANAGERS LIMITED

                        *signature*

                    Vice President


                                        BDC 00681

ADDENDUM NO. 6 TO MEMORANDUM OF AGREEMENT made between the
following Companies:-

    The World Marine & General Insurance Company Limited
    The Loyal Scottish Insurance Company Limited
    Trent Insurance Company Limited

Underwritten for by Underwriting Management Agency Limited, of
the one part and the following Companies:-

    Citizens Casualty Company of New York
    American Home Assurance Company
    The Constitution Insurance Corporation of New York

Underwritten for by Agency Managers Limited of the other part.

    It is hereby mutually understood and agreed that effective
the 1st day of January 1962 the Reinsurer is as follows:-

    Citizens Casualty Company of New York

All other terms and conditions remain unchanged.

    Signed for and on behalf of the Companies specified below each
for its own proportion and not one for another.

    The World Marine & General Insurance Company Limited
        for its 50% participation
    The Loyal Scottish Insurance Company Limited
        for its 33-1/3rd% participation
    Trent Insurance Company Limited
        for its 16-2/3rds% participation

Signed this      day of     1962 on behalf
of the Ceding Company
        Per UNDERWRITING MANAGEMENT AGENCY LIMITED

                        Accident Underwriter

    Citizens Casualty Company of New York

Signed this   17th   day of  April  1962 on behalf
of the reinsurer.
        Per AGENCY MANAGERS LIMITED

                  Vice President

BDC 00682

ADDENDUM NO 1 TO MEMORANDUM OF AGREEMENT made between the following Companies:

The World Marine & General Insurance Company Limited
The Royal Scottish Insurance Company Limited
Trent Insurance Company Limited

Underwritten for by Underwriting Management Agency Limited of the one part and the following Company:-

Citizens Casualty Company of New York

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective from the 1st day of January 1966 the Reinsurers are as follows:

The Indemnity Marine Assurance Company Limited
Citizens Casualty Company of New York
Skandinavia Insurance Company Limited
Nationwide Mutual Insurance Company
Great American Insurance Company
Monarch Insurance Company of Ohio

each for its own proportion and not one for another.

All other terms and conditions remain unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The World Marine & General Insurance Company Limited
for its 50% participation
The Royal Scottish Insurance Company Limited
for its 33⅓% participation
Trent Insurance Company Limited
for its 16⅔% participation

Signed this    day of January 1966 on behalf of the Ceding Company.

for UNDERWRITING MANAGEMENT AGENCY LTD.

Accident Underwriter.

The Indemnity Marine Assurance Company Limited
for its 27½% participation
Citizens Casualty Company of New York
for its 17½% participation
Skandinavia Insurance Company Limited
for its 5% participation
Nationwide Mutual Insurance Company
for its 22½% participation
Great American Insurance Company
for its 20% participation
Monarch Insurance Company of Ohio
for its 12½% participation

BDC 00683

Signed this 20 day of Jan 1966 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED.

President

ADDENDUM NO. 8 TO MEMORANDUM OF AGREEMENT made between the following Companies:-

The World Marine & General Insurance Company Limited
The Royal Scottish Insurance Company Limited
Trent Insurance Company Limited

Underwritten for by UNDERWRITING MANAGEMENT AGENCY LIMITED of the one part and the following Companies:-

The Indemnity Marine Assurance Company Limited
Citizens Casualty Company of New York
Skandinavia Insurance Company Limited
Nationwide Mutual Insurance Company
Great American Insurance Company
Monarch Insurance Company of Ohio

Underwritten for by AGENCY MANAGERS LIMITED of the other part.

It is hereby mutually understood and agreed that effective from the 1st day of January 1967 the Reinsurers are as follows:-

The Indemnity Marine Assurance Company Limited
Nationwide Mutual Insurance Company
Constellation Insurance Company
Citizens Casualty Company of New York
Monarch Insurance Company of Ohio

each for its own proportion and not one for another.

All other terms and conditions remain unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another

The World Marine & General Insurance Company Limited
for its 50% participation
The Royal Scottish Insurance Company Limited
for its 33⅓% participation
Trent Insurance Company Limited
for its 16⅔% participation

Signed this 16th day of January 1967 on behalf of the Ceding Company.

per UNDERWRITING MANAGEMENT AGENCY LIMITED.

Accident Underwriter.

The Indemnity Marine Assurance Company Limited
for its 27½% participation
Nationwide Mutual Insurance Company
for its 22½% participation
Constellation Insurance Company
for its 50% participation
Citizens Casualty Company of New York
for its 17½% participation
Monarch Insurance Company of Ohio
for its 17½% participation

**BDC 00684**

Signed this 25 day of Feb 1967 on behalf of the Reinsurers.

per AGENCY MANAGERS LIMITED.

President.

MEMORANDUM OF AGREEMENT made between the following Companies:-

The Dominion Insurance Company Limited,
The London and Edinburgh Insurance Company Limited,
Anglo Saxon Insurance Association Limited,
Vanguard Insurance Company Limited.

Underwritten for by C.P. & A.D. Limited of 154/156, Fenchurch Street, London, E.C.3. (hereinafter called the "Ceding Company") of the one part and the following Companies:-

Citizens Casualty Company of New York,
The Northern Assurance Company Limited.

Underwritten for by Agency Managers Limited of 102, Maiden Lane, New York 5, New York; (hereinafter called the "Reinsurers") of the other part.

THE Reinsurers agree in consideration of the Premiums to be declared hereunder to accept by way of reinsurance lines on Casualty Risks situated in the United States of America up to but not exceeding £500,000 (FIVE HUNDRED THOUSAND DOLLARS) any one risk.

THE Ceding Company shall render to the Reinsurers monthly new business, renewal and Endorsement Bordereaux in the agreed form stating inter alia the Policies reinsured hereunder and the proportion thereof accepted by the Reinsurers.

THE Premium to be paid hereon shall be calculated at the Reinsurers' proportion of the Original Gross Premium received by the Ceding Company for the Policies reinsured hereunder. The Reinsurers will allow to the Ceding Company the same commission, brokerage and expenses in respect of each Policy as is allowed by the Ceding Company.

THE Ceding Company will advise the Reinsurers of any claim of which the Ceding Company is notified and in which the Reinsurers are interested. The Reinsurers shall have the right to co-operate with the Ceding Company in the

( 1 )

BDC 00018

investigation, settlement or defense of any claim in which the Reinsurers are interested, and shall pay their proportion of all costs and expenses relating thereto.

All amounts due from the Reinsurers to the Ceding Company in regard to the investigation, settlement or defense of claims will be included in the accounts rendered by the Ceding Company to the Reinsurers under this Agreement.

Provided always that where the amount due from the Reinsurers to the Ceding Company in respect of any claim shall exceed the sum of $5,000 (FIVE THOUSAND DOLLARS) then the Reinsurers shall upon written or cabled request remit forthwith the sum due to the Ceding Company.

WITHIN thirty days after the close of each month the Ceding Company will render to the Reinsurers an account relating to the transactions under this Agreement for such month. The Reinsurers shall confirm such account within fifteen days after its receipt by them and the balance due by the debtor party shall thereupon become due and shall be paid forthwith.

THIS Agreement shall only apply to risks attaching on and after the 1st day of November 1951 and shall continue in force until cancelled by either party giving to the other thirty days notice of their intention so to do. Cessions to remain in force until the next anniversary or expiry date whichever is the sooner.

IF any question or difference shall arise touching the meaning of this Agreement or as to the rights, obligations or liability of either party hereunder, the same shall be referred to the arbitration of some person to be appointed by both parties, or, if they cannot agree upon a single arbitrator, to the decision of two arbitrators, one to be appointed in writing by each party, or in the case of disagreement between the arbitrators to the decision of an

umpire who shall have been appointed in writing by the arbitrators before entering on the reference and an award shall be a condition precedent of any liability of the Reinsurers.

The Seat of Arbitration shall be LONDON.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
for its 33.1/3% participation.
The London and Edinburgh Insurance Company Limited
for its 33.1/3% participation.
Anglo Saxon Insurance Association Limited
for its 16.2/3% participation.
Vanguard Insurance Company Limited
for its 16.2/3% participation.

Signed this 14th day of October 1952 on behalf of the Ceding Company.

Per C.F. & A.U. Limited.

*George C...*

Accident Underwriter.

Citizens Casualty Company of New York
for its 50% participation.
The Northern Assurance Company Limited
for its 50% participation.

Signed this    *16th*    day of    *October*    1952
on behalf of the Reinsurers.

Per Agency Managers Limited.

*R. Jones*

Manager.

following Companies:-

The Dominion Insurance Company Limited.
The London and Edinburgh Insurance Company Limited.
Anglo Saxon Insurance Association Limited.
Vanguard Insurance Company Limited.

Underwritten for by C.P. & A.U. Limited, of the one part and the following Companies:-

Citizens Casualty Company of New York.
The Northern Assurance Company Limited.

Underwritten for by Agency Managers Limited of the other part.

It is hereby understood and agreed that as from the 22nd day of September, 1954 the maximum amount which the Reinsurers agree to accept under this Agreement is increased to $1,000,000 (ONE MILLION DOLLARS), any one risk.

It is further understood and agreed, that as from the 1st day of January 1955, the joint liability of the Reinsurers under this Agreement and the Agreement on the identical terms and conditions entered into by the Reinsurers with The World Marine & General Insurance Company Limited, The Royal Scottish Insurance Company Limited, and Grant Insurance Company Limited, underwritten for by Underwriting Management Agency Limited, shall not exceed $1,000,000 (ONE MILLION DOLLARS), any one risk.

All other terms and conditions remaining unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
  for its 33.1/3. participation.
The London and Edinburgh Insurance Company Limited
  for its 33.1/3. participation.
Anglo Saxon Insurance Association Limited
  for its 16.2/3. participation.
Vanguard Insurance Company Limited
  for its 16.2/3. participation.

Signed this    day of        1955 on behalf of the Ceding Company.

for C.P. & A.U. Limited.

**BDC 00021**

Accident Underwriter.

Citizens Casualty Company of New York
for its 50, participation.
The Northern Assurance Company Limited
for its 50, participation.

Signed this    31st    day of    May    1955

on behalf of the Reinsurers.

Per Agency Managers Limited.

Manager.

N. J.

BDC 00022

ADDENDUM NO. 2 TO MEMORANDUM OF AGREEMENT made between the following

Companies:-

The Dominion Insurance Company Limited.
The London and Edinburgh Insurance Company Limited.
Anglo Saxon Insurance Association Limited.
Vanguard Insurance Company Limited.

Underwritten for by C. F. & A. W. Limited, of the one part and the following

Companies:-

Citizens Casualty Company of New York.
The Northern Assurance Company Limited.

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective the 1st day

of July 1955, the "Reinsurers" participating in this agreement are amended to

read as follows:-

Citizens Casualty Company of New York.
The Northern Assurance Company Limited.
American Home Assurance Company,

each of its own proportion of 33.1/3% and not one for another.

It is further understood and agreed that the American Home Assurance

Company shall only participate in risks ceded hereunder which attach on and

after the 1st day of July 1955.

All other terms and conditions remaining unchanged.

Signed for and on behalf of the Companies specified below each for its

own proportion and not one for another.

The Dominion Insurance Company Limited
   for its 33.1/3% participation.
The London and Edinburgh Insurance Company Limited
   for its 33.1/3% participation.
Anglo Saxon Insurance Association Limited
   for its 16.2/3% participation.
Vanguard Insurance Company Limited
   for its 16.2/3% participation.

Signed this   10th   day of   July   1955 on behalf of the

Ceding Company.

per C. F. & A. W. LIMITED.

Accident Underwriter.

**BDC 00023**

(1)

Citizens Casualty Company of New York
    for its 33.1/3% participation.
The Northern Assurance Company Limited
    for its 33.1/3% participation.
American Home Assurance Company
    for its 33.1/3% participation.

Signed this *30th* day of *June* 1955 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED.

Manager.

BDC 00024

ADDENDUM NO. 3 TO MEMORANDUM OF AGREEMENT made between the following Companies:-

The Dominion Insurance Company Limited.
The London and Edinburgh Insurance Company Limited.
Anglo Saxon Insurance Association Limited.
Vanguard Insurance Company Limited.

Underwritten for by C. F. & A. T. Limited, of the one part and the following Companies:-

Citizens Casualty Company of New York,
- The Northern Assurance Company Limited,
American Home Assurance Company,

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective the 1st day of January, 1957 the "Reinsurers" participating in this agreement are amended to read as follows:-

Citizens Casualty Company of New York,
American Home Assurance Company,

each for its own proportion of 50% and not one for another.

It is further understood and agreed that The Northern Assurance Company Limited shall not participate in risks ceded hereunder which attach on and after the 1st day of January 1957.

All other terms and conditions remaining unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
        for its 33.1/3% participation.
The London and Edinburgh Insurance Company Limited
        for its 33.1/3% participation.
Anglo Saxon Insurance Association Limited
        for its 16.2/3% participation.
Vanguard Insurance Company Limited
        for its 16.2/3% participation.

Signed this 31st day of  January  1957 on behalf of the Ceding Company.

Per C. F. & A. T. Limited.

Accident Underwriter.

**BDC 00025**

(2)

Citizens Casualty Company of New York
    for its 50% participation.
American Home Assurance Company
    for its 50% participation.

Signed this *2nd* day of *January* 1957 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED.

Manager.

BDC 00026

ADDENDUM NO. 4. TO MEMORANDUM OF AGREEMENT made between the following Companies:-

The Dominion Insurance Company Limited.
The London and Edinburgh Insurance Company Limited.
Anglo Saxon Insurance Association Limited.
Vanguard Insurance Company Limited.

Underwritten for by C.F. & A.U. Limited, of the one part and the following Companies:-

Citizens Casualty Company of New York,
American Home Assurance Company,

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective the 1st day of April, 1958 the "Ceding Company" participating in this agreement is amended to read as follows:-

The Dominion Insurance Company Limited.
The London and Edinburgh Insurance Company Limited.
Anglo Saxon Insurance Association Limited.
British Merchants' Insurance Company Limited.
Vanguard Insurance Company Limited.

each for its own proportion and not one for another.

All other terms and conditions remaining unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
    for its 23% participation.
The London and Edinburgh Insurance Company Limited
    for its 23% participation.
Anglo Saxon Insurance Association Limited
    for its 23% participation.
British Merchants' Insurance Company Limited
    for its 23% participation.
Vanguard Insurance Company Limited
    for its 8% participation.

Signed this 10th day of APRIL, 1958 on behalf of the Ceding Company.

Per C.F. & A.U. Limited.

Accident Underwriter.

**BDC 00027**

(1)

Citizens Casualty Company of New York
        for its 50% participation.
American Home Assurance Company
        for its 50% participation.

Signed this *15th* day of *April* 1958 on behalf of
the Reinsurers.

Per AGENCY MANAGERS LIMITED.

*[signature]*

Manager.

The London and Edinburgh Insurance Company Limited,
Anglo Saxon Insurance Association Limited,
British Merchants' Insurance Company Limited,
Vanguard Insurance Company Limited,

Underwritten for by C.F. & A.U. Limited, of the one part and the following Companies:-

    Citizens Casualty Company of New York,
    American Home Assurance Company,

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective the 1st day of May, 1958, the following Nuclear Incident Exclusion Clauses are incorporated into and form part of this Agreement.

    (1)  "Nuclear Incident Exclusion Clause-Liability-Reinsurance"
    (2)  "Nuclear Incident Exclusion Clause-Physical Damage-Reinsurance"
    (3)  "Nuclear Incident Exclusion Clause-Physical Damage and Liability
          (Boiler and Machinery Policies)-Reinsurance"

It is further mutually agreed that as respects (1) "Nuclear Incident Exclusion Clause-Liability-Reinsurance" the following words be added to be read as if (a) appears at the end of paragraph (2) sub-paragraph lll and (b) appears at the end of paragraph (3) sub-paragraph V:-

    (a)  "and provided that this paragraph (2) shall not be applicable to Family Automobile Policies (liability only) issued by the Company on Massachusetts and New York risks which are effective prior to 1st January 1959, if at the date the policies are issued the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company of the Limited Exclusion Provision in said policies."

    (b)  "and provided that this paragraph (3) shall not be applicable to Automobile Liability Policies issued by the Company on Massachusetts and New York risks which are effective prior to 1st January 1959, if at the date the policies are issued the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company of the Broad Exclusion provision in said policies."

All other terms and conditions remaining unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
    for its 23% participation.
The London and Edinburgh Insurance Company Limited
    for its 23% participation.
Anglo Saxon Insurance Association Limited
    for its 23% participation.
British Merchants' Insurance Company Limited
    for its 23% participation.
Vanguard Insurance Company Limited
    for its 8% participation.

Signed this 14th day of August 1958 on behalf of the Ceding Company

Per C.F. & A.U. LIMITED.

Accident Underwriter

BDC 00029

for its 50% participation.
American Home Assurance Company
for its 50% participation.

Signed this *24th* day of *July*          1958 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED.

Vice President

## NUCLEAR INCIDENT EXCLUSION CLAUSE — LIABILITY — REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original contracts of the Company(ies) (new, renewal and replacement) of the classes specified in clause II of this paragraph (2) from the time specified in clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

I. Limited Exclusion Provision

It is agreed that the policy does not apply to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Farmers' Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature: and the liability portion of combination forms related to the three classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Home-Owners Policies.

III. The inception-dates and thereafter of all original contracts as described in II above, whether new, renewal or replacement, which become effective on or after 1st June 1958: provided this paragraph (2) shall not be applicable to policies issued by the Company(ies)' which are effective prior to 1st January 1959 if the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Company(ies) of the Limited Exclusion Provision in the policies specified in clause II foregoing.

(3) Except for those classes of contracts specified in clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability contracts of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability shall be deemed to include with respect to such coverages, from the time specified in clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

IV. Broad Exclusion Provision

It is agreed that the policy does not apply:

(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, provided that except for byproduct material, this paragraph (b) shall not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility after sale or distribution to others; (c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance, operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America, its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard;

(d) to the transportation, handling, use, sale, distribution or disposal of byproduct material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard.
As used herein:

1. The term "nuclear energy hazard" means the radioactive, toxic, explosive or other hazardous properties of source material, special nuclear material or byproduct material.

2. The terms "source material", "special nuclear material" and "byproduct material" shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided, except for byproduct material (1) contained in or combined with special nuclear material or (2) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, "byproduct material" shall not include any radioactive isotope away from a nuclear facility.

3. The term "nuclear facility" means:

(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
(b) any equipment or device (i) designed or used for the separation of the isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or of irradiated materials containing special nuclear material, (iii) incorporating or making use of such irradiated materials, or (iv) designed or used for processing waste byproduct material;
(c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material or waste consisting of or containing special nuclear material or byproduct material; and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations. Subdivision (ii) of paragraph (b) foregoing is not applicable to the occasional mechanical processing or fabricating of special nuclear material by any person or organization at a location which contains no equipment, device or apparatus otherwise defined herein as a nuclear facility, where special nuclear or byproduct material is not regularly handled, stored, or disposed of as waste, and which is principally used for other operations not related to the handling, fabricating or use of special nuclear material.

4. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception-dates and thereafter of all the original liability contracts affording coverages specified in paragraph (3) hereof, whether new, renewal or replacement, which become effective on or after 1st March 1960: provided the paragraph (3) shall not be applicable to policies issued by the Company(ies) which have failed to approve the use by the Company(ies) of the Broad Exclusion Provision in the policies specified in the paragraph (3).

(4) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that paragraph (2) and (3) above are not applicable to the original liability contracts of the Company(ies) effective on or before 21st December 1956 shall be free until their natural expiry dates from the application of the other provisions of this Clause with respect to any risk located in Canada.

BDC 00031

directly or indirectly and whether as Insurer or Reinsurer, from any loss or liability accruing to the Company, Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Company, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

I. Nuclear reactor power plants including all auxiliary property on the site, or

II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for re-processing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraph (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Company, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

(a) where Company does not have knowledge of such nuclear reactor power plant or nuclear installation, or

(b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Company, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Company to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Company shall be sole judge of what constitutes:

(a) substantial quantities, and

(b) the extent of installation, plant or site.

Note.--Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a) all policies issued by the Company on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

(b) with respect to any risk located in Canada policies issued by the Company on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

NUCLEAR INCIDENT EXCLUSION CLAUSE-PHYSICAL DAMAGE AND LIABILITY
(BOILER AND MACHINERY POLICIES)-REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance contracts of the Company (new, renewal and replacement) shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

(a)  from an Accident caused directly or
     indirectly by nuclear reaction,
     nuclear radiation or radioactive
     contamination, all whether controlled
     or uncontrolled; or

(b)  from nuclear reaction, nuclear
     radiation or radioactive contamination,
     all whether controlled or uncontrolled,
     caused directly or indirectly by
     contributed to or aggravated by an
     Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a)  all policies issued by the Company
     to become effective on or before 30th
     April, 1958, shall be free from the
     application of the other provisions
     of this Clause until expiry date or
     30th, April, 1961, whichever first
     occurs, whereupon all the provisions
     of this Clause shall apply,

(b)  with respect to any risk located in
     Canada policies issued by the Company
     to become effective on or before 31st
     December, 1958, shall be free from the
     application of the other provisions of
     this Clause until expiry date or 31st
     December, 1960, whichever first occurs,
     whereupon all the provisions of this
     clause shall apply.

BDC 00033

THIS AGREEMENT IS IN RENEWAL OF AGREEMENT made between the following Companies:-

The Dominion Insurance Company Limited.
The London and Edinburgh Insurance Company Limited.
Anglo Saxon Insurance Association Limited.
British Merchants' Insurance Company Limited.
Vanguard Insurance Company Limited.

Underwritten for by C.F. & A.U. Limited, of the one part and the following Companies:-

Citizens Casualty Company of New York,
American Home Assurance Company,

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective May 1, 1958, No. (3) Nuclear Incident Exclusion Clause-Physical Damage and Liability (Boiler and Machinery Policies)-Reinsurance which was incorporated into and formed part of this Agreement under Addendum No. 5. is cancelled and the following clause substituted in lieu thereof.

"NUCLEAR INCIDENT EXCLUSION CLAUSE-PHYSICAL DAMAGE AND LIABILITY
(BOILER AND MACHINERY POLICIES)-REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Company shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

    (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

    (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Company effective on or before 30th April, 1958, shall be free from application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Company effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961 whichever first

BDC 00034

All other terms and conditions remaining unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
for its 23% participation.
The London and Edinburgh Insurance Company Limited
for its 23% participation.
Anglo Saxon Insurance Association Limited
for its 23% participation.
British Merchants' Insurance Company Limited
for its 23% participation.
Vanguard Insurance Company Limited.
for its 8% participation.

Signed this     18th     day of  September        1958 on behalf of the
Ceding Company.

Per C.F. & A.U. LIMITED

Accident Underwriter

Citizens Casualty Company of New York
for its 50% participation.
American Home Assurance Company
for its 50% participation.

Signed this     5th     day of  September  1958 on behalf of the
Reinsurers.

Per AGENCY MANAGERS LIMITED

Vice President

BDC 00035

- 2 -

ADDENDUM NO. 7 TO MEMORANDUM OF AGREEMENT made between the
following Companies:-

    The Dominion Insurance Company Limited
    The London & Edinburgh Insurance Company Limited
    Anglo Saxon Insurance Association Limited
    The British Merchants' Insurance Company Limited
    Vanguard Insurance Company Limited

Underwritten for by C.F. & A.U. Limited of the one part and the
following Companies:-

    Citizens Casualty Company of New York
    American Home Assurance Company

Underwritten for by Agency Managers Limited on the other part.

        It is hereby mutually understood and agreed that:-

(1)  Addendum No. 4 is cancelled in its entirety and that
     effective the 1st day of April, 1958 the Ceding Company
     participating in this agreement is amended to read as
     follows:-

     The Dominion Insurance Company Limited
     The London & Edinburgh Insurance Company Limited
     Anglo Saxon Insurance Association Limited
     The British Merchants' Insurance Company Limited

     each for its own proportion and not one for another

(2)  In respect of Addendum No. 5 and 6 the Ceding Company is
     as defined in (1) above.

        All other terms and conditions remain unchanged.

    Signed for and on behalf of the Companies specified below each
for its own proportion and not one for another.

    The Dominion Insurance Company Limited
       for its 25% participation
    The London & Edinburgh Insurance Company Limited
       for its 25% participation
    Anglo Saxon Insurance Association Limited
       for its 25% participation
    The British Merchants' Insurance Company Limited
       for its 25% participation

    Signed this  18th  day of November, 1960 on behalf of the
Ceding Company.

                Per C.F. & A.U. Limited

                Accident Underwriter

    Citizens Casualty Company of New York
       For its 50% participation
    American Home Assurance Company
       For its 50% participation

    Signed this  7th  day of December, 1960 on behalf of the
Reinsurers.

                Per AGENCY MANAGERS LIMITED

                Manager.

**BDC 00036**

ADDENDUM NO. 8  TO MEMORANDUM OF AGREEMENT made between the following Companies:-

> The Dominion Insurance Company Limited
> The London & Edinburgh Insurance Company Limited
> The British Merchants' Insurance Company Limited
> Anglo Saxon Insurance Association Limited

Underwritten for by C.F. & A.U. Limited, of the one part and the following Companies:-

> Citizens Casualty Company of New York
> American Home Assurance Company

Underwritten for by Agency Managers Limited of the other part.


It is hereby mutually understood and agreed that effective the 1st day of January 1960 the Reinsurers are as follows:-

> Citizens Casualty Company of New York
> American Home Assurance Company
> The Constitution Insurance Corporation of New York

each for its own proportion and not one for another.

All other terms and conditions remain unchanged.



Signed for and on behalf of the Companies specified below each for its own proportion and not one for another

> The Dominion Insurance Company Limited
>     for its 25% participation
> The London & Edinburgh Insurance Company Limited
>     for its 25% participation
> The British Merchants' Insurance Company Limited
>     for its 25% participation
> Anglo Saxon Insurance Association Limited
>     for its 25% participation

Signed this  18th day of November,   1960 on behalf of the Ceding Company.

Per C.F. & A.U. Limited

Accident Underwriter


> Citizens Casualty Company of New York
>     for its 6/11ths participation
> American Home Assurance Company
>     for its 3/11ths participation
> Constitution Insurance Corporation of New York
>     for its 2/11ths participation

Signed this 7th day of December 1960 on behalf of the Reinsurers.

Per AGENCY MANAGERS LIMITED

Manager.

**BDC 00037**

ADDENDUM NO. 9 TO MEMORANDUM OF AGREEMENT made between the
following Companies:-

The Dominion Insurance Company Limited
The London & Edinburgh Insurance Company Limited
The British Merchants' Insurance Company Limited
Anglo Saxon Insurance Association Limited

Underwritten for by C.F. & A.U. Limited, of the one part and the
following Companies:-

Citizens Casualty Company of New York
American Home Insurance Company
The Constitution Insurance Corporation of New York

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective
the 1st day of January 1962 the Reinsurer is as follows:-

Citizens Casualty Company of New York

All other terms and conditions remain unchanged.


Signed for and on behalf of the Companies specified below each
for its own proportion and not one for another

The Dominion Insurance Company Limited
    for its 25% participation
The London & Edinburgh Insurance Company Limited
    for its 25% participation
The British Merchants' Insurance Company Limited
    for its 25% participation
Anglo Saxon Insurance Association Limited
    for its 25% participation

Signed this        day of        1962 on behalf of the
Ceding Company.

                    Per C.F. & A.U. Limited

                    _W. Brown_

                    Accident Underwriter


Citizens Casualty Company of New York

Signed this  17th  day of  april  1962 on behalf of the
Reinsurer.

                    Per AGENCY MANAGERS LIMITED

                    _H.K. Jones._

                    Manager


**BDC 00038**

THIS IS THE SECOND ADDENDUM TO MEMORANDUM OF AGREEMENT made between the following Companies:

The Dominion Insurance Company Limited
London & Edinburgh Insurance Company Limited
British Merchants' Insurance Company Limited
Anglo Saxon Insurance Association Limited

Underwritten for by C.F. & A.U. Limited of the one part and the following Company:-

Citizens Casualty Company of New York

Underwritten for by Agency Managers Limited of the other part.

It is hereby mutually understood and agreed that effective from the 1st day of January 1966 the Reinsurers are as follows:-

The Indemnity Marine Assurance Company Limited
Citizens Casualty Company of New York
Skandinavia Insurance Company Limited
Nationwide Mutual Insurance Company
Great American Insurance Company
Monarch Insurance Company of Ohio

each for its own proportion and not one for another.

All other terms and conditions remain unchanged.

Signed for and on behalf of the Companies specified below each for its own proportion and not one for another.

The Dominion Insurance Company Limited
    for its 25% participation
London & Edinburgh Insurance Company Limited
    for its 25% participation
British Merchants' Insurance Company Limited
    for its 25% participation
Anglo Saxon Insurance Association Limited
    for its 25% participation

Signed this 4th day of January 1966 on behalf of the Ceding Company.

Per C.F. & A.U. Limited.

Accident Underwriter.

The Indemnity Marine Assurance Company Limited
    for its 27½% participation
Citizens Casualty Company of New York
    for its 12½% participation
Skandinavia Insurance Company Limited
    for its 5% participation
Nationwide Mutual Insurance Company
    for its 22½% participation
Great American Insurance Company
    for its 20% participation
Monarch Insurance Company of Ohio
    for its 12½% participation

**BDC 00039**

Signed this 20 day of January 1966 on behalf of the Reinsurers.

Per Agency Managers Limited

President.

ADDENDUM NO.11 TO MEMORANDUM OF AGREEMENT made between
the following Companies:-

        The Dominion Insurance Company Limited
        London & Edinburgh Insurance Company Limited
        British Merchants' Insurance Company Limited
        Anglo Saxon Insurance Association Limited

Underwritten for by C.F. & A.U. LIMITED of the one part and the following
Companies:-

        The Indemnity Marine Assurance Company Limited
        Citizens Casualty Company of New York
        Skandinavia Insurance Company Limited
        Nationwide Mutual Insurance Company
        Great American Insurance Company
        Monarch Insurance Company of Ohio

Underwritten for by AGENCY MANAGERS LIMITED of the other part.

It is hereby mutually understood and agreed that effective from the 1st day of
January 1967 the Reinsurers are as follows:-

        The Indemnity Marine Assurance Company Limited
        Nationwide Mutual Insurance Company
        Constellation Insurance Company
        Citizens Casualty Company of New York
        Monarch Insurance Company of Ohio

each for its own proportion and not one for another.

All other terms and conditions remain unchanged.

Signed for and on behalf of the Companies specified below each for its own
proportion and not one for another.

        The Dominion Insurance Company Limited
           for its 25% participation
        London & Edinburgh Insurance Company Limited
           for its 25% participation
        British Merchants' Insurance Company Limited
           for its 25% participation
        Anglo Saxon Insurance Association Limited
           for its 25% participation

Signed this 14th day of January 1967 on behalf of the Ceding Company.

        per C.F. & A.U. LIMITED

        Accident Underwriter.

        The Indemnity Marine Assurance Company Limited
           for its 27½% participation
        Nationwide Mutual Insurance Company
           for its 22½% participation
         Constellation Insurance Company
           for its 20% participation
         Citizens Casualty Company of New York
           for its 17½% participation
         Monarch Insurance Company of Ohio
           for its 12½% participation

**BDC 00040**

Signed this 25 day of Jan. 1967 on behalf of the Reinsurers.

        per AGENCY MANAGERS LIMITED.

CASUALTY REINSURANCE POOLING AGREEMENT

BDC 01424

THIS AGREEMENT entered into as of the 1st day of October,
1951 between AGENCY MANAGERS LIMITED (hereinafter called
"Managers") and certain Insurance Companies for whom they may under-
write (all Companies being hereinafter included in the word "Companies").

W I T N E S S E T H:

WHEREAS, each of the Companies is desirous of entering into
a pooling agreement for the distribution of its casualty reinsurance business
written through the Managers (excluding, however, specific risks when
agreed upon by the Companies) hereinafter called "such casualty reinsurance
business", and the parties hereto are desirous of stating their mutual
rights and obligations.

NOW, THEREFORE, it is mutually understood and agreed as
follows:

FIRST:    Each of the Companies does hereby agree to cede to
the others and the others hereby agree to accept, each in its respective pro-
portion, any and all such casualty reinsurance business, such cession and
acceptance to be made to the end that each of the Companies shall participate
in all such casualty reinsurance business to the extent and in the percentage
set forth in the following paragraph.

SECOND:   The participation in the group by each of the Com-
panies for such casualty reinsurance business and for which each is bound
hereunder with respect to any one casualty reinsurance policy contract,
and/or reinsurance treaty is as follows:

Citizens Casualty Company of New York          50%

Northern Assurance Company Limited          50%
        (United States Branch)

THIRD:    Such casualty reinsurance business ceded under this Agreement: shall be reported by the Managers by quarterly accounts in the form set forth in the individual Company and the Managers' agreements.

The Managers are specifically authorized to effect and maintain reinsurance for the benefit of the Companies and to retain the unearned portion of all premiums on such reinsurance for the purpose of maintaining unearned premium reserves as required by the Insurance Departments of the various States.

FOURTH:    It is further agreed that in the event of the insolvency of any of the Companies, the reinsurance provided by this Agreement shall be payable by the solvent Companies directly to the insolvent company or to its liquidator, receiver or statutory successor on the basis of the liability of the insolvent company under the contract or contracts reinsured without diminution because of the insolvency of the insolvent company, provided, however, that as a condition precedent to the liability of the solvent Companies to pay such reinsurance in the event of the insolvency of another, the liquidator or receiver or statutory successor of the insolvent company shall give written notice of the pendency of a claim against the insolvent company on the policy reinsured within a reasonable time after such claim is filed in the insolvency proceeding.  During the pendency of such claim, the solvent Companies may investigate such claim and interpose, at

- 2 -

BDC 01426

their own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which they may deem available to the insolvent company, its liquidator or receiver or statutory successor. The expense thus incurred by the solvent Companies shall be chargeable, subject to court approval, against the insolvent company as part of the expense of liquidation to the extent of such proportionate share of the benefit as shall accrue to the insolvent company solely as a result of the defense undertaken by the solvent Companies.

FIFTH:    Any of the Companies may terminate this Agreement by giving at least six months' written notice of termination to the others. Said notice shall be given not later than the 30th day of June of any one year and such termination shall take effect on the 31st day of December of any one year, and provided further that no termination shall affect such casualty reinsurance business then in force.

Notices may be given at the addresses stated herein and may be by ordinary mail.

SIXTH:    Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration under the rules then obtaining of the American Arbitration Association and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction. Arbitration shall take place in the City of New York.

The Companies hereby authorize their Managers to make such amendments to this Agreement on their behalf as shall become necessary from time to time.

- 3 -

BDC 01427

IN WITNESS WHEREOF, the parties hereto have set their

hands and seals, the day and year first above written.

AGENCY MANAGERS LIMITED

Number 102 Maiden Lane
New York 5, New York

BY _____
                Vice President

CITIZENS CASUALTY COMPANY
OF NEW YORK

Number 116 John Street
New York 38, New York

BY _____

THE NORTHERN ASSURANCE
COMPANY LIMITED

Number 135 William Street
New York 38, New York

BY _____

BDC 01428

ADDENDUM NO. 1

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1. Effective as of midnight, the 30th day of June 1955, the AMERICAN HOME ASSURANCE COMPANY of 111 William Street, New York 38, New York became a participating company for casualty reinsurance.

2. The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 30th day of June 1955, shall be as set forth below:

Citizens Casualty Company of New York        33-1/3%

The Northern Assurance Company, Ltd.        33-1/3%

American Home Assurance Company        33-1/3%

It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 1 is attached and forms a part thereof, has been lodged with the American Home Assurance Company and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the AMERICAN HOME ASSURANCE COMPANY have caused these presents to be executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

By _____

AMERICAN HOME ASSURANCE COMPANY

_____
SECRETARY - COMPTROLLER

BDC 01429

ADDENDUM NO. 2

Attached to and forming a part of Agreement between AGENCY
MANAGERS LIMITED and certain insurance companies dated the 1st day
of October, 1951.

It is hereby noted and agreed that the address of the Citizens
Casualty Company of New York and the Northern Assurance Company
Ltd., are amended to read as follows:

CITIZENS CASUALTY COMPANY OF NEW YORK
33 Maiden Lane, New York 38, New York

THE NORTHERN ASSURANCE COMPANY, LTD.
150 William Street, New York 38, New York

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the parties hereto have set their
hands and seals, the day and year first above written.

AGENCY MANAGERS LIMITED

BY _____
Vice President

**BDC 01430**

<u>ADDENDUM NO. 3</u>

      Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1.     Effective as of midnight, the 31st day of December, 1950 the SKANDINAVIA INSURANCE COMPANY, LTD., the CONSTITUTION INSURANCE CORPORATION OF NEW YORK and the UNITY FIRE AND GENERAL INSURANCE COMPANY became participating companies for casualty reinsurance.

2.     The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 31st day of December, 1959 shall be as set forth below:

| | |
|---|---|
| The Northern Assurance Company, Ltd. | 30% |
| Citizens Casualty Company of New York | 30% |
| American Home Assurance Company | 15% |
| Skandinavia Insurance Company, Ltd. | 10% |
| The Constitution Insurance Corporation of New York | 10% |
| The Unity Fire and General Insurance Company | 5% |

     It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 3 is attached and forms a part thereof, has been lodged with the Skandinavia Insurance Company Ltd., the Constitution Insurance Corporation of New York, and the Unity Fire and General Insurance Company and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

     All other terms and conditions remain unaltered.

     IN WITNESS WHEREOF, the Managers and the SKANDINAVIA INSURANCE COMPANY LTD., the CONSTITUTION INSURANCE CORPORATION OF NEW YORK and the UNITY FIRE AND GENERAL INSURANCE COMPANY have caused these presents to be executed in

BDC 01431

duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

Number 102 Maiden Lane
New York 5, New York

BY _____
              Vice President

SKANDINAVIA INSURANCE COMPANY
LIMITED, U. S. BRANCH
REINSURERS UNDERWRITING CORPORATION,
U. S. MANAGER

_____
Secretary
Number 80 William Street
New York 38, New York

BY _____ Vice President

THE CONSTITUTION INSURANCE
CORPORATION OF NEW YORK

Number 90 John Street
New York 38, New York

BY _____

THE UNITY FIRE AND GENERAL
INSURANCE COMPANY

Number 116 John Street
New York 38, New York

BY _____
   VICE PRESIDENT

BDC 01432

## ADDENDUM NO. 4

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1.  Effective as of midnight, the 31st day of December 1960, the COSMOPOLITAN MUTUAL INSURANCE COMPANY became a participating company and the UNITY FIRE AND GENERAL INSURANCE COMPANY retired as a participating company for casualty reinsurance.

2.  The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 31st day of December 1960, shall be as set forth below:

| | |
|---|---|
| The Northern Assurance Company, Ltd. | 50% |
| Citizens Casualty Company of New York | 50% |
| American Home Assurance Company | 15% |
| Skandinavia Insurance Company, Ltd. | 10% |
| The Constitution Insurance Corporation of New York | 10% |
| Cosmopolitan Mutual Insurance Company | 5% |

It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 4 is attached and forms a part thereof, has been lodged with the Cosmopolitan Mutual Insurance Company and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the COSMOPOLITAN MUTUAL INSURANCE COMPANY have caused these presents to be executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

By: _____
Vice President

COSMOPOLITAN MUTUAL INSURANCE COMPANY

_____
Secretary

Number 10 Columbus Circle
New York 19, New York

**BDC 01433**

ADDENDUM NO. 5

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

It is hereby noted and agreed that the American Home Assurance Company have given notice to the Managers to terminate the Management Agreement dated June 15, 1955 at September 30, 1961 or a date to be mutually agreed upon.

In consequence of the foregoing it is hereby specifically agreed, in accordance with the authority provided by the second division of the Sixth Paragraph hereof, that the American Home Assurance Company shall be deemed to have given the due notice provided for in the Fifth Paragraph hereof, and the Managers hereby agree that the effective date of termination of this Agreement as respects American Home Assurance Company, shall be September 30, 1961.

This amendment may be revised by mutual agreement to be made in writing by the parties hereto.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the AMERICAN HOME ASSURANCE COMPANY have caused these presents to be executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

By _____
          Vice President

AMERICAN HOME ASSURANCE
COMPANY

_____
SECRETARY - COMPTROLLER

**BDC 01434**

ADDENDUM NO. 6

Attached to and forming a part of Agreement between ACTNCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1. Effective as of midnight, the 31st day of December, 1961, THE INDEMNITY MARINE ASSURANCE COMPANY, LTD., and the NATIONWIDE MUTUAL INSURANCE COMPANY became participating companies for casualty reinsurance.

2. Effective as of midnight, the 31st day of December, 1961, the AMERICAN HOME ASSURANCE COMPANY and THE NORTHERN ASSURANCE COMPANY LIMITED retired as participating companies for casualty reinsurance.

3. The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 31st day of December, 1961 shall be as set forth below: -

| | |
|---|---|
| The Indemnity Marine Assurance Company, Ltd. | 30% |
| Citizens Casualty Company of New York | 25% |
| Cosmopolitan Mutual Insurance Company | 15% |
| The Constitution Insurance Corporation of New York | 10% |
| Skandinavia Insurance Company, Ltd. | 10% |
| Nationwide Mutual Insurance Company | 10% |

It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 6 is attached and forms a part thereof, has been lodged with THE INDEMNITY MARINE ASSURANCE COMPANY, LTD., and the NATIONWIDE MUTUAL INSURANCE COMPANY and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and THE INDEMNITY MARINE ASSURANCE COMPANY, LTD., and the NATIONWIDE MUTUAL INSURANCE COMPANY have caused these presents to be executed in

**BDC 01435**

duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

BY [signature] Jan. 18, 1963

Number 102 Maiden Lane
New York 5, New York

THE INDEMNITY MARINE ASSURANCE
    COMPANY, LTD.
WM. E. McGEE & CO., INC.
UNITED STATES MANAGERS

BY [signature]
                    Treasurer.

Number 111 John Street
New York 38, New York

NATIONWIDE MUTUAL INSURANCE COMPANY

BY _____

Number 246 North High Street
Columbus 16, Ohio

**BDC 01436**

duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

BY _____    Jan 10, 1962

Number 192 Maiden Lane
New York 5, New York

THE INDEMNITY MARINE ASSURANCE
COMPANY, LTD.

BY _____

Number 111 John Street
New York 38, New York

NATIONWIDE MUTUAL INSURANCE COMPANY

BY _____
          Vice President and Secretary

Number 246 North High Street
Columbus 16, Ohio

**BDC 01437**

<u>ADDENDUM NO. 7</u>

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1. Effective as of midnight, the 31st day of December, 1962, the GREAT AMERICAN INSURANCE COMPANY becomes a participating company for casualty reinsurance.

2. Effective as of midnight, the 31st day of December, 1962, THE CONSTITUTION INSURANCE CORPORATION OF NEW YORK retired as a participating company for casualty reinsurance.

3. The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 31st day of December, 1962 shall be as set forth below:-

| | |
|---|---|
| The Indemnity Marine Assurance Company Limited (U. S. Branch) | 27½% |
| Citizens Casualty Company of New York | 25 % |
| Great American Insurance Company | 20 % |
| Cosmopolitan Mutual Insurance Company | 12½% |
| Nationwide Mutual Insurance Company | 10 % |
| Skandinavia Insurance Company, Ltd. | 5 % |

It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 7 is attached and forms a part thereof, has been lodged with the GREAT AMERICAN INSURANCE COMPANY and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the GREAT AMERICAN INSURANCE COMPANY have caused these presents to be

-1-

BDC 01438

executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

BY

December 18. 1962

Number 102 Maiden Lane
New York 5, New York

GREAT AMERICAN INSURANCE COMPANY

BY

January r. 1963

Number 99 John Street
New York 3S, New York

-2-

BDC 01439

ADDENDUM NO. 3

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1.  Effective as of midnight, the 31st day of December, 1964, the COSMOPOLITAN MUTUAL INSURANCE COMPANY retired as a participating company for casualty reinsurance.

2.  Effective as of midnight, the 31st day of December, 1964, the participation of the NATIONWIDE MUTUAL INSURANCE COMPANY is increased from 10% to 22-1/2%.

3.  The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 31st day of December, 1964, shall be as set forth below: -

| | |
|---|---|
| The Indemnity Marine Assurance Company Limited (U. S. Branch) | 27- 1/2 % |
| Citizens Casualty Company of New York | 25- % |
| Great American Insurance Company | 20- % |
| Nationwide Mutual Insurance Company | 22- 1/2 % |
| Skandinavia Insurance Company, Ltd. | 5- % |

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the NATIONWIDE MUTUAL INSURANCE COMPANY have caused these presents to be executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

Executive Vice President

Number 102 Maiden Lane
New York, New York, 10005

NATIONWIDE MUTUAL INSURANCE COMPANY

Vice President - Special Markets

Number 246 North High Street
Columbus 16, Ohio

**BDC 01440**

<u>ADDENDUM NO. 9</u>

Attached to and forming a part of Agreement between AGENCY
MANAGERS LIMITED and certain insurance companies dated the 1st day
of October, 1951.

1. Effective as of midnight, the 31st day of December, 1965,
   the participation of the CITIZENS CASUALTY COMPANY OF
   NEW YORK is reduced from 25% to 12-1/2%.

2. The participation of the member companies with respect to
   casualty reinsurance business written or renewed on and
   after midnight, the 31st day of December, 1965, shall be
   as set forth below: -

   | | |
   |---|---|
   | The Indemnity Marine Assurance Company Limited (U. S. Branch) | 27-1/2 % |
   | Nationwide Mutual Insurance Company | 22-1/2 % |
   | Great American Insurance Company | 20- % |
   | Citizens Casualty Company of New York | 12-1/2 % |
   | The Monarch Insurance Company of Ohio | 12-1/2 % |
   | Skandinavia Insurance Company, Ltd. | 5- % |

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the CITIZENS CASUALTY
COMPANY OF NEW YORK have caused these presents to be executed in
duplicate by their Executive Officers.

                          AGENCY MANAGERS LIMITED

                          _____
                                    President

Number 102 Maiden Lane
New York, New York, 10005

                          CITIZENS CASUALTY COMPANY OF
                                  NEW YORK

                          _____
                                    President

Number 33 Maiden Lane
New York, New York, 10038

**BDC 01441**

ADDENDUM NO. 10

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1. Effective as of midnight, the 31st day of December, 1965, THE MONARCH INSURANCE COMPANY OF OHIO becomes a participating company for casualty reinsurance.

2. The participation of the member companies with respect to casualty reinsurance business written or renewed on and after midnight, the 31st day of December, 1965, shall be as set forth below: -

| | |
|---|---|
| The Indemnity Marine Assurance Company Limited (U. S. Branch) | 27- 1/2 % |
| Nationwide Mutual Insurance Company | 22- 1/2 % |
| Great American Insurance Company | 20- % |
| Citizens Casualty Company of New York | 12- 1/2 % |
| The Monarch Insurance Company of Ohio | 12- 1/2 % |
| Skandinavia Insurance Company, Ltd. | 5- % |

It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 10 is attached and forms a part thereof, has been lodged with THE MONARCH INSURANCE COMPANY OF OHIO and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and THE MONARCH INSURANCE COMPANY OF OHIO have caused these presents to be executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

Number 102 Maiden Lane
New York, New York, 10005          President

THE MONARCH INSURANCE
COMPANY OF OHIO

Number 19 Rector Street
New York, New York          PRESIDENT

**BDC 01442**

<u>ADDENDUM NO. 11</u>

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1. Effective as of midnight, the 31st day of December, 1965 all rights and obligations of the Great American Insurance Company as a participating member with respect to Casualty Reinsurance are hereby transferred to and assumed by the Constellation Insurance Company, 100 William Street, New York, New York 10038 with the same force and effect as if the Constellation Insurance Company had been a participating member as of midnight, the 31st day of December, 1962, the date upon which the Great American Insurance Company became a participating company for Casualty Reinsurance.

2. The participation of the member companies with respect to Casualty Reinsurance business written or renewed on and after midnight, the 31st day of December, 1965, shall be as set forth below:

| | |
|---|---|
| The Indemnity Marine Assurance Company Limited (U.S. Branch) | 27-1/2% |
| Nationwide Mutual Insurance Company | 22-1/2% |
| Constellation Insurance Company | 20% |
| Citizens Casualty Company of New York | 12-1/2% |
| The Monarch Insurance Company of Ohio | 12-1/2% |
| Skandinavia Insurance Company, Ltd. | 5% |

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers have caused these presents to be executed by their Executive Officer.

AGENCY MANAGERS LIMITED

by _[signature]_
President

Dated at New York, New York
April 14, 1966

**BDC 01443**

<u>ADDENDUM NO. 12</u>

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the 1st day of October, 1951.

1. It is noted and agreed that effective midnight, the 31st day of December, 1965, the Nationwide Mutual Insurance Company (hereinafter referred to in this Addendum as the "Nationwide"), a participating company herein for Casualty Reinsurance, has instructed the Managers, in accordance with the terms of paragraph 2 (e) of the Management Agreement between the Managers and "Nationwide", that the Managers shall not involve the "Nationwide" in any Pro Rata Treaties in respect of primary liability business written or renewed by the Managers on and after midnight, the 31st day of December, 1965.

2. In consequence of the foregoing, the participation of the remaining member companies with respect to Pro Rata Treaties covering primary liability business written or renewed on and after midnight, the 31st day of December, 1965 shall be as set forth below:

| | |
|---|---|
| The Indemnity Marine Assurance Company Limited (U.S. Branch) | 35.485% |
| Constellation Insurance Company | 25.806% |
| Citizens Casualty Company of New York | 16.129% |
| The Monarch Insurance Company of Ohio | 16.129% |
| Skandinavia Insurance Company, Ltd. | 6.451% |

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers have caused these presents to be executed by their Executive Officer.

AGENCY MANAGERS LIMITED

by _____
                              President

Dated at New York, New York
April 14, 1966

**BDC 01444**

ADDENDUM NO. 13

Attached to and forming a part of Agreement between AGENCY
MANAGERS LIMITED and certain insurance companies dated the first
day of October, 1951.

1. Effective as of midnight, the 31st day of December 1966 the
   Skandinavia Insurance Company, Limited retired as a
   participating company for casualty reinsurance.

2. Effective as of midnight, the 31st day of December 1966 the
   participation of the Citizens Casualty Company of New York
   is increased from 12-1/2% to 17-1/2%.

3. The participation of the member companies with respect to
   casualty reinsurance business written or renewed on or after
   midnight, 31st day of December 1966 shall be as set forth below:

   The Indemnity Marine Assurance Company
       Limited (U. S. Branch)
   Nationwide Mutual Insurance Company          27-1/2 %
   Constellation Insurance Company              22-1/2 %
   Citizens Casualty Company of New York        20-    %
   The Monarch Insurance Company of Ohio        17-1/2 %
                                                12-1/2 %

4. With respect to pro-rata treaties the participation of the member
   companies covering primary liability business written or renewed
   on or after midnight, the 31st day of December 1966 shall be as
   set forth below:

   The Indemnity Marine Assurance Company
       Limited (U. S. Branch)
   Constellation Insurance Company              35.485 %
   Citizens Casualty Company of New York        25.806 %
   The Monarch Insurance Company of Ohio        22.580 %
                                                16.129 %

5. It is noted and agreed that the participation of each member
   company is several and not joint and it is further understood
   and agreed that the amount of each member company's
   liability hereunder in respect to any loss or losses shall not
   be increased by reason of the withdrawal from the Pool of any
   other member company or the inability to collect from any
   other member company, whether such inability arises from
   insolvency of such other member company or otherwise, un-
   less provided by properly executed endorsements to this
   Pooling Agreement.

-1-

BDC 01445

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers have caused these presents to be executed by their Executive Officer.

AGENCY MANAGERS LIMITED

By _____

President

Dated at New York, N. Y.
January 27th, 1967

-2-

**BDC 01446**

## ADDENDUM NO. 14

Attached to and forming a part of Agreement between AGENCY MANAGERS LIMITED and certain insurance companies dated the first day of October, 1951.

1.  Effective as of midnight, the 31st day of December 1967 the CITIZENS CASUALTY COMPANY OF NEW YORK retired as a participating company for casualty reinsurance.

2.  Effective as of midnight, the 31st day of December 1967 the AMERICAN FIDELITY FIRE INSURANCE COMPANY becomes a participating company for casualty reinsurance.

3.  The participation of the member companies with respect to casualty reinsurance business written or renewed on or after midnight, 31st day of December 1967 shall be as set forth below:

| | |
|---|---|
| The Indemnity Marine Assurance Company Limited (U.S. Branch) | 27-1/2% |
| Nationwide Mutual Insurance Company | 22-1/2% |
| Constellation Reinsurance Company | 20- % |
| American Fidelity Fire Insurance Company | 17-1/2% |
| The Monarch Insurance Company of Ohio | 12-1/2% |

It is hereby noted and agreed that a copy of the original Agreement dated 1st October, 1951 to which this Addendum No. 14 is attached and forms a part thereof, has been lodged with the AMERICAN FIDELITY FIRE INSURANCE COMPANY and their execution of this Addendum signifies their acceptance of the terms and conditions of the original Agreement dated 1st October, 1951.

All other terms and conditions remain unaltered.

IN WITNESS WHEREOF, the Managers and the AMERICAN FIDELITY FIRE INSURANCE COMPANY have caused these presents to be executed in duplicate by their Executive Officers.

AGENCY MANAGERS LIMITED

President

AMERICAN FIDELITY FIRE INSURANCE COMPANY

Number 90 John Street
New York, New York 10038

Number 465 Old Country Road
Westbury, L.I., New York 11590

BDC 01447



STATE OF NEW YORK
## INSURANCE DEPARTMENT
## LIQUIDATION BUREAU
116 JOHN STREET, NEW YORK, N. Y. 10038

TELEPHONE: BEEKMAN 3-2200

Liq's. Claim No.  REINS-93

FEB 18 1972

Sir:-Madam:

Re: CITIZENS CASUALTY COMPANY OF NEW YORK

Receipt is hereby acknowledged of your Proof of Claim in the amount

of $.    Undetermined

When requesting any information regarding your claim please mention

the Liquidator's claim number given in the heading of this receipt.

Please notify the undersigned immediately of any change in your address.

Very truly yours.

ISAAC GOLDSTEIN.

Special Deputy Superintendent

By.

The Dominion Insurance Company Limited
c/o Davis & Davis
116 John Street, New York, N.Y. 10038
Tel: 962-1111  Room-710

Claim form received and
filed timely this 10th day
of February, 1972.

For Special Deputy Supt. of
Insurance

BDC 01377

State of New York—Insurance Department

OFFICE OF SPECIAL DEPUTY SUPERINTENDENT

116 John Street, New York, N. Y. 10038

In the matter of the CITIZENS CASUALTY COMPANY OF NEW YORK

Liq. Claim No.

Policy No.

Co. Claim No.

Clmt's Atty's
File #1286-16

Proof of Claim

Please follow the instructions on Page 3 hereof.   CONTINUED ON RIDER ATTACHED

Give in following space a concise statement of the facts constituting the claim

CONTINUED ON RIDER ATTACHED

Total Amount of Claim  Undetermin $

DAVIS & DAVIS
Attorney for claimant, if any, sign on line

116 John Street, Room 710
Street Number

New York,N.Y. 10038
City and State

Tel.# 962-1111

The Dominion Insurance Company Limited.
Claimant's Name - Please Print

William G. Marriott, director
Name of Officer of Corporation and Title

SOCIAL SECURITY NUMBER or Employer Identification Number

For notices and mailings:
Care of Davis & Davis
Street Number
116 John Street, Room 710, New York, NY 10038
City and State

The undersigned subscribes and affirms as true under the penalties of perjury as follows: that he has read the foregoing proof of claim and knows the contents thereof; that the said claim of  UNDETERMINED  DOLLARS ($                    ) against CITIZENS CASUALTY COMPANY OF NEW YORK is true of his own knowledge except as to matters therein stated to be alleged upon information and belief and as to those matters he believes it to be true; that no payment of or on account of the aforesaid claim has been made except as above stated; that there are no offsets or counterclaims thereto; that claimant is not a secured creditor or claimant and has no security except as above stated.

Dated:
February 10,1972

The Dominion Insurance Company Limited
Claimant sign on line

By. X ................................................  Director
Officer of Corporation
William G. Marriott

BDC 01378

RIDER

STATEMENT OF THE CLAIM OF THE DOMINION INSURANCE COMPANY LIMITED
( the "Claimant") AGAINST CITIZENS CASUALTY COMPANY OF NEW YORK
(IN LIQUIDATION)    ("Citizens")

1.  Claimant, an insurance company, ceded or retroceded reinsurances
    to Citizens Casualty Company of New York (herein referred to as
    "Citizens") or otherwise received, or was the intended payee or
    beneficiary of insurance or reinsurance contracts and agreements
    made by Citizens.  Citizens is and will hereafter become liable
    to pay to Claimant its share of the liability as insurer or
    reinsurer by reason thereof.

2.  (A)  Claimant reinsured Citizens on various treaties or contracts
    of insurance and reinsurance during their insurance relationships;
    by reason thereof and pursuant to the terms thereof and the practice
    and customs relating thereto, Claimant paid over to Citizens, from
    time to time, sums of money to be held by Citizens for the sole and
    specific purpose of paying the share (if any should ever become
    due) payable by Claimant under its said reinsurance agreements;
    such deposits were made in the form and with the intent on the
    part of both Citizens (as reassured) and Claimant (as reinsurer)
    that each separate and several sum so deposited by Claimant with
    Citizens, should be used solely to pay the Claimant's share of
    Claimant's liability (if any) on the said particular and
    separate claim or claim-reserve for which Claimant had deposited
    its said funds with Citizens.  Citizens accepted the custody of
    said deposits of funds upon the express agreement and on the
    conditions (a) that if the sum (for such separate claim or claim-
    reserve) so deposited by Claimant should prove to be in excess
                                page 1.

**BDC 01379**

RIDER CONTINUED

of the sum required to satisfy the Claimant's liability therefor, or (b) if such separate claim should be satisfied or such claim-reserve (within the amount protected by the reinsurances) be eliminated, that then, in either of such events, said Citizens agreed to refund and return to Claimant the said sums so deposited.

(B)  Claimant asks that Citizens render its accounting to Claimant for all monies so deposited with Citizens and to pay to Claimant the sums so held by Citizens; Claimant alleges that such sums so held are held by Citizens as a fiduciary and as trustee for the benefit of Claimant; that such funds are trust funds due Claimant and are not subject to the claims of any other creditors or subject to administration costs of the liquidation of said Citizens.

3.   By reason of insurance and reinsurance agreements between Claimant and Citizens, premiums, expenses, recoveries, losses and other sums are and may hereafter become due to Claimant.

4.   Reference is made to a claim filed by Agency Managers Ltd. in this liquidation proceeding in an unstated sum, with various exhibits in support thereof (herein referred to as the "Agency Managers Ltd. Claim").    Claimant hereby ratifies and adopts such Agency Managers Ltd. Claim to the same extent as if the

page 2.

BDC 01380

RIDER CONTINUED

same were herein fully repeated and realleged in full and
respectfully refers to the attachments in support thereof
as exhibits in support of portions or all of this Claim,
to the extent that such exhibits and other accounting
proofs shall be relevant thereto.

5.    (A)  This Claim is filed by Claimant as assignee of the rights
of C.F.&A.U. Ltd. and of Underwriting Management Agency Limited
(also known as "UMA") and the respective insurers represented
by each of said two corporations.  Said two corporations and
some or all of the insurance companies which said C.F.&A.U.Ltd.
and UMA represented as underwriting agents, were parties to
agreements with Citizens (or with Agency Managers Ltd. as
Citizens' underwriting manager) under the terms of which sums
of money for premiums, recoveries and credits are or may become
due to said parties.

(B)  By assignments dated 7th February,1972 said C.F.&A.U.Ltd.
and UMA as assignors, assigned to Claimant, as assignee, all
of the rights of assignors and the various insurance companies
for whom they acted as underwriting agents, as against Citizens.
Copies of such assignments are attached as exhibits hereto.

6.   Claimant has been unable to set forth the amount of each segment
of its claims herein because

     (a)  the nature of the claim is variable and not subject to
final and precise statement until the underlying liability

page 3.

BDC 01381

RIDER CONTINUED

reinsured has been finalized and made definite;

(b)  the amount of the claim stated in "2" above can only be determined from an examination of the books and records of Citizens; Claimant does not have such records and has demanded an accounting thereof; and

(c)  Claimant begs leave to amend the Claims herein and thereupon to set forth the sum due Claimant as soon as practicable after ascertainment thereof.

Respectfully submitted

The Dominion Insurance Company Limited


DAVIS & DAVIS
116 John Street (Room 710)
New York, N.Y. 10038
Tel:   962-1111


page 4.

BDC 01382



STATE OF NEW YORK
## INSURANCE DEPARTMENT
## LIQUIDATION BUREAU
116 JOHN STREET, NEW YORK, N. Y. 10038

TELEPHONE: BEEKMAN 3-2200

Liq's. Claim No.

Sir.-Madam:

Re: CITIZENS CASUALTY COMPANY OF NEW YORK

Receipt is hereby acknowledged of your Proof of Claim in the amount
of $.   Undetermined

When requesting any information regarding your claim please mention
the Liquidator's claim number given in the heading of this receipt.
Please notify the undersigned immediately of any change in your address.

Very truly yours,

ISAAC GOLDSTEIN,

Special Deputy Superintendent

By.

The Dominion Insurance Company Limited
c/o Davis & Davis
116 John Street, New York, N.Y. 10038
Tel:   962-1111

Claim form received and
filed timely this 10th day
of February, 1972.

For Special Deputy Supt. of
Insurance

BDC 01383

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------X

|  |  |  |
|---|---|---|
| In the Matter of | : | Index No. 40357/71 |
| the Liquidation of | : | PETITION |
| CITIZENS CASUALTY COMPANY OF NEW YORK | : |  |
|  | : |  |

-------------------------------------X

TO THE SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

      Petitioner, Edward J. Muhl, Superintendent of
Insurance of the State of New York as Liquidator of Citizens
Casualty Company of New York (the "Liquidator") by Richard S.
Karpin, Assistant Special Deputy Superintendent of Insurance
and Agent in this proceeding respectfully petitions this
Court, pursuant to Article 74 of the New York Insurance Law,
for an order allowing certain reinsurance claims and approving
the Liquidator's plan to expedite the closing of the estate of
Citizens Casualty Company of New York ("Citizens").

### Background

      1.  Citizens was incorporated under the laws of the
State of New York on October 11, 1928 and licensed as a stock
casualty insurer on October 24, 1928.

BDC 00774

2.  On June 17, 1971, Citizens was placed into liquidation by order of the Supreme Court of the State of New York (the "Liquidation Order") pursuant to which the Liquidator was authorized and directed to take possession of the property and liquidate the business and affairs of Citizens and was vested with title to all property, contracts and rights of action of Citizens.  The Liquidation Order is attached hereto as Exhibit A.

3.  Pursuant to the Liquidation Order, all outstanding policy and other insurance obligations and all other contract obligations of Citizens were terminated and all other liability thereunder ceased on June 25, 1971.  The Liquidation Order directed all persons having claims against Citizens to file such claims in the liquidation proceeding by February 14, 1972.

4.  Prior to its liquidation, Citizens along with other reinsurers, participated in a reinsurance pool managed first by Agency Managers, Ltd. ("AM") and then by Agency Managers, Inc. ("AMI") hereafter referred to as the AM Pool. The AM Pool wrote coverage reinsuring casualty risks originally insured by primary insurers known as "Cedent(s)."

5.  In some cases a Cedent contracted with only one AM Pool member who acted as the fronting company.  The AM Pool

-2-

BDC 00775

member then obtained reinsurance (generally known as "Inter Office Reinsurance") from the other members of the AM Pool pursuant to a written agreement with the AM Pool. In many instances Citizens was the fronting company initially writing the coverage of the Cedent. Hereinafter references to the "Reinsurers" shall mean the AM Pool members as reinsurers of Citizens and references to "Reinsurance Agreements" shall mean all reinsurance agreements between Citizens and the AM Pool and its members, including Inter Office Reinsurance. Balances due Citizens under Reinsurance Agreements are referred to herein as "Reinsurance Recoverables."

6. Various excess of loss reinsurers (the "Excess of Loss Reinsurers") entered into excess of loss agreements (the "Excess of Loss Agreements") whereby they reinsured the AM Pool members for the losses assumed by the AM Pool (the "Excess of Loss Recoverables").

7. A pool of insurers organized and managed by B.D. Cooke & Partners Ltd. of London, England and led by The Dominion Insurance Company Limited (said pool hereinafter being referred to as "B.D. Cooke Pool") reinsured the AM Pool members for a portion of their net losses after the application of the Excess of Loss Agreements. The Dominion Insurance Company, Ltd., a member of the B.D. Cooke Pool, was also a major Cedent to the AM Pool and is the largest creditor

-3-

BDC 00776

of Citizens. (Attached hereto as Exhibit B is a list of the companies which participated from time to time in the B.D. Cooke Pool.) The Dominion Insurance Company, Ltd. has assigned its proof of claim in the Citizen's liquidation proceeding to the B.D. Cooke Pool. Accordingly, all amounts that would be due and payable to the Dominion Insurance Company, Ltd. from Citizens shall be paid to the B.D. Cooke Pool.

8. AMI, as successor to AM, filed a Chapter 7 petition in Bankruptcy on August 30, 1988. Thereafter, various AM Pool members, including Citizens, retained Run-Off Management, Inc. ("ROM") to administer their participation in the AM Pool. As part of its contractual obligations, ROM is billing and collecting amounts due to Citizens pursuant to the Reinsurance Agreements and Excess of Loss Agreements.

9. The Liquidator filed a Report, Audit and Petition (the "Report") with this Court on October 7, 1977 which was approved and confirmed by order of Justice Sidney H. Asch (the "Confirming Order"). The Confirming Order attached hereto as Exhibit C, provides among other things, that

    (a)  all timely filed claims shall be deemed allowed in the amount of any settlement or compromise by the Liquidator; and

-4-

BDC 00777

(b)  all persons who had not filed claims in the liquidation proceeding on or before February 14, 1972 (the "Deferred Claims") are foreclosed from hereafter filing claims and sharing in the assets of Citizens except as late claims pursuant to Section 543(3) (now § 7432(c)) of the New York Insurance Law; and

(c)  after reserving funds for administrative expenses, taxes and contingencies, the Liquidator was authorized to declare and pay one or more pro-rata dividends on all claims allowed in the Citizens Liquidation proceeding, other than those covered by Articles 330, 333, 334 of the New York Insurance Law (now Article 76).

## Liquidator's Plan

10.  In order to expedite the closing of the Citizens liquidation proceeding the Liquidator recommends that:

(a)  the liability of Citizens to all timely filed reinsurance creditors, except the B.D. Cooke Pool, be fixed based on the amount of paid and outstanding losses as reflected on the Liquidator's books and records as of June 30, 1994;

-5-

BDC 00778

(b)   the reinsurance liability of Citizens to the B.D. Cooke Pool be fixed based on the B.D. Cooke Pool's paid losses as reflected on the books and records of the Liquidator as of June 30, 1994;

(c)   this Court allow the reinsurance claims listed on Exhibit D;

(d)   this Court approve the Liquidator's assignment to the B.D. Cooke Pool of the Reinsurance Agreements and Excess of Loss Agreements inclusive of Reinsurance Recoverables, Excess of Loss Recoverables and all other reinsurance due to Citizens in the manner provided for herein; and

(e)   this Court order that all other claims or potential claims against Citizens which were not received by the Liquidator and liquidated prior to June 30, 1994 be forever barred as against the Liquidator.

Each element of the Liquidator's plan will be discussed more fully below.

<u>Fixing Citizens' Reinsurance</u>
<u>Liabilities and Allowance of Claims</u>

11.  Four Thousand Seven Hundred and Eighty Nine (4,789) claims filed in the Citizens' liquidation proceeding

-6-

BDC 00779

have been disallowed, One Hundred and Seventy One (171) have been deemed deferred, One Thousand Three Hundred and Eighty Six (1,386) have previously been allowed and Fifty One (51) are recommended for allowance herein. While the Confirming Order provided that all timely filed claims would be deemed allowed in the amount of any settlement or compromise by the Liquidator, the Liquidator has sought this Court's review and approval of all allowances. The Fifty One (51) claims that have not yet been allowed are claims arising out of the reinsurance obligations of Citizens.

12. The final determination of Citizens reinsurance liabilities will not be complete for many years. The Liquidator is required to consider claims which were incurred prior to February 14, 1972, the last date for filing claims, but reported afterward as long as a timely proof of claim has been filed. A proof of claim for reinsurance covers paid, outstanding, and incurred but not reported losses ("IBNR"). Paid losses are those where company ceding business to Citizens has already made payment. Outstanding losses are reserves for losses which have been reported but not yet resolved and IBNR are projections for losses where the incident giving rise to the loss has occurred but has not yet been reported to the insurer. It could take years to resolve the outstanding and IBNR reinsurance liabilities of Citizens.

-7-

BDC 00780

13.   In the interest of closing the estate of Citizens and paying a dividend to creditors of at least 50% of the amount of all allowed claims, the Liquidator is recommending that the reinsurance obligations of Citizens (except to the B.D. Cooke Pool) be limited to the paid and outstanding losses reflected on the books and records of the Liquidator as of June 30, 1994.  The B.D. Cooke Pool's claim is being recommended for allowance in the amount of only the paid losses of B.D. Cooke Pool as of June 30, 1994.  No allowance shall be made to the B.D. Cooke Pool for its outstanding losses presently reflected on the books and records of the Liquidator as of June 30, 1994, in exchange for which the Liquidator shall assign to the B.D. Cooke Pool certain rights as set forth in paragraph 19 of this petition.

14.   Credit will not be given for reinsurance claims which are not reflected on the books and records of the Liquidator as of June 30, 1994.  The Liquidator does not believe that the inclusion of these claims would significantly alter any reinsurance creditor's share of Citizens' total assets since it is projected that each reinsurance creditor's losses will develop in proportion to the losses on the Liquidator's books and records as of June 30, 1994.  Thus, each creditors' proportion of Citizens total liability will not change substantially.

-8-

BDC 00781

15. The Liquidator believes that creditors will benefit if their reinsurance claims are fixed at this time because creditors will receive a distribution of at least 50% of the amount of their allowed claims, less any interim dividends already paid, as opposed to waiting years for a distribution. Creditors can invest their share of the distribution as they see fit. Additionally, if a distribution is made now, the Liquidator will not incur additional costs of administration, thus making more assets available to pay creditors.

16. The claims listed on Exhibit D represent the reinsurance liabilities of Citizens as reflected on the books and records of the Liquidator as of June 30, 1994 which have not previously been allowed. The Liquidator has reviewed these claims and determined that such claims are within the coverage of Citizens and that the claimants have filed timely proofs of claim. The Liquidator recommends that the claims listed on Exhibit D be allowed.

## Fixing Citizens' Non-Reinsurance Liabilities

17. In order to enable the Liquidator to make a distribution to creditors, all of Citizens' liabilities must be fixed. The Liquidator proposes that, as with Citizens' reinsurance liability, Citizens' liability to non-reinsurance creditors be fixed as of June 30, 1994. Therefore, any

-9-

BDC 00782

creditors' claim or potential claim which was not received by the Liquidator and liquidated by June 30, 1994 shall be forever barred as against the Liquidator.

### Assignment of Reinsurance and Excess of Loss Reinsurance

18. The Liquidator proposes that Citizens forego further collection of any Reinsurance Recoverables and Excess of Loss Recoverables to expedite distribution of Citizens' assets and termination of this proceeding. The Liquidator believes that the potential reinsurance collections will not substantially enhance the distribution to be paid to creditors because while the amount available for distribution may increase, so will the losses which will share in the distribution. Considering the administrative costs which will be incurred, the loss of the time value of money by creditors and the likelihood that creditors will not receive a greater percentage of their claims paid, the Liquidator recommends that the estate not be held open for the continued collection of reinsurance due Citizens.

19. The Liquidator recommends that:

(a) Effective upon entry of a final nonappealable order approving this Petition, all Reinsurance Recoverables

BDC 00783

and Excess of Loss Recoverables due the Liquidator according to his accounts as of June 30, 1994 and uncollected by ROM or the Liquidator by June 30, 1995 shall be assigned and transferred to the B.D. Cooke Pool.  Any Reinsurance Recoverables due, from Citizens as an AM Pool member, to Citizens, as a Cedent, shall not be assigned to the B.D. Cooke Pool.

(b)  Effective upon the entry of a final nonappealable order approving this Petition, the Reinsurance Agreements and the Excess of Loss Agreements shall be assigned and transferred to the B.D. Cooke Pool as from July 1, 1994, except to the extent the Liquidator has exercised any rights thereunder prior to the date of such order, together with all of the rights which the Liquidator would have had thereunder if the Citizens estate were not closed as proposed in this Petition.  Such order shall provide that the terms of such agreements shall remain in full force and effect, but with no further rights, obligations or liability on the part of the Liquidator.

(c)  Effective upon the entry of a final nonappealable order approving the Final Audit and Accounting of Citizens, all other reinsurance recoverables due Citizens not arising out of business of the AM Pool together with all reinsurance assets and rights of recovery under reinsurance agreements of Citizens (including, without limitation on the

-11-

BDC 00784

foregoing, those reinsurances which may not have been specifically identified as of the date of the order) shall be assigned and transferred to the B.D. Cooke Pool.

(d)  In consideration of the foregoing, the B.D. Cooke Pool has agreed to the Liquidator's valuation of its claims and agrees to forego its claim for outstanding losses which are Thirty Million Seven Hundred Twenty Two Thousand Seven Hundred Dollars ($30,722,700) as of June 30, 1994 as reflected on the Liquidator's books and records, it being understood that the B.D. Cooke Pool will assert its claims for outstanding and future losses, including, but not limited to incurred but not reported losses, against those assets, agreements and other rights being assigned to the B.D. Cooke Pool pursuant to the recommendations of the Liquidator set forth in paragraphs 19(a), (b) and (c) above.

(e)  The order approving the Petition shall also provide that the Supreme Court of the State of New York, New York County, shall have continuing jurisdiction over any disputes concerning the assignments and transfers described above and their effect, except said Court shall not resolve disputes solely involving computations of amounts due thereunder.  The Liquidator shall not be a necessary party in any such future proceeding.

-12-

BDC 00785

20. The Liquidator respectfully requests that the Court schedule a hearing on this matter in accordance with the accompanying Order Establishing Hearing on Liquidator's Plan to Expedite Closing of Citizens Casualty Company of New York ("Order Establishing Hearing") and approve the forms of notice attached as Exhibits 1 and 2 to the Order Establishing Hearing. Notice will be provided to all of Citizens' reinsurers, all creditors with previously allowed, deferred, or pending claims, those claimants listed on Exhibit D whose claims are recommended for allowance herein, and the shareholders of Citizens. Notice shall be provided to the last known address on the books and records of Citizens.

21. There has been no previous application for the relief requested herein.

WHEREFORE, the Liquidator respectfully requests that the Court issue the Order Establishing Hearing and that a hearing be scheduled sufficiently far in the future to permit the Liquidator to provide notice, and that, upon the hearing, the Court issue an order granting the relief sought in this Petition and such other relief as is appropriate.

Edward J. Muhl
Superintendent of Insurance of
the State of New York as
Liquidator of Citizens Casualty
Company of New York

By: _____
Richard S. Karpin
Assistant Special Deputy
Superintendent of Insurance

BDC 00786

STATE OF NEW YORK )
                  : ss.:
COUNTY OF NEW YORK)

RICHARD S. KARPIN, being duly sworn, deposes and says:

That he has read the foregoing Verified Petition and knows the contents thereof, and that the same is true to his own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true; that the reason this petition is verified by this deponent rather than by the Superintendent of Insurance is that deponent is the duly appointed Assistant Special Deputy Superintendent of Insurance to take possession of the property of and liquidate the business of Citizens Casualty Company of New York, and as such is acquainted with the facts alleged therein.

Deponent further says that the sources of his information and the grounds of his belief as to the matters stated in said Verified Petition to be alleged upon information and belief are records, books and papers of Citizens Casualty Company of New York in the possession of the Liquidator and communications made to deponent by employees and attorneys of the Liquidator.

RICHARD S. KARPIN

Sworn to before me this
11th day of October, 1996

Notary JEANETTE M. SENKO
Notary Public, State of New York
No. 31-4635568
Qualified in New York County
Commission Expires 9/30/97

1494K/JMS

−14−

BDC 00787

FROM NYS LIQUIDATION BUR.                    3. 6.1997  15:29                    P. 2

At IAS Part 4 of the Supreme
Court of the State of New York,
County of New York at the
Courthouse thereof, located at
60 Centre Street, on the 11th 6th
day of February, 1997
March

P R E S E N T :

HON. EDWARD GREENFIELD

J.S.C.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of

the Liquidation of

CITIZENS CASUALTY COMPANY
OF NEW YORK

CORRECTED
ORDER

Index No. 40357/71

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED**        **FILED**

FEB 1 8 1997        FEB 8 1997

COUNTY CLERK'S        COUNTY CLERK'S
OFFICE        OFFICE
NEW YORK        NEW YORK

Upon reading and filing the Petition (the "Petition") of Edward J. Muhl,

predecessor to Gregory V. Serio, Acting Superintendent of Insurance of the

State of New York as Liquidator of Citizens Casualty Company of New York

("Citizens") for approval of the plan to expedite the closing of Citizens (the

"Plan"); the Order of this Court dated December 10, 1996 directing the form and

method of notice of the Petition on all the shareholders of Citizens and creditors

with allowed, deferred and pending claims and all of the reinsurers of Citizens by

mailing to the last known address on the books and records of Citizens; the

affidavits of service of Elie Heffez, Jeffrey Naimoli, Robert C. O'Loughlin, Jr. and

BDC 00809

Burton Garrick, each sworn to December 20, 1996; the affidavit of Robyn A. Luchs In Further Support of the Petition for the Approval of the Liquidator's Plan to Expedite the Closing of Citizens sworn to February 10, 1997 (the "Affidavit in Further Support"); and the objection to the Plan filed by Stewart Smith East, Inc.; and upon due consideration:

IT IS ORDERED THAT:

1.    The Petition is granted;

2.    The Plan is approved;



3.    In accordance with the Plan:

a) the liability to Citizens of all reinsurance creditors except, B.D. Cooke and Partners, Ltd. of London (the "B.D. Cooke Pool"), is fixed based on the amount of paid and outstanding losses as reflected on the Liquidator's books and records as of June 30, 1994;

b) the liability of Citizens to the B.D. Cooke Pool is fixed based on the B.D. Cooke Pool's paid losses as reflected on the books and records of the Liquidator as of June 30, 1994;

c) the claims of the reinsurance creditors of Citizens are allowed as recommended in the Petition and as modified by the Affidavit in Further Support;

d) the Liquidator's assignment to the B.D. Cooke Pool of the reinsurance due to Citizens is approved in the manner described in the Petition;

BDC 00810

e)  all other claims or potential claims against Citizens which were

not received by the Liquidator and liquidated by June 30, 1994 are forever

barred as against the Liquidator.

4.  The Liquidator is authorized to take further actions which he,

in his discretion, deems advisable for the protection of creditors and for the

termination of the Citizens proceeding.

E N T E R

EDWARD J. GREENFIELD

OrdCitiz

**FILED**

FEB 1 8 1997

COUNTY CLERK'S OFFICE
NEW YORK

BDC 00811

52-54 LEADENHALL STREET LONDON EC3A 2AQ   TELEPHONE 071-481-8079   TELEX  8952677DOMINS G) DX 610 CITY   FAX 071-488-9079
on behalf of



# DOMINION

### INSURANCE COMPANY LIMITED

John Tafuro Esq
Director, Reinsurance Department
State of New York Insurance Department
Liquidation Bureau
123 Williams Street
New York
NEW YORK 10038-3889
USA


4th October 1993


Dear Mr Tafuro

**Citizens Casualty Company of New York**

I write further to the discussions held in your offices on 14th September regarding the possibility of vesting Citizens' reinsurance assets to the benefit of Dominion.

Dominion has large amounts of outstanding claims and IBNR reserves reinsured by Citizens and these would enable Citizens to trigger substantial reinsurance recoveries. The proposal to vest in Dominion the benefit of Citizens' reinsurance programme allows Dominion to acquiesce to the closure to the rest of the Citizens Estate. This is because Dominion will not then be subject to the prejudicial and discriminatory effect of an early closure of the Citizens Estate (which would have an unacceptably favourable effect on the London based Excess of Loss Reinsurers).

Overall, we appear to have developed an outline which will allow the Bureau to move substantially towards its goal of closing the Citizens Estate, without prejudicing Dominion's future claims. This can be achieved if Dominion is allowed to take Citizens' reinsurance assets in respect of claims which have not yet been paid. It is important that we both have a clear view of what we are trying to achieve and, as far as possible, how we will get there. Accordingly, this letter attempts to set down my understanding of the proposals we discussed.

The issues before us should be split into 4 segments:-

i)    Other Cedants and the effect of their claims on Citizens' Reinsurers.

ii)   Dominion losses which have been paid.

iii)  Dividend levels achievable by the Estate.

iv)   Dominion losses which are unpaid.

REGISTERED IN ENGLAND NO. 45179A REGISTERED OFFICE  52-54 LEADENHALL STREET LONDON EC3A 2AQ
A MEMBER OF THE FONDIARIA GROUP

**BDC 01152**

1.    Other Cedants

You will finalise the claims of all Cedants other than Dominion. We must achieve a situation, perhaps by an Order of the Court, that no further claims against the Estate can be made, other than by Dominion. (At this stage, I would remind you that Dominion is acting on behalf of a Pool, which ceded to Citizens from 1951 until 1960 in the names of the individual Pool Members. Thereafter, Dominion fronted for the others. It is my intention that the other Pool Members should be included with Dominion in this arrangement).

Finalisation of claims with other Cedants will be at a payment level commensurate with the level of dividend which the Estate will be able to sustain.

2.    Dominion Losses already paid

Dominion losses which have already been paid and accepted within the Citizens liquidated Estate, by virtue of their inclusion in ROM billings, will be admitted for dividend at the rate used for the Estate as a whole.

3.    Dividend Level achievable by the Estate

We examined the current status of the Estate and concluded that a dividend rate of 70+% could be achievable. The figures were as follows:-

| Liabilities | | $000 |
|---|---|---|
| Gross amounts – Dividend already paid | | 20,362 |
| Reinsurance Balances Payable | | 16,437 |
| Reinsurance Claims Reserve – Gross | | 21,258 |
| Claim Reserve – NY | | 260 |
| Expense Reserve – NY | | 172 |
| Other Liabilities | | 261 |
| | | ——— |
| | | 58,750 |

| Assets | | |
|---|---|---|
| Dividend already paid | | 10,181 |
| Free Cash & Bonds | | 10,418 |
| Other Cash & Funds | | 206 |
| Reinsurance Recoverable – Paid Losses | 12,803 | |
| – Outstanding Claims | 17,828 | |
| Less: Reserve for Uncollectable Reinsurance | (10,000) | 20,631 |
| Other Assets | | 13 |
| | | ——— |
| | | 41,449 |

There are a number of caveats and comments which need to be made in respect of the above:-

i)    If the non-recoverable reinsurance was increased to $15m, the dividend would reduce to 62%; demonstrating the importance of collecting from reinsurers.

- 2 -

BDC 01153

ii)  If $10m of assets were available to offset, and assuming $10m of uncollectable reinsurance, then the dividend would reduce from 70% to 64%.

iii)  The analysis shows a liability of $16,437k, being reinsurance balances payable. It was estimated that roughly 80% of this amount is due to Dominion.

iv)  The analysis shows a liability for outstanding reinsurance claims of $21,258k. We did not discuss the effect of any Dominion claims within this figure, nor the effect on reinsurance recoverable (most of which would be excess of loss on Dominion claims).

v)  The analysis shows an asset of $17,828k being reinsurance recoverable on outstanding claims. The amount included therein as recoverable from Excess of Loss Reinsurers may be problematic as it is my experience that it can be extremely difficult to persuade them to make payment in respect of outstanding claims. Perhaps the Bureau would have more success in this area?

4.  Dominion Losses which are unpaid

4.1  The twin keys to this overall proposal are:-

a)  In order that we can temporarily withdraw Dominion's outstanding loss reserves and IBNR from the Estate, thereby allowing settlement with current creditors at an enhanced dividend rate, we must be assured of future recoveries from Citizens' Reinsurers. It is absolutely crucial to the continuation of this proposal that the appropriate legal framework be established so that Reinsurers can be compelled to honour valid claims made against them.

b)  I have been informed that it is essential that the Bureau satisfies itself that Dominion would not obtain advantage, compared with other creditors, from this proposal.

With regard to point a) above, when we met I was accompanied by Andrew Davis, of Davis and Davis, who are Dominion's General Counsel in the USA. It was agreed that representatives of the Bureau would liaise with Mr Davis with regard to establishing the appropriate legal framework to facilitate this proposal.

With regard to point b), we have developed a computer system here in London which replicates Citizens' underwriting and reinsurance programmes. As you are aware, Dominion undertakes a policy by policy IBNR procedure in respect of Asbestos losses. Accordingly, it has been possible for us to calculate precise cessions to Citizens on our IBNR and, by running these through the new computer system, we have been able to model this data to obtain details of how much money would be recoverable from each Reinsurer, plus Citizens own retained amount. Similar data exists within ROM in respect of outstanding losses and Mr Buscieti of ROM has run an equivalent report for me. Thus, we have been able to gain an overall picture of future recoverable amounts from Citizens' Reinsurers. (By comparing our IBNR data with the outstanding loss information produced by ROM, we were also able to cross check the workings of our own clone system).

- 3 -

BDC 01154

4.2    The  data  output  from the systems has been consolidated to show the
total recoverable from reinsurers, as follows.

|  | $000 | $000 | See Note |
|---|---|---|---|
| Gross Outstanding/IBNR Losses |  | 43,985 | 1 |
| Recoverable from:- |  |  |  |
| Inter Office Reinsurers | 19,148 |  | 2 |
| Quota Share Reinsurers (Dominion) | 5,743 |  |  |
| Excess of Loss Reinsurers | 12,749 | 37,640 | 3 |
| Retention by Citizens |  | 6,345 |  |

Notes:-

4.2.1    This  number is made up of Outstanding Losses of $24,587k and
IBNR of $19,398k.

4.2.2    The analysis of Inter Office reinsurance is as follows:-

|  | $000 |
|---|---|
| American Home | 10 |
| Commercial Union | 8,080 |
| Constitution Re | 846 |
| Cosmopolitan | 2,672 |
| Great American | 2,449 |
| Nationwide | 2,435 |
| Nordisk | 1,928 |
|  | 19,148 |

You  should  note  that  Cosmopolitan  is  in  liquidation.    I have
reviewed  "Bests"  and  find  that  all  of  the American companies are
classified  as  "A"  or  better.    I  have  yet to satisfy myself of
Nordisk.

4.2.3    Excess of Loss reinsurers can be analysed as follows:-

|  |  | $000 |
|---|---|---|
| a | Lloyds | 10,759 |
| b | Acceptable Companies | 882 |
| c | Unknown Companies | 74 |
| d | Companies in run-off | 868 |
| e | Companies in Liquidation | 166 |
|  |  | 12,749 |

4.2.3.1    It  can  be seen that Lloyds represents 84% of the total
and  it  is  therefore crucial to this proposal that they
can be compelled to pay.

4.2.3.2    The  figure  for  Acceptable Companies of $882k includes
$808k  in respect of Dominion and other members of the B
D  Cooke  Pool.    The largest component of the remainder
is  Gerling,  from whom it can be extremely difficult to
extract money.

- 4 -

BDC 01155

4.2.3.3   The Unknown Companies component is small, but is being researched via Mr Buscioti.

4.2.3.4   Companies in run-off worry me intensely. We are looking here at a proposal under which we envisage making collections from reinsurers for two decades. Given their involvement in US Casualty reinsurance, and not just limited to this treaty, I expect most of them to fold, probably sooner rather than later. Additionally, it tends to be significantly more difficult to obtain payment from companies in run-off.

4.2.3.5   The company in liquidation is English and American Insurance Company. Until 1991, they were active players in the London Market. They went into run-off in 1992 and into liquidation in 1993 – amply illustrating my concerns over the companies who are in run-off.

4.3   At a headline level, it first looks as if a dividend of 85% is obtainable ($37,640k + $43,985k). This level is patently not achievable as it assumes full recoverability of all reinsurance, which cannot happen because of failed reinsurers.

There are a number of other issues which must also be taken into account when attempting to assess the effective dividend rate which Dominion could receive.

4.3.1   Currently the costs involved in administering the claims and collecting the reinsurance are met by the Estate. Under this proposal it is assumed that Dominion will bear those costs, thereby reducing the effective recovery. I have included a provision of $2m in the analysis below in respect of those costs.

4.3.2   Creditors obtaining dividend receive their money now. Under this proposal we will receive settlements from reinsurers over an extended period. It is appropriate to recognise the time value of money, and a discount factor of 20% has been applied to future recoveries (recognising the fact that although short term interest rates are low, yields in the medium term range are 5+%).

4.3.3   Returning to recoverability from reinsurers, it must be recognised that they are becoming extremely proficient at finding reasons not to pay claims. At a minimum this results in cost and delay in resolving problems; often collections have to be compromised (discounted) to achieve a settlement.

Given that the greatest part of reinsurance is collectable from Lloyds, their specific situation must also be considered. They are progressively moving towards centralised handling of old US Casualty claims, first by setting up the Specialist Claims Unit and later by establishing a reinsurer (NewCo) to reinsure these "old year problems". One of the aims of the Specialist Claims Unit is to achieve "more economical" settlements on old year

BDC 01156

claims.  This can only imply that they hope to become more proficient in finding ways of reducing the amount they have to pay out.

This factor, allied to the anticipated problems from reinsurers in run-off, indicates that we should reduce the expected income from reinsurers.  Accordingly, in the analysis below, $5m has been deducted from the expected value of reinsurance recoverable.

4.4    The value of the future reinsurance recoveries, net of the elements discussed above, is as follows:-

$millions
Gross Losses                                                    43.9

| Recoverable from Reinsurers: | | | |
|---|---|---|---|
| Inter office | | 19.1 | |
| Excess of Loss | | 12.8 | |
| | | 31.9 | |
| Less: Liquidated Reinsurers | | | |
| Cosmopolitan | 2.7 | | |
| English & American | .2 | (2.9) | |
| | | 29.0 | |
| Uncertain Recoveries | | | |
| Run-off, disputes etc) | | (5.0) | |
| | | 24.0 | |
| Time Value of Money | | (4.8) | |
| | | 19.2 | |
| Expenses | | (2.0) | |
| | | 17.2 | |
| Add: Recoverables from Quota Share | | | |
| (Dominion & Pool) | | 5.7 | |
| Total Recoverable | | 22.9 = | 52% |

(Note: The above ignores the application of offset, it is moot that the above could be presented:

Gross Losses                                                    43.9
Deduct Quota Share                                              5.7
                                                               38.2

Recoverable                                    17.2  =          45%)

It can be seen from the above that the value of vesting the reinsurance programme does not create a preferential situation in favour of Dominion.

BDC 01157

5.    <u>Conclusion</u>

We appear to be developing the proposal along lines which should be compatible with the aims of both parties. Ultimate success can only be achieved if we can develop a legal framework which will allow Dominion to enforce the contracts of reinsurance against Citizens' retrocessionnaires. Therefore, we are reliant on our respective legal advisers to carry this forward with us.

I hope to see you in December to discuss this further. Please note that I plan to be in New York during the week commencing Monday 6th December. We can meet on any day except the Wednesday.

Yours sincerely

*Steve McCann*

S I. McCann
Vice Chairman

- 7 -

BDC 01158



**Salvatore R. Curiale**
Superintendent of Insurance

**Kevin Foley**
Deputy Superintendent of Insurance

**STATE OF NEW YORK
INSURANCE DEPARTMENT
LIQUIDATION BUREAU**

123 William Street
New York, NY 10038-3889
(212) 341-6400
Facsimile (212) 964-7963

January 28, 1994

Mr. Stephen L. McCann
Vice Chairman
Dominion Insurance Company, Ltd.
BD Cooke & Partners, Ltd.
52-54 Leadenhall Street
London EC3A 2AQ

Re: Citizens Casualty of New York in Liquidation

Dear Mr. McCann:

We have reviewed your proposal concerning Citizens Casualty Company.

We feel it is a feasible solution to our problems in the Citizen Casualty estate. Except, it was determined that in order to finalize our plan, Dominion U.K. would have to take a dividend of approximately 25% on their claim of $9,801,337. If there are additional reinsurance recoverables the percentage could be higher. Of course, in addition to the 25% all future reinsurance recoverables on billings after 3/31/92 would be assigned over to Dominion U.K. as we had discussed.

Please advise us of your decision as soon as possible.

Very truly yours,

John Tafuro, Director
Reinsurance Department

JT:ab
c:   F. Bliss
     E. Heffez
     S. Gioe
7009R

**BDC 01141**



INSURANCE COMPANY LIMITED

John Tafuro Esq
Director, Reinsurance Department
State of New York Insurance Department
Liquidation Bureau
123 William Street
NEW YORK, NY 10038 - 3889
USA

**FILE COPY**

8 February, 1994

Dear Mr Tafuro

**Citizens Casualty Company of New York**

I write further to your letter of 28th January 1994, itself being a follow up to my letter of 4th October 1993.

During our meeting in New York on 14th September 1993, we reviewed the principal component figures making up the assets and liabilities of the Citizens Estate. At that stage, it appeared that a payout in the region of 70% could be achievable (as reiterated in paragraph 3 on page 2 of my letter). I believe neither of us felt that to be a likely achievement, with 50-60% being more likely.

Now you are suggesting 25%.

Presumably this means that you have changed your assumptions as, in the absence of any major inaccuracy in the figures reviewed by ourselves, I could not imagine that the outstanding liabilities could increase by the amounts necessary to reduce the payout to 25%. Given that your letter gives no indication as to the reason that you are now suggesting a 25% payout on Dominion's claims, I have inadequate information in my possession to make a decision.

I shall be in New York for most of week commencing Monday, 28th February. I believe it to be important that we meet to discuss this matter. I'll ring later in the week.

Yours sincerely

S L McCann
Vice Chairman

**BDC 01140**

REGISTERED IN ENGLAND NO. 451293 REGISTERED OFFICE 52-54 LEADENHALL STREET LONDON EC3A 2AQ
A MEMBER OF THE FONDIARIA GROUP



Salvatore R. Curiale
Superintendent of Insurance

Kevin Foley
Deputy Superintendent of Insurance

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
**LIQUIDATION BUREAU**

123 William Street
New York, NY 10038-3889
(212) 341-6400
Facsimile (212) 964-7963

February 18, 1994

Mr. Steve L. McCann
Vice Chairman
Dominion Insurance Company, Ltd.
52-54 Leadenhall Street
London EC3A 2AQ

        Re: Citizens Casualty Company of New York
            In Liquidation

Dear Mr. McCann:

After further review of the books and records of Citizens Casualty
it is our opinion that we will be able to go through with the plan
and pay you a dividend of 50%.

The differences from our January 21, 1994 letter and now include
additional reinsurance collections and further review of outstanding
liabilities.

If you are in agreement with our dividend payment I can continue
meeting with our legal staff to expedit this matter.

                    Very truly yours,

                    John Tafuro, Director
                    Reinsurance Department

JT:ab
c: Elie Hoffez
7J35R

**BDC 01139**

***END***



52-54 LEADENHALL STREET LONDON EC3A 2AQ  TELEPHONE 071 481 8979  TELEX 8954670/DOMINS G DX 616 CITY  FAX 071 488 4079
on behalf of

**DOMINION**
INSURANCE COMPANY LIMITED                    **FAXED**

John Tafuro Esq
Director, Reinsurance Department
State of New York, Insurance Department
Liquidation Bureau
123 William Street
New York, NY10038-3889
USA


24 February 1994


Dear Mr Tafuro

**Citizens Casualty Company of New York**

I write further to your letter of 18th February.

This appears to put our discussions firmly back on track. I am pleased that your review has shown that a dividend level of 50% is achievable. This is acceptable to us; with the only reservation being that the 50% dividend to ourselves is not significantly different to the dividend level to other creditors.

I look forward to meeting with you, as agreed, at 3.00 p.m. on Wednesday 2nd March. We did not discuss a venue; unless I hear to the contrary I will turn up at your offices for that meeting accompanied, as usual, by Andy Davis. Please note that I shall not be arriving in New York city until the evening of Monday 28th February. I can be contacted at ROM on Tuesday if you need to speak to me in advance of our meeting.

Yours sincerely


*Steve McCann*


S L McCann
Vice Chairman


**BDC 01138**

REGISTERED IN ENGLAND NO 451793 REGISTERED OFFICE 52-54 LEADENHALL STREET LONDON EC3A 2AQ
A MEMBER OF THE FONDIARIA GROUP

## ASSIGNMENT

FOR VALUE RECEIVED, Neil D. Levin, Superintendent of
Insurance of the State of New York, as Liquidator of Citizens
Casualty Company of New York, by Richard S. Karpin, Assistant
Special Deputy Superintendent of Insurance ("Assignor"), with
offices at 123 William Street, New York, New York 10038, hereby
assigns to B.D. Cooke & Partners Limited ("Assignee"), a
corporation organized and existing under the laws of the United
Kingdom, with offices at 2 Knoll Rise, Orpington, Kent BR6 ONX,
England, on behalf of the B.D. Cooke Pool, all of its right,
title and interest in and to the following:

(a) All Reinsurance Recoverables and Excess of Loss
Recoverables due Assignor according to his
accounts as of June 30, 1994 and uncollected by
Assignor or for Assignor's account by June 30,
1995; notwithstanding the foregoing, any
Reinsurance Recoverables due from Citizens as
an AM Pool member to Citizens as a Cedent are
not being assigned hereunder.

(b) All Reinsurance Agreements and Excess of Loss
Agreements running in favor of Citizens or the
Liquidator of Citizens effective as from July 1,
1994 except to the extent that Assignor has

BDC 00767

exercised any rights thereunder prior to February
11, 1997, together with all of the rights which
Assignor would have had under such agreements if
the Citizens estate were not closed pursuant to
Assignor's Plan for the closing of the Citizens'
liquidation.

(c)  Effective upon the entry of a final nonappealable
order approving the Final Audit and Accounting of
Citizens, all other reinsurance recoverables due
Citizens not arising out of the business of the
AM Pool, together with all reinsurance assets
and rights of recovery under reinsurance
agreements of Citizens (including, without
limitation on the foregoing, those reinsurances
which may not have been specifically identified
as of February 11, 1997).

Assignee is authorized to receive any and all payments,
property, debts, assets, contract rights and choses in action
derived from the subject matter of this assignment and belonging
to Assignor and to give acquittances and discharges therefore
and to execute, acknowledge and deliver all receipts and
releases customary, necessary or proper as assignee of Citizens
or in its own name.

-2-

BDC 00768

This assignment is authorized by and subject to the Order of the Honorable Edward Greenfield, Justice of the Supreme Court, New York County, dated February 11, 1997 (Index No. 40357/71) as corrected March 6, 1997. The meaning of the terms and provisions of this assignment shall have the same meaning as contained in the Petition and Plan set forth in the petition verified on October 11, 1996.

This assignment is and shall be without recourse to Assignor in any and all events.

Dated: New York, New York
       June 25, 1997

                    NEIL D. LEVIN, Superintendent of
                    Insurance of the State of New York,
                    as Liquidator of Citizens Casualty
                    Company of New York

                    By: _____
                              RICHARD S. KARPIN,

                    Assistant Special Deputy
                    Superintendent of Insurance

                        -3-

BDC 00769

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

On the 25th day of June, 1997, before me personally came RICHARD S. KARPIN, to me known, who, being by me duly sworn, did depose and say that he is the duly appointed Assistant Special Deputy Superintendent of Insurance to take possession of the property of and liquidate the business of Citizens Casualty Company of New York and that he signed his name to the within Assignment pursuant to authority granted him by the Acting Superintendent of Insurance.

_____
Notary Public

ANN M. KELLER
Notary Public, State of New York
No. 01KE5032892
Qualified in New York County
Commission Expires August 29, 1998

-4-

BDC 00770

## SERVICE AGREEMENT

AGREEMENT ("Agreement") made as of the 1st day of January, 1999, (the "Effective Date") by and between B.D. COOKE & PARTNERS, LTD., for and on behalf of companies for which it underwrites as set forth in Appendix A, a corporation organized and existing under the laws of England ("BDC") and ROM REINSURANCE MANAGEMENT CO., INC., a corporation organized and existing under the laws of the State of Delaware ("ROM").

WHEREAS, prior to its liquidation, CITIZENS CASUALTY COMPANY OF NEW YORK ("Citizens") was a participant in an insurance pool (the "AMI Pool") for which Agency Managers Inc. ("AMI") acted as underwriting manager; and

WHEREAS, ROM has been providing certain services with respect to the business of the AMI Pool on behalf of certain AMI Pool members (the ROM "Subscribing Members"); and

WHEREAS, BDC manages in England a pool of insurance companies as listed in Appendix A (the "BDC Pool") which has reinsured certain risks with Citizens and the AMI Pool; and

WHEREAS, by Order of the Hon. Edward Greenfield, dated February 11, 1997 and the Corrected Order dated March 6, 1997, In the Matter of

BDC 00751

<u>the Liquidation of Citizens Casualty Company of New York</u>, pending in the Supreme Court of the State of New York, New York County (Index No. 40357/71) the Liquidator of Citizens granted BDC certain rights against the reinsurers of Citizens pursuant to the Plan filed in said Court (the "Plan"); and

WHEREAS, BDC has for the past two (2) years retained the services of ROM and now wishes to continue to retain the services of ROM pursuant to this Agreement to make collections from the reinsurers of Citizens pursuant to the rights granted under the Plan.

NOW THEREFORE, it is hereby agreed by the parties hereto as follows:

<u>Article 1 - Services Provided</u>

Commencing as of the Effective Date of this Agreement, ROM agrees to perform the following services for BDC (all such services in this Article 1 collectively referred to as the "Project") in the manner provided below:

1.1    Provide substantially the same administrative services to BDC that it provides to its Subscribing Members, including without limiting the generality of the foregoing:

(a) Bill and use reasonable efforts to collect monies due from reinsurers.  If customary efforts are not

<div align="center">2</div>

**BDC 00752**

successful, the uncollected account at the election

of BDC will be turned over to BDC for collection, at the

sole expense of BDC, or pursued by ROM pursuant to

paragraph 1.1(b).

(b) Perform such additional work to the extent the

parties may mutually agree.

1.2    (a) ROM shall keep all proper books and records as are

necessary to reflect claims made against Citizens

and to reflect reinsurance billings and collections.

Such books and records shall remain the property

of ROM but will be open to inspection by BDC at

all reasonable times and ROM will furnish BDC copies

of any documents contained therein if requested by

BDC at the expense of BDC.

(b) In each year during the continuance of this Agreement

ROM shall prepare and provide to BDC quarterly

accounts in such manner and in such detail as is

provided to ROM's Subscribing Members, together

with a schedule of balances owed by individual

reinsurers and a statement of cash collected from

reinsurers during the period.

BDC 00753

Article 2 - Term

2.1    (a)  This Agreement shall continue from the Effective Date
             until cancelled or terminated as hereinafter provided.

       (b)  Either party to this Agreement shall have the right to
            cancel this Agreement by serving upon the other party
            written notice of its intention so to do, such notice
            making cancellation effective as at Midnight, Eastern
            Time, on the last day of the next  calendar quarter
            ending at least three (3) months after such notice.

       (c)  BDC and ROM each may immediately terminate this
            Agreement by serving written notice of termination
            if the other party is in default under the provisions
            of Article 3 hereof.

       (d)  BDC shall not be liable to ROM by reason of termination
            of this Agreement for damages on account of any loss
            of prospective profits, loss of other commitments or
            any adverse effect to the good will of ROM.

Article 3 - Default

3.1    Default under this Agreement shall include, but not
       be limited to, the occurrence of any one or more of
       the following:

       a)  the dissolution of ROM; an assignment for the

4

BDC 00754

benefit of creditors of ROM; a change in majority

ownership of ROM or a change of control of ROM;

the commencement of any case or proceeding

under any bankruptcy or insolvency laws for the

relief of or against ROM which, if filed against ROM,

is consented to or remains undischarged for thirty (30)

days; or the appointment and continuance for thirty (30)

days of a receiver, trustee or other similar person for

all or part of the property of ROM; or

b) the material failure of ROM or BDC to perform any

of the services or obligations provided for in this

Agreement.

Article 4 - Compensation

4.1    BDC shall pay to ROM as the fixed fees hereunder on a

semi-annual basis, a total of $100,000. in the first year of

this Agreement; the fixed fee for subsequent years shall

be increased by 5% of the previous year's fixed fee.

Additional fees for work performed pursuant to Article

1.1(b) shall be billed semi-annually.

Article 5 - Operating Expenses To Be Borne by ROM

5.1    ROM shall be responsible for all operating expenses

and overhead costs incurred in the performance of

5

**BDC 00755**

the Project including, but not limited to, rent, office

space, telephone, supplies, photocopying, facsimile

transmission charges and officers' and staff salaries

and benefits.

Article 6 - Independent Contractor Status

6.1      ROM shall act as an independent contractor and not

as an agent of BDC in providing services to BDC

hereunder.  ROM shall not be entitled to any

employee benefits, nor shall BDC withhold taxes,

FICA or any other employee deductions.  ROM shall

have no authority to act on behalf of BDC or bind

BDC in any way whatsoever other than the

authority specifically given to ROM by this Agreement.

Article 7 - Delivery of Notices

Any notices required by this Agreement shall be sufficiently given by mailing

the same by express mail or by faxing.  Until further notice, the following are

the addresses to be used for the notices hereunder.

Notice to ROM:
 ROM Reinsurance Management
 Co., Inc.
 90 William Street
 New York, NY 10038
 Attn: Mr. Robert Wooldredge,
        President

Notice to BDC:
 B.D. Cooke & Partners, Ltd.
 2 Knoll Rise
 Orpington
 Kent BR6 0NX, England
 Attn: Mr. Simon Janes,
        Managing Director

6

**BDC 00756**

<u>Article 8 - Arbitration</u>

8.1    In the event of any differences or disputes arising
between BDC and ROM with reference to this
Agreement or the terms thereof or the respective
rights, duties or liabilities of BDC or ROM hereunder,
the same shall be referred to and determined by
arbitration in the City and State of New York in
accordance with the rules and regulations of the American
Arbitration Association.  The arbitration award shall be
final and conclusive.  The arbitrators chosen shall
in all respects interpret this Agreement as an
honorable engagement between the parties and
shall make their award with a view to effecting
the general purposes of this Agreement and the
intentions of the parties hereto in a reasonable and
practical manner.

<u>Article 9 - General Conditions</u>

9.1    The validity and performance of this Agreement shall
be governed and construed in accordance with the
laws of the State of New York.

9.2    The failure of any party to enforce any of the
provisions herein shall not be construed to be a

7

**BDC 00757**

waiver of the rights of such party to enforce any

such provisions.

9.3    The expiration or termination of this Agreement

shall not affect the provisions in Articles 1.2(a),

2.1(d), 5, 6, 8 and 9 hereof.  Expiration or termination

of this Agreement shall not affect the provisions

of Article 4 with respect to the obligations of BDC

to pay ROM for work already performed by ROM.

9.4    This Agreement sets forth the entire understanding

and agreement between the parties as to the subject

matter thereof and supersedes all prior and

contemporaneous oral and written agreements and

discussions.  This Agreement may only be modified

or amended by a written agreement entered into

subsequent to the date of this Agreement and duly

executed by the parties hereto.

9.5    Neither party shall assign or delegate, in whole or

in part, its rights and obligations hereunder to any

person, firm or corporation including, but not

limited to, a parent, subsidiary or affiliated company,

without first obtaining the written approval of the

other party.                                    **BDC 00758**

8

9.6    Any monies received hereunder by ROM, and identified by ROM as being due BDC, shall be held by ROM as trust monies and not commingled with ROM's corporate funds; the said monies shall at all times, to the extent possible, be identifiable as BDC funds in the books and records of ROM.

9.7    This Agreement is solely for the benefit of ROM and BDC and does not confer, nor shall it be deemed to confer, any rights of any kind on any other party.

9.8    BDC represents that it has full legal right, power and authority (corporate or otherwise) to execute, perform and deliver this Agreement on behalf of itself and on behalf of the companies listed in Appendix A.  BDC further warrants that all corporate actions necessary for the execution of this Agreement by BDC have been taken.

9.9    ROM represents that it has full legal right, power and authority to execute, perform and deliver this Agreement.  ROM further warrants that all corporate actions necessary for the execution of this Agreement by ROM have been taken.

**BDC 00759**

9

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

ROM REINSURANCE MANAGEMENT CO., INC.

By: _____
            President

B.D. COOKE & PARTNERS, LTD.

By: _____
            Director

**BDC 00760**

10

APPENDIX A

<u>B.D. Cooke Pool Participants</u>

The Dominion Insurance Company Limited

London & Edinburgh Insurance Company Limited

Unione Italiana (UK) Reinsurance Company Limited

The World Marine & General Insurance Plc.

Trent Insurance Company Limited

Northern Assurance Company Limited

**BDC 00761**

11