UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

B.D. COOKE & PARTNERS LIMITED, AS
ASSIGNEE OF CITIZENS CASUALTY COMPANY
OF NEW YORK (IN LIQUIDATION),

                                 Plaintiff,

-against-

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON

                                 Defendants.

---

Civil Action No. 08-CIV-3435 (RJH)

**ELECTRONICALLY FILED**

**AFFIDAVIT OF**
**THOMAS B. McNAMARA**

STATE OF NEW YORK    )
                          :  ss.:
COUNTY OF NEW YORK  )

      THOMAS B. McNAMARA, being duly sworn, deposes and says:

      1.     I am the Senior Vice President and Treasurer of ROM Reinsurance Management Co., Inc., ("ROM"). As such, I am fully familiar with all of the facts set forth herein based upon my personal knowledge and belief gained through the performance of my duties and a review of the books and records maintained by ROM in the ordinary course of business.

      2.     ROM was incorporated in 1986 for the purpose of managing the run-off of a reinsurance pool known as the Agency Managers Casualty Pool business after it appeared that the former manager, Agency Managers, Inc. ("Agency Managers") could no longer manage the Casualty Pool. A number of former Agency Managers personnel became ROM employees. Many of the books and records of Agency Managers became the books and records of ROM.

      3.     The Agency Managers Casualty Pool consisted of certain insurance and reinsurance company pool members, including Citizens Casualty Company of New York

("Citizens"), among others, with each pool member agreeing to assume a percentage interest in all reinsurance business written by Agency Managers on behalf of the Agency Managers Casualty Pool.

4.     In addition to underwriting reinsurance business to be assumed by the Agency Managers Casualty Pool, Agency Managers also purchased reinsurance for the Agency Managers Casualty Pool that protected Citizens and the other pool members in respect of those assumed liabilities.

5.     I recognize Exhibits 1 through 9 attached hereto as true and correct copies, from the books and records of ROM, of reinsurance contracts that were entered into by Agency Managers whereby certain Underwriters at Lloyd's, London ("Underwriters") reinsured Citizens and other members of the Agency Managers Casualty Pool (each, a "Lloyd's Reinsurance Contract" and collectively, the "Lloyd's Reinsurance Contracts").

6.     Each Lloyd's Reinsurance Contract reinsured Citizens as a member of the Agency Managers Casualty Pool, and the same contract also reinsured other members of the Agency Managers Casualty Pool.

7.     ROM presents claims to the reinsurers of the Agency Managers Casualty Pool, including to the Underwriters under the Lloyd's Reinsurance Contracts.

8.     Because each of the Lloyd's Reinsurance Contracts reinsured both Citizens and other members of the Agency Managers Casualty Pool, each claim under the Lloyd's Reinsurance Contracts implicates the applicable Lloyd's Reinsurance Contract(s) both in respect of the Underwriters' reinsurance of Citizens under that contract, and in respect of their reinsurance of other members of the Agency Managers Casualty Pool under that same contract.

9.      In both cases (i.e., the reinsurance of Citizens and the reinsurance of other

members of the Agency Managers Casualty Pool), identical reinsurance terms are being applied

to the identical claim, under the same reinsurance contract.

10.     The books and records of ROM confirm that, although Underwriters have not

paid the Citizens portion of the claims listed in the chart below (which includes a cross-reference

to Paragraph 33 of the Verified Complaint), Underwriters have made payments for each of those

same claims, under the same Lloyd's Reinsurance Contracts, in respect of other members of the

Agency Managers Casualty Pool.

| | Claim | |
|---|---|---|
| **Verified Complaint Sub-Paragraph** | **Insured/Loss** | **ROM's Contract/Yr Ref. #** |
| 33.1 | Dana Corporation | A135 |
| 33.2 | Dana Corporation | B022 |
| 33.3 | Ciba Geigy | X021 |
| 33.4 | Foster Wheeler | U003 |
| 33.5 | Foster Wheeler | U003 |
| 33.6 | Foster Wheeler | V004 |
| 33.7 | Foster Wheeler | V004 |
| 33.8 | Foster Wheeler | W007 |
| 33.9 | Foster Wheeler | W007 |
| 33.10 | Foster Wheeler | X006 |
| 33.11 | Foster Wheeler | X006 |
| 33.12 | Foster Wheeler | Y005 |
| 33.13 | Foster Wheeler | Y005 |
| 33.14 | Foster Wheeler | E022 |
| 33.15 | Kaiser Aluminium | V016 |
| 33.16 | Kaiser Aluminium | V016 |

| | Claim | |
|---|---|---|
| **Verified Complaint Sub-Paragraph** | **Insured/Loss** | **ROM's Contract/Yr Ref. #** |
| 33.17 | Kaiser Aluminium | W020 |
| 33.18 | Kaiser Aluminium | W020 |
| 33.19 | Goodyear Tire | T020 |
| 33.20 | Goodyear Tire | U019 |
| 33.21 | Goodyear Tire | V023 |
| 33.22 | Goodyear Tire | W033 |
| 33.23 | Goodyear Tire | X039 |
| 33.24 | Goodyear Tire | Y037 |
| 33.25 | Dana Corporation | A135 |
| 33.26 | Dana Corporation | B022 |
| 33.27 | Dana Corporation | C026 |
| 33.28 | Dana Corporation | D010 |
| 33.29 | Dana Corporation | E018 |
| 33.30 | Kaiser Aluminium | V016 |
| 33.31 | Kaiser Aluminium | V016 |
| 33.32 | Kaiser Aluminium | W020 |
| 33.33 | Kaiser Aluminium | W020 |
| 33.34 | Kaiser Aluminium | X017 |
| 33.35 | Kaiser Aluminium | Y016 |
| 33.36 | Kaiser Aluminium | A134 |
| 33.37 | Kaiser Aluminium | B021 |
| 33.38 | Kaiser Aluminium | C022 |
| 33.39 | Kaiser Aluminium | D025 |
| 33.40 | Kaiser Aluminium | E028 |
| 33.41 | B.F. Goodrich | C034 |
| 33.42 | B.F. Goodrich | D033 |
| 33.43 | B.F. Goodrich | E042 |

|  | Claim | |
| --- | --- | --- |
| Verified Complaint Sub-Paragraph | Insured/Loss | ROM's Contract/Yr Ref. # |
| 33.44 | Union Carbide | X027 |
| 33.45 | Union Carbide | X027 |
| 33.46 | Union Carbide | Y026 |
| 33.47 | Union Carbide | Y026 |
| 33.48 | Union Carbide | Z013 |
| 33.49 | Union Carbide | Z013 |
| 33.50 | Dana Corporation | A135 |
| 33.51 | Dana Corporation | B022 |
| 33.52 | Dana Corporation | C026 |
| 33.53 | Dana Corporation | D010 |
| 33.54 | Dana Corporation | E018 |
| 33.55 | Kaiser Aluminium | V016 |
| 33.56 | Kaiser Aluminium | V016 |
| 33.57 | Kaiser Aluminium | W020 |
| 33.58 | Kaiser Aluminium | W020 |
| 33.59 | Kaiser Aluminium | X017 |
| 33.60 | Kaiser Aluminium | X017 |
| 33.61 | Kaiser Aluminium | Y016 |
| 33.62 | Kaiser Aluminium | Y016 |
| 33.63 | Kaiser Aluminium | A134 |
| 33.64 | Kaiser Aluminium | A134 |
| 33.65 | Kaiser Aluminium | B021 |
| 33.66 | Kaiser Aluminium | B021 |
| 33.67 | Kaiser Aluminium | C022 |
| 33.68 | Kaiser Aluminium | C022 |
| 33.69 | Kaiser Aluminium | C025 |
| 33.70 | Kaiser Aluminium | D025 |

| Verified Complaint Sub-Paragraph | Claim | |
|---|---|---|
| | Insured/Loss | ROM's Contract/Yr Ref. # |
| 33.71 | Kaiser Aluminium | D025 |
| 33.72 | Kaiser Aluminium | E028 |
| 33.73 | Kaiser Aluminium | E028 |
| 33.74 | Goodyear Tire | T020 |
| 33.75 | Goodyear Tire | U019 |
| 33.76 | Goodyear Tire | V023 |
| 33.77 | Goodyear Tire | W033 |
| 33.78 | Goodyear Tire | X039 |
| 33.79 | Goodyear Tire | Y037 |
| 33.80 | Goodyear Tire | T020 |
| 33.81 | Goodyear Tire | U019 |
| 33.82 | Goodyear Tire | V023 |
| 33.83 | Minnesota Minning | X022 |
| 33.84 | Minnesota Minning | Y025 |
| 33.85 | American Cyanamid | A083 |
| 33.86 | Union Carbide | X013 |
| 33.87 | Minnesota Minning | X022 |
| 33.88 | Minnesota Minning | Y025 |
| 33.89 | Hercules | A136 |
| 33.90 | Hercules | B024 |
| 33.91 | Hercules | C028 |
| 33.92 | Hercules | E039 |
| 33.93 | Georgia Pacific | W026 |
| 33.94 | Georgia Pacific | X032 |
| 33.95 | Dresser Industries | W031 |
| 33.96 | Dresser Industries | X037 |
| 33.97 | Dresser Industries | Y034 |

11.    ROM is not aware of any Agency Managers-procured reinsurance contracts, other than the nine contracts attached as Exhibits 1 through 9, whereby Underwriters reinsured Citizens.

12.    All of those nine reinsurance contracts have the same arbitration-clause wording, with the stated scope of arbitration limited to any "dispute arising under this Contract". These clauses can be found at:  Article XVIII of Exhibit 1; Article XXI of Exhibits 2 - 6 and 9; Article XVII of Exhibits 7 and 8.

13.    In contrast, other reinsurance contracts contain broader arbitration clauses that, apply, for example, to disputes arising under *or relating to* the contract in question, or to disputes regarding the interpretation of the contract or *transactions in respect of* the contract.  An example of the latter is attached hereto as Exhibit 10 (see Article 17), which I have been advised was attached to Underwriters' Notice of Removal.

14.    Although Exhibit 10 is a reinsurance contract procured by Agency Managers for the Agency Managers Casualty Pool, that reinsurance contract does not, and never did, reinsure Citizens.  As is apparent on the face of Exhibit 10, that reinsurance contract became effective January 1, 1975.  However, Citizens left the Agency Managers pool effective January 1, 1968 and all Agency-Managers-procured reinsurance contracts that covered Citizens incepted prior to 1968.  As such, neither Exhibit 10, nor any other Agency Managers contract incepting on or after

January 1, 1968 ever reinsured Citizens.  Moreover, by 1975, Citizens had already been in

liquidation for approximately four years.

_____
Thomas B. McNamara

Sworn to before me this
25th day of April, 2008.

_____
Notary Public

THOMAS A. SCOTT
Notary Public, State of New York
No. 01SC4702491
Qualified in Queens County
Certificate Filed in New York County
Commission Expires August 31, 20_09_

CLASH Cover



~~SPECIAL~~ CASUALTY EXCESS OF LOSS

(1/1/67 to 3/31/71)

1/1/67 - $300,000 XS $150,000
1/1/69 - $300,000 XS $175,000
1/1/70 - $350,000 XS $175,000
1/1/71 - $400,000 XS $200,000

LLOYDS

EXCESS OF LOSS CASUALTY RETROCESSION
CONTRACT NO. 594/67/5541

issued to

AGENCY MANAGERS LIMITED, NEW YORK
etal

by

certain UNDERWRITING MEMBERS OF LLOYD'S

64010 ✳ 18 JUL 1967



594/67/5541

## EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

### AGENCY MANAGERS LIMITED, NEW YORK

as United States Casualty Reinsurance Managers of and on behalf of

### THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED, (U.S. Branch)
### NATIONWIDE MUTUAL INSURANCE COMPANY
### CONSTELLATION INSURANCE COMPANY
### CITIZENS CASUALTY COMPANY OF NEW YORK
### THE MONARCH INSURANCE COMPANY OF OHIO

(hereinafter called the "Reassured")

by

### certain UNDERWRITING MEMBERS OF LLOYD'S

(hereinafter called the "Reinsurers")

## PREAMBLE

WHEREAS the Reassured have effected excess of loss reinsurance contracts numbered 4642 and 5261 which protect the Reassured up to the sum of $850,000 ultimate net loss each accident in excess of the sum of $150,000 ultimate net loss each accident in respect of the following classes of casualty business

1) Boiler and Machinery Insurances

2) Personal Injury Liability and Property Damage Liability Insurances

3) Workmen's Compensation and Employers' Liability Insurances,

4) All other insurances covered hereunder,

in respect of Contracts of Reinsurance written by the Reassured (hereinafter referred to as "original contracts") to their Reinsureds (hereinafter referred to as "original reinsureds"), and

WHEREAS the aforesaid amounts of $850,000 and $150,000 apply separately

- 2 -

1) to each of the four classes of casualty business
   referred to above, and

2) to each original reinsured protected under the
   original contracts, and

WHEREAS the Reassured desire to reinsure a portion (as stated in Article I) of the liability which may attach to them in the event of two or more of the aforementioned classes and/or two or more original reinsureds being involved in any one accident

NOW THEREFORE THIS CONTRACT WITNESSETH AS FOLLOWS:-

## ARTICLE I

### REINSURING CLAUSE

In consideration of the payment of premium as stipulated in Article IX and subject otherwise to the terms and conditions of this Contract, the Reinsurers hereby agree that in the event of two or more of the said classes of casualty insurance and/or two or more original reinsureds protected under the original contracts being involved in one accident the Reinsurers will indemnify the Reassured for that portion of the liability attaching to the Reassured under the original contracts which represents the excess of the sum of $150,000 (One hundred and fifty thousand United States Dollars) ultimate net loss in respect of each accident, the liability of the Reinsurers hereunder being limited to the sum of $300,000 (Three hundred thousand United States Dollars) ultimate net loss in respect of each accident.

## ARTICLE II

### EXCLUSIONS

This Contract does not apply to :-

a) Quota Share Reinsurance Contracts where the original
   policy limits exceed $25,000 any one person, $50,000
   any one accident for Bodily Injury Liability, and
   $10,000 any one accident for Property Damage Liability.

b) Business of the Reassured which is designated by them
   as Aviation Business provided, however, that this ex-
   clusion does not apply to Workmen's Compensation
   Business.

c) "Fidelity and Surety Insurance" as defined in Section
   46 of Article 4 of the Insurance Laws of the State of
   New York, other than Fidelity Insurance when written

- 3 -

as part of an "Umbrella" policy, provided Reinsurers shall not be liable for losses discovered or sustained prior to January 1st, 1963.

d) Credit Insurance as defined in paragraph 17 of the said Section 46.

e) Any form of financial guarantee business.

f) Liability for loss arising from the operations of the Federal Securities Acts of 1933. ·

g) Workmen's Compensation and Employers' Liability in respect of underground coal mining operations.

h) Protection and Indemnity business and Ocean Marine business written and classified by the Re-assured as such.

It is understood and agreed, however, that except as regards the exclusion of Surety insurance as defined in Section 46, of Article 4 of the Insurance Laws of the State of New York, Credit Insurance as defined in paragraph 17 of the said Section 46 and any form of Financial Guaran-tee business, the foregoing exclusions shall not apply where the operations outlined are only incidental to the Original Insured's main operations.

It is further understood and agreed that,

i) this Contract does not apply to loss or liability excluded under the provisions of the attached Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance, Nuclear Incident Exclusion Clause - Liability - Reinsurance, and Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler and Machinery Policies) - Reinsurance.

## ARTICLE III

### PERIOD

A.    This Contract applies only to original contracts entered into by the Reassured which commence or are renewed on or after January 1st, 1967 and shall continue in force until cancelled by either party in accordance with the provisions of Article XVI or by the mutual agree-ment of both parties.

B    For the purpose of this Article all original contracts entered into by the Reassured for a long or indefinite period shall be deemed to be

- 4 -

renewed from their respective anniversary dates next following January 1st, 1967.

## ARTICLE IV

DEFINITION OF
"EACH ACCIDENT"

In cases where the Reassured's contracts of reinsurance contain a definition of "each accident" such definition shall apply to this Contract, but if the Reassured's contracts of reinsurance do not contain such a definition, then the term "each accident" as used herein shall be understood to mean "each accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects

(a)  PRODUCTS LIABILITY

Said term shall alternatively be understood to mean "injuries to all persons proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(b)  PRODUCTS PROPERTY DAMAGE

Said term shall alternatively be understood to mean "all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(c)  PROPERTY DAMAGE (Other than Automobile and Products)

Said term shall alternatively subject to provisions (1) and (2) below be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of same".

In assessing each accident within the foregoing definition it is understood and agreed that

(1)  the series of operations, events or occurrences shall not extend over a period longer than 12 (twelve) consecutive months and

- 5 -

(2)   the Reassured may elect the date on which the
period of not exceeding 12 (twelve) consecutive
months shall be deemed to have commenced.

In the event that the series of operations, events
or occurrences extend over a period longer than
12 (twelve) consecutive months then each consecu-
tive period of 12 months, the first of which
commences on the date elected under (2) above,
shall form the basis of claim under this Contract.

(d)   <u>PUBLIC LIABILITY</u> (other than Automobile and Products)

Said term shall alternatively be understood to
mean as regards each original Insured "injuries
to one or more than one person resulting from
infection, contagion, poisoning or contamination
proceeding from or traceable to the same
causative agency".

(e)   An occupational or other disease suffered by an
employee which disease arises out of the em-
ployment and for which the employer is liable,
the same shall be deemed an accident within the
meaning hereof.   In case the Reassured shall
within a policy year sustain several losses aris-
ing out of such an occupational or other disease
of one specific kind or class, suffered by
several employees of one original Insured, such
losses shall be deemed to arise out of one
accident and the date of such accident shall be
deemed to be the commencing date of the policy
year.   A loss as respects each employee affec-
ted by the disease shall be deemed to have been
sustained by the Reassured at the date when
compensation disability of the employee com-
menced and at no other date.

(f)   As regards business where the measure of loss
is the "neglect, error or omission" of the in-
sured, it is understood that neglect, error or
omission shall be deemed to be an accident
within the meaning hereof, and the date of loss
shall be the date on which the first act of
negligence, error or omission occurred, except
that where the Contract of Reinsurance entered
into by the Reassured grants a retroactive cover
and the first such act occurred during the

- 6 -

retroactive period it shall be deemed to have occur-
red on the first day of the said Contract of Rein-
surance.

### ARTICLE V

ULTIMATE NET LOSS

A.    The term "ultimate net loss" as used herein shall mean the sum
which the Reassured have become legally obligated to pay (excluding all
expenses incurred by the Reassured in settlement or defence of claims)
in the settlement of losses or liabilities after making deductions for all
recoveries, all salvages, and all claims upon other reinsurers (whether
recovered or not).

B.    All salvages, recoveries or payments recovered or received sub-
sequent to a loss settlement under this Contract shall be applied as if re-
covered or received prior to the aforesaid settlement and all necessary
adjustments shall be made by the parties hereto.

C.    Nothing in this Article shall be construed to mean that losses under
this Contract are not recoverable until the Reassured's ultimate net loss
has been ascertained.

### ARTICLE VI

NET RETAINED LINES

A.    This Contract applies only to that portion of the original contracts
which the Reassured retain net for their own account and in calculating the
amount of any loss hereunder and also in computing the amount in excess
of which this Contract attaches, only loss or losses in respect of that por-
tion of any original contract which the Reassured retain net for their own
account shall be included.

B.    The amount of the Reinsurers' liability hereunder in respect of any
loss or losses shall not be increased by reason of the inability of the Re-
assured to collect from any other reinsurers (whether specific or general)
any amounts which may have become due from them, whether such in-
ability arises from the insolvency of such other reinsurers or otherwise.

### ARTICLE VII

EXCESS OF LOSS
REINSURANCES

This Contract in no way applies to protect any liability of the Re-
assured in respect of Excess of Loss Reinsurances of other Reinsurance

- 7 -

Companies written or accepted by the Reassured and the expression "Reinsurance Companies" shall not apply to Companies normally transacting direct business but who accept some incidental reinsurance business.

## ARTICLE VIII

### WAR EXCLUSION

A.    As regards interest under Plate Glass and All Risks business (except All Risks business accepted by the Burglary Departments of the Companies reinsured by the Reassured) no liability shall attach hereto in respect of any loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

B.    As regards interest, other than Workmen's Compensation and Liability, which, at time of loss or damage, are on shore OUTSIDE the territorial limits of the United States of America and Canada, no liability shall attach hereto in respect of any such loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation, by order of any Government or Public Authority.

## ARTICLE IX

### PREMIUM

A.    The premium payable to the Reinsurers shall be calculated at the rate of .25% (one quarter of one per cent.) of the Gross Net Earned Premium Income of the Reassured.

B.    The term "Gross Net Earned Premium Income" shall mean the gross earned premiums accruing to the Reassured from all business the subject matter of this Contract, after deducting return premiums and premiums paid away for facultative reinsurances recoveries under which would inure to the benefit of this Contract.

C.    An annual minimum and deposit premium of U.S.$6,500 shall be paid by the Reassured to the Reinsurers on January 1st of each year this Contract is in force.    As soon as practicable after the expiration of each calendar year of this Contract, the Reassured shall furnish the Reinsurers with a statement of its Gross Net Earned Premium Income during the year then immediately past, and if it is found that the premium due to the Reinsurers, calculated at the aforementioned rate of .25% exceeds the annual minimum and deposit premium of U.S.$6,500 the amount in excess thereof shall thereupon become payable to the Reinsurers.

- 8 -

## ARTICLE X

ACCESS TO RECORDS

The Reinsurers, or their authorised representatives shall at all times during the currency of this Contract, or within eighteen months after its termination, have free access to the books and records of the Reassured in so far as they relate to business falling within the scope of this Contract, and in the event of any claim for loss being made hereunder the Reinsurers shall have free access to all claims records during the continuance of this Contract or at any time thereafter until the final settlement of all such claims.

## ARTICLE XI

FEDERAL EXCISE TAX

A.    The Reinsurers have agreed to allow, for the purpose of paying the Federal Excise Tax, one per cent of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

B.    In the event of any return of premium becoming due hereunder, the Reinsurers will deduct one per cent. from the amount of the return; the Reassured or its broker hereunder should take steps to recover the tax from the U.S. Government.

## ARTICLE XII

TAX CLAUSE

In consideration of the terms under which this Contract is issued, the Reassured undertake not to claim any deduction in respect of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns to any State or Territory of the United States or to the District of Columbia.

## ARTICLE XIII

CLAIMS

A.    The Reassured shall advise the Reinsurers with reasonable promptitude of any accident or event in which the Reinsurers are known to be involved and shall, on demand, provide the Reinsurers with full information relative thereto.

B.    The Reinsurers, through their appointed representative Mendes and Mount, 27 William Street, New York, New York 10005, shall have the right to co-operate with the Reassured in the defense and/or settlement of any claims in which they may be interested.

- 9 -

C.     All settlements made by the Reassured in co-operation with the Re-
insurers' appointed representative, Mendes and Mount, shall be binding on
the Reinsurers and all settlements made by the Reassured in cases where the
Reinsurers have elected not to exercise their right to co-operate with the
Reassured shall be binding on the Reinsurers.   The Reinsurers shall pay to
the Reassured any amounts that may be recoverable under this Contract
within fifteen (15) days after the receipt of the necessary papers proving the
loss.

## ARTICLE XIV

### DIVISION OF SETTLE-
### MENT COSTS

Where the Reassured provide a cover under which expenses incurred
by the original reinsured in connection with the investigation and adjustment
of claims and suits are included as a part of the loss, then such expenses
shall likewise be considered a part of the ultimate net loss hereinbefore
referred to.   Otherwise such expense shall be apportioned between the
Reassured and the Reinsurers in the ratio of their respective liabilities as
finally determined, it being understood however that the Reinsurers shall
not be liable for any part of the salaries of officials of or office expenses of
the Reassured.

## ARTICLE XV

### COMMUTATION

A.     In the event of the Reassured becoming liable to make periodical
payments under any contract reinsured hereunder, the Reinsurers shall (at
any time after 24 months from the date of the accident) be at liberty to
redeem the payments falling due from them by the payment of a lump sum to
be determined as follows :   In such cases the amount of the claim under
this Contract may be settled by mutual agreement, but if not so settled the
Reassured and the Reinsurers shall refer the matter to two arbitrators, one
to be chosen by each party and such arbitrators shall choose an umpire;  in
the event of the arbitrators failing to agree,  the decision of the umpire
shall be final and binding upon all parties.   The seat of arbitration shall be
in New York, New York.

B.     The Reinsurers' portion of the amount so determined shall be con-
sidered the amount of loss hereunder and the payment thereof shall con-
stitute a complete release of the Reinsurers for their liability for such claim
so capitalised.

- 10 -

## ARTICLE XVI

CANCELLATION

A.    This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

B.    In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contracts of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

1) termination of each such contract

or

2) the respective anniversary dates of such Contracts next following the effective date of cancellation

which shall first occur.

## ARTICLE XVII

INSÓLVENCY

A.    In the event of the insolvency of any of the Companies constituting the Reassured this reinsurance shall be payable directly to the insolvent Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the insolvent Company without diminution because of the insolvency of the insolvent Company or because the liquidator, receiver, conservator or statutory successor of the insolvent Company has failed to pay all or a portion of any claim.

B.    It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the insolvent Company shall give written notice to the Reinsurers of the pendency of a claim against the insolvent Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the insolvent Company or its liquidator, receiver, conservator or statutory successor.    The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the insolvent Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the insolvent Company solely as a result of the defence undertaken by the Reinsurers.

- 11 -

## ARTICLE XVIII

### ARBITRATION

Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers.
The arbitrators shall, before entering upon the reference, appoint an umpire.
The arbitrators and the umpire shall consider this contract an honourable engagement rather than merely a legal obligation they are relieved of all judicial formalities and may abstain from following the strict rules of law. The award of the arbitrators or, in the event of their disagreement of the umpire, shall be precedent to any liability or right of action of either party. The costs of the reference and of the award shall be in the discretion of the arbitrators or umpire, as the case may be, who may direct to and by whom and in what manner the same shall be paid.
The seat of arbitration shall be New York, New York.

## ARTICLE XIX

### SERVICE OF SUIT

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers, at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.
It is further agreed that service of process in such suit may be made upon Mendes and Mount, 27 William Street, New York, New York 10005, or their nominee or nominees, and that in any suit instituted against any one of them upon this Contract, the Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be

- 12 -

served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract of reinsurance, and hereby designate the above named as the firm to which the said officer is authorised to mail such process or a true copy thereof.

**Signed for and on behalf of the Reinsurers in the Schedule No. 1. attached hereto**

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate.

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, ... radioactive contamination ... or as Insurer or Reinsurer, ... fically insured against.

... not extend to risks using ... e is not considered by the

... e meaning given it in the ... f.

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES)—REINSURANCE.

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

    (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

    (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

... aragraph (1) hereof, it is

... 31st December 1957 shall ... isions of this Clause until ... t occurs whereupon all the

... es issued by the Reassured ... om the application of the ... te or 31st December 1960 ... s of this Clause shall apply.





No Policy or other Contract dated on or after 1st January, 1924 will be recognised by the Committee of Lloyd's entitling the holder to the benefit of the ... and or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## SCHEDULE NO. 1

1967

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*E. B. Phillips,* Manager.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION PER CENT | BROKER 576 | SYNDICATE | L.P.S.O. No. & DATE 64010 18 7/67 UNDERWRITER'S REF. |
|---|---|---|---|
| 7.17 | | 772 | 3210300524 |
| 8.97 | | 605 | 1266 |
| 4.48 | | 109 | 06X4321 |
| 2.24 | | 131 | LJA3 |
| 2.24 | | 990 | 097E |
| 4.93 | | 311 | 14XS |
| 4.04 | | 56 | 51XE2890 |
| 3.59 | | 322 | 202 |
| 7.69 | | 235 | 935 |
| .90 | | 164 | AA923WF46 |
| 1.79 | | 33 | 400E |
| 1.35 | | 469 | 1118P |
| 1.35 | | 510 | 6860 |
| 2.69 | | 347 | 205 |
| 2.69 | | 494 | 0T525558 |
| 1.79 | | 250 | 621C |
| .69 | | 917 | 5TU045471 |
| .21 | | 410 | 5TU045471 |

| NO. SYND. | TOTAL LINE |
|---|---|
| 18 | 53.81 |



# LLOYD'S POLICY

J (A)

Form J (4) (15.11.45)
N.M.A. 210

(Q) continuing with the signature

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

NOW KNOW YE, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the Schedule hereto are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for Another, our Heirs, Executors, and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors, Administrators, and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions herein expressed) not exceeding the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member.

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE

Dated in London, the 8th Day of August One Thousand Nine Hundred and Fifty-eight

MANAGER.



| In all communications please quote the following reference | |
|---|---|
| **594** | 58/4642 |

## FORM J (A)

**LLOYD'S LONDON**

*Assured* AGENCY MANAGERS LIMITED, NEW
United States Casualty Reinsu...
of and on behalf of the FORT...
COMPANY LIMITED, AMERICAN HO...
COMPANY and CITIZENS CASUAL...
and their Obligatory Quota...

Deposit
*Premium* £89,918.57

*Policy and Stamp*

*Date of Expiry*

The Assured is requested to read this Policy and
if it is incorrect, return it immediately for alterat...

In the event of any occurrence likely to
result in a claim under this Policy, immediate
notice should be given to —

*handwritten:*
594
58/4642
t I
58 through
12/31/66

**PERCENTAGES SIGNED HEREUNDER ARE PERCENTAGES OF THE INDEMNITY SET FORTH IN THE ATTACHED WORDING**

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S NO / SYNDICATE | UNDERWRITER'S REFERENCE | LPSO SLIP NO | LPSO DATE |
|---|---|---|---|---|
| PER CENT | | | 0500717 | 9581 |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S NO / SYNDICATE | UNDERWRITER'S REFERENCE | LPSO SLIP NO | LPSO DATE |
|---|---|---|---|---|
| | | | 0500717 | 958 |



ATTACHING TO AND FORMING PART OF  LLOYD'S Policy No. 594/55/4642

### EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers

(hereinafter referred to either
individually or in any combination
as the "Reassured")

by

certain UNDERWRITING MEMBERS OF LLOYD'S,
each for his own part and not one for another,
and the EXCESS INSURANCE COMPANY LIMITED

(hereinafter together referred to as the "Reinsurers")

BUSINESS REINSURED
HEREUNDER                              ARTICLE I

In consideration of the payment of premium as provided in
Article XII the Reinsurers shall indemnify the Reassured,
within the limits and subject to the terms and conditions herein
set forth, in respect of the liability attaching to them under
Contracts of Reinsurance written in the United States of America
or in Canada (covering liability wheresoever occurring) in respect
of the following classes of insurance as set forth in Section 46
of Article 4 of the Insurance Laws of the State of New York
including any and all amendments thereto or revisions thereof:

"Accident and Health Insurance" as defined in sub-paragraph
(a) of paragraph 3.

"Water Damage Insurance" as defined in paragraph 6.

"Burglary and Theft Insurance" as defined in paragraph 7.

"Glass Insurance" as defined in paragraph 8.

"Boiler and Machinery Insurance" as defined in paragraph 9.

"Elevator Insurance" as defined in paragraph 10.

-2-

"Collision Insurance" as defined in paragraph 12.

"Personal Injury Liability Insurance" as defined in paragraph 13.

"Property Damage Liability Insurance" as defined in paragraph 14.

"Workmen's Compensation and Employers' Liability Insurance" as defined in paragraph 15.

All amendments to or revisions of the above paragraphs of Section 46 of Article 4 of the Insurance Laws of the State of New York effective during the currency of this Contract shall be immediately notified to the Reinsurers.

EXCLUSIONS                    ARTICLE II

This Contract does not apply to

a) Railroad business written and classified by the Reassured as such

b) Aviation business written and classified by the Reassured as such

c) The ownership, maintenance and navigation of any vessel whose gross register exceeds 500 tons

d) "Fidelity and Surety Insurance" as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York

e) "Credit Insurance" as defined in paragraph 17 of the said Section 46

f) Any form of financial guarantee business

g) liability for loss arising from the operations of the Federal Securities Act of 1933

h) Workmen's Compensation and Employers' liability — in respect of underground coal mining operations

i) Manufacture, storage, filling, breaking down or transport of explosives.

-3-

It is expressly understood and agreed, however, that except as regards the exclusion of Surety insurance as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York, Credit Insurance as defined in paragraph 17 of the said Section 46 and any form of Financial Guarantee business, the foregoing exclusions shall not apply where the operations outlined are only incidental to the Original Insured's main operations.

It is further understood and agreed that liability in respect of a contract issued by the Reassured in reinsurance of the American Fidelity and Casualty Company, covering Automobile Public Liability and Property Damage Liability for a limit of $950,000 excess of $50,000, is excluded from the protection of this Contract and the premium income in respect of the said contract shall not be included in the statements of the Reassured's gross net earned premium income rendered in accordance with Article XII.

REINSURING CLAUSE          ARTICLE III

A.    The Reinsurers shall indemnify the Reassured for that portion of the liability attaching to them in respect of business falling within the scope of this Contract which represents the excess of the sum of $150,000 (One hundred and fifty thousand United States Dollars) ultimate net loss in respect of each accident, the liability of the Reinsurers under this contract being limited to the sum of $350,000 (Three hundred and fifty thousand United States Dollars) ultimate net loss in respect of each accident.

B.    Notwithstanding the provisions of paragraph A of this Article, it is understood and agreed that as respects liability assumed by the Reassured on both an aggregate basis and an accident basis, or on an aggregate basis alone, in respect of Property Damage Liability Insurance and Products Bodily Injury Liability Insurance providing aggregate limits of indemnity as well as per accident limits, the Reinsurers shall indemnify the Reassured for that portion of the liability attaching to them (whether due to per accident or aggregate limits, or both) which represents the excess of the sum of $150,000 (One hundred and fifty thousand United States Dollars) ultimate net loss in the aggregate in respect of each annual premium period of each policy, or in respect of the full policy period if such period does not exceed fifteen months; but the liability of the Reinsurers under this Contract for the aggregate ultimate net loss under any such policy during said period shall not exceed $350,000 (Three hundred and fifty thousand United States Dollars). It is nevertheless understood and agreed that if the Reassured sustain a loss in excess of $150,000 (One hundred and fifty thousand United States Dollars) as the result of one accident which involves business falling within this paragraph B and also other business falling within the scope of this Contract, then the entire loss shall be excluded from this paragraph B and shall be settled in accordance with the other terms and conditions of this Contract.

*EXCEPTION*

-4-

C.   The term "policy" as used in paragraph B of this Article means a policy issued direct to an insured by a company reinsured by the Reassured.

D.   The amount of $150,000 in excess of which this Contract attaches, and the Reinsurers' limit of liability of $350,000, as herein set forth, shall be applied separately to :-

  1) Boiler and Machinery Insurances,

  2) Personal Injury Liability and Property Damage Liability Insurances,

  3) Workmen's Compensation and Employers' Liability Insurances,

  4) All other insurances covered hereunder,

in respect of each reassured protected under Contracts of Reinsurance written by the Reassured.

E.   For the purposes of this Contract it is understood and agreed that :-

  1) all contracts of reinsurance of the Reassured which have an inception date, renewal date or anniversary date of 1st January, 1958 shall be deemed to contain the Nuclear Incident Exclusion Clause - Liability - Reinsurance except only that if the Reassured have been unable to give the prescribed notice in term or ever open contracts of reinsurance because the due date for giving such notice has passed then the Nuclear Incident Exclusion Clause shall be incorporated in all such contracts of reinsurance not later than 31st December, 1958. As regards contracts of reinsurance which have an inception date, renewal date or anniversary date after 1st January, 1958, the Nuclear Incident Exclusion Clause - Liability - Reinsurance shall be included at the next such inception, renewal or anniversary date and in no case later than 31st December, 1958, provided nevertheless that

  2) all Boiler and Machinery contracts of reinsurance of the Reassured (or the Boiler and Machinery portion only of those contracts of reinsurance of the Reassured which cover other hazards in addition to Boiler and Machinery) which have an inception date, renewal date or anniversary date of January 1, 1958 or subsequent thereto, shall be deemed to contain the Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler and Machinery Policies) - Reinsurance.

-5-

ATTACHMENT                          ARTICLE IV

A.    This Contract applies only to Contracts of Reinsurance entered into by the Reassured which commence or are renewed on or after January 1st, 1958 and shall continue in force until cancelled by either party in accordance with the provisions of Article XX or by the mutual agreement of both parties.

B.    For the purpose of this Article all Contracts of Reinsurance entered into by the Reassured for a long or indefinite period shall be deemed to be renewed from their respective anniversary dates next following January 1st, 1958.

DEFINITION OF "EACH
ACCIDENT"                           ARTICLE V

    In cases where the Reassured's contracts or reinsurance contain a definition of "each accident" such definition shall apply to this Contract, but if the Reassured's contracts of reinsurance do not contain such a definition, then the term "each accident" as used herein shall be understood to mean "each accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as regards

    (a) Products Liability, said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

    (b) Classes of insurance hereby reinsured other than those enumerated in paragraphs (a), (c) and (d) hereof, said term shall also be understood to mean, as regards each original assured, "injuries to one or more than one person resulting from infection, contagion, poisoning, or contamination proceeding from or traceable to the same causative agency".

    (c) Property damage (other than Automobile and Products) risks, said term shall also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of the same".

    (d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof. If the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one assured, such losses shall be deemed

– 6 –

to arise out of one accident.  A loss as respects each
employee affected by the disease shall be deemed to have
been sustained by the Reassured at the date when compen-
sable disability of the employee commenced and at no
other date.

(e) As regards business where the measure of loss is the
"neglect, error or omission" of the insured, it is
understood that neglect, error or omission shall be deemed
to be an accident within the meaning hereof, and the date
of loss shall be the date on which the first act of
negligence, error or omission occurred, except that where
the Contract of Reinsurance entered into by the Reassured
grants a retroactive cover and the first such act occurred
during the retroactive period it shall be deemed to have
occurred on the first day of the said Contract of Re-
insurance.

ULTIMATE NET LOSS                ARTICLE VI

A.   The term "ultimate net loss" as used herein shall mean the
sum which the Reassured have become legally obligated to pay
(excluding all expenses incurred by the Reassured in the settlement
or defence of claims) in the settlement of losses or liabilities
after making deductions for all recoveries, all salvages, and all
claims upon other reinsurers (whether recovered or not) other than
the reinsurers subscribing to the Contract referred to in paragraph D
of this Article.

B.   All salvages, recoveries or payments recovered or received
subsequent to a loss settlement under this Contract shall be applied
as if recovered or received prior to the aforesaid settlement and
all necessary adjustments shall be made by the parties hereto.

C.   Nothing in this Article shall be construed to mean that losses
under this Contract are not recoverable until the Reassured's
ultimate net loss has been ascertained.

D.   Recoveries under the following Excess of Loss Reinsurance
Contract shall be disregarded for the purposes of this Article :

"an Excess of Loss Reinsurance Contract covering
up to a limit of $300,000 ultimate net loss each
accident in excess of $150,000 ultimate net loss
each accident and protecting the Reassured only
in the event of two or more of the following
classes

- 7 -

1) Boiler and Machinery Insurances

2) Personal Injury Liability and Property
   Damage Liability Insurances

3) Workmen's Compensation and Employers'
   Liability Insurances

4) All other insurances covered under this Contract

and/or two or more reassureds protected under Contracts
of Reinsurance written by the Reassured being involved
in any one accident. "

NET RETAINED
LINES                         ARTICLE VII

    This Contract applies only to that portion of any contract of
reinsurance which the Reassured retain net for their own account
and in calculating the amount of any loss hereunder and also in
computing the amount in excess of which this Contract attaches, only
loss or losses in respect of that portion of any contract of rein-
surance which the Reassured retain net for their own account shall
be included.  Recoveries made by the Reassured from the reinsurers
referred to in paragraph D of Article VI shall be disregarded for the
purposes of this Article.

INABILITY TO RECOVER
FROM OTHER REINSURERS          ARTICLE VIII

    The amount of the Reinsurers' liability hereunder in
respect of any loss or losses shall not be increased by reason
of the inability of the Reassured to collect from any other
reinsurers (whether specific or general) any amounts which may
have become due from them, whether such inability arises from
the insolvency of such other reinsurers or otherwise.

MAXIMUM RETENTION              ARTICLE IX

    It is warranted that the amount retained by the Reassured
net for their own account shall not exceed

1) $1,000,000 each accident in respect of each class of
   insurance (as set forth in Article I of this Contract)
   for each reassured.

2) as respects boiler and machinery insurance, a daily
   indemnity applying to any one location as defined in
   the Boiler and Machinery Manual of the National Bureau
   of Casualty Underwriters of $5,000 per diem provided,
   however, that where the contract issued by the Reassured

-8-

contains no daily limit, such business shall be protected hereunder provided that the liability of the Reassured attaches in excess of a deductible of at least $2,000,000 each accident (including direct damage, if any).

WAR EXCLUSION                    ARTICLE X

A.   As regards interest under Plate Glass and All Risks business (except All Risks business accepted by the Burglary Departments of the companies reinsured by the Reassured) no liability shall attach hereto in respect of any loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

B.   As regards interests, other than Workmen's Compensation and Liability, which, at time of loss or damage, are on shore OUTSIDE the territorial limits of the United States of America and Canada, no liability shall attach hereto in respect of any such loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation, by order of any Government or Public Authority.

EXCESS OF LOSS
REINSURANCE CLAUSE               ARTICLE XI

This Contract in no way applies to protect any liability of the Reassured in respect of Excess of Loss Reinsurances of other Reinsurance Companies written or accepted by the Reassured and the expression "Reinsurance Companies" shall not apply to Companies normally transacting direct business but who accept some incidental reinsurance business.

PREMIUM                          ARTICLE XII

A.   The premium to be paid by the Reassured to the Reinsurers in respect of each annual period of this Contract shall be 100/70ths of the aggregate incurred losses but such premium shall be not less than 2.75% nor more than 5% of the Reassured's gross net earned premium income.

B.   For the purposes of this Article the following definitions shall apply :-

1) the term "gross net earned premium income" shall be understood to mean the gross earned premiums accruing to the Reassured from all business the subject matter of this Contract after deducting return premiums and premiums paid

-10-

    a) the premium computed in the immediately preceding
       provisional adjustment

                or

    b) the deposit premium if no provisional adjustment
       is necessary.

E.    The Reinsurers shall return to the Reassured any balance
which may become due to the Reassured in respect of any annual
period by reason of :-

    1) the premium computed in the first provisional adjustment
       being less than the deposit premium,

    2) the premium computed in a subsequent provisional
       adjustment being less than the premium computed in the
       immediately preceding provisional adjustment,

    3) the premium computed in the final adjustment being less
       than :-

        a) the premium computed in the immediately preceding
           provisional adjustment

                   or

        b) the deposit premium if no provisional adjustment
           is necessary.

F.    The premium due under this Contract shall be based on the
amount of the Reassured's losses recoverable hereunder irrespective
of whether or not claim is made against the Reinsurers.

FEDERAL REINSURANCE
STAMP TAX                    ARTICLE XIII

A.    The Reinsurers have agreed to allow for the purpose of
purchasing U.S. Government Stamps for attachment hereto one per
cent. of the premium payable hereon to the extent such premium
is subject to Federal Stamp Tax.

B.    In the event of any return of premium becoming due hereunder
the Reinsurers will deduct from the amount of the return the same
percentage as the allowance which they have made towards the
Federal Stamp Tax.

-11-

C.    Nevertheless where such return of premium becomes due owing to the cancellation hereof by Reinsurers the above deduction of the tax allowance shall not be made except in so far as the Reassured have a right to recover the tax from the U.S. Government.

ACCESS TO RECORDS    ARTICLE XIV

The Reinsurers, or their authorised representatives shall at all times during the currency of this Contract, or within eighteen months after its termination, have free access to the books and records of the Reassured insofar as they relate to business falling within the scope of this Contract, and in the event of any claim for loss being made hereunder the Reinsurers shall have free access to all claims records during the continuance of this Contract or at any time thereafter until the final settlement of all such claims.

TAX CLAUSE    ARTICLE XV

In consideration of the terms under which this Contract is issued, the Reassured undertake not to claim any deduction in respect of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

CLAIMS    ARTICLE XVI

A.    The Reassured shall advise the Reinsurers with reasonable promptitude of any accident or event in which the Reinsurers are known to be involved and shall, on demand, provide the Reinsurers with full information relative thereto.

B.    The Reinsurers, through their appointed representative Mendes and Mount, 27 William Street, New York 5, New York, shall have the right to co-operate with the Reassured in the defense and/or settlement of any claims in which they may be interested.

C.    All settlements made by the Reassured in co-operation with the Reinsurers' appointed representative, Mendes and Mount, shall be binding on the Reinsurers and all settlements made by the Reassured in cases where the Reinsurers have elected not to exercise their right to co-operate with the Reassured shall be binding on the Reinsurers.  The Reinsurers shall pay to the Reassured any amounts that may be recoverable under this Contract within fifteen (15) days after the receipt of the necessary papers proving the loss.




-12-

DIVISION OF
SETTLEMENT COSTS                    ARTICLE XVII

    Where the Reassured provide a cover under which expenses
incurred by the treaty company in connection with the investigation
and adjustment of claims and suits are included as a part of the
loss, then such expenses shall like-wise be considered a part of
the ultimate net loss hereinbefore referred to; Otherwise
such expenses shall be apportioned between the Reassured and the
Reinsurers in the ratio of their respective liabilities as
finally determined, it being understood however that the Reinsurers
shall not be liable for any part of the salaries of officials of
or office expenses of the Reassured.

COMMUTATION                          ARTICLE XVIII

A.    In the event of the Reassured becoming liable to make
periodical payments under any contract reinsured hereunder, the
Reinsurers shall (at any time after 24 months from the date of
the accident) be at liberty to redeem the payments falling due
from them by the payment of a lump sum to be determined as
follows:  In such cases the amount of the claim under this Contract
may be settled by mutual agreement, but if not so settled, the
Reassured and the Reinsurers shall refer the matter to two
arbitrators, one to be chosen by each party and such arbitrators
shall choose an umpire;  in the event of the arbitrators failing
to agree, the decision of the umpire shall be final and binding
upon all parties.  The seat of arbitration shall be in New York,
N.Y.

B.    The Reinsurers' portion of the amount so determined shall
be considered the amount of loss hereunder and the payment thereof
shall constitute a complete release of the Reinsurers for their
liability for such claim so capitalised.

INSOLVENCY                           ARTICLE XIX

    The Reinsurers hereby agree that in the event of the
insolvency of any of the Companies constituting the Reassured,
this contract of reinsurance shall be so construed that the
reinsurance shall be payable directly to the insolvent
Company or to its liquidator, receiver or statutory successor
by the Reinsurers in the event of the insolvency of any of
the Companies constituting the Reassured on the basis of
the liability of the Reassured under the contract or contracts
reinsured without diminution because of the insolvency of any
Company constituting the Reassured.  It is further agreed that
the liquidator, the receiver, or the statutory successor of
the insolvent Company shall give written notice to the
Reinsurers of the pendency of a claim against the insolvent
Company on the contract or contracts reinsured within a
reasonable time after such claim is filed in the insolvency
proceedings; that during the pendency of such claim the
Reinsurers may investigate such claim and interpose, at their



-13-

own expense, in the proceeding where such claim is to be
adjudicated any defence or defences which they may deem
available to the insolvent Company or its liquidator, receiver,
or statutory successor.
The expense thus incurred by the Reinsurers shall be chargeable
subject to court approval against the insolvent Company as part
of the expense of liquidation to the extent of a proportionate
share of the benefit which may accrue to such insolvent Company
solely as a result of the defence undertaken by the Reinsurers.

CANCELLATION                 ARTICLE XX

A.    This Contract may be terminated by either party giving
at least ninety days notice to the other party stating the
effective date and time on which this Contract shall terminate.

B.    In the event of this Contract being so terminated the
liability of the Reinsurers shall continue in force in respect
of all Contracts of reinsurance falling within the protection
of this Contract which are current at the effective date of the
cancellation notice until

    1) termination of each such contract

                    or

    2) the respective anniversary dates of such Contracts
       next following the effective date of cancellation

whichever shall first occur.

ARBITRATION                  ARTICLE XXI

      Any dispute arising under this Contract shall be sub-
mitted to a court of arbitration composed of two arbitrators,
one to be appointed by the Reassured and the other by the
Reinsurers.
The arbitrators shall, before entering upon the reference,
appoint an umpire.
The arbitrators and the umpire shall consider this Contract
an honourable engagement rather than merely a legal obligation
they are relieved of all judicial formalities and may abstain
from following the strict rules of law.
The award of the arbitrators or, in the event of their dis-
agreement, of the umpire, shall be precedent to any liability
or right of action of either party.
The costs of the reference and of the award shall be in the
discretion of the arbitrators or umpire, as the case may be,
who may direct to and by whom and in what manner the same
shall be paid.
The seat of arbitration shall be New York, N.Y.

-14-

SERVICE OF SUIT                    ARTICLE XXII

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.
It is further agreed that service of process in such suit may be made upon Mendes and Mount, 27 William Street, New York 5, New York or their nominee or nominees, and that in any suit instituted against any one of them upon this Contract, the Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract of reinsurance, and hereby designate the above-named as the firm to which the said officer is authorised to mail such process or a true copy thereof.

COPY OF CLAUSES

OF CLAUSES REFERRED TO IN PARAGRAPH E. OF ARTICLE III

OF CLAUSES REFERRED TO IN PARAGRAPH E. OF ARTICLE III accruing to the Reassured as

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE.

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY
### (BOILER AND MACHINERY POLICIES)—REINSURANCE.

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurances contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to " loss ", whether it be direct or indirect, proximate or remote

   (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

   (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without restricting the operation of paragraph (1) hereof, it is understood and agreed that effective on or before 30th April, 1958,

   (a) all policies issued by the Reassured on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply;

   (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

Printed at Lloyd's, London, England.

23/5/58
N.M.A. 1168.

**U.S.A.**
## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such

... of this Clause it is ... original contracts ... in clause II of ... paragraph (2) shall be ... tion Provision);

... disease, death ... policy is also an ... issued by the ... Atomic Energy ... occurrence ... provided ... to be in ... contract has

... personal ... policies ... of ... such

... aragraph (2) ... of this Clause, it ... the original liability ... ent) affording the following

... Liability, Contractual Liability, Elevator ... (including railroad) Protective Liability, ... actors Liability, Product Liability, ... Storekeepers Liability, Garage Liability, Professional and ... to include with respect to such coverages, from the time specified in ... this paragraph (3), the following provision (specified as the Broad Exclusion ... sion):

IV Broad Exclusion Provision
It is agreed that the policy does not apply:

   (a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

   (b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard; provided that except for byproduct material, this paragraph (b) shall not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility after sale or distribution to others;

   (c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance, operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America, its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard;

   (d) to the transportation, handling, use, sale, distribution or disposal of byproduct material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard.
As used in this provision:

1. The term " nuclear energy hazard " means the radioactive, toxic, explosive or other hazardous properties of source material, special nuclear material or byproduct material.

2. The terms " source material " " special nuclear material " and " byproduct material " shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided except for nuclear facility, " byproduct material " (a) contained in or combined with special nuclear material (b) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, " byproduct material " shall not include any radioactive isotope away from a nuclear facility.

3. The term " nuclear facility " means:
   (a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   (b) any equipment or device (i) designed or used for the separation of the isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or or of irradiated materials containing special nuclear material, (iii) incorporating or making use of such irradiated materials, or (iv) designed or used for processing waste byproduct material;
   (c) any structure, basin, excavation, premises ...
   ... the storage or disposal of waste ...
   ... containing ...

OF CLAUSES REFERRED TO IN PARAGRAPH E. OF ARTICLE III

U.S.A.

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE**

(1) This reinsurance does not cover any loss or liability accruing to the Reassured a

U.S.A.

**NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES)—REINSURANCE.**

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

   (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

   (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

   (a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply;

   (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

Printed at Lloyd's, London, England.

23/8/58

N.M.A. 1166.

*[The following rotated/sideways text is partially legible:]*

...graph (3), with respect to such coverages, from the time specified in the Broad Exclusion ...Liability, Product (road) Liability, Protective, Elevator (specified as the Broad Exclusion ...Garage Liability, Professional and Provision

It is agreed that the policy does not apply:

(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Underwriters or the Mutual Atomic Energy Liability Underwriters and in Association at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided, this insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability; provided...

(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, disease, death or destruction resulting from the nuclear operation of any nuclear facility...

1. The term "nuclear energy hazard" means the radioactive, toxic, explosive or other hazardous properties of source material; special nuclear material or byproduct material.

2. The terms "source material", "special nuclear material" and "byproduct material" shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided, except for byproduct material (a) stored, transported or disposed of as waste by or on behalf of nuclear facility, or (b) held...

3. The term "nuclear facility" means:

(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging waste;

(c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material...

W F & D Ltd., London.

65002 * 28 SEP 1959

DATE 9th June, 1959

### ENDORSEMENT TO LLOYD'S POLICY Ref.594/59/4642

**This Endorsement is to be deemed to be embodied in and form part**

**of the original Policy numbered 594/58/4642 and should be attached thereto.**

*Name of Assured* Re AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and on
behalf of the NORTHERN ASSURANCE COMPANY LIMITED,
AMERICAN HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK and their Obligatory Quota Share
Reinsurers

IT IS HEREBY UNDERSTOOD AND AGREED that

1) the Lloyd's participation in the total coverage
afforded by the wording attached to the above-
numbered Policy is reduced, as from January 1st,
1959, from 98.64% to 94.69% and the Underwriters
subscribing to such reduced participation are the
UNDERWRITING MEMBERS OF LLOYD'S, each for his own
part and not one for another, who are Members of
the Syndicates the Definitive Numbers of which in
the attached list, and the proportions subscribed,
are set forth in the Table on the Schedule attached
hereto;

2) a further annual deposit premium of $71,527.14
(being 94.69% of $75,538.22) is due hereon in
respect of the calendar year 1959 and shall be
payable in equal quarterly instalments on January 1st,
April 1st, July 1st and October 1st, 1959.

20119

## SCHEDULE

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**Now Know Ye**, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | Broker's No. | L.P.S.O. SLIP No. | L.P.S.O. DATE | | |
|---|---|---|---|---|---|
| P E R  C E N T | 5766 | 5 0 0 2 2 8 | 9 5 9 3 | | |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 1 7 • 6 9 9 | 5 2 4 | 5 9 / 0 4 6 4 | | | |
| 5 • 3 1 0 | 3 4 7 | W F  4 0 4  2 0 5 | | | |
| 1 7 • 6 9 9 | 2 1 0 | 1 7 4 9 1 0 0 / 2 0 1 | | | |
| 6 • 6 3 7 | 1 3 0 | | | | |
| 6 • 6 3 7 | 8 8 | A  8 2  X S | | | |
| 1 • 3 2 7 | 3 6 | T P A 2 8  1 1  5 1 | | | |
| • 4 4 2 | 4 6 9 | 1 1 1 8 | | | |
| 2 • 2 1 2 | 7 9 5 | E  1 2 2 1 | | | |
| 2 • 6 5 5 | 2 3 5 | 9 3 5  2 8  1 1 | | | |
| • 8 8 5 | 4 8 4 | C O N F | | | |
| 2 • 2 1 2 | 9 7 5 | 1 4 2 E | | | |
| 1 • 3 2 8 | 5 6 | E X  1 7 1 1  T P | | | |
| 1 • 3 2 8 | 6 7 7 | X S 2 9 N 5 1 N 9 7 | | | |
| • 8 8 5 | 4 7 9 | X 5 7 | | | |
| 1 • 7 7 0 | 8 7 0 | T B 7 1  Z | | | |
| 1 • 7 7 0 | 8 5 7 | T A R | | | |
| 1 • 3 2 7 | 3 0 1 | N  2 3 6 | | | |
| 2 • 2 1 3 | 1 0 9 | 5 X  3 3 2 4 | | | |
| 1 • 3 2 8 | 8 6 7 | G R / E 1 C | | | |
| 1 • 3 2 8 | 5 8 3 | 9 7 | | | |
| • 8 8 5 | 8 3 8 | E | | | |
| 1 • 3 2 8 | 3 3 | C O N F  6 0 | | | |
| 1 • 1 9 4 | 8 6 | 7 8 / 1 5 1 1 | | | |
| • 2 2 1 | 4 3 3 | 7 8 / 1 5 1 1 | | | |
| • 7 9 6 | 5 9 6 | 7 8 / 1 5 1 1 | | | |
| • 8 8 5 | 9 9 0 | 2  2 8  9  5 3 | | | |

| AMOUNT, PERCENTAGE OR PROPORTION | Broker's No | L.P.S.O. SLIP No | L.P.S.O. DATE | | |
|---|---|---|---|---|---|
| | 5766 | 5 0 0 2 2 8 | 9 5 9 | | |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 6 • 1 9 5 | 9 1 | 1 4 7 3 0 | | | |
| 3 • 0 9 7 | 3 1 1 | | | | |
| • 8 8 5 | 8 1 9 | 4 0 1 3 W F 1 0 | | | |
| • 4 4 2 | 1 6 4 | W F  2 0 4 2 | | | |
| 1 • 7 7 0 | 2 5 0 | T P  C 2 0 N 5 8 | | | |

65002 * 28 SEP 1959

W F & D LTD, LONDON

DATE 28th August, 1959

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642 and should be attached thereto.

*Name of Assured*
Re
AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers.

IT IS HEREBY UNDERSTOOD AND AGREED that all Contracts of
Reinsurance entered into by the Reassured which have an inception
date, renewal date or anniversary date of 1st January, 1959 shall,
for the purposes of this Contract, be deemed to contain the
Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance,
a copy of which is attached to this Endorsement.

All other terms of this Contract remain unchanged.



20119

**U.S.A.**

NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1.  This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2.  Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I.   Nuclear reactor power plants including all auxiliary property on the site, or

    II.  Any other nuclear reactor installation. including laboratories handling radioactive materials in connection with reactor installations, and " critical facilities " as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of " special nuclear material ', and for reprocessing, salvaging, chemically separating, storing or disposing of " spent " nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3.  Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured. directly or indirectly. and whether as Insurer or Reinsurer. from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate—

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused.  However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4.  Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5.  It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to-be-the primary hazard.

6.  The term " special nuclear material " shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7.  Reassured to be sole judge of what constitutes·

    (a) substantial quantities, and

    (b) the extent of installation, plant or site.

*Note* —Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply

Printed at Lloyd's, London, England.

12/12/57
N.M.A. 1119





W. F. & D. Ltd., London

DATE 10th May, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/4642    and should be attached thereto.

Re
Name of Assured
AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share Reinsurers

IT IS UNDERSTOOD AND AGREED THAT effective 1st July, 1959,
liability in respect of a contract issued by the Reassured
in reinsurance of the Allstate Insurance Company, Illinois
covering Automobile Public Liability and Property Damage
Liability in respect of business, written by the Company
through the agency of, and serviced by, Markel Service, Inc,
for a limit of $950,000 excess of $50,000, is exluded from
the protection of this Contract and the premium income in
respect of the said contract shall not be included in the
statements of the Reassured's gross net earned premium income
rendered in accordance with Article XII.

All other terms and conditions shall remain unchanged.

20119

F & D LTD., LONDON.

65000 * -4 JUL 1960

DATE 19th May, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/58/4642   and should be attached thereto.

Re
*Name of/Assured*

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share Reinsurer

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1960

1) the Constitution Insurance Corporation of New York,
The Unity Fire and General Insurance Company and
the United States Branch of Skandinavia Insurance
Company Limited, have appointed Agency Managers
Limited as their Casualty Reinsurance Underwriters and
Managers, and as from the aforesaid date this Contract
is extended to cover the said Corporation and Companies.

2) the Lloyd's participation in the total coverage
afforded by the wording attached to this policy, is
amended from 94.69% to 94.71% and the Underwriters
subscribing to such amended participation are the
UNDERWRITING MEMBERS OF LLOYD'S, each for his own
part and not one for another, who are Members of the
Syndicates the Definitive Numbers of which in the
attached list, and the proportions subscribed are set
forth in the Table on the Schedule attached hereto;

3) an annual deposit premium of £116,499.48 (being 94.71%
of £123,006.52) is due hereon in respect of the calendar
year 1960 and shall be payable in equal quarterly
instalments on January 1st, April 1st, July 1st and
October 1st 1960.

All other terms and conditions shall remain unchanged.

20119

P.8.

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds under Guarantee lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member,

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured between the Members of those Syndicates

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S No. | L.P.S.O. SLIP No. | L.P.S.O. DATE | |
|---|---|---|---|---|
| PER CENT | 576 | 65000 | 4  7  60 | |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| 17.62 | 524 | 60/D46 4 | | |
| 5.29 | 347 | WF  404  205 | | |
| 17.62 | 210 | 1749/00/201 | | |
| 6.61 | 130 | | | |
| 6.61 | 88 | A  82  X9 | | |
| 1.32 | 36 | TPA  30  28N51 | | |
| .88 | 469 | 1118 | | |
| 1.65 | 795 | E  1221 | | |
| .55 | 470 | E  1221 | | |
| 2.65 | 235 | 935  28  11 | | |
| .88 | 484 | CONF | | |
| 2.20 | 975 | 142E | | |
| 1.32 | 56 | EX  1711  TP | | |
| .88 | 677 | EXCESS/N  97 | | |
| .38 | 479 | X  57 | | |
| 1.32 | 870 | TB  71/Z | | |
| 1.32 | 857 | TAR | | |
| .66 | 301 | N  236 | | |
| 2.20 | 109 | 6X  3324 | | |
| .88 | 867 | GR/E/C | | |
| 1.32 | 583 | 97 | | |
| 1.32 | 838 | E | | |
| 1.32 | 33 | CONF  60 | | |
| 1.19 | 867 | 78/1511 | | |
| .22 | 433 | 78/1511 | | |
| .79 | 596 | 78/1511 | | |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S No. | L.P.S.O. SLIP No. | L.P.S.O. DATE | |
|---|---|---|---|---|
| | 576 | 65000 | 4  7  60 | |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| .88 | 990 | 97  28  9  53 | | |
| 5.29 | 91 | 14730 | | |
| 4.41 | 311 | 14XS | | |
| .88 | 819 | 4015  WF10 | | |
| .44 | 164 | WF  2042 | | |
| 1.77 | 250 | TP/C | | |
| .88 | 729 | 47/EXCESS | | |
| .66 | 371 | 74  1  1  60 | | |

W. F. & D LTD . LONDON.

DATE 6th December, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/58/ 4642 and should be attached thereto.

Re

*Name of Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers, CONSTITUTION INSURANCE CORPORATION OF NEW
YORK, UNITY FIRE AND GENERAL INSURANCE COMPANY and the
UNITED STATES BRANCH OF SKANDINAVIA INSURANCE COMPANY
LIMITED.

IT IS UNDERSTOOD AND AGREED THAT the Nuclear

Incident Exclusion Clause - Liability - Reinsurance attached

to this Policy, is cancelled and replaced by the Nuclear

Incident Exclusion Clause - Liability - Reinsurance attached

hereto.

All other terms and conditions remain unchanged.

20119

ATTACHING TO AND FORMING PART OF ENDORSEMENT DATED 6th DECEMBE
1960 to LLOYD'S POLICY NO. 594/58/4642

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
   (a) become effective on or after 1st May, 1960, or
   (b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Store-keepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply.

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability, or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured, or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties, "nuclear material" means source material, special nuclear material or byproduct material, "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof, [...] then policy shall be deemed to include such

Exclusion Provisions.

4/2/60
N.M.A. 1255

65007 * 21 AUG 1961

W. F. & D. LTD., LONDON.

DATE 14th July, 1961

ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642 and should be attached thereto.

Re

*Name of Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers,
CONSTITUTION INSURANCE CORPORATION OF NEW YORK, UNITY
FIRE AND GENERAL INSURANCE COMPANY and the UNITED STATES
BRANCH OF SKANDINAVIA INSURANCE COMPANY LIMITED

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1961,

1) The Unity Fire and General Insurance Company is replaced
by the Cosmopolitan Mutual Insurance Company of New York

2) the name of the Northern Assurance Company limited is
changed to The Northern Assurance Company of America

3) Article V is deleted and replaced by the following
Article V :-

DEFINITION OF "EACH
ACCIDENT"                    ARTICLE V

In cases where the Reassured's contracts of reinsurance
contain a definition of "each accident" such definition shall
apply to this Contract, but if the Reassured's contracts of
reinsurance do not contain such a definition, than the term
"each accident" as used herein shall be understood to mean
"each accident or occurrence or series of accidents or
occurrences arising out of any one event" provided that as
respects

(a) PRODUCTS LIABILITY
Said term shall alternatively be understood to
mean "injuries to all persons proceeding from the
use or consumption of one prepared or acquired lot
of merchandise or product".

(b) PRODUCTS PROPERTY DAMAGE
Said term shall alternatively be understood to
mean "all damage to property of others proceeding
from the use or consumption of one prepared or
acquired lot of merchandise or product".

20119

Page 2 to Lloyd's Endorsement Dated 14th July, 1961 of Policy No.

594/58/4642

(c) PROPERTY DAMAGE (other than Automobile and Products.)
Said term shall alternatively subject to provisions
(1) and (2) below be understood to mean "loss or
losses caused by a series of operations, events or
occurrences arising out of operations at one specific
site and which cannot be attributed to any single one
of such operations, events or occurrences, but rather
to the cumulative effect of same".

In assessing each accident within the foregoing
definition it is understood and agreed that

(1) the series of operations, events or occurrence
shall not extend over a period longer than 12
(twelve) consecutive months

and

(2) the Reassured may elect the date on which the
period of not exceeding 12 (twelve) consecuti
months shall be deemed to have commenced.

In the event that the series of operations, events
or occurrences extend over a period longer than 12
(twelve) consecutive months then each consecutive
period of 12 months, the first of which commences
on the date elected under (2) above, shall form
the basis of claim under this Contract.

(d) PUBLIC LIABILITY (other than Automobile and Product
Said term shall alternatively be understood to mean
as regards each original Insured "injuries to one or
more than one person resulting from infection,
contagion, poisoning or contamination proceeding
from or traceable to the same causative agency".

(e) An occupational or other disease suffered by an
employee which disease arises out of the employment
and for which the employer is liable, the same shall
be deemed an accident within the meaning hereof.
In case the Reassured shall within a policy year
sustain several losses arising out of such an
occupational or other disease of one specific kind
or class, suffered by several employees of one
original Insured, such losses shall be deemed to
arise out of one accident and the date of such
accident shall be deemed to be the commencing date
of the policy year.    A loss as respects each
employee affected by the disease shall be deemed to

Page 3 to Lloyd's Endorsement Dated 14th July, 1961 of Policy No.

594/58/4642

have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(f) As regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retroactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

4) the Lloyd's participation in the total coverage afforded by the wording attached to this Policy is amended from 94.71% to 93.39% and is subscribed by the UNDERWRITING MEMBERS OF LLOYD'S, each for his own part and not one for another, who are Members of the Syndicates the Definitive Numbers of which in the attached list, and the proportions subscribed are set forth in the Table on the Schedule attached hereto;

5) an annual deposit premium of $87,412.25 (being 93.39% of $93,599.20) is due hereon in respect of the calendar year 1961 and shall be payable in equal quarterly instalments on January 1st, April 1st, July 1st and October 1st, 1961.

All other terms and conditions shall remain ucnahgned.

entitling the holder to the benefit of the funds and/or Guarantees lodged by the Underwriter or their ~~~y~~~ as Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

S C H E D U L E



**Know Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*[signature]* MANAGER.

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates. |
|---|

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO | L.P.S.O. SLIP NO. | L.P.S.O. DATE | |
|---|---|---|---|---|
| PER CENT | 576 | 65007 | 21 | 8 | 61 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| 17.62 | 524 | 610464 | | |
| 5.29 | 347 | 205 | | |
| 17.62 | 210 | 2011749 | | |
| 6.61 | 131 | 350 | | |
| 5.45 | 88 | 82XS | | |
| 1.16 | 169 | 82XS | | |
| 1.32 | 36 | 30TPA28N51 | | |
| .88 | 469 | 1118P | | |
| 1.65 | 795 | 22103TX01221 | | |
| .55 | 470 | 22103TX01221 | | |
| 2.65 | 235 | 935 | | |
| .88 | 484 | 32CONF1 | | |
| 1.32 | 56 | 41XE1711 | | |
| .88 | 677 | XEXCN9729N51 | | |
| .44 | 479 | X57 | | |
| 1.32 | 870 | Z00071 | | |
| 1.32 | 857 | TAR | | |
| 2.20 | 109 | 06X3324 | | |
| .88 | 867 | GR/E | | |
| 1.32 | 583 | 097 | | |
| 1.10 | 838 | 045 | | |
| 1.32 | 33 | 060C | | |
| 1.19 | 86 | 78/1511 | | |
| .22 | 433 | 78/1511 | | |
| .79 | 596 | 78/1511 | | |
| .88 | 990 | 097E | | |

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO | L.P.S.O. SLIP NO | L.P.S.O. DATE | |
|---|---|---|---|---|
| | 576 | 65007 | 21 | 8 | 61 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| 5.29 | 91 | 14730 | | |
| 4.41 | 311 | 14XS | | |
| .88 | 819 | 413WF10 | | |
| .44 | 164 | WF2042 | | |
| 1.77 | 250 | TPC | | |
| .88 | 729 | 47XEXC | | |

W. F. & D. LTD., LONDON.

DATE 31st May, 1962

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642 and should be attached thereto.
Re

*Name of/Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
THE NORTHERN ASSURANCE COMPANY OF AMERICA, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers, CONSTITUTION INSURANCE CORPORATION OF
NEW YORK, COSMOPOLITAN MUTUAL INSURANCE COMPANY OF
NEW YORK and the UNITED STATES BRANCH OF SKANDINAVIA
INSURANCE COMPANY LIMITED.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1962

1) the name of the Reassured is amended to read as
follows :-

"AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LTD (U.S.BRANCH)
CITIZENS CASUALTY COMPANY OF NEW YORK,
COSMOPOLITAN MUTUAL INSURANCE COMPANY,
THE CONSTITUTION INSURANCE CORPORATION OF NEW YORK,
SKANDINAVIA INSURANCE COMPANY LTD (U.S.BRANCH),
NATIONWIDE MUTUAL INSURANCE COMPANY,
and their Quota Share Reinsurers.

Notwithstanding the foregoing amendment, any liability which
may attach to THE NORTHERN ASSURANCE COMPANY OF AMERICA and
AMERICAN HOME ASSURANCE COMPANY under contracts of reinsurance
in force at midnight, December 31st, 1961, shall be protected
hereunder until the expiry date (or in the event of long-term
contracts, the first anniversary date next following December
31st, 1961) of such contracts of reinsurance.

2) the exclusions a) to i) listed in Article II are deleted
and replaced by the following exclusions a) to g).

a) Business of the Reassured which is designated by
them as aviation Business provided, however, that
this exclusion does not apply to Workmen's
Compensation Business.

20119

- 2 -

to Lloyd's Endorsement Dated 31st May, 1962 Policy No.594/58/4642

      b) Fidelity and Surety Insurance as defined in Section
46 of Article 4 of the Insurance Law of the State of
New York.

      c) Credit Insurance as defined in paragraph 17 of the
said Section 46.

      d) Any form of financial guarantee business.

      e) Liability for loss arising from the operations
of the Federal Securities Acts of 1933.

      f) Workmen's Compensation and Employers' Liability in
respect of underground coal mining operations.

      g) Protection and Indemnity business and Ocean Marine
business written and classified by the Reassured as
such.

3) the Lloyd's participation in the total coverage afforded by
the wording attached to this Policy is amended from 93.39%
to 93.34% and is subscribed by the UNDERWRITING MEMBERS OF
LLOYD'S, each for his own part and not one for another, who
are Members of the Syndicates the Definitive Numbers of which
in the attached list, and the proportions subscribed are set
forth in the Table on the Schedule attached hereto;

4) an annual deposit premium of $115,064.27 (being 93.34% of
$115,064.27) is due hereon in respect of the calendar year
1962 and shall be payable in equal quarterly instalments on
January 1st, April 1st, July 1st and October 1st, 1962.

All other terms and conditions remain unchanged.



S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*(signature)*

Manager

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of these Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION PER CENT | BROKERS No 576 | L.P.S.O. SLIP No 65002 | L.P.S.O. DATE 29  6  62 |
|---|---|---|---|
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 17.78 | 524 | 62D960 | |
| 1.78 | 969 | | |
| 5.33 | 347 | 205 | |
| 17.78 | 210 | 2011749 | |
| .89 | 208 | 2011749 | |
| 6.67 | 131 | 350 | |
| 5.84 | 88 | 82XS | |
| .83 | 169 | 82XS | |
| .89 | 469 | 1118P | |
| 1.67 | 795 | 32118TX01221 | |
| .56 | 470 | 32118TX01221 | |
| 2.67 | 235 | 935 | |
| .89 | 484 | 32CONF | |
| 2.22 | 975 | 142E | |
| 1.33 | 56 | 51XE1711 | |
| .89 | 677 | XEXC29729N51 | |
| 1.33 | 870 | ZXX071 | |
| 2.22 | 109 | 06X3324 | |
| .89 | 867 | GR/E | |
| 1.33 | 584 | 097 | |
| 1.11 | 838 | 045 | |
| 1.33 | 33 | 090C | |
| .89 | 783 | 207V1511 | |
| .89 | 990 | 097E | |
| 5.23 | 91 | 14730 | |
| 4.44 | 311 | 14XS | |

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of these Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS No 576 | L.P.S.O. SLIP No 65002 | L.P.S.O. DATE 29  6  62 |
|---|---|---|---|
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 1.78 | 819 | 513WF10 | |
| .44 | 164 | WF2042 | |
| 1.78 | 250 | TPC | |
| .89 | 729 | 47XEXC | |
| .67 | 371 | 74422362 | |

93.34

W. F. & D. LTD., LONDON.

65000 ✻ 14 MAY 1963

DATE 2nd April, 1963.

ENDORSEMENT TO LLOYD'S POLICY  594/63/4642

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/61/4642 [58 written above] and should be attached thereto.

RE

*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.S.
BRANCH), CITIZENS CASUALTY COMPANY OF NEW YORK,
COSMOPOLITAN MUTUAL INSURANCE COMPANY, THE
CONSTITUTION INSURANCE CORPORATION OF NEW YORK,
SKANDINAVIA INSURANCE COMPANY LIMITED (U.S.BRANCH)
NATIONWIDE MUTUAL INSURANCE COMPANY, and their
Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1963 :

1)    the name of the Reassured is amended to read as follows :

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of THE
INDEMNITY MARINE ASSURANCE COMPANY LIMITED, (U.S.BRANCH),
CITIZENS CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL INSURANCE COMPANY,
NATIONWIDE MUTUAL INSURANCE COMPANY, SKANDINAVIA INSURANCE
COMPANY LIMITED, and their Quota Share Reinsurers.

Notwithstanding the foregoing amendment, any liability
which may attach to THE CONSTITUTION INSURANCE CORPORATION OF
NEW YORK, under contracts of reinsurance in force at midnight,
December 31st, 1962, shall be protected hereunder until the
expiry date (or in the event of long-term contracts, the first
anniversary date next following December 31st, 1962) of such
contracts of reinsurance.

2)    paragraph A of Article XII is amended to read as follows :

A.  The premium to be paid by the Reassured to the
Reinsurers in respect of each annual period of this
Contract shall be 100/70ths of the aggregate incurred
losses but such premium shall not be less than 2.25%
nor more than 4% of the Reassured's gross net earned
premium income.

20119

-2-

3)    the first sentence of paragraph C of Article XII is
      amended to read as follows :

      C.    The Reassured shall pay to the Reinsurers an annual
      deposit premium equivalent to 3% of the Reassured's
      gross net earned premium income during the immediately
      preceding annual period such premium to be paid in
      four equal instalments on January 1st, April 1st,
      July 1st and October 1st.

4)    this Policy's participation in the total coverage afforded
      by the wording attached thereto is amended from 93.34%
      to 93.41% and such amended participation is subscribed
      by the UNDERWRITING MEMBERS OF LLOYD'S, each for his own
      part and not one for another, who are Members of the
      Syndicates the Definitive Numbers of which in the attached
      list and the proportion subscribed are set forth in the
      Table on the Schedule attached hereto.

5)    an annual deposit premium of £78,879.01 (being 93.41%
      of £84,443.86) is due hereon in respect of the calendar
      year 1963 and shall be payable in equal quarterly
      instalments on January 1st, April 1st, July 1st and
      October 1st, 1963.


All other terms and conditions remain unchanged.

# S C H E D U L E

65006 ¬ ... 1963

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) is the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

J. B. Phillips

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO. | L.P.S.O. No. | L.P.S.O. DATE | | COPIES |
|---|---|---|---|---|---|
| PER CENT | 576 | 65006 | 14 | 5 63 | 1 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 17.58 | 524 | 63D960 | | | |
| 1.76 | 969 | | | | |
| 5.27 | 347 | 205 | | | |
| 17.58 | 210 | 2011749 | | | |
| .88 | 208 | 2011749 | | | |
| 6.59 | 131 | LIA3 | | | |
| 6.59 | 88 | 82XS | | | |
| .88 | 469 | 1118P | | | |
| 1.47 | 795 | 32118TX01221 | | | |
| .73 | 470 | 32118TX01221 | | | |
| 2.64 | 235 | 935 | | | |
| .88 | 484 | 32CONF | | | |
| 2.20 | 975 | 142E | | | |
| 1.76 | 56 | 51XE1711 | | | |
| .88 | 677 | XEXC39729N51 | | | |
| 1.32 | 870 | ZXX071 | | | |
| 2.20 | 109 | 06X3324 | | | |
| .88 | 867 | GRE | | | |
| 1.32 | 584 | 097 | | | |
| 1.10 | 838 | 045 | | | |
| 1.32 | 33 | 090C | | | |
| .88 | 783 | 207V1511 | | | |
| .88 | 990 | 097E | | | |
| 5.27 | 91 | 14730 | | | |
| 4.39 | 311 | 14XS | | | |
| .22 | 164 | WF2042 | | | |

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO. | L.P.S.O. No. | L.P.S.O. DATE | | COPIES |
|---|---|---|---|---|---|
| | 576 | 65006 | 14 | 5 63 | 1 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 1.76 | 250 | TP | | | |
| .88 | 729 | 47XEXV | | | |
| .66 | 371 | 74A17T62 | | | |
| 2.64 | 510 | 1860 | | | |

93.41

W. F & D LTD., LONDON.

DATE: 27th August, 1963.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642 and should be attached thereto.

RE
*Name of/Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS CAS-
UALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL INSURANCE
COMPANY, NATIONWIDE MUTUAL INSURANCE COMPANY,
SKANDINAVIA INSURANCE COMPANY LIMITED, and their
Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, not withstanding anything
contained in Article II, this Contract is extended to include
Fidelity Insurance when written as part of an "Umbrella"
policy, provided Reinsurers shall not be liable for losses
discovered or for losses sustained prior to January 1st,1963,
such date being the retroactive date in respect of this
extension.

All other terms and conditions remain unchanged.

20119

W. F & D. LTD. LONDON

65003 * 23 APR 1964

DATE 19th March, 1964

## ENDORSEMENT TO LLOYD'S POLICY   Ref: 594/64/4642

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642  and should be attached thereto.

RE
Name of/Assured   AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS CAS-
UALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL
INSURANCE COMPANY, NATIONWIDE MUTUAL INS-
URANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
LIMITED, and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1964 :

1)   this Policy's participation in the total coverage
afforded by the wording attached thereto is amended
from 93.41% to 93.29% and such amended participation
is subscribed by the UNDERWRITING MEMBERS OF LLOYD'S,
each for his own part and not one for another, who
are Members of the Syndicates the Definitive Numbers
of which in the attached list and the proportions
subscribed are set forth in the Table on the Schedule
attached hereto.

2)   an annual deposit premium of £46,088.31 (being 93.29%
of £49,403.27) is due hereon in respect of the
calendar year 1964 and shall be payable in equal
quarterly instalments on January 1st, April 1st,
July 1st and October 1st, 1964.

20119

S C H E D U L E

65003 * 23 APR 1964

No Policy or other Contract dated on or after 1st January, 1924 will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

**IN WITNESS** whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us

LLOYD'S POLICY SIGNING OFFICE

*E. B. Phillips*
Manager

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE No. | L.P.S.O. No. | L.P.S.O. DATE | | | UNDERWRITER'S REFERENCE |
|---|---|---|---|---|---|---|
| PER CENT | 576 | 65003 | 23 | 64 | 1 | |
| 17.90 | 524 | 64D960 | | | | |
| 3.58 | 969 | | | | | |
| 5.37 | 347 | 205 | | | | |
| 17.90 | 210 | 2011749 | | | | |
| .89 | 208 | 2011749 | | | | |
| 6.71 | 131 | LIA3 | | | | |
| 6.71 | 88 | 82XS | | | | |
| .89 | 469 | 1118/P | | | | |
| 1.34 | 795 | TX01221 | | | | |
| .90 | 470 | 3211801221 | | | | |
| 2.69 | 235 | 935 | | | | |
| .89 | 484 | 32CONF | | | | |
| 2.24 | 975 | 142E | | | | |
| 1.79 | 56 | 51XE1711 | | | | |
| .89 | 677 | XEXC19729N51 | | | | |
| 1.34 | 870 | ZXX071 | | | | |
| 2.24 | 109 | 06X3324 | | | | |
| .90 | 867 | GR/E | | | | |
| 1.34 | 584 | 097 | | | | |
| 1.12- | 838 | 045 | | | | |
| 1.34 | 33 | 090C | | | | |
| .90 | 783 | 207V1511 | | | | |
| .90 | 990 | 097E | | | | |
| 5.37 | 91 | 14730 | | | | |
| 4.47 | 311 | 14XS | | | | |
| .22 | 164 | WF2042 | | | | |
| 1.79 | 250 | TPC | | | | |
| .67 | 371 | 065A15063 | | | | |

93.29

W. F. & D. LTD., LONDON

65100 * 19 AUG 1965

DATE 13th August, 1965.

ENDORSEMENT TO LLOYD'S POLICY    Ref: 594/65/4642

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642 and should be attached thereto.

Name of Assured RE AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS CAS-
UALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL
INSURANCE COMPANY, NATIONWIDE MUTUAL INS-
URANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
LIMITED, and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective January
1st, 1965,

1) the name of the Reassured is amended to read
as follows :

AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS CAS-
UALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, NATIONWIDE MUTUAL INSUR-
ANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
LIMITED, and their Quota Share Reinsurers.

Notwithstanding the foregoing amendment,
any liability which may attach to the
COSMOPOLITAN MUTUAL INSURANCE COMPANY, under
contracts of reinsurance in force at midnight,
December 31st, 1964, shall be protected
hereunder until the expiry date (or, in the
event of long-term contracts, the first
anniversary date next following December 31st,
1964) of such contracts of reinsurance.

2) this Policy's participation in the total coverage
afforded by the wording attached thereto is
amended from 93.29% to 93.25% and such amended
participation is subscribed by the UNDERWRITING
MEMBERS OF LLOYD'S, each for his own part and

20119·

PAGE 2 — TO ENDORSEMENT TO LLOYD'S POLICY NO. 594/58/4642.

not one for another, who are Members of the
Syndicates the Definitive Numbers of which
in the attached list and the proportions
subscribed are set forth in the Table on the
Schedule attached hereto.

3) an annual deposit premium of £56,531.12 (being
93.25% of £60,623.28) is due hereon in respect
of the calendar year 1965 and shall be payable
in equal quarterly instalments on January 1st,
April 1st, July 1st and October 1st, 1965.

All other terms and conditions remain unchanged.

# S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.



**Now Know Ye**, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS No. | L.P.S.O. No. | L.P.S.O. DATE | |
|---|---|---|---|---|
| **PER CENT** | 576 | 65100 | 19 8 69 | |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| 19.46 | 524 | 65D960 | | |
| 2.16 | 969 | | | |
| 5.41 | 347 | 205 | | |
| 18.02 | 210 | 2011749A | | |
| .90 | 208 | 2011749A | | |
| 6.76 | 131 | L1A3 | | |
| 6.76 | 88 | 82XS | | |
| .90 | 469 | 1118/P | | |
| 2.25 | 772 | 3211801221 | | |
| 2.70 | 235 | 935 | | |
| .90 | 484 | 0T525558 | | |
| 2.25 | 975 | 142E | | |
| 1.80 | 56 | 51XE i711 | | |
| .90 | 677 | 97EXCJ29N51 | | |
| 1.35 | 870 | ZXX071T | | |
| 2.25 | 109 | 06X3324 | | |
| .68 | 867 | GREX011 | | |
| .90 | 584 | 097 | | |
| 1.13 | 838 | 045 | | |
| 1.35 | 33 | 400E | | |
| .90 | 783 | 207V1511 | | |
| .90 | 990 | 097E | | |
| 5.41 | 91 | 14730 | | |
| 4.50 | 311 | 14XS | | |
| .23 | 164 | WF2042 | | |
| 1.80 | 250 | TP | | |
| .68 | 371 | 065A41164 | | |

W. F & D. LTD , LONDON

DATE 11th June, 1966.

ENDORSEMENT TO LLOYD'S POLICY Ref:594/66/4642

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/4642 and should be attached thereto.

Re

Name of/Assured    AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS CAS-
UALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, NATIONWIDE MUTUAL INSUR-
ANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
LIMITED, and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED that, effective January
1st 1966,

1) the name of the Reassured is amended to read
as follows:

AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), NATIONWIDE
MUTUAL INSURANCE COMPANY, CONSTELLATION
INSURANCE COMPANY, CITIZENS CASUALTY COMPANY
OF NEW YORK, THE MONARCH INSURANCE COMPANY
OF OHIO, SKANDINAVIA INSURANCE COMPANY LIMITED,
and their Quota Share Reinsurers.

In consequence of the foregoing amendment,
any liability attaching to the GREAT AMERICAN
INSURANCE COMPANY under contracts of reinsurance
in force at Midnight, December 31st, 1965 shall
be assumed by the CONSTELLATION INSURANCE
COMPANY.

2) this Policy's participation in the total coverage
afforded by the wording attached thereto is
amended from 93.25% to 92.35% and such amended
participation is subscribed by the UNDERWRITING
MEMBERS OF LLOYD'S, each for his own part and
not one for another, who are Members of the
Syndicates the Definitive Numbers of which in
the attached list and the proportions subscribed
are set forth in the Table on the Schedule
attached hereto.

20119

<u>PAGE 2</u> - TO ENDORSEMENT TO LLOYD'S POLICY NO.594/58/4642.

      3) an annual deposit premium of $44,663.81 (being
         92.35% of $48,363.62) is due hereon in respect
         of the calendar year 1966 and shall be payable
         in equal quarterly instalments on January 1st,
         April 1st, July 1st and October 1st, 1966.

All other terms and conditions remain unchanged.

65101 * 25 AUG 1966

## S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924 will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.



**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

E. J. Phillips
Manager.

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S No. | L.P.S.O. No. | L.P.S.O. DATE | | |
|---|---|---|---|---|---|
| PER CENT | 576 | 65101 | 25 | 8 | 66 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 19.91 | 524 | 660960 | | | |
| 2.84 | 969 | 660960 | | | |
| 5.41 | 347 | 205 | | | |
| 18.24 | 210 | 2011749B | | | |
| 1.42 | 208 | 2011749B | | | |
| .61 | 214 | 2011749B | | | |
| 6.76 | 131 | L1A3 | | | |
| 4.51 | 88 | 82XS | | | |
| .90 | 469 | 1118/P | | | |

EXCESS OF LOSS CASUALTY RETROCESSION
CONTRACT NO. 594/67/4342

issued to

AGENCY MANAGERS LIMITED, NEW YORK
etal

by

certain UNDERWRITING MEMBERS OF LLOYD'S



594/67/4642

# EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK
as United States Casualty Reinsurance
Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED,
(U.S. Branch)
NATIONWIDE MUTUAL INSURANCE COMPANY
CONSTELLATION INSURANCE COMPANY
CITIZENS CASUALTY COMPANY OF NEW YORK
THE MONARCH INSURANCE COMPANY OF OHIO

(hereinafter called the "Reassured")

by

certain UNDERWRITING MEMBERS OF LLOYD'S

(hereinafter called the "Reinsurers")

## ARTICLE I

**BUSINESS REINSURED HEREUNDER**

In consideration of the payment of premium as provided in Article XII the Reinsurers shall indemnify the Reassured, within the limits and subject to the terms and conditions herein set forth, in respect of the liability attaching to them under Contracts of Reinsurance written in the United States of America or in Canada (covering liability wheresoever occurring) in respect of the following classes of insurance as set forth in Section 46 of Article 4 of the Insurance Laws of the State of New York including any and all amendments thereto or revisions thereof :

"Accident and Health Insurance" as defined in sub-paragraph (a) of paragraph 3.

"Water Damage Insurance" as defined in paragraph 6.

"Burglary and Theft Insurance" as defined in paragraph 7.

"Glass Insurance" as defined in paragraph 8.

"Boiler and Machinery Insurance" as defined in paragraph 9.

- 2 -

"Elevator Insurance" as defined in paragraph 10.

"Collision Insurance" as defined in paragraph 12.

"Personal Injury Liability Insurance" as defined in paragraph 13.

"Property Damage Liability Insurance" as defined in paragraph 14.

"Workmen's Compensation and Employers' Liability Insurance" as defined in paragraph 15.

All amendments to or revisions of the above paragraphs of Section 46 of Article 4 of the Insurance Laws of the State of New York effective during the currency of this Contract shall be immediately notified to the Reinsurers.

## ARTICLE II

## EXCLUSIONS

This Contract does not apply to :-

a) Quota Share Reinsurance Contracts where the original policy limits exceed $25,000 any one person, $50,000 any one accident for Bodily Injury Liability, and $10,000 any one accident for Property Damage Liability.

b) Business of the Reassured which is designated by them as Aviation Business provided, however, that this exclusion does not apply to Workmen's Compensation Business.

c) "Fidelity and Surety Insurance" as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York, other than Fidelity Insurance when written as part of an "Umbrella" policy, provided Reinsurers shall not be liable for losses discovered or sustained prior to January 1st, 1963.

d) Credit Insurance as defined in paragraph 17 of the said Section 46.

e) Any form of financial guarantee business.

f) Liability for loss arising from the operations of the Federal Securities Acts of 1933.

g) Workmen's Compensation and Employers' Liability in respect of underground coal mining operations.

- 3 -

h) Protection and Indemnity business and Ocean
   Marine business written and classified by the Re-
   assured as such.

It is understood and agreed, however, that except as regards the
exclusion of Surety insurance as defined in Section 46, of Article 4 of the
Insurance Laws of the State of New York, Credit Insurance as defined in
paragraph 17 of the said Section 46 and any form of Financial Guarantee
business, the foregoing exclusions shall not apply where the operations
outlined are only incidental to the Original Insured's main operations.

It is further understood and agreed that,

i) this Contract does not apply to loss or liability
   excluded under the provisions of the attached
   Nuclear Incident Exclusion Clause - Physical
   Damage - Reinsurance, Nuclear Incident Exclusion
   Clause - Liability - Reinsurance, and Nuclear
   Incident Exclusion Clause - Physical Damage and
   Liability (Boiler and Machinery Policies) - Rein-
   surance.

## ARTICLE III

### REINSURING CLAUSE

A.   The Reinsurers shall indemnify the Reassured for that portion of the
liability attaching to them in respect of business falling within the scope of
this Contract which represents the excess of the sum of $150,000 (One
hundred and fifty thousand United States Dollars) ultimate net loss in respect
of each accident, the liability of the Reinsurers under this contract being
limited to the sum of $350,000 (Three hundred and fifty thousand United
States Dollars) ultimate net loss in respect of each accident.

B.   Notwithstanding the provisions of paragraph A of this Article, as
respects liability assumed by the Reassured on both an aggregate basis and
an accident basis, or on an aggregate basis alone, in respect of Property
Damage Liability Insurance and Products Bodily Injury Liability Insurance
providing aggregate limits of indemnity as well as per accident limits, the
Reinsurers shall indemnify the Reassured for that portion of the liability
attaching to them (whether due to per accident or aggregate limits, or both)
which represents the excess of the sum of $150,000 (one hundred and fifty
thousand United States Dollars) ultimate net loss in the aggregate in respect
of each annual premium period of each policy, or in respect of the full
policy period if such period does not exceed fifteen months; but the liability
of the Reinsurers under this Contract for the aggregate ultimate net loss
under any such policy during said period shall not exceed $350,000 (Three

- 4 -

hundred and fifty thousand United States Dollars).   Nevertheless, if the Reassured sustain a loss in excess of $150,000 (One hundred and fifty thousand United States Dollars) as the result of one accident which involves business falling within this paragraph B and also other business falling within the scope of this Contract, then the entire loss shall be excluded from this paragraph  B and shall be settled in accordance with the other terms and conditions of this Contract.

C.      The term "policy" as used in paragraph B of this Article means a policy issued direct to an insured by a company reinsured by the Reassured.

D.      The amount of $150,000 in excess of which this Contract attaches, and the Reinsurers' limit of liability of $350,000 as herein set forth, shall be applied separately to :-

1) Boiler and Machinery Insurances,

2) Personal Injury Liability and Property Damage Liability Insurances,

3) Workmen's Compensation and Employers' Liability Insurances,

4) All other insurances covered hereunder,

in respect of each reassured protected under Contract of Reinsurance written by the Reassured.

## ARTICLE IV

ATTACHMENT

A.      This Contract applies only to Contracts of Reinsurance entered into by the Reassured which commence or are renewed on or after January 1, 1967 and shall continue in force until cancelled by either party in accordance with the provisions of Article XX or by the mutual agreement of both parties.

B.      For the purpose of this Article all Contracts of Reinsurance entered into by the Reassured for a long or indefinite period shall be deemed to be renewed from their respective anniversary dates next following January 1st, 1967.

## ARTICLE V

DEFINITION OF
"EACH ACCIDENT"

In cases where the Reassured's contracts of reinsurance contain a definition of "each accident" such definition shall apply to this Contract, but

- 5 -

If the Reassured's contracts of reinsurance do not contain such a definition, then the term "each accident" as used herein shall be understood to mean "each accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects

(a) PRODUCTS LIABILITY.

Said term shall alternatively be understood to mean "injuries to all persons proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(b) PRODUCTS PROPERTY DAMAGE

Said term shall alternatively be understood to mean "all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(c) PROPERTY DAMAGE (other than Automobile and Products)

Said term shall alternatively subject to provisions (1) and (2) below be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of same".

In assessing each accident within the foregoing definition it is understood and agreed that

(1) the series of operations, events or occurrences shall not extend over a period longer than 12 (twelve) consecutive months

and

(2) the Reassured may elect the date on which the period of not exceeding 12 (twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (twelve) consecutive months then each consecutive period of 12 months, the first of which commences on the date elected under (2) above, shall form the basis of claim under this Contract.

- 6 -

(d)  PUBLIC LIABILITY (other than Automobile and Products)

Said term shall alternatively be understood to mean as regards each original Insured "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency".

(e)  An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof.  In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one original Insured, such losses shall be deemed to arise out of one accident and the date of such accident shall be deemed to be the commencing date of the policy year.  A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(f)  As regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retroactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

ARTICLE  VI

ULTIMATE NET LOSS

A.    The term "ultimate net loss" as used herein shall mean the sum which the Reassured have become legally obligated to pay (excluding all expenses incurred by the Reassured in settlement or defence of claims) in the settlement of losses or liabilities after making deductions for all recoveries, all salvages, and all claims upon other reinsurers (whether recovered or not) other than the reinsurers subscribing to the Contract referred to in paragraph D of this Article.

- 7 -

B.   All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

C.   Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

D.   Recoveries under the following Excess of Loss Reinsurance Contract shall be disregarded for the purposes of this Article :

"an Excess of Loss Reinsurance Contract covering up to a limit of $300,000 ultimate net loss each accident in excess of $150,000 ultimate net loss each accident and protecting the Reassured only in the event of two or more of the following classes

1) Boiler and Machinery Insurances

2) Personal Injury Liability and Property Damage Liability Insurances

3) Workmen's Compensation and Employers' Liability Insurances

4) All other reinsurances covered under this Contract

and/or two or more reassureds protected under Contracts of Reinsurance written by the Reassured being involved in any one accident."

## ARTICLE VII

### NET RETAINED LINES

This Contract applies only to that portion of any contract of reinsurance which the Reassured retain net for their own account and in calculating the amount of any loss hereunder and also in computing the amount in excess of which this Contract attaches, only loss or losses in respect of that portion of any contract of reinsurance which the Reassured retain net for their own account shall be included.   Recoveries made by the Reassured from the reinsurers referred to in paragraph D of Article VI shall be disregarded for the purposes of this Article.

## ARTICLE VIII

### INABILITY TO RECOVER FROM OTHER REINSURERS

The amount of the Reinsurers' liability hereunder in respect of any

- 8 -

loss or losses shall not be increased by reason of the inability of the Re-assured to collect from any other reinsurers (whether specific or general) any amounts which may have become due from them, whether such inability arises from the insolvency of such other reinsurers or otherwise.

## ARTICLE IX

### MAXIMUM RETENTION

It is warranted that the amount retained by the Reassured net for their own account shall not exceed

1) $1,000,000 each accident in respect of each class of insurance (as set forth in Article I of this Contract) for each reassured,

2) as respects boiler and machinery insurance, a daily indemnity applying to any one location as defined in the Boiler and Machinery Manual of the National Bureau of Casualty Underwriters of $5,000 per diem provided, however, that where the contract issued by the Reassured contains no daily limit, such business shall be protected hereunder provided that the liability of the Reassured attaches in excess of a deductible of at least $2,000,000 each accident (including direct damage, if any).

## ARTICLE X

### WAR EXCLUSION

A.    As regards interest under Plate Glass and All Risks business (except All Risks business accepted by the Burglary Departments of the Companies reinsured by the Reassured) no liability shall attach hereto in respect of any loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

B.    As regards interest, other than Workmen's Compensation and Liability, which, at time of loss or damage, are on shore OUTSIDE the territorial limits of the United States of America and Canada, no liability shall attach hereto in respect of any such loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law of Confiscation, by order of any Government or Public Authority.

- 9 -

## ARTICLE XI

EXCESS OF LOSS
REINSURANCE CLAUSE

This Contract in no way applied to protect any liability of the Re-
assured in respect of Excess of Loss Reinsurances of other Reinsurance
Companies written or accepted by the Reassured and the expression "Rein-
surance Companies" shall not apply to Companies normally transacting direct
business but who accept some incidental reinsurance business.

## ARTICLE XII

PREMIUM

A.      The premium to be paid by the Reassured to the Reinsurers in res-
pect of each annual period of this Contract shall be 100/70ths of the aggregate
incurred losses but such premium shall be not less than 2.25% nor more
than 4.00% of the Reassured's gross net earned premium income.

B.      For the purposes of this Article the following definitions shall apply:-

    1) the term "gross net earned premium income" shall
       be understood to mean the gross earned premiums
       accruing to the Reassured from all business the
       subject matter of this Contract after deducting
       return premiums and premiums paid away for
       facultative reinsurances, recoveries under which,
       in accordance with the provisions of Article VI,
       would inure to the benefit of the Reinsurers.

    2) the term "aggregate incurred losses" shall mean
       the aggregate of losses, including loss expenses,
       paid or payable by the Reinsurers under this
       Contract.

    3) the term "annual period" shall mean a period of
       twelve calendar months ending 31st December.

C.      The Reassured shall pay to the Reinsurers an annual deposit premium
equivalent to

    i) 3.00% of the Reassured's gross net earned premium
       income under Excess of Loss Reinsurance Contracts
       plus

    ii) 0.50% of the Reassured's gross net earned premium
       income under Quota Share Reinsurance Contracts

- 10 -

during the immediately preceding annual period, such premium to be paid in four equal instalments on January 1st, April 1st, July 1st and October 1st.

As soon as practicable after the end of each annual period the Reassured shall render to the Reinsurers a premium adjustment statement showing the computation of the premium due to the Reinsurers.

If, at the time of such computation, there are losses outstanding which occurred during the annual period under review and which are likely to affect the liability of the Reinsurers under this Contract, then the premium computation shall be provisional only inasmuch as outstanding losses shall be included in the computation of the aggregate incurred losses for the Reinsurers' portion of the provision made for these outstanding losses in the books of the Reassured.   Revised provisional computations of premium shall thereafter be made annually until all outstanding losses have been settled by the Reassured and the definite computation of premium shall then be made.

D.    The Reassured shall pay to the Reinsurers by way of additional premium any amount which may become due to the Reinsurers in respect of any annual period by reason of :-

1)  the premium computed in the first provisional adjustment exceeding the deposit premium.

2)  the premium computed in a subsequent provisional adjustment exceeding the premium computed in the immediately preceding provisional adjustment.

3)  the premium computed in the final adjustment exceeding :-

a)  the premium computed in the immediately preceding provisional adjustment

or

b)  the deposit premium if no provisional adjustment is necessary.

E.    The Reinsurers shall return to the Reassured any balance which may become due to the Reassured in respect of any annual period by reason of:-

1)  the premium computed in the first provisional adjustment being less than the deposit premium,

2)  the premium computed in a subsequent provisional adjustment being less than the premium computed in the immediately preceding provisional adjustment,

- 11 -

3) the premium computed in the final adjustment being
   less than : -

   a) the premium computed in the immediately pre-
      ceding provisional adjustment

                          or

   b) the deposit premium if no provisional adjust-
      ment is necessary.

F.    The premium due under this Contract shall be based on the amount
of the Reassured's losses recoverable hereunder irrespective of whether
or not claim is made against the Reinsurers.

## ARTICLE XIII

### FEDERAL EXCISE TAX

A.    The Reinsurers have agreed to allow, for the purpose of paying the
Federal Excise Tax, one per cent. of the premium payable hereon to the
extent such premium is subject to Federal Excise Tax.

B.    In the event of any return of premium becoming due hereunder, the
Reinsurers will deduct one per cent. from the amount of the return; the
Reassured or its broker hereunder should take steps to recover the tax
from the U.S. Government.

## ARTICLE XIV

### ACCESS TO RECORDS

     The Reinsurers, or their authorised representatives shall at all
times during the currency of this Contract, or within eighteen months after
its termination, have free access to the books and records of the Reassured
insofar as they relate to business falling within the scope of this Contract,
and in the event of any claim for loss being made hereunder the Reinsurers
shall have free access to all claims records during the continuance of this
Contract or at any time thereafter until the final settlement of all such claims.

## ARTICLE XV

### TAX CLAUSE

     In consideration of the terms under which this Contract is issued,
the Reassured undertake not to claim any deduction in respect of the
premium hereon when making Canadian tax returns or when making tax
returns, other than Income or Profits Tax returns, to any State or Territory
of the United States or to the District of Columbia.

- 12 -

## ARTICLE XVI

<u>CLAIMS</u>

A.     The Reassured shall advise the Reinsurers with reasonable prompti-
tude of any accident or event in which the Reinsurers are known to be in-
volved and shall, on demand, provide the Reinsurers with full information
relative thereto.

B.     The Reinsurers, through their appointed representative Mendes and
Mount, 27 William Street, New York, New York 10005, shall have the right
to co-operate with the Reassured in the defense and/or settlement of any
claims in which the Reinsurers may be interested.

C.     All *settlements* made by the Reassured in co-operation with the Re-
insurers' appointed representative, Mendes and Mount, shall be binding on
the Reinsurers and all settlements made by the Reassured in cases where
the Reinsurers have elected not to exercise their right to co-operate with
the Reassured shall be binding on the Reinsurers.   The Reinsurers shall
pay to the Reassured any amounts that may be recoverable under this
Contract within fifteen (15) days after the receipt of the necessary papers
proving the loss.

## ARTICLE XVII

<u>DIVISION OF
SETTLEMENT COSTS</u>

     Where the Reassured provide a cover under which expenses incurred
by the treaty company in connection with the investigation and adjustment of
claims and suits are included as a part of the loss, then such expenses shall
like-wise be considered a part of the ultimate net loss hereinbefore referred
to.   Otherwise such expenses shall be apportioned between the Reassured
and the Reinsurers in the ratio of their respective liabilities as finally
determined, it being understood however that the Reinsurers shall not be
liable for any part of the salaries of officials or of office expenses of the
Reassured.

## ARTICLE XVIII

<u>COMMUTATION</u>

A.     In the event of the Reassured becoming liable to make periodical
payments under any contract reinsured hereunder, the Reinsurers shall (at
any time after 24 months from the date of the accident) be at liberty to
redeem the payments falling due from them by the payment of a lump sum tc
be determined as follows :
In such case the amount of the claim under this Contract may be settled by

- 13 -

mutual agreement, but if not so settled, the Reassured and the Reinsurers shall refer the matter to two arbitrators, one to be chosen by each party and such arbitrators shall choose an umpire; in the event of the arbitrators failing to agree, the decision of the umpire shall be final and binding upon all parties.   The seat of arbitration shall be in New York, N Y.

B.      The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalised.

## ARTICLE XIX

### INSOLVENCY

A.      In the event of the insolvency of any of the Companies constituting the Reassured this reinsurance shall be payable directly to the insolvent Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the insolvent Company without diminution because of the insolvency of the insolvent Company or because the liquidator, receiver, conservator or statutory successor of the insolvent Company has failed to pay all or a portion of any claim.

B.      It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the insolvent Company shall give written notice to the Reinsurers of the pendency of a claim against the insolvent Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the insolvent Company or its liquidator, receiver, conservator or statutory successor.   The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the insolvent Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the insolvent Company solely as a result of the defence undertaken by the Reinsurers.

## ARTICLE XX

### CANCELLATION

A.      This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

- 14 -

B.    In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contracts of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

1) termination of each such contract

or

2) the respective anniversary date of such Contracts next following the effective date of cancellation

whichever shall first occur.

## ARTICLE XXI

### ARBITRATION

Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers.   The arbitrators shall, before entering upon the reference, appoint an umpire.
The arbitrators and the umpire shall consider this Contract an honourable engagement rather than merely a legal obligation they are relieved of all judicial formalities and may abstain from following the strict rules of law. The award of the arbitrators or, in the event of their disagreement, of the umpire, shall be precedent to any liability or right of action of either party. The costs of the reference and of the award shall be in the discretion of the arbitrators or umpire, as the case may be, who may direct to and by whom and in what manner the same shall be paid.
The  seat of arbitration shall be New York, N.Y.

## ARTICLE XXII

### SERVICE OF SUIT

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Mendes and Mount, 27 William Street, New York, New York 10005, or their nominee or nominees, and that in any suit instituted against any one of them upon this Contract, the Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of

- 15 -

process on behalf of the Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract of reinsurance, and hereby designate the above-named as the firm to which the said officer is authorised to mail such process or a true copy thereof.

Signed in-Schedule No.1. for and on behalf of the Reinsurers

U.S.A.

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision).

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
    (a) become effective on or after 1st May, 1960, or
    (b) become effective before that date and contain the Limited Exclusion Provision set out above;
    provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

---

### NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES)—REINSURANCE.



(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote
    (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or
    (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that
    (a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date at 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.
    (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961 whichever first occurs, whereupon all the provisions of this Clause shall apply.

Printed at Lloyd's, London, England
23/5/58
N.M.A. 1166.

death or destruction
...is also an insured under a
Energy Liability Insurance
Underwriters or Nuclear
...an insured under any such
its limit of liability, or
material and with respect
...ured to maintain financial
984, or any law amendatory
...not been issued would be,
f America, or any agency
United States of America,
...ation

Supplementary Payments
...to expenses incurred with
...ulting from the hazardous
...ion of a nuclear facility by

...uage, death or destruction
...t if
...owned by, or operated by
...ged or disposed therefrom.
...naste at any time possessed,
...disposed of by or on behalf

...arises out of the furnishing
...uipment in connection with
...ion or use of any nuclear
... United States of America,
...clause (c) applies only to
...ar facility.

...losive properties, "nuclear
...ral or byproduct material;
...product material" have the
...or in any law amendatory
...soient, solid or liquid, which
...; "waste" means any waste
...g from the operation by any
...hin the definition of nuclear
...lity" means

...1) separating the isotopes of
...f spent fuel, or (3) handling.

...ng, fabricating or alloying of
...special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either
    (a) become effective on or after 1st May, 1960, or
    (b) become effective before that date and contain the Broad Exclusion Provision set out above;
    provided this paragraph (3) shall not be applicable to
    (i) Garage and Automobile Policies issued by the Reassured on New York risks, or
    (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
    until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in N.M.A. 1118, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause, it is understood and agreed that original liability policies of the Reassured for that....

or Policy or other Contract dated on or after 1st January 1994 will be recognised by the Committee of Lloyd's as entitling the holder to the bene- ~ ~ ~ ~ ~ ~ ~ ~ ~es lodged by the Underwriters of the Policy Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## SCHEDULE NO. 1

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*E. C. Phillips*
Manager.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER 576 | L P S O. No & DATE 65000 9 6 67 | AMOUNT PERCENTAGE OR PROPORTION PER CENT | BROKER 576 | L P S O No & DATE 65000 9 6 67 |
|---|---|---|---|---|---|
| | SYNDICATE | UNDERWRITER'S REF. | | SYNDICATE | UNDERWRITER'S REF. |
| 23.59 | 524 | 67096C | .93 | 947 | 3473 |
| 5.60 | 347 | 2C5 | .47 | 952 | 3473 |
| 18.92 | 210 | 2C11749C | | | |
| 1.47 | 208 | 2C11749C | | | |
| .63 | 208 | 2C11749C | | | |
| 7.00 | 131 | LIA3 | | | |
| .93 | 469 | 1118P | | | |
| 2.34 | 772 | 3211801221 | | | |
| 2.80 | 235 | 935 | | | |
| 1.63 | 484 | OT525558 | | | |
| 2.34 | 975 | 1427766 | | | |
| 2.80 | 56 | 51XE1711 | | | |
| .94 | 677 | 97EXCA29N51 | | | |
| 1.40 | 87C | ZXX0711 | | | |
| 2.34 | 109 | 06X3324 | | | |
| 1.40 | 33 | 4C0E | | | |
| .94 | 990 | C97E | | | |
| 5.60 | 91 | 00014730 | | | |
| .47 | 95 | 0CC14730 | | | |
| 5.14 | 311 | 14XS | | | |
| .23 | 164 | A8923wF162 | | | |
| 1.87 | 250 | 775C | | | |
| .93 | 917 | 5TU045470 | | | |
| .28 | 410 | 5TU045470 | | | |
| NO SYND | TOTAL LINE | | NO SYND 26 | TOTAL LINE 92.99 | |

594/67/4642

<u>ADDENDUM NO. 1</u>

<u>to EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT</u>

issued to

AGENCY MANAGERS LIMITED, NEW YORK
as United States Casualty Reinsurance
Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED
(U.S.BRANCH)
NATIONWIDE MUTUAL INSURANCE COMPANY
CONSTELLATION INSURANCE COMPANY
CITIZENS CASUALTY COMPANY OF NEW YORK
<u>THE MONARCH INSURANCE COMPANY OF OHIO</u>

by

<u>certain UNDERWRITING MEMBERS OF LLOYD'S</u>

IT IS UNDERSTOOD AND AGREED THAT effective from
inception hereof, the premium payable to the Reinsurers for the
coverage afforded the Reassured's Quota Share Reinsurance Contracts
shall be calculated separately from the premium payable to the
Reinsurers for the coverage afforded the Reassured's Excess of
Loss Reinsurance Contracts.

In consequence of the foregoing :-

1) The premium earned by the Reinsurers in
respect of the Reassured's Quota Share
Reinsurance Contracts shall not be subject
to the provisions of paragraph A of Article
XII.

2) The definite computation of such earned
premium shall be made as soon as practicable
after each annual period and shall be set
against the deposit premium, calculated in
accordance with the provisions of sub-
paragraph C ii) of Article XII;  any adjust-
ment to such deposit premium shall thereupon
be made between the Reassured and the
Reinsurers.

3) The term "deposit premium" referred to in
paragraphs D and E of Article XII shall mean
only the deposit premium calculated in
accordance with the provisions of sub-
paragraph C i) of Article XII.

All other terms and conditions shall remain unchanged.



6500 £ * 10 SEP 1958

# LLOYD'S POLICY

(Subscribed only by Underwriting Members of Lloyd's all of whom have complied with the
requirements of the Assurance Companies Acts 1909 and 1946 as to security and otherwise.)

No Policy or other Contract dated on or after 1st Jan., 1924, will be recognised by the Committee
as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters
— or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing

**Whereas** AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty
Reinsurance Managers of and on behalf of the SOUTHERN
ASSURANCE COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY
and CITIZENS CASUALTY COMPANY OF NEW YORK and their
Obligatory Quota Share Reinsurers

(hereinafter called "the Assured"), have paid agreed to pay £13,500.00 minimum
(or)

& Deposit / Premium or Consideration, to Us, who have, hereunto subscribed our Names to

Insure against Loss as follows :—

In accordance with the wording attached which

is hereby declared to be incorporated in and

to form an integral part of this Policy —

½ % of the Indemnity
set forth in the
attached wording

J (A)

Form approved by Lloyd's
Underwriters' Fire and
Non-Marine Association.

Any person not an Underwriting Member
of Lloyd's subscribing this Policy or any
person altering the same if so subscribed,
will be liable to be proceeded against under
Lloyd's Acts.

Printed at Lloyd's, London, England.
1-11-57

No. 1/58 / 5261

Form J (A) (15.11.45)
N.M.A. 210

LC/

~~during the period concurrently with the~~

~~or~~

~~or concurrently with the~~

~~do~~

~~concurrently with~~

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

NOW KNOW YE, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the Schedule hereto are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for Another, our Heirs, Executors, and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors, Administrators, and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions herein expressed) not exceeding the Sum of ~~15.00% of the limits of liability set forth in the attached wording~~

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE

*B. Bennett*

MANAGER.

Dated in London, the 19th

Day of August

One Thousand Nine Hundred

and Fifty-eight

9090 J (A) 37 14

2nd Excess

(LLOYDS 1958-66) 2nd

| In all communications please quote the following reference | |
|---|---|
| **594** | 58/5261 |

## FORM J (A)



**LLOYD'S LONDON**

**Assured** — AGENCY MANAGERS LIMITED, NEW YORK United States Casualty Reinsurance Manager and on behalf of the NORTHERN ASSUR.COMPANY LIMITED, AMERICAN HOME ASSUR.COMPANY and CITIZENS CASUALTY COMPANY OF NEW and their Obligatory Quota Share Reers

Minimum & Deposit **Premium** ₱13,500.00

**Policy and Stamp**

**Date of Expiry**

*The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.*

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:—

PERCENTAGES SIGNED HEREUNDER ARE PERCENTAGES OF THE INDEMNITY SET FORTH IN THE ATTACHED WORDING

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Assured shared between the Members of those Syndicates.

| BROKER'S NO SYNDICATE | L.P.S.O. SLIP NO | L.P.S.O. DATE | UNDERWRITER'S REFERENCE | AMOUNT, PERCENTAGE OR PROPORTION PER CENT |
|---|---|---|---|---|
| 576 | 65001191 | 915.81 | WF618 | 6.000 |
| 347205 | | | | 8.000 |
| 312151 | | | | 2.000 |
| 204151 | | | 421 | 10.000 |
| 524 | | | 54 | 7.500 |
| 440289 | | | | 4.000 |
| 9114770 | | | | 4.500 |
| 793E2141 | | | | 1.500 |
| 484CONF | | | | 12.00 |
| 130 | | | | |

ATTACHING TO AND FORMING PART OF LLOYD'S POLICY NO.594/58/5251

EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers

(hereinafter referred to either
individually or in any combination
as the "Reassured")

by

various UNDERWRITING MEMBERS OF LLOYD'S and
INSURANCE COMPANIES
each for his or its own part and not one
for another

(hereinafter together referred to as the "Reinsurers")

BUSINESS REINSURED            ARTICLE I
HEREUNDER

     In consideration of the payment of premium as provided in
Article XII the Reinsurers shall indemnify the Reassured,
within the limits and subject to the terms and conditions herein
set forth, in respect of the liability attaching to them under
Contracts of Reinsurance written in the United States of America
or in Canada (covering liability wheresoever occurring) in respect
of the following classes of insurance as set forth in Section 46
of Article 4 of the Insurance Laws of the State of New York
including any and all amendments thereto or revisions thereof:

    "Accident and Health Insurance" as defined in sub-paragraph
     (a) of paragraph 3.

    "Water Damage Insurance" as defined in paragraph 6.

    "Burglary and Theft Insurance" as defined in paragraph 7.

    "Glass Insurance" as defined in paragraph 8.

    "Boiler and Machinery Insurance" as defined in paragraph 9.

    "Elevator Insurance" as defined in paragraph 10.

-2-

"Collision Insurance" as defined in paragraph 12.

"Personal Injury Liability Insurance" as defined in paragraph 13.

"Property Damage Liability Insurance" as defined in paragraph 14.

"Workmen's Compensation and Employers' Liability Insurance" as defined in paragraph 15.

All amendments to or revisions of the above paragraphs of Section 46 of Article 4 of the Insurance Laws of the State of New York effective during the currency of this Contract shall be immediately notified to the Reinsurers.

EXCLUSIONS                    ARTICLE II

This Contract does not apply to

a) Railroad business written and classified by the Reassured as such

b) Aviation business written and classified by the Reassured as such

c) The ownership, maintenance and navigation of any vessel whose gross register exceeds 500 tons

d) "Fidelity and Surety Insurance" as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York

e) "Credit Insurance" as defined in paragraph 17 of the said Section 46

f) Any form of financial guarantee business

g) Liability for loss arising from the operations of the Federal Securities Act of 1933

h) Workmen's Compensation and Employers' liability in respect of underground coal mining operations

i) Manufacture, storage, filling, breaking down or transport of explosives.

-3-

It is expressly understood and agreed, however, that except as regards the exclusion of Surety insurance as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York, Credit Insurance as defined in paragraph 17 of the said Section 46 and any form of Financial Guarantee business, the foregoing exclusions shall not apply where the operations outlined areonly incidental to the Original Insured's main operations.

It is further understood and agreed that liability in respect of a contract issued by the Reassured in reinsurance of the American Fidelity and Casualty Company, covering Automobile Public Liability and Property Damage Liability for a limit of $950,000 excess of $50,000, is excluded from the protection of this Contract and the premium income in respect of the said contract shall not be included in the statements of the Reassured's gross net earned premium income rendered in accordance with Article XII.

REINSURING CLAUSE          ARTICLE III

A.    The Reinsurers shall indemnify the Reassured for that portion of the liability attaching to them in respect of business falling within the scope of this Contract which represents the excess of the sum of $500,000 (Five hundred thousand United States Dollars) ultimate net loss in respect of each accident, the liability of the Reinsurers under this contract being limited to the sum of $500,000 (Five hundred thousand United States Dollars) ultimate net loss in respect of each accident.

B.    Notwithstanding the provisions of paragraph A of this Article, it is understood and agreed that as respects liability assumed by the Reassured on both an aggregate basis and an accident basis, or on an aggregate basis alone, in respect of Property Damage Liability Insurance and Products Bodily Injury Liability Insurance providing aggregate limits of indemnity as well as per accident limits, the Reinsurers shall indemnify the Reassured for that portion of the liability attaching to them (whether due to per accident or aggregate limits, or both) which represents the excess of the sum of $500,000 (Five hundred thousand United States Dollars) ultimate net loss in the aggregate in respect of each annual premium period of each policy, or in respect of the full policy period if such period does not exceed fifteen months; but the liability of the Reinsurers under this Contract for the aggregate ultimate net loss under any such policy during said period shall not exceed $500,000 (Five hundred thousand United States Dollars). It is nevertheless understood and agreed that if the Reassured sustain a loss in excess of $500,000 (Five hundred thousand United States Dollars) as the result of one accident which involves business falling within this paragraph B and also other business falling within the scope of this Contract, then the entire loss shall be excluded from this paragraph B and shall be settled in accordance with the other terms and conditions of this Contract.

-4-

C.    The term "policy" as used in paragraph B of this Article means a policy issued direct to an insured by a company reinsured by the Reassured.

D.    The amount of $500,000 in excess of which this Contract attaches, and the Reinsurers' limit of liability of $500,000, as herein set forth, shall be applied separately to :-

    1) Boiler and Machinery Insurances,

    2) Personal Injury Liability and Property Damage Liability Insurances,

    3) Workmen's Compensation and Employers' Liability Insurances,

    4) All other insurances covered hereunder,

in respect of each reassured protected under Contracts of Reinsurance written by the Reassured.

E.    For the purposes of this Contract it is understood and agreed that :-

    1) all contracts of reinsurance of the Reassured which have an inception date, renewal date or anniversary date of 1st January, 1958 shall be deemed to contain the Nuclear Incident Exclusion Clause - Liability - Reinsurance except only that if the Reassured have been unable to give the prescribed notice in term or ever open contracts of reinsurance because the due date for giving such notice has passed then the Nuclear Incident Exclusion Clause shall be incorporated in all such contracts of reinsurance not later than 31st December, 1958.  As regards contracts of reinsurance which have an inception date, renewal date or anniversary date after 1st January, 1958, the Nuclear Incident Exclusion Clause - Liability - Reinsurance shall be included at the next such inception, renewal or anniversary date and in no case later than 31st December, 1958, provided nevertheless that

    2) all Boiler and Machinery contracts of reinsurance of the Reassured (or the Boiler and Machinery portion only of those contracts of reinsurance of the Reassured which cover other hazards in addition to Boiler and Machinery) which have an inception date, renewal date or anniversary date of January 1, 1958 or subsequent thereto, shall be deemed to contain the Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler and Machinery Policies) - Reinsurance.

-5-

ATTACHMENT                      ARTICLE IV

A.   This Contract applies only to Contracts of Reinsurance
entered into by the Reassured which commence or are renewed
on or after January 1st, 1958 and shall continue in force
until cancelled by either party in accordance with the
provisions of Article XX or by the mutual agreement of both
parties.

B.   For the purpose of this Article all Contracts of Reinsurance
entered into by the Reassured for a long or indefinite period shall
be deemed to be renewed from their respective anniversary dates next
following January 1st, 1958.

DEFINITION OF "EACH
ACCIDENT"                       ARTICLE V

     In cases where the Reassured's contracts of reinsurance
contain a definition of "each accident" such definition shall
apply to this Contract, but if the Reassured's contracts of
reinsurance do not contain such a definition, then the term
"each accident" as used herein shall be understood to mean
"each accident or occurrence or series of accidents or occurrences
arising out of any one event"provided that as regards

   (a) Products Liability, said term shall also be understood
       to mean "injuries to all persons and all damage to
       property of others proceeding from the use or
       consumption of one prepared or acquiredlot of
       merchandise or product".

   (b) Classes of insurance hereby reinsured other than those
       enumerated in paragraphs (a), (c) and (d) hereof, said
       term shall also be understood to mean, as regards each
       original assured, "injuries to one or more than one
       person resulting from infection, contagion, poisoning,
       or contamination proceeding from or traceable to the
       same causative agency".

   (c) Property damage (other than Automobile and Products)
       risks, said term shall also be understood to mean
       "loss or losses caused by a series of operations,
       events or occurrences arising out of operations at one
       specific site and which cannot be attributed to any
       single one of such operations, events or occurrences,
       but rather to the cumulative effect of the same".

   (d) An occupational or other disease suffered by an employee
       which disease arises out of the employment and for which
       the employer is liable, the same shall be deemed an
       accident within the meaning hereof.  If the Reassured
       shall within a policy year sustain several losses
       arising out of such an occupational or other disease
       of one specific kind or class, suffered by several
       employees of one assured, such losses shall be deemed

- 6 -

to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(e) As regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retroactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

## ULTIMATE NET LOSS                     ARTICLE VI

A.    The term "ultimate net loss" as used herein shall mean the sum which the Reassured have become legally obligated to pay (excluding all expenses incurred by the Reassured in the settlement or defence of claims) in the settlement of losses or liabilities after making deductions for all recoveries, all salvages, and all claims upon other reinsurers (whether recovered or not) other than

1. the underlying excess of loss reinsurers and

2. the reinsurers subscribing to the Contract referred to in paragraph D of this Article.

B.    All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

C.    Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

D.    Recoveries under the following Excess of Loss Reinsurance Contract shall be disregarded for the purposes of this Article :

"an Excess of Loss Reinsurance Contract covering up to a limit of $300,000 ultimate net loss each accident in excess of $150,000 ultimate net loss each accident and protecting the Reassured only in the event of two or moreof the following classes

- 7 -

1) Boiler and Machinery Insurances

2) Personal Injury Liability and Property
   Damage Liability Insurances

3) Workmen's Compensation and Employers'
   Liability Insurances

4) All other insurances covered under this Contract

*and/or two or more reassureds protected under Contracts
of Reinsurance written by the Reassured being involved
in any one accident. "*

**NET RETAINED
LINES**                              **ARTICLE VII**

    This Contract applies only to that portion of any contract of
reinsurance which the Reassured retain net for their own account
and in calculating the amount of any loss hereunder and also in
computing the amount in excess of which this Contract attaches, only
loss or losses in respect of that portion of any contract of rein-
surance which the Reassured retain net for their own account shall
be included. Recoveries made by the Reassured from their underlying
excess of loss reinsurers and from the reinsurers referred to in
paragraph D of Article VI shall be disregarded for the purposes of
this Article.

**INABILITY TO RECOVER
FROM OTHER REINSURERS**          **ARTICLE VIII**

    The amount of the Reinsurers' liability hereunder in
respect of any loss or losses shall not be increased by reason
of the inability of the Reassured to collect from any other
reinsurers (whether specific or general) any amounts which may
have become due from them, whether such inability arises from
the insolvency of such other reinsurers or otherwise.

**MAXIMUM RETENTION**              **ARTICLE IX**

    It is warranted that the amount retained by the Reassured
net for their own account shall not exceed

1) $1,000,000 each accident in respect of each class of
   insurance (as set forth in Article I of this Contract)
   for each reassured.

2) as respects boiler and machinery insurance, a daily
   indemnity applying to any one location as defined in
   the Boiler and Machinery Manual of the National Bureau
   of Casualty Underwriters of $5,000 per diem provided,
   however, that where the contract issued by the Reassured

-8-

contains no daily limit, such business shall be protected
hereunder provided that the liability of the Reassured
attaches in excess of a deductible of at least
$2,000,000 each accident (including direct damage,
if any).

WAR EXCLUSION                    ARTICLE X

A.    As regards interest under Plate Glass and All Risks business
(except All Risks business accepted by the Burglary Departments
of the companies reinsured by the Reassured) no liability shall
attach hereto in respect of any loss or damage which is occasioned
by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War,
Rebellion, Insurrection, Military or Usurped Power or Martial
Law or Confiscation by order of any Government or Public Authority.

B.    As regards interests, other than Workmen's Compensation
and Liability, which, at time of loss or damage, are on shore
OUTSIDE the territorial limits of the United States of America
and Canada, no liability shall attach hereto in respect of
any such loss or damage which is occasioned by War, Invasion,
Hostilities, Acts of Foreign Enemies, Civil War, Rebellion,
Insurrection, Military or Usurped Power or Martial Law or
Confiscation, by order of any Government or Public Authority.

EXCESS OF LOSS
REINSURANCE CLAUSE               ARTICLE XI

     This Contract in no way applies to protect any liability
of the Reassured in respect of Excess of Loss Reinsurances of
other Reinsurance Companies written or accepted by the Reassured
and the expression "Reinsurance Companies" shall not apply to
Companies normally transacting direct business but who accept
some incidental reinsurance business.

PREMIUM                          ARTICLE XII

A.    The premium payable to the Reinsurers shall be calculated
at the rate of 1.375% applied to the gross net earned premium income
of the Reassured.
The term "gross net earned premium income" as used herein shall
be understood to mean the gross earned premiums accruing to
the Reassured from all business the subject matter of this
Contract after deducting return premiums and premiums paid
away for facultative reinsurances, recoveries under which,
in accordance with the provisions of Article VI, would inure
to the benefit of the Reinsurers.

-9-

B.    The Reassured shall pay to the Reinsurers a minimum annual premium of $30,000 in four quarterly instalments of $7,500 on January 1st, April 1st, July 1st and October 1st of each year.

C.    The Reassured shall forward to the Reinsurers within 45 days after the close of each calendar quarter a statement of the Reassured's gross earned premium income during the quarter then immediately past and adjustment of premium shall thereupon be made in respect of each calendar year of this Contract as follows :-

1) if the earned premium for the first quarter exceeds $7,500 the amount in excess thereof shall thereupon be paid to the Reinsurers

2) if the earned premium for the first two quarters exceeds $15,000 the amount in excess thereof after deducting any additional premium paid under paragraph 1) above shall thereupon be paid to the Reinsurers

3) if the earned premium for the first three quarters exceeds $22,500, the amount in excess thereof after deducting any additional premium paid under paragraphs 1) and 2) above shall thereupon be paid to the Reinsurers

4) the statement rendered in respect of the fourth quarter shall include a recapitulation of the earned premium accruing to the Reinsurers for the first three quarters, and the total earned premium for the year shall then be determined.  If such total earned premium :-

a) exceeds the aggregate of :-

(i) the Minimum and Provisional Premium of $30,000 and

(ii) the total of any additional premiums paid to the Reinsurers under the provisions of paragraphs 1), 2) and 3) of this Article, the amount in excess thereof shall be paid to the Reinsurers

b) is less than the aggregate arrived at in paragraph (a) above, the balance shall be refunded to the Reassured, provided nevertheless that in no event shall the premium retained by the Reinsurers be less than $30,000.

-10-

FEDERAL REINSURANCE
STAMP TAX                          ARTICLE XIII

A.    The Reinsurers have agreed to allow for the purpose of
purchasing U.S. Government Stamps for attachment hereto one per
cent. of the premium payable hereon to the extent such premium
is subject to Federal Stamp Tax.

B.    In the event of any return of premium becoming due hereunder
the Reinsurers will deduct from the amount of the return  the same
percentage as the allowance which they have made towards the
Federal Stamp Tax.

C.    Nevertheless where such return of premium becomes due owing
to the cancellation hereof by Reinsurers the above deduction of
the tax allowance shall not be made except in so far as the
Reassured have a right to recover the tax from the U.S. Government.

ACCESS TO RECORDS          ARTICLE XIV

     The Reinsurers, or their authorised representatives shall
at all times during the currency of this Contract, or within
eighteen months after its termination, have free access to the
books and records of the Reassured insofar as they relate to
business falling within the scope of this Contract, and in
the event of any claim for loss being made hereunder the
Reinsurers shall have free access to all claims records during
the continuance of this Contract or at any time thereafter
until the final settlement of all such claims.

TAX CLAUSE                 ARTICLE XV

     In consideration of the terms under which this Contract
is issued, the Reassured undertake not to claim any deduction
in respect of the premium hereon when making Canadian tax returns
or when making tax returns, other than Income or Profits Tax
returns, to any State or Territory of the United States or to the
District of Columbia.

CLAIMS                     ARTICLE XVI

A.    The Reassured shall advise the Reinsurers with reasonable
promptitude of any accident or event in which the Reinsurers are
known to be involved and shall, on demand, provide the Reinsurers
with full information relative thereto.

B.    The Reinsurers, through their appointed representative
Mendes and Mount, 27 William Street, New York 5, New York, shall
have the right to co-operate with the Reassured in the defense
and/or settlement of any claims in which they may be interested.

-11-

C.   All settlements made by the Reassured in co-operation with the Reinsurers' appointed representative, Mendes and Mount, shall be binding on the Reinsurers and all settlements made by the Reassured in cases where the Reinsurers have elected not to exercise their right to co-operate with the Reassured shall be binding on the Reinsurers. The Reinsurers shall pay to the Reassured any amounts that may be recoverable under this Contract within fifteen (15) days after the receipt of the necessary papers proving the loss.

DIVISION OF
SETTLEMENT COSTS                  ARTICLE XVII

Where the Reassured provide a cover under which expenses incurred by the treaty company in connection with the investigation and adjustment of claims and suits are included as a part of the loss, then such expenses shall like-wise be considered a part of the ultimate net loss hereinbefore referred to. Otherwise such expenses shall be apportioned between the Reassured and the Reinsurers in the ratio of their respective liabilities as finally determined, it being understood however that the Reinsurers shall not be liable for any part of the salaries of officials of or office expenses of the Reassured.

COMMUTATION                      ARTICLE XVIII

A.   In the event of the Reassured becoming liable to make periodical payments under any contract reinsured hereunder, the Reinsurers shall (at any time after 24 months from the date of the accident) be at liberty to redeem the payments falling due from them by the payment of a lump sum to be determined as follows:  In such cases the amount of the claim under this Contract may be settled by mutual agreement, but if not so settled, the Reassured and the Reinsurers shall refer the matter to two arbitrators, one to be chosen by each party and such arbitrators shall choose an umpire;  in the event of the arbitrators failing to agree, the decision of the umpire shall be final and binding upon all parties.  The seat of arbitration shall be in New York, N.Y.

B.   The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalised.

INSOLVENCY                       ARTICLE XIX

The Reinsurers hereby agree that in the event of the insolvency of any of the Companies constituting the Reassured, this contract of reinsurance shall be so construed that the reinsurance shall be payable directly to the insolvent Company or to its liquidator, receiver or statutory successor by the Reinsurers in the event of the insolvency of any of the Companies constituting the Reassured on the basis of the liability of the Reassured under the contract or contracts reinsured without diminution because of the insolvency of any Company constituting the Reassured.  It is further agreed that the liquidator, the receiver, or the statutory successor of the insolvent Company shall give written notice to the

-12-

Reinsurers of the pendency of a claim against the insolvent
Company on the contract or contracts reinsured within a
reasonable time after such claim is filed in the insolvency
proceedings; that during the pendency of such claim the
Reinsured may investigate such claim and interpose, at their
own expense, in the proceeding where such claim is to be
adjudicated any defence or defences which they may deem
available to the insolvent Company or its liquidator, receiver,
or statutory successor.
The expense thus incurred by the Reinsurers shall be chargeable
subject to court approval against the insolvent Company as part
of the expense of liquidation to the extent of a proportionate
share of the benefit which may accrue to such insolvent Company
solely as a result of the defence undertaken by the Reinsurers.

CANCELLATION                 ARTICLE XX

A.    This Contract may be terminated by either party giving
at least ninety days notice to the other party stating the
effective date and time on which this Contract shall terminate.

B.    In the event of this Contract being so terminated the
liability of the Reinsurers shall continue in force in respect
of all Contracts of reinsurance falling within the protection
of this Contract which are current at the effective date of the
cancellation notice until

    1) termination of each such contract

              or

    2) the respective anniversary dates of such Contracts
       next following the effective date of cancellation

whichever shall first occur.

ARBITRATION                  ARTICLE XXI

    Any dispute arising under this Contract shall be sub-
mitted to a court of arbitration composed of two arbitrators,
one to be appointed by the Reassured and the other by the
Reinsurers.
The arbitrators shall, before entering upon the reference,
appoint an umpire.
The arbitrators and the umpire shall consider this Contract
an honourable engagement rather than merely a legal obligation
they are relieved of all judicial formalities and may abstain
from following the strict rules of law.
The award of the arbitrators or, in the event of their dis-
agreement, of the umpire, shall be precedent to any liability
or right of action of either party.

-13-

The costs of the reference and of the award shall be in the
discretion of the arbitrators or umpire, as the case may be,
who may direct to and by whom and in what manner the same
shall be paid.
The seat of arbitration shall be New York, N.Y.

SERVICE OF SUIT                ARTICLE XXII

It is agreed that in the event of the failure of the Reinsurers
to pay any amount claimed to be due hereunder, the Reinsurers at the
request of the Reassured, will submit to the jurisdiction of any
Court of competent jurisdiction within the United States and will
comply with all requirements necessary to give such Court jurisdic-
tion and all matters arising hereunder shall be determined in
accordance with the law and practice of such Court.
It is further agreed that service of process in such suit may be
made upon Mendes and Mount, 27 William Street, New York 5, New
York or their nominee or nominees, and that in any suit instituted
against any one of them upon this Contract, the Reinsurers will
abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.

The above-named are authorised and directed to accept service
of process on behalf of the Reinsurers in any such suit any/or
upon the request of the Reassured to give a written undertaking
to the Reassured that they will enter a general appearance upon
Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or
district of the United States which makes provision therefor,
Reinsurers hereby designate the Superintendent, Commissioner or
Director of Insurance or other officer specified for that purpose
in the statute, or his successor or successors in office, as their
true and lawful attorney upon whom may be served any lawful process
in any action, suit or proceeding instituted by or on behalf of the
Reassured or any beneficiary hereunder arising out of this contract
of reinsurance, and hereby designate the above-named as the firm
to which the said officer is authorised to mail such process or a
true copy thereof.

U S A

COPY OF CLAUSES ATTACHED TO OR ENDORSED ON OR FORMING PART

U S A

**NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES)—REINSURANCE**

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph.

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

(a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or

(b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a) all policies issued by the Reassured effective on or before 30th April, 1958 shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

(b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply

Printed at Lloyd's, London, England.
22/8/58
N M A 1156



**ABILITY—REINSURANCE.**

...bility accruing to the Reassured as ...rers or reinsurers formed for the ...or indirect reinsurer of any such

paragraph (1) of this Clause it is ...surance all the original contracts ... clause specified in clause II of ...f in this paragraph (2) shall be ...e Limited Exclusion Provision

...o injury, sickness, disease, death ...ured under the policy is also an ...liability insurance issued by the ...ciation or the Mutual Atomic ...t at the time of the occurrence ...death or destruction, provided ...urance shall be deemed to be in ...withstanding such contract has ...liability

...arers' Comprehensive Personal ...ensive Personal Liability Policies ...ire and the liability portion of ...ies of policies stated above, such ...l the applicable types of Home-

...riginal contracts as described in ...ment, which become effective on ...graph (2) shall not be applicable ...re effective prior to 1st January ...g jurisdiction thereof shall have ...o the Limited Exclusion Provision

...n clause II of paragraph (2) ...aragraph (1) of this Clause it ...reinsurance the original liability ...ement) affording the following

...owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability ...shall be deemed to include with respect to such coverages, from the time specified in clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision)

IV **Broad Exclusion Provision**

It is agreed that the policy does not apply

(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction, provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability,

(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard, provided that except for hyproduct material, the paragraph (b) shall not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility after sale or distribution to others.

(c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance, operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America ...its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard,

(d) to the transportation handling, use, sale, distribution or disposal of hyproduct material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard

As used herein

1   The term "nuclear energy hazard" means the radioactive, toxic, explosive or other hazardous properties of source material special nuclear material or hyproduct material

2   The terms "source material", "special nuclear material" and "hyproduct material" shall have the meanings given them in the Atomic Energy Act of 1954 or by law amendatory thereof provided, except for hyproduct material (a) contained in or combined with special nuclear material or (b) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, "hyproduct material" shall not include any radioactive isotope away from a nuclear facility.

3   The term "nuclear facility" means

(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material,

(b) any equipment or device (i) designed or used for the separation of the isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or of irradiated materials containing special nuclear material, (iii) designed or used for reprocessing or making use of such irradiated materials, or (iv) designed or used for processing waste hyproduct material;

(c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material or waste consisting of or containing special nuclear material or hyproduct material, and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations Subdivision (iii) of paragraph (b) foregoing is not applicable to the occasional mechanical processing or fabricating of special nuclear material by any person or organization at a location which contains no equipment, device or apparatus otherwise defined herein as a nuclear facility, where special nuclear or hyproduct material is not regularly handled, stored, or disposed of as waste, and which is principally used for other operations not related to the handling, fabricating or use of special nuclear material

4   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property

V   The inception dates and thereafter of the original liability contracts as affording coverage specified in paragraph (3) hereof, whether new, renewal or replacement, which become effective on or after 1st March 1958, provided this paragraph (3) shall not be applicable to policies issued by the Reassured which are effective prior to 1st January 1959 if the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Reassured of the Broad Exclusion Provision in the policies specified in this paragraph (3)

(4) Without in any way restricting the operation of paragraph (3) of this Clause it is understood and agreed that original liability contracts of the Reassured effective on or before 31st December 1958 shall be free until their natural expiry dates from the application of the other provisions of this Clause with respect to any risk located in Canada

12/11/87
N M A 1118

Printed at Lloyd's, London, England

W. F & D LTD., LONDON

65000 * 23 SEP 1959

DATE 1st June, 1959

Ref. 594/59/5261

ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261    and should be attached thereto.

Re
*Name of/Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of the NORTHERN ASSURANCE COMPANY
LIMITED, AMERICAN HOME ASSURANCE COMPANY and
CITIZENS CASUALTY COMPANY OF NEW YORK and
their Obligatory Quota Share Reinsurers

IT IS HEREBY UNDERSTOOD AND AGREED that

1) the Lloyd's participation in the total coverage
afforded by the wording attached to the above
numbered Policy is increased from 45.00% to
49.50% and the Underwriters subscribing to such
increased participation are the UNDERWRITING
MEMBERS OF LLOYD'S, each for its own part and not
one for another, who are Members of the Syndicates
the Definitive Numbers of which in the attached
list, and the proportions subscribed, are set forth
in the table on the Schedule attached hereto;

2) a minimum annual premium of $14,850 (being 49.50%
of $30,000) is payable, in respect of the calendar
year 1959, in four equal instalments of $3,712.50
at January 1st, April 1st, July 1st and October 1st,1959.

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## S C H E D U L E

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates. | | | |
|---|---|---|---|
| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO. | L.P.S.O. SLIP NO | L.P.S.O. DATE |
| PER CENT | 576 SYNDICATE | 65000 | 23 9 59 1 |
| | | UNDERWRITER'S REFERENCE | |
| 6.00 | 347 | 205 WF 612 | |
| 10.00 | 210 | 151 | |
| 10.00 | 524 | 59/D421 1 10 | |
| 7.50 | 440 | 28 9 54 | |
| 4.00 | 795 | 1T58 E2141 | |
| 4.00 | 91 | 14770 | |
| 1.50 | 484 | CONF | |
| 2.50 | 130 | | |
| 1.50 | 322 | 20 2 10 | |
| 2.50 | 250 | TP C 22T58 | |

65000 * 23 SEP 1959

W F & D. LTD., LONDON.

DATE 28th August, 1959

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/58/5261   and should be attached thereto.

Name of Assured (Re) AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers.


    IT IS HEREBY UNDERSTOOD AND AGREED that all Contracts of
Reinsurance entered into by the Reassured which have an inception
date, renewal date or anniversary date of 1st January, 1959 shall,
for the purposes of this Contract, be deemed to contain the
Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance,
a copy of which is attached to this Endorsement.


    All other terms of this Contract remain unchanged.



20119





**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1.  This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2.  Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:—

    I.   Nuclear reactor power plants including all auxiliary property on the site or

    II.  Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and " critical facilities " as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of " special nuclear material ", and for reprocessing, salvaging, chemically separating, storing or disposing of " spent " nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3.  Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused.  However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4.  Without in any way restricting the operations of paragraphs (1) (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5.  It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6.  The term " special nuclear material " shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7.  Reassured to be sole judge of what constitutes :

    (a) substantial quantities, and

    (b) the extent of installation, plant or site

*Note.*—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply

W F & D. LTD., LONDON.

**65000 \* 12 JUL 1960**

DATE 19th May, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/5261    and should be attached thereto.

Re

*Name of Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurers Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1960.

1) the Constitution Insurance Corporation of New York,
   The Unity Fire and General Insurance Company and
   the United States Branch of Skandinavia Insurance
   Company Limited, have appointed Agency Managers
   Limited as their Casualty Reinsurance Underwriters and
   Managers, and as from the aforesaid date this Contract
   is extended to cover the said Corporation and Companies.

2) the Lloyd's participation in the total coverage
   afforded by the wording attached to this policy, is
   amended from 49.50% to 54.00% and the Underwriters
   subscribing to such amended participation are the
   UNDERWRITING MEMBERS OF LLOYD'S, each for his own
   part and not one for another, who are Members of the
   Syndicates the Definitive Numbers of which in the
   attached list, and the proportions subscribed are set
   forth in the Table on the Schedule attached hereto;

3) a minimum annual premium of £16,200 (being 54.00% of £30,000)
   is due hereon in respect of the calendar year 1960 and
   shall be payable in equal quarterly instalments on January 1st,
   April 1st, July 1st and October 1st, 1960.

All other terms and conditions shall remain unchanged.

20119

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at least the Seal of Lloyd's Policy Signing Office.

S C H E D U L E

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER

| Definitive Numbers of Syndicates and Amount Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates | | | | |
|---|---|---|---|---|
| AMOUNT PERCENTAGE OR PROPORTION | BROKERS NO | L.P.S.O. SLIP NO | L.P.S.O. DATE | |
| PER CENT | 576 | 65000 | 12 | 7 | 60 | 2 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| 6.00 | 347 | 205 WF 612 | | |
| 10.00 | 210 | 151 | | |
| 10.00 | 524 | 60D421 21D59 | | |
| 7.50 | 440 | 28 9 54 | | |
| 3.00 | 795 | E 2141 21 12 | | |
| 1.00 | 470 | E 2141 21 12 | | |
| 4.00 | 91 | 14770 | | |
| 1.50 | 484 | CONF | | |
| 2.50 | 130 | | | |
| 1.50 | 322 | 20 | | |
| 2.50 | 250 | TP C | | |
| 2.50 | 57 | TPTR 6044 | | |
| 1.00 | 56 | EX3818 TP | | |
| 1.00 | 998 | 38 1283 | | |

W F & D. LTD, LONDON

DATE 10th May, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/5261   and should be attached thereto.

Re         AGENCY MANAGERS LIMITED, NEW YORK as United States
Name of/Assured Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share Reinsurers

IT IS UNDERSTOOD AND AGREED THAT effective 1st July, 1959,
liability in respect of a contract issued by the Reassured
in reinsurance of the Allstate Insurance Company, Illinois,
covering Automobile Public Liability and Property Damage
Liability in respect of business, written by the Company
through the agency of, and serviced by, Markel Service, Inc.,
for a limit of $950,000 excess of $50,000, is excluded from
the protection of this Contract and the premium income in
respect of the said contract shall not be included in the
statements of the Reassured's gross net earned premium income
rendered in accordance with Article XII.

All other terms and conditions shall remain unchanged.

W. F. & D. LTD., LONDON.

DATE 6th December, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/5261 and should be attached thereto.
Re

*Name of/Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers,
CONSTITUTION INSURANCE CORPORATION OF NEW YORK, UNITY
FIRE AND GENERAL INSURANCE COMPANY and the UNITED
STATES BRANCH OF SKANDINAVIA INSURANCE COMPANY LIMITED.

IT IS UNDERSTOOD AND AGREED THAT the Nuclear

Incident Exclusion Clause - Liability - Reinsurance attached

to this Policy, is cancelled and replaced by the Nuclear

Incident Exclusion Clause - Liability - Reinsurance attached

hereto.

All other terms and conditions remain unchanged.



20119

ATTACHING TO AND FORMING PART OF ENDORSEMENT DATED 6th DECEMBER
1960 to LLOYD'S POLICY NO. 594/58/5261

U.S.A.

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature, the insured's portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

    (a)  become effective on or after 1st May, 1960, or

    (b)  become effective before that date and contain the Limited Exclusion Provision set out above.

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination forms of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability, or

    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom.

    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured, or

    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties, "nuclear material" means source material, special nuclear material or byproduct material, "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof, "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor, "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof, "nuclear facility" means

    (a)  any nuclear reactor,

    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations, "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

    (a)  become effective on or after 1st May, 1960, or

    (b)  become effective before that date and contain the Broad Exclusion Provision set out above,

provided this paragraph (3) shall not be applicable to

    (i)  Garage and Automobile Policies issued by the Reassured on New York risks, or

    (ii)  statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental

W. F. & D. LTD., LONDON.

DATE 15th February, 1961

<u>ENDORSEMENT TO LLOYD'S POLICY</u>

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261 and should be attached thereto.

Re
Name of/Assured    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers,
CONSTITUTION INSURANCE CORPORATION OF NEW YORK, UNITY
FIRE AND GENERAL INSURANCE COMPANY and the UNITED
STATES BRANCH OF SKANDINAVIA INSURANCE COMPANY LIMITED

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1961,

1) The Unity Fire and General Insurance Company is replaced
by the Cosmopolitan Mutual Insurance Company of New York

2) the name of the Northern Assurance Company Limited is
changed to The Northern Assurance Company of America

3) Article V is deleted and replaced by the following
Article V :-

DEFINITION OF "EACH
ACCIDENT"                           ARTICLE V

In cases where the Reassured's contracts of reinsurance
contain a definition of "each accident" such definition shall
apply to this Contract, but if the Reassured's contracts of
reinsurance do not contain such a definition, then the term
"each accident" as used herein shall be understood to mean
"each accident or occurrence or series of accidents or
occurrences arising out of any one event" provided that as
respects

(a) PRODUCTS LIABILITY.
Said term shall alternatively be understood to
mean "injuries to all persons proceeding from the
use or consumption of one prepared or acquired lot
of merchandise or product".

(b) PRODUCTS PROPERTY DAMAGE
Said term shall alternatively be understood to
mean "all damage to property of others proceeding
from the use or consumption of one prepared or
acquired lot of merchandise or product".

20119

Page 2 to Lloyd's Endorsement Dated 15th February, 1961 of

Policy No. 594/58/5261

(c) PROPERTY DAMAGE (other than Automobile and Products)
Said term shall alternatively subject to provisions
(1) and (2) below be understood to mean "loss or
losses caused by a series of operations, events or
occurrences arising out of operations at one specific
site and which cannot be attributed to any single one
of such operations, events or occurrences, but rather
to the cumulative effect of same".

In assessing each accident within the foregoing
definition it is understood and agreed that

(1) the series of operations, events or occurrences
shall not extend over a period longer than 12
(twelve) consecutive months

and

(2) the Reassured may elect the date on which the
period of not exceeding 12 (twelve) consecutive
months shall be deemed to have commenced.

In the event that the series of operations, events
or occurrences extend over a period longer than 12
(twelve) consecutive months then each consecutive
period of 12 months, the first of which commences
on the date elected under (2) above, shall form
the basis of claim under this Contract.

(d) PUBLIC LIABILITY (other than Automobile and Products)
Said term shall alternatively be understood to mean
as regards each original Insured "injuries to one or
more then one person resulting from infection,
contagion, poisoning or contamination proceeding
from or traceable to the same causative agency".

(e) An occupational or other disease suffered by an
employee which disease arises out of the employment
and for which the employer is liable, the same shall
be deemed an accident within the meaning hereof.
In case the Reassured shall within a policy year
sustain several losses arising out of such an
occupational or other disease of one specific kind
or class, suffered by several employees of one
original Insured, such losses shall be deemed to
arise out of one accident and the date of such
accident shall be deemed to be the commencing date
of the policy year. A loss as respects each
employee affected by the disease shall be deemed to

<u>Page 3 to Lloyd's Endorsement Dated 15th February,1961 of</u>

<u>Policy No. 594/58/5261</u>

have been sustained by the Reassured at the date
when compensable disability of the employee
commenced and at no other date.

(f) As regards business where the measure of loss is
the "neglect, error or omission" of the insured, it
is understood that neglect, error or omission shall
be deemed to be an accident within the meaning
hereof, and the date of loss shall be the date on
which the first act of negligence, error or
omission occurred, except that where the Contract
of Reinsurance entered into by the Reassured grants
a retroactive cover and the first such act occurred
during the retroactive period it shall be deemed to
have occurred on the first day of the said Contract
of Reinsurance.

4) effective January 1st 1961 the Underwriters subscribing this
policy's participation of 54.00% of the total coverage
afforded by the wording attached thereto, are the UNDERWRITING
MEMBERS OF LLOYD'S, each for his own part and not one for
another, who are Members of the Syndicates the Definitive
Numbers of which in the attached list, and the proportions
subscribed are set forth in the Table on the Schedule attached
hereto;

5) a minimum annual premium of $16,200 (being 54.00% of $30,000)
is due hereon in respect of the calendar year 1961 and shall
be payable in equal quarterly instalments on January 1st,
April 1st, July 1st and October 1st, 1961.

All other terms and conditions shall remain unchanged.

65C03 * 24 AUG 196

# S C H E D U L E.

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.



**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates

| AMOUNT, PERCENTAGE OR PROPORTION PER CENT | BROKERS No 576 | L.P.S.O. SLIP No 65003 | L.P.S.O. DATE 24 | | 8 | 6 |
|---|---|---|---|---|---|---|
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | | |
| 6.00 | 347 | 205 | | | | |
| 10.00 | 210 | 151E | | | | |
| 10.00 | 524 | 61D421 | | | | |
| 7.50 | 440 | E28S54 | | | | |
| 3.00 | 795 | 22104TX02141 | | | | |
| 1.00 | 470 | 22104TX02141 | | | | |
| 4.00 | 91 | 14770 | | | | |
| 1.50 | 484 | 32CONF | | | | |
| 2.50 | 131 | 350 | | | | |
| 1.50 | 322 | 202 | | | | |
| 2.50 | 250 | TPC | | | | |
| 2.50 | 57 | 0456044 | | | | |
| 1.00 | 56 | 41XE3818 | | | | |
| 1.00 | 998 | 38X1283 | | | | |

54.00

W. F. & D. Ltd., London

DATE 14th June, 1962

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261 and should be attached thereto.

Re

*Name of Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
THE NORTHERN ASSURANCE COMPANY OF AMERICA, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers, CONSTITUTION INSURANCE CORPORATION OF
NEW YORK, COSMOPOLITAN MUTUAL INSURANCE COMPANY OF
NEW YORK and the UNITED STATES BRANCH OF SKANDINAVIA
INSURANCE COMPANY LIMITED.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1962

1) the name of the Reassured is amended to read as
   follows :-

   "AGENCY MANAGERS LIMITED, NEW YORK as United States
   Casualty Reinsurance Managers of and on behalf of
       THE INDEMNITY MARINE ASSURANCE COMPANY LTD (U.S.BRANCH)
       CITIZENS CASUALTY COMPANY OF NEW YORK,
       COSMOPOLITAN MUTUAL INSURANCE COMPANY
       THE CONSTITUTION INSURANCE CORPORATION OF NEW YORK,
       SKANDINAVIA INSURANCE COMPANY LTD (U.S.BRANCH),
       NATIONWIDE MUTUAL INSURANCE COMPANY
   and their Quota Share Reinsurers.

   Notwithstanding the foregoing amendment, any liability which
   may attach to THE NORTHERN ASSURANCE COMPANY OF AMERICA and
   AMERICAN HOME ASSURANCE COMPANY under contracts of reinsurance
   in force at midnight, December 31st, 1961, shall be protected
   hereunder until the expiry date (or in the event of long-term
   contracts, the first anniversary date next following December
   31st, 1961) of such contracts of reinsurance.

2) the exclusions a) to i) listed in Article II are deleted
   and replaced by the following exclusions a) to g).

   a) Business of the Reassured which is designated by
      them as aviation Business provided, however, that
      this exclusion does not apply to Workmen's
      Compensation Business.

20119

- 2 -

to Lloyd's Endorsement Dated 14th June 1962, Policy No.594/58/5261

      b) Fidelity and Surety Insurance as defined in Section 46 of Article 4 of the Insurance Law of the State of New York.

      c) Credit Insurance as defined in paragraph 17 of the said Section 46.

      d) Any form of financial guarantee business.

      e) Liability for loss arising from the operations of the Federal Securities Acts of 1933.

      f) Workmen's Compensation and Employers' Liability in respect of underground coal mining operations.

      g) Protection and Indemnity business and Ocean Marine business written and classified by the Reassured as such.

3) the Lloyd's participation in the total coverage afforded by the wording attached to this Policy is amended from 54.00% to 55.11% and is subscribed by the UNDERWRITING MEMBERS OF LLOYD'S, each for his own part and not one for another, who are Members of the Syndicates the Definitive Numbers of which in the attached list, and the proportions subscribed are set forth in the Table on the Schedule attached hereto ;

4) a minimum annual premium of $16,533 (being 55.11% of $30,000) is due hereon in respect of the calendar year 1962 and shall be payable in equal quarterly instalments on January 1st, April 1st, July 1st and October 1st, 1962.

All other terms and conditions remain unchanged.

65004 * -5 JUL 1962

## S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER.

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount insured thereof between the Members of those Syndicates. | | | |
|---|---|---|---|
| AMOUNT, PERCENTAGE OR PROPORTION PER CENT | BROKERS NO 576 | L.P.S.O. SLIP NO. 65004 | L.P.S.O. DATE 5 7 62 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 5.85 | 347 | 205 | |
| 11.34 | 210 | 151E | |
| .85 | 208 | 151E | |
| 9.76 | 524 | 62D961 | |
| .98 | 969 | | |
| 7.32 | 440 | E28S54 | |
| 2.93 | 795 | 32104TX02141 | |
| .98 | 470 | 32104TX02141 | |
| 3.90 | 91 | 14770 | |
| 1.46 | 484 | 32CONF | |
| 2.44 | 131 | 350 | |
| 1.46 | 322 | 202 | |
| 2.93 | 250 | TPC | |
| .97 | 56 | 51XE3818 | |
| .97 | 998 | 38X1283 | |
| .97 | 783 | 207V5172 | |

55.11

W. F. & D. LTD . LONDON

65007 ＊ 14 MAY 1963

DATE   2nd April, 1963.

### ENDORSEMENT TO LLOYD'S POLICY    Ref; 594/63/5261

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/58/5261 and should be attached thereto.

RE
*Name of Assured*   AGENCY MANAGERS LIMITED,NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED
(U.S.BRANCH), CITIZENS CASUALTY COMPANY OF NEW
YORK, COSMOPOLITAN MUTUAL INSURANCE COMPANY,
THE CONSTITUTION INSURANCE CORPORATION OF NEW YORK,
SKANDINAVIA INSURANCE COMPANY LIMITED (U.S.BRANCH),
NATIONWIDE MUTUAL INSURANCE COMPANY, and their
Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st,
1963,

1)    the name of the Reassured is amended to read as follows :

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.S.
BRANCH), CITIZENS CASUALTY COMPANY OF NEW YORK,
GREAT AMERICAN INSURANCE COMPANY, COSMOPOLITAN
MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE
COMPANY, SKANDINAVIA INSURANCE COMPANY, LIMITED, and
their Quota Share Reinsurers.

Notwithstanding the foregoing amendment, any liability which
may attach to the CONSTITUTION INSURANCE CORPORATION OF NEW YORK
under contracts of reinsurance in force at midnight, December 31st,
1962, shall be protected hereunder until the expiry date (or in
the event of long-term contracts, the first anniversary date
next following December 31st, 1962) of such contracts of
reinsurance.

2)    the first paragraph of Section A of Article XII is
amended to read as follows :

The premiums payable to the Reinsurers shall be
calculated at a rate of 1.125% applied to the gross
net earned premium income of the Reassured.

20119

-2-

3)  the Lloyd's participation in the total coverage
    afforded by the wording attached to this Policy
    is amended from 55.11% to 57.21% and is subscribed
    by the UNDERWRITING MEMBERS OF LLOYD'S, each for
    his own part and not one for another, who are Members
    of the Syndicates the Definitive Numbers of which in
    the attached list, and the proportions subscribed are
    set forth in the table on the Schedule attached hereto.

4)  a minimum and deposit premium of £17,163.00 (being
    57.21% of £30,000) is due and payable hereon for the
    calendar year 1963.


All other terms and conditions remain unchanged.

65007 * 14 MAY 1963



# SCHEDULE

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know It, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*E. B. Phillips*

MANAGER

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO | L.P.S.O. No | L.P.S.O. DATE |
|---|---|---|---|
| PER CENT | 576 | 65007 | 14 5 63 |
|  | SYNDICATE | UNDERWRITERS REFERENCE | |
| 5.58 | 347 | 205 | |
| 10.82 | 210 | 151E | |
| .81 | 208 | 151E | |
| 9.30 | 524 | 63D961 | |
| .93 | 969 | | |
| 6.98 | 440 | E28854 | |
| 2.48 | 795 | 32104TX02141 | |
| 1.24 | 470 | 32104TX02141 | |
| 3.72 | 91 | 14770 | |
| 1.39 | 484 | 32C0NF | |
| 2.33 | 131 | LIAB | |
| 1.40 | 322 | 202 | |
| 2.79 | 250 | TP | |
| 1.86 | 56 | 51XE3818 | |
| .93 | 998 | 38X1283 | |
| .93 | 783 | 207V5172 | |
| 3.72 | 510 | 6860 | |

57.21

W. F. & D. Ltd . London

DATE 28th August,1963.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/5261 and should be attached thereto.

RE
*Name of/Assured*      AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS
CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL INSURANCE
COMPANY, NATIONWIDE MUTUAL INSURANCE COMPANY,
SKANDINAVIA INSURANCE COMPANY LIMITED.
and their Quota Share Reinsurers.


        IT IS UNDERSTOOD AND AGREED THAT, notwithstanding
anything contained in Article II  this Contract is extended
to include Fidelity Insurance when written as part of an
"Umbrella" policy, provided Reinsurers shall not be liable
for losses discovered or for losses sustained prior to
January 1st, 1963, such date being the retroactive date
in respect of this extension.


All other terms and conditions remain unchanged.



20119

W F & D. LTD., LONDON

65010 * 22 JAN 1964

DATE 1st January, 1964

## ENDORSEMENT TO LLOYD'S POLICY 594/64/5261

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261  and should be attached thereto.
RE

*Name of/Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S. BRANCH), CITIZENS
CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL
INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE
COMPANY, SKANDINAVIA INSURANCE COMPANY LIMITED,
and their Quota Share Reinsurers.


IT IS UNDERSTOOD AND AGREED that, effective January 1st,
1964,

1) the Lloyd's participation in the total coverage
afforded by the wording attached to this Policy is
amended from 57.21% to 56.56% and is subscribed by
the UNDERWRITING MEMBERS OF LLOYD'S, each for his own
part and not one for another, who are Members of the
Syndicates, the Definitive Numbers of which in the
attached list, and the proportions subscribed, are
set forth in the Table on the Schedule attached hereto;


2) a minimum and deposit premium of $16,968 (being
56.56% of $30,000) is due hereon for the calendar
year 1964 and shall be payable in four equal instal-
ments at January 1st, April 1st, July 1st and October
1st, 1964.


All other terms and conditions remain unchanged.

20119

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## S C H E D U L E



**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number is the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name

LLOYD'S POLICY SIGNING OFFICE

*E. B. Phillips* Manager.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S NO | L.P.S.O. NO | L.P.S.O. DATE |
|---|---|---|---|
| PER CENT | 576 | 65010 | 22  11·64 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 5·43 | 347 | 205 | |
| 10·70 | 210 | 151E | |
| 1·06 | 208 | 151E | |
| ·45 | 214 | 151E | |
| 9·05 | 524 | 64D961 | |
| 1·81 | 969 | | |
| 6·79 | 440 | E28S54 | |
| 2·17 | 795 | 17TX02141 | |
| 1·45 | 470 | 3210402141 | |
| 3·62 | 91 | 14770 | |
| 1·36 | 484 | 32CONF | |
| 2·26 | 131 | LIA3 | |
| 1·36 | 322 | 202 | |
| 2·71 | 250 | TPC | |
| 1·81 | 56 | 51XE3818 | |
| ·91 | 783 | 207V5172 | |
| 3·62 | 510 | 6860 | |

56-56

W F & D. LTD., LONDON

DATE 1st January, 1965.

## ENDORSEMENT TO LLOYD'S POLICY Ref: 594/65/5261

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261 and should be attached thereto.

*Name of Assured* AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S. BRANCH), CITIZENS
CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL
INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE
COMPANY, SKANDINAVIA INSURANCE COMPANY LIMITED,
and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective January
1st, 1965,

1) the name of the Reassured is amended to read
as follows :-

AGENCY MANAGERS LIMITED, NEW YORK, as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S. BRANCH), CITIZENS
CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE
COMPANY, SKANDINAVIA INSURANCE COMPANY, LIMITED,
and their Quota Share Reinsurers.

Notwithstanding the foregoing amendment, any
liability which may attach to  the COSMOPOLITAN
MUTUAL INSURANCE COMPANY under. contracts of
reinsurance in force at midnight, December 31st,
1964 shall be protected hereunder until the
expiry date (or, in the event of long-term
contracts, the first anniversary date next
following December 31st, 1964) of such contracts
of reinsurance.

2) the minimum annual premium of £50,000 referred to
in paragraph 3 of Article XII of the wording
attached to this Policy is reduced to £25,000
payable in quarterly instalments of £6,250;

20119

PAGE 2 - TO ENDORSEMENT TO LLOYD'S POLICY NO. 594/58/5261.

3) the Lloyd's participation in the total
coverage afforded by the wording attached to
this Policy is amended from 56.56% to 60.90%
and is subscribed by the UNDERWRITING MEMBERS
OF LLOYD'S, each for his own part and not one
for  another, who are Members of the Syndicates,
the Definitive Numbers of which in the attached
list, and the proportions subscribed, are set
forth in the Table on the Schedule attached
hereto;

4) a minimum and deposit premium of £15,225 (being
60.90% of £25,000) is due hereon for the calendar
year 1965 and shall be payable in four equal
instalments at January 1st, April 1st, July 1st
and October 1st, 1965.


All other terms and conditions remain unchanged.

65001 ☼ 28 JAN 1965

SCHEDULE



...Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that each due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,

*E. B. Phillips*
MANAGER

Definitive Number of Syndicates and Amount, Percentage or Proportion of the Total Amount insured shared between the Members of those Syndicates

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S No | LPSO No | LPSO DATE | | | COPIES |
|---|---|---|---|---|---|---|
| PER CENT | 576 | 65001 | 28 | 1 | 65 | 1 |

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 5.33 | 347 | 205 |
| 10.52 | 210 | 151E |
| 1.04 | 208 | 151E |
| .44 | 214 | |
| 9.60 | 524 | 65D961 |
| 1.07 | 969 | |
| 6.67 | 440 | E28554 |
| 3.56 | 772 | 3210402141 |
| 3.56 | 91 | 14770 |
| 1.33 | 484 | 0T525558 |
| 2.22 | 131 | L1A3 |
| 1.33 | 322 | 202 |
| 2.67 | 250 | TP |
| 3.56 | 56 | 53XE3818 |
| .89 | 783 | 207V5172 |
| 5.33 | 510 | 6860 |
| 1.78 | 975 | 142E |

60.90

W. F. & D. LTD. LONDON.

DATE 21st July, 1966

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261    and should be attached thereto.

Re

*Name of/Assured* AGENCY MANAGERS LIMITED, NEW YORK, as United
States Casualty Reinsurance Managers of and on
behalf of THE INDEMNITY MARINE ASSURANCE COMPANY
LIMITED (U.S.BRANCH) CITIZENS CASUALTY COMPANY
OF NEW YORK, CONSTELLATION INSURANCE COMPANY,
NATIONWIDE MUTUAL INSURANCE COMPANY, SKANDINAVIA
INSURANCE COMPANY LIMITED, and their Quota Share
Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective 1st January, 1966,
the name of the Reassured is amended to read as follows :-

"AGENCY MANAGERS LIMITED, NEW YORK, as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH) NATIONWIDE MUTUAL
INSURANCE COMPANY, CONSTELLATION INSURANCE
COMPANY, CITIZENS CASUALTY COMPANY OF NEW YORK,
THE MONARCH INSURANCE COMPANY OF OHIO, SKANDINAVIA
INSURANCE COMPANY LIMITED, and their Quota Share
Reinsurers.    "

All other terms and conditions remain unchanged.



20119

65003 * -6 JUL 1966

W. F. & D. LTD. LONDON

DATE 9th June, 1966

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5261   and should be attached thereto.
Re

*Name of Assured* AGENCY MANAGERS LIMITED, NEW YORK, as United States
Casualty Reinsurance Managers of and on behalf of
the INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.S.
BRANCH), CITIZENS CASUALTY COMPANY OF NEW YORK, GREAT
AMERICAN INSURANCE COMPANY, NATIONWIDE MUTUAL
INSURANCE COMPANY, SKANDINAVIA INSURANCE COMPANY,
LIMITED, and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective January 1st,
1966,

1) the name of the Reassured is amended to read as follows :-

"AGENCY MANAGERS LIMITED, NEW YORK, as United States
Casualty Reinsurance Managers of and on behalf of THE
INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.S.BRANCH)
CITIZENS CASUALTY COMPANY OF NEW YORK, CONSTELLATION
INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE COMPANY,
SKANDINAVIA INSURANCE COMPANY LIMITED, and their Quota
Share Reinsurers. "

In consequence of the foregoing amendment, any liability
which may attach to the GREAT AMERICAN INSURANCE COMPANY
under contracts of Reinsurance in force at Midnight
December 31st, 1965 shall be assumed by the CONSTELLATION
INSURANCE COMPANY

2) the minimum annual premium of $25,000 referred to in paragraph
3 of Article XII of the wording attached to this Policy is
reduced to $22,500 payable in quarterly instalments of $5,625.

3) the Lloyd's participation in the total coverage afforded by the
wording attached to this Policy is 60.90% and is subscribed by
the UNDERWRITING MEMBERS OF LLOYD'S, each for his own part and
not one for another, who are Members of the Syndicates, the
Definitive Numbers of which in the attached list, and the
proportions subscribed are set forth in the Table on the
Schedule attached hereto;

4) a minimum and deposit premium of $13,702.50 (being 60.90% of
$22,500) is due and payable hereon for the calendar year 1966
in four equal instalments at January 1st,  April 1st, July
1st and October 1st, 1966.

All other terms and conditions remain unchanged.



No Policy or other Contract dated on or after 1st January, 1924, will be recognized by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or other Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

<u>S C H E D U L E</u>



**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set on in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*E. B. Phillips* MANAGER.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount Assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S NO. | L.P.S.O. NO. | | LP.S.O DATE | | |
|---|---|---|---|---|---|---|
| PER CENT | 576 | 65003 | 6 | 7 | 66 | 1 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | | |
| 5.33 | 347 | 205 | | | | |
| 10.80 | 210 | 151E | | | | |
| .84 | 208 | 151E | | | | |
| .36 | 214 | 151E | | | | |
| 9.54 | 524 | 66D961 | | | | |
| 1.53 | 969 | 66D961 | | | | |
| 6.67 | 440 | PH252854 | | | | |
| 3.56 | 772 | 3210402141 | | | | |
| 1.59 | 91 | 14770 | | | | |
| 2.22 | 484 | 0T525558 | | | | |
| 1.33 | 131 | L1A3 | | | | |
| 2.67 | 322 | 202 | | | | |
| 3.56 | 250 | 775C | | | | |
| .89 | 56 | 53XE3818 | | | | |
| 5.33 | 783 | 207V5172 | | | | |
| 1.78 | 510 | 6860 | | | | |
| | 975 | 142E | | | | |

17    60.90

<u>EXCESS OF LOSS CASUALTY RETROCESSION</u>
<u>CONTRACT NO. 594/67/5261</u>

issued to

<u>AGENCY MANAGERS LIMITED, NEW YORK</u>
<u>etal</u>

by

<u>certain UNDERWRITING MEMBERS OF LLOYD'S</u>



63009 *-5 JUN 197

594/67/5261

EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and on
behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED,
(U.S. Branch)
NATIONWIDE MUTUAL INSURANCE COMPANY
CONSTELLATION INSURANCE COMPANY
CITIZENS CASUALTY COMPANY OF NEW YORK
THE MONARCH INSURANCE COMPANY OF OHIO

(hereinafter called the "Reassured")

by

## certain UNDERWRITING MEMBERS OF LLOYD'S

-   (hereinafter called the "Reinsurers")

## ARTICLE I

BUSINESS
REINSURED HEREUNDER

In consideration of the payment of premium as provided in Article
XII the Reinsurers shall indemnify the Reassured, within the limits and
subject to the terms and conditions herein set forth, in respect of the
liability attaching to them under Contracts of Reinsurance written in the
United States of America or in Canada (covering liability wheresoever occur-
ring) in respect of the following classes of insurance as set forth in Section
46 of Article 4 of the Insurance Laws of the State of New York including any
and all amendments thereto or revisions thereof :

"Accident and Health Insurance" as defined in sub-
paragraph (a) of paragraph 3.

"Water Damage Insurance" as defined in paragraph 6.

"Burglary and Theft Insurance" as defined in paragraph 7.

"Glass Insurance" as defined in paragraph 8.

"Boiler and Machinery Insurance" as defined in paragraph 9.

"Elevator Insurance" as defined in paragraph 10.

-2-

"Collision Insurance" as defined in paragraph 12.

"Personal Injury Liability Insurance" as defined in paragraph 13.

"Property Damage Liability Insurance" as defined in paragraph 14.

"Workmen's Compensation and Employers' Liability Insurance" as defined in paragraph 15.

All amendments to or revisions of the above paragraphs of Section 46 of Article 4 of the Insurance Laws of the State of New York effective during the currency of this Contract shall be immediately notified to the Reinsurers.

## ARTICLE II

EXCLUSIONS

This Contract does not apply to :-

a) Quota Share Reinsurance Contracts where the original policy limits exceed $25,000 any one person, $50,000 any one accident for Bodily Injury Liability, and $10,000 any one accident for Property Damage Liability.

b) Business of the Reassured which is designated by them as Aviation Business provided, however, that this exclusion does not apply to Workmen's Compensation Business.

c) "Fidelity and Surety Insurance" as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York, other than Fidelity Insurance when written as part of an "Umbrella" policy, provided Reinsurers shall not be liable for losses discovered or sustained prior to January 1st, 1963.

d) Credit Insurance as defined in paragraph 17 of the said Section 46.

e) Any form of financial guarantee business.

f) Liability for loss arising from the operations of the Federal Securities Acts of 1933.

g) Workmen's Compensation and Employers' Liability in respect of underground coal mining operations.

h) Protection and Indemnity business and Ocean Marine business written and classified by the Reassured as such.

It is understood and agreed, however, that except as regards the

-3-

exclusion of Surety Insurance as defined in Section 46, of Article 4 of the Insurance Laws of the State of New York, Credit Insurance as defined in paragraph 17 of the said Section 46 and any form of Financial Guarantee business, the foregoing exclusions shall not apply where the operations outlined are only incidental to the Original Insured's main operations.

It is further understood and agreed that,

i) this Contract does not apply to loss or liability excluded under the provisions of the attached Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance, Nuclear Incident Exclusion Clause - Liability - Reinsurance, and Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler and Machinery Policies) - Reinsurance.

## ARTICLE III

## REINSURING CLAUSE

A.    The Reinsurers shall indemnify the Reassured for that portion of the liability attaching to them in respect of business falling within the scope of this Contract which represents the excess of the sum of $500,000 (Five hundred thousand United States Dollars) ultimate net loss in respect of each accident, the liability of the Reinsurers under this contract being limited to the sum of $500,000 (Five hundred thousand United States Dollars) ultimate net loss in respect of each accident.

B.    Notwithstanding the provisions of paragraph A of this Article, as respects liability assumed by the Reassured on both an aggregate basis and an accident basis, or on an aggregate basis alone, in respect of Property Damage Liability Insurance and Products Bodily Injury Liability Insurance providing aggregate limits of indemnity as well as per accident limits, the Reinsurers shall indemnify the Reassured for that portion of the liability attaching to them (whether due to per accident or aggregate limits, or both) which represents the excess of the sum of $500,000 (Five hundred thousand United States Dollars) ultimate net loss in the aggregate in respect of each annual premium period of each policy, or in respect of the full policy period if such period does not exceed fifteen months; but the liability of the Re-insurers under this Contract for the aggregate ultimate net loss under any such policy during said period shall not exceed $500,000 (Five hundred thousand United States Dollars). Nevertheless, if the Reassured sustain a loss in excess of $500,000 (Five hundred thousand United States Dollars) as the result of one accident which involves business falling within this paragraph B and also other business falling within the scope of this Contract, then the entire loss shall be excluded from this paragraph B and shall be settled in accordance with the other terms and conditions of this Contract.

C.    The term "policy" as used in paragraph B of this Article means a policy issued direct to an insured by a company reinsured by the Reassured.

-4-

D.        The amount of $500,000 in excess of which this Contract attaches, and the Reinsurers' limit of liability of $500,000 herein set forth, shall be applied separately to :-

1) Boiler and Machinery Insurances,

2) Personal Injury Liability and Property Damage Liability Insurances,

3) Workmen's Compensation and Employers' Liability Insurances,

4) All other insurances covered hereunder,

in respect of each reassured protected under Contracts of Reinsurance written by the Reassured.

## ARTICLE IV

ATTACHMENT

A.        This Contract applies only to Contracts of Reinsurance entered into by the Reassured which commence or are renewed on or after January 1, 1967 and shall continue in force until cancelled by either party in accordance with the provisions of Article XX or by the mutual agreement of both parties.

B.        For the purpose of this Article all Contracts of Reinsurance entered into by the Reassured for a long or indefinite period shall be deemed to be renewed from their respective anniversary dates next following January 1st, 1967.

## ARTICLE V

DEFINITION OF
"EACH ACCIDENT"

        In cases where the Reassured's contracts of reinsurance contain a definition of "each accident" such definition shall apply to this Contract, but if the Reassured's contracts of reinsurance do not contain such a definition, then the term "each accident" as used herein shall be understood to mean "each accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects

(a) PRODUCTS LIABILITY

Said term shall alternatively be understood to mean "injuries to all persons proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

-5-

(b) PRODUCTS PROPERTY DAMAGE

Said term shall alternatively be understood to mean "all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(c) PROPERTY DAMAGE (other than Automobile and Products)

Said term shall alternatively subject to provisions (1) and (2) below be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of same".

In assessing each accident within the foregoing definition it is understood and agreed that

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (twelve) consecutive months

and

(2) the Reassured may elect the date on which the period of not exceeding 12 (twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (twelve) consecutive months then each consecutive period of 12 months, the first of which commences on the date elected under (2) above, shall form the basis of claim under this Contract.

(d) PUBLIC LIABILITY (other than Automobile and Products)

Said term shall alternatively be understood to mean as regards each original Insured "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency.

(e) An occupation or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind

-6-

or class, suffered by several employees of one original Insured, such losses shall be deemed to arise out of one accident and the date of such accident shall be deemed to be the commencing date of the policy year. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(f)   As regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retro-active cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

## ARTICLE VI

### ULTIMATE NET LOSS

A.      The term "ultimate net loss" as used herein shall mean the sum which the Reassured have become legally obligated to pay (excluding all expenses incurred by the Reassured in settlement or defence of claims) in the settlement of losses or liabilities after making deductions for all recoveries, all salvages, and all claims upon other reinsurers (whether recovered or not) other than :-

1.   the underlying excess of loss reinsurers and

2.   the reinsurers subscribing to the Contract referred to in paragraph D of this Article.

B.      All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

C.      Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

D.      Recoveries under the following Excess of Loss Reinsurance Contract shall be disregarded for the purposes of this Article :

"an Excess of Loss Reinsurance Contract covering up to a limit of $300,000 ultimate net loss each accident in excess of $150,000 ultimate net loss each accident and protecting

-7-

the Reassured only in the event of two or more of the
following classes

1)    Boiler and Machinery Insurances

2)    Personal Injury Liability and Property Damage
      Liability Insurances

3)    Workmen's Compensation and Employers' Liability
      Insurances

4)    All other reinsurances covered under this Contract.

and/or two or more reassureds protected under Contracts of
Reinsurance written by the Reassured being involved in any one
accident.

## ARTICLE VII

NET RETAINED LINES

This Contract applies only to that portion of any contract of rein-
surance which the Reassured retain net for their own account and in calcu-
lating the amount of any loss hereunder and also in computing the amount
in excess of which this Contract attaches, only loss or losses in respect of
that portion of any contract of reinsurance which the Reassured retain net
for their own account shall be included. Recoveries made by the Reassured
from the reinsurers referred to in paragraph D of Article VI shall be dis-
regarded for the purposes of this Article.

## ARTICLE VIII

INABILITY TO RECOVER
FROM OTHER REINSURERS

The amount of the Reinsurers' liability hereunder in respect of any
loss or losses shall not be increased by reason of the inability of the Re-
assured to collect from any other reinsurers (whether specific or general)
any amounts which may have become due from them, whether such inability
arises from the insolvency of such other reinsurers or otherwise.

## ARTICLE IX

MAXIMUM RETENTION

It is warranted that the amount retained by the Reassured net for
their own account shall not exceed

1)    $1,000,000 each accident in respect of each class of
      insurance (as set forth in Article I of this Contract)
      for each reassured,

-8-

2)    as respects boiler and machinery insurance, a daily
indemnity applying to any one location as defined in
the Boiler and Machinery Manual of the National
Bureau of Casualty Underwriters of $5,000 per diem
provided, however, that where the contract issued by
the Reassured contains no daily limit, such business
shall be protected hereunder provided that the liability
of the Reassured attaches in excess of a deductible of
at least $2,000,000 each accident (including direct
damage, if any).

## ARTICLE X

WAR EXCLUSION

A.        As regards interest under Plate Glass and All Risks business
(except All Risks business accepted by the Burglary Departments of the
Companies reinsured by the Reassured) no liability shall attach hereto
in respect of any loss or damage which is occasioned by War, Invasion,
Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection,
Military or Usurped Power or Martial Law or Confiscation by order of
any Government or Public Authority.

B.        As regards interest, other than Workmen's Compensation and
Liability, which, at time of loss or damage, are on shore OUTSIDE the
territorial limits of the United States of America and Canada, no liability
shall attach hereto in respect of any such loss or damage which is occas-
ioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War,
Rebellion, Insurrection, Military or Usurped Power or martial law or
Confiscation, by order of any Government or Public Authority.

## ARTICLE XI

EXCESS OF LOSS
REINSURANCE CLAUSE

        This Contract in no way applies to protect any liability of the
Reassured in respect of Excess of Loss Reinsurances of other Reinsurance
Companies written or accepted by the Reassured and the expression
"Reinsurance Companies" shall not apply to Companies normally transacting
direct business but who accept some incidental reinsurance business.

## ARTICLE XII

PREMIUM

A.        The premium payable to the Reinsurers shall be calculated at the
rate of 1.125% applied to the gross net earned premium income of the
Reassured.

-9-

The term "gross net earned premium income" as used herein shall be understood to mean the gross earned premiums accruing to the Reassured from all business the subject matter of this Contract after deducting return premiums and premiums paid away for facultative reinsurances, recoveries under which, in accordance with the provisions of Article VI, would inure to the benefit of the Reinsurers.

B.      The Reassured shall pay to the Reinsurers a minimum annual premium of $20,000 in four quarterly instalments of $5,000 January 1st, April 1st, July 1st and October 1st of each year.

C.      The Reassured shall forward to the Reinsurers within 45 days after the close of each calendar quarter a statement of the Reassured's gross earned premium income during the quarter then immediately past and adjustment of premium shall thereupon be made in respect of each calendar year of this Contract as follows :-

1)   if the earned premium for the first quarter exceeds $5,000 the amount in excess thereof shall thereupon be paid to the Reinsurers

2)   if the earned premium for the first two quarters exceeds $10,000 the amount in excess thereof after deducting any additional premium paid under paragraph 1) above shall thereupon be paid to the Reinsurers

3)   if the earned premium for the first three quarters exceeds $15,000, the amount in excess thereof after deducting any additional premium paid under paragraphs 1) and 2) above shall thereupon be paid to the Reinsurers

4)   the statement rendered in respect of the fourth quarter shall include a recapitulation of the earned premium accruing to the Reinsurers for the first three quarters, and the total earned premium for the year shall then be determined.
     If such total earned premium :-

a) exceeds the aggregate of :-

(i)   the Minimum and Provisional Premium of $20,000 and

(ii)  the total of any additional premiums paid to the Reinsurers under the provisions of paragraphs 1), 2, and 3) of this Article, the amount in excess thereof shall be paid to the Reinsurers.

b) is less than the aggregate arrived at in paragraph (a) above, the balance shall be refunded to the Reassured,

-10-

provided nevertheless that in no event shall the
premium retained by the Reinsurers be less than
$20,000.

## ARTICLE XIII

### FEDERAL EXCISE TAX

A.    The Reinsurers have agreed to allow, for the purpose of paying
the Federal Excise Tax, one per cent of the premium payable hereon to
the extent such premium is subject to Federal Excise Tax.

B.    In the event of any return of premium becoming due hereunder,
the Reinsurers will deduct one per cent from the amount of the return;
the Reassured or its broker hereunder should take steps to recover the
tax from the U.S. Government.

## ARTICLE XIV

### ACCESS TO RECORDS

The Reinsurers, or their authorised representatives shall at all
times during the currency of this Contract, or within eighteen months after
its termination, have free access to the books and records of the Reassured
insofar as they relate to business falling within the scope of this Contract,
and in the event of any claim for loss being made hereunder the Reinsurers
shall have free access to all claims records during the continuance of this
Contract or at any time thereafter until the final settlement of all such
claims.

## ARTICLE XV

### TAX CLAUSE

In consideration of the terms under which this Contract is issued,
the Reassured undertake not to claim any deduction in respect of the premium
hereon when making Canadian Tax returns or when making tax returns,
other than Income or Profits Tax returns, to any State or Territory of the
United States or to the District of Columbia.

## ARTICLE XVI

### CLAIMS

A.    The Reassured shall advise the Reinsurers with reasonable
promptitude of any accident or event in which the Reinsurers are known to
be involved and shall, on demand, provide the Reinsurers with full
information relative thereto.

-11-

B.       The Reinsurers, through their appointed representative Mendes and Mount, 27 William Street, New York, New York 10005, shall have the right to co-operate with the Reassured in the defense and/or settlement of any claims in which the Reinsurers may be interested.

C.       All settlements made by the Reassured in co-operation with the Reinsurers' appointed representative, Mendes and Mount, shall be binding on the Reinsurers and all settlements made by the Reassured in cases where the Reinsurers have elected not to exercise their right to co-operate with the Reassured shall be binding on the Reinsurers.  The Reinsurers shall pay to the Reassured any amounts that may be recoverable under this Contract within fifteen (15) days after the receipt of the necessary papers proving the loss.

## ARTICLE XVII

DIVISION OF
SETTLEMENT COSTS

Where the Reassured provide a cover under which expenses incurred by the treaty company in connection with the investigation and adjustment of claims and suits are included as a part of the loss, then such expenses shall like-wise be considered a part of the ultimate net loss hereinbefore referred to.  Otherwise such expenses shall be apportioned between the Reassured and the Reinsurers in the ratio of their respective liabilities as finally determined, it being understood however that the Reinsurers shall not be liable for any part of the salaries of officials or of office expenses of the Reassured.

## ARTICLE XVIII

COMMUTATION

A.       In the event of the Reassured becoming liable to make periodical payments under any contract reinsured hereunder, the Reinsurers shall (at any time after 24 months from the date of the accident) be at liberty to redeem the payments falling due from them by the payment of a lump sum to be determined as follows:  In such case the amount of the claim under this Contract may be settled by mutual agreement, but if not so settled, the Reassured and the Reinsurers shall refer the matter to two arbitrators, one to be chosen by each party and such arbitrators shall choose an umpire; in the event of the arbitrators failing to agree, the decision of the umpire shall be final and binding upon all parties.  The seat of arbitration shall be in New York, N.Y.

B.       The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalised.

-12-

## ARTICLE XIX

### INSOLVENCY

A.      In the event of the insolvency of any of the Companies constituting the Reassured this reinsurance shall be payable directly to the insolvent Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the insolvent company without diminution because of the insolvency of the insolvent Company or because the liquidator, receiver, conservator or statutory successor of the insolvent Company has failed to pay all or a portion of any claim.

B.      It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the insolvent Company shall give written notice to the Reinsurers of the pendency of a claim against the insolvent Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the insolvent Company or its liquidator, receiver, conservator or statutory successor.  The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the insolvent Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the insolvent Company solely as a result of the defence undertaken by the Reinsurers.

## ARTICLE XX

### CANCELLATION

A.      This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

B.      In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contracts of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

      1)   termination of each such contract

               or

      2)   the respective anniversary date of such Contracts next following the effective date of cancellation,

whichever shall first occur.

-13-

## ARTICLE XXI

ARBITRATION

     Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers. The arbitrators shall, before entering upon the reference, appoint an umpire.
The arbitrators and the umpire shall consider this Contract an honourable engagement rather than merely a legal obligation they are relieved of all judicial formalities and may abstain from following the strict rules of law. The award of the arbitrators or, in the event of their disagreement, of the umpire, shall be precedent to any liability or right of action of either party. The costs of the reference and of the award shall be in the discretion of the arbitrators or umpire, as the case may be, who may direct to and by whom and in what manner the same shall be paid.
The seat of arbitration shall be New York, N.Y.

## ARTICLE XXII

SERVICE OF SUIT

     .   It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Mendes and Mount, 27 William Street, New York, New York 10005, or their nominee or nominees, and that in any suit instituted against any one of them upon this Contract, the Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

     The above-named are authorised and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

     Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract of reinsurance, and hereby designate the above-named as the firm to which the said officer is authorised to mail such process or a true copy thereof.

- 14 -

Signed for and on behalf of the Reinsurers in the Schedule No.1.
attached hereto

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and " critical facilities " as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of " special nuclear material ", and for reprocessing, salvaging, chemically separating, storing or disposing of " spent " nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate.

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY
### (BOILER AND MACHINERY POLICIES)—REINSURANCE.

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph,

This Policy does not apply to " loss ", whether it be direct or indirect, proximate or remote

    (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

    (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) (from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I    It is agreed that the policy does not apply under any liability coverage, to { *injury, sickness, disease, death or destruction* } with respect to which an insured under { *bodily injury or property damage* } the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II   Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
(a) become effective on or after 1st May, 1960, or
(b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I.   Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* } { *bodily injury or property damage* }
(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability, or
(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief,* } to expenses incurred with respect to { *first aid,* } { *bodily injury, sickness, disease or death* } resulting from the hazardous properties of { *bodily injury* }

No Policy or other Contract dated on or after 1st January 1924 will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Insurance or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## SCHEDULE NO. 1

**Now Know Ye**, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

Manager.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

J (A)

Form approved by Lloyd's
Underwriters' Fire and
Non-Marine Association.

Printed at Lloyd's, London, England.
4-12-53

No. 591 54/5261

Part I - 2nd Excess

45% OF THE INDEMNITY
SET FORTH IN THE
ATTACHED WORDING

Any person not an Underwriting Member
of Lloyd's subscribing this Policy, or any
person substituting his name in this Policy,
will be liable to be proceeded against
under Lloyd's Acts.



# LLOYD'S POLICY

**65000 15FEB1955**

No Policy or other Contract dated on or after 1st Jan., 1924, will be recognised by the Committee of Lloyd's
as entitling the holder to the benefit of the Funds and/or Guarantee lodged by the Underwriters of the Policy
or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

(Subscribed only by Underwriting Members of Lloyd's all of whom have complied with the requirements of
the Assurance Companies Acts 1909 and 1946 as to security and otherwise.)

**Whereas** AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY &
CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK
(hereinafter called "the Assured"), have hereunto subscribed our Names to
insure and agreed to pay $17,235 Minimum

& Provisional Premium or Consideration to Us, who have hereunto subscribed our Names to
insure against Loss as follows:—

part of this Policy,
incorporated in and to form an integral
hereto which is hereby declared to be
in accordance with the wording attached

IT IS UNDERSTOOD AND AGREED that the premium of $17,235 shown
on the face of this Policy is the minimum and provisional
premium applicable to the period from inception to December
31st 1955

Form J (A) (15.11.45)
N.M.A. 210

NOW KNOW YE, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the Schedule hereto are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not, one for Another, our Heirs, Executors, and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors, Administrators, and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions herein expressed) not exceeding in the whole 45% of the limit of liability set forth in the attached wording

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,

Dated in London, the       25th

Day of      January       One Thousand Nine Hundred

and       Fifty-five.

MANAGER.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

By/......c.A.

— see back hereof —

<table>
<tr><td colspan="2">In all communications please quote<br>the following reference</td></tr>
<tr><td>**594**</td><td>54/5261</td></tr>
</table>

## FORM J (A)



LLOYD'S,                                    LONDON.

Re *Assured*   AGENCY MANAGER LIMITED.

Minimum &, Deposit
  *Premium*   £17,235

*Policy and Stamp*        —

*Date of Expiry*

*The Assured is requested to read this Policy, and,
if incorrect, return it immediately for alteration.*

In the event of any occurrence likely to
result in a claim under this Policy, immediate
notice should be given to :—

*Replaced effective Jan 1st 1958
by new pol 58/5261*

*(left margin, vertical text)*

Part I

2nd Excess
Jerm. 12/31/57

IN ORDER to bring the printed portion of this policy into conformity with the
attached typewritten wording it is understood and agreed that wherever the word
"Assured" appears in the said printed portion the word "Reassured" shall be
substituted therefor.

ENTAGES SIGNED HEREUNDER ARE PERCENTAGES OF THE INDEMNITY SET FORTH IN THE ATTACHED WORDING.

| Definitive Numbers of the Syndicates and Amount, Percentage or Proportion of the Total Liability insured shared between the Members of those Syndicates. | | | | | |
|---|---|---|---|---|---|
| Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. | Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. |
| 6 % | 347 | WF612  205 | | | |
| 10 % | 212 | 151 | | | |
| 10 % | 404 | 29AR 24.9 | | | |
| 7½ % | 440 | 28 9.54 | | | |
| 4 % | 91 | 14292 | | | |
| 4 % | 795 | 30.9.54 2141 | | | |
| 1½ % | 484 | Conf | | | |
| 2 % | 130 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| BROKER & NO. 576 | | POLICY NO. 54/5261 | | | |
| L.P.S.O. DATE 15 FEB 55 | | L.P S O. SLIP NO. 65000 | | | |

ATTACHING TO AND FORMING PART OF LLOYD'S POLICY NO. 594/54/5261

EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty
Reinsurance Managers of and on behalf of the NORTHERN
ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY
COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK

(hereinafter referred to either
idividually or in any combination
as the "Reassured")

by

various UNDERWRITING MEMBERS OF LLOYD'S and INSURANCE COMPANIES
each for his or its own part and not one for another

(hereinafter referred to as the "Reinsurers")

BUSINESS REINSURED
HEREUNDER                        ARTICLE I

In consideration of the payment of premium as provided in
Article XII the Reinsurers shall indemnify the Reassured,
within the limits and subject to the terms and conditions herein
set forth, in respect of the liability attaching to them under
Contracts of Reinsurance written in the United States of America
or in Canada (covering liability wheresoever occurring) in respect
of the following classes of insurances as set forth in Section 46
of Article 4 of the Insurance Laws of the State of New York
including any and all amendments thereto or revisions thereof:

"Accident and Health Insurance" as defined in subparagraph
(a) of paragraph 3.

"Water Damage Insurance" as defined in paragraph 6.

"Burglary and Theft Insurance" as defined in paragraph 7.

"Glass Insurance" as defined in paragraph 8.

"Boiler and Machinery Insurance" as defined in paragraph 9.

"Elevator Insurance" as defined in paragraph 10.

"Collision Insurance" as defined in paragraph 12.

-2-

"Personal Injury Liability Insurance" as defined in
paragraph 13.

"Property Damage Liability Insurance" as defined in
paragraph 14.

"Workmen's Compensation and Employers' Liability Insurance"
as defined in paragraph 15.

All amendments to or revisions of the above paragraphs of Section
46 of Article 4 of the Insurance Laws of the State of New York
effective during the currency of this Contract shall be
immediately notified to the Reinsurers:

EXCLUSIONS                           ARTICLE II

This Contract does not apply to

a) Railroad business written and classified by the
   Reassured as such

b) Aviation business written and classified by the
   Reassured as such

c) the ownership, maintenance and navigation of any
   vessel whose gross register exceeds 500 tons

d) "Fidelity and Surety Insurance" as defined in
   Section 46 of Article 4 of the Insurance Laws of
   the State of New York

e) "Credit Insurance" as defined in paragraph 17 of
   the said Section 46

f) any form of financial guarantee business

g) liability for loss arising from the operations of
   the Federal Securities Act of 1933

h) Workmen's Compensation and Employers' liability
   in respect of underground coal mining operations

i) Manufacture, storage, filling, breaking down or
   transport of explosives.

It is expressly understood and agreed, however, that the
foregoing exclusions shall not apply where the operations outlined
are only incidental to the Original Assureds main operations.
This Contract is also subject to the exclusions outlined in
Articles X and XI.

-3-

REINSURING CLAUSE                ARTICLE III

A.    The Reinsurers shall indemnify the Reassured for that portion
of the liability attaching to them in respect of business falling
within the scope of this Contract which represents the excess of
the sum of $500,000 (Five hundred thousand United States Dollars)
ultimate net loss in respect of each accident, the liability
of the Reinsurers under this contract being limitedto the sum
of $500,000 (Five hundred thousand United States Dollars) ultimate
net loss in respect of each accident.

B.    The amount of $500,000 each accident in excess of which
this Contract attaches and the Reinsurers' limit of liability
of $500,000 each accident shall be applied separately to:-

  1) Boiler and machinery Insurances.
  2) Personal Injury Liability and Property Damage Liability
     Insurances
  3) Workmen's Compensation and Employers' Liability Insurances
  4) All other insurances covered hereunder.

ATTACHMENT                        ARTICLE IV

    This Contract applies only to Contracts of Reinsurance
entered into by the Reassured which commence or are renewed
on or after September 22nd, 1954 and shall continue in force
until cancelled by either party in accordance with the
provisions of Article XI or by the mutual agreement of both
parties.

DEFINITION OF "EACH              ARTICLE V
ACCIDENT"

    The term "each accident" as used herein shall be
understood to mean "each accident or occurrence or series
of accidents or occurrences arising out of any one event"
provided that as respects

  (a) Products Liability, said term shall also be understood
      to mean "injuries to all persons and all damage to
      property of others proceeding from the use or
      consumption of one prepared or acquired lot of
      merchandise or product".

  (b) Classes of insurance hereby reinsured other than those
      enumerated in paragraphs (a), (c) and (d) hereof, said
      term shall also be understood to mean, as regards each
      original assured, "injuries to one or more than one
      person resulting from infection, contagion, poisoning,
      or contamination proceeding from or traceable to the
      same causative agency".

-4-

(c) Property Damage (other than Automobile and Products) risks, said term shall also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of the same".

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof.  If the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one assured, such losses shall be deemed to arise out of one accident.  A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(e) As regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retrocactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

ULTIMATE NET LOSS                ARTICLE VI

A.    The term "ultimate net loss" as used herein shall mean the sum actually paid by the Reassured (excluding all expenses incurred by the Reassured in the settlement or defence of claims) in the settlement of losses or liabilities after making deductions for all recoveries, all salvages, and all claims upon other reinsurers (whether recovered or not) other than the Reassured's obligatory quota share reinsurers and underlying excess of loss reinsurers.

B.    All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

C.    Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

-5-

NET RETAINED                              ARTICLE VII
LINES

    This Contract applies only to that portion of any contract of
reinsurance which the Reassured retain net for their own account
and for account of their Obligatory Quota Share Reinsurers and in
calculating the amount of any loss hereunder and also in computing
the amount in excess of which this Contract attaches, only loss
or losses in respect of that portion of any contract of reinsurance
which the Reassured retain net for their own account and for account
of their Obligatory Quota Share Reinsurers shall be included.
Recoveries made by the Reassured from their underlying excess of
loss reinsurers shall be disregarded for the purposes of this Article.

INABILITY TO RECOVER
FROM OTHER REINSURERS                     ARTICLE VIII

    The amount of the Reinsurers' liability hereunder in
respect of any loss or losses shall not be increased by reason
of the inability of the Reassured to collect from any other
reinsurers (whether specific or general) any amounts which may
have become due from them, whether such inability arises from
the insolvency of such other reinsurers or otherwise.

MAXIMUM RETENTION                         ARTICLE IX

    It is warranted that the amount retained by the Reassured
net for their own account and for account of their obligatory
quota share reinsurers shall not exceed

    1) £1,000,000 each accident in respect of each class of
       insurance (as set forth in Article I of this Contract)
       for each reassured

    2) as respects boiler and machinery insurance, a daily
       indemnity applying to any one location as defined in
       the Boiler and Machinery Manual of the National Bureau
       of Casualty Underwriters of £1,000 per diem provided,
       however, that where the contract issued by the Reassured
       contains no daily limit, such business shall be protected
       hereunder provided that the liability of the Reassured
       attaches in excess of a deductible of at least
       £2,000,000 each accident (including direct damage,
       if any).

WAR EXCLUSION                             ARTICLE X

A.    As regards interest under Plate Glass and All Risks business
(except All Risks business accepted by the Burglary Departments
of the companies reinsured by the Reassured) no liability shall

-5-

attach hereto in respect of any loss or damage which is occasioned
by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War,
Rebellion, Insurrection, Military or Usurped Power or Martial
Law or Confiscation by order of any Government or Public Authority.

B.    As regards interests, other than Workmen's Compensation
and Liability, which, at time of loss or damage, are on shore
OUTSIDE the territorial limits of the United States of America
and Canada, no liability shall attach hereto in respect of
any such loss or damage which is occasioned by War, Invasion,
Hostilities, Acts of Foreign Enemies, Civil War, Rebellion,
Insurrection, Military or Usurped Power or Martial Law or
Confiscation by order of any Government or Public Authority.

EXCESS OF LOSS
REINSURANCE CLAUSE            ARTICLE XI

This Contract in no way applies to protect any liability
of the Reassured in respect of Excess of Loss Reinsurances of
other Reinsurance Companies written or accepted by the Reassured
and the expression "Reinsurance Companies" shall not apply to
Companies normally transacting direct business but who accept
some incidental reinsurance business.

PREMIUM                      ARTICLE XII

A.    The premium payable to the Reinsurers shall be calculated
at the rate of 1½% applied to the gross earned premium income
of the Reassured.
The term "gross earned premium income" as used herein shall
be understood to mean the gross earned premiums accruing to
the Reassured from all business the subject matter of this
Contract after deducting return premiums and premiums paid
away for facultative reinsurances, recoveries under which,
in accordance with the provisions of Article VI, would inure
to the benefit of the Reinsurers.

B.    The Reassured shall pay to the Reinsurers a minimum annual
premium of $30,000 in four quarterly instalments of $7,500 on
January 1st, April 1st, July 1st and October 1st of each year.

C.    The Reassured shall forward to the Reinsurers within 45
days after the close of each calendar quarter a statement
of the  Reassured's gross earned premium income during the
quarter then immediately past and adjustment of premium shall
thereupon be made in respect of each calendar year of this
Contract as follows :-

-7-

1) if the earned premium for the first quarter exceeds
   $7,500 the amount in excess thereof shall thereupon
   be paid to the Reinsurers

2) if the earned premium for the first two quarters
   exceeds $15,000 the amount in excess thereof after
   deducting any additional premium paid under paragraph 1)
   above shall thereupon be paid to the Reinsurers

3) if the earned premium for the first three quarters
   exceeds $22,500, the amount in excess thereof after
   deducting any additional premium paid under paragraphs
   1) and 2) above shall thereupon be paid to the Rein-
   surers

4) the statement rendered in respect of the fourth quarter
   shall include a recapitulation of the earned premium
   accruing to the Reinsurers for the first three quarters,
   and the total earned premium for the year shall then be
   determined.   If such total earned premium:-

   a) exceeds the aggregate of :-

      (i) the Minimum and Provisional Premium of $30,000

          and

      (ii) the total of any additional premiums paid to the
           Reinsurers under the provisions of paragraphs 1),
           2) and 3) of this Article, the amount in excess
           thereof shall be paid to the Reinsurers

   b) is less than the aggregate arrived at in paragraph
      (a) above, the balance shall be refunded to the Re-
      assured, provided nevertheless that in no event
      shall the premium retained by the Reinsurers be
      less than $30,000.

For the purposes of this Article

1) the "first calendar quarter" shall be deemed to run from
   September 22nd, 1954 to December 31st, 1954 the deposit
   premium payable at inception thereof being $8,300

2) the "first calendar year" shall be deemed to run from
   September 22nd, 1954 to December 31st, 1955 the minimum
   premium applicable to such period being $33,300.

-8-

## FEDERAL REINSURANCE STAMP TAX                ARTICLE XIII

A.    The Reinsurers hereby agree to allow as a deduction
from the premium payable under this Contract the amount re-
quired for the purpose of purchasing United States Government
Stamps for attachment hereto in respect of the Federal Stamp
Tax due hereon.

B.    In the event of any return of premium becoming due under
this Contract, the Reinsurers will deduct from the amount
of the return the same percentage as the allowance towards
the Federal Stamp Tax made by them on the total premium.

C.    Nevertheless where such return of premium becomes due
owing to the cancellation of this Contract by the Reinsurers
the above deduction of the Tax allowance shall not be
made except in so far as the Reassured have a right to
recover the tax from the United States Government.

## ACCESS TO RECORDS                ARTICLE XIV

The Reinsurers, or their authorised representatives, shall
at all times during the currency of this Contract, or within
eighteen months after its termination, have free access to the
books and records of the Reassured in so far as they relate to
business falling within the scope of this Contract, and in
the event of any claim for loss being made hereunder the
Reinsurers shall have free access to all claims records during
the continuance of this Contract or at any time thereafter
until the final settlement of all such claims.

## TAX CLAUSE                ARTICLE XV

In consideration of the terms under which this Contract
is issued, the Reassured undertake not to claim any deduction
in respect of the premium hereon when making Canadian tax returns
or when making tax returns, other than Income or Profits tax
returns, to any State or Territory of the United States or to the
District of Columbia.

## CLAIMS                ARTICLE XVI

A.    The Reassured shall advise the Reinsurers with reasonable
promptitude of any accident or event in which the Reinsurers are
known to be involved and shall, on demand, provide the Reinsurers
with full information relative thereto.

- 2 -

B.    The Reinsurers, through their appointed representatives Mendes and Mount, 27 William Street, New York 5, New York, shall have the right to co-operate with the Reassured in the defense and/or settlement of any claim in which they may be interested.

C.    All settlements made by the Reassured in co-operation with the Reinsurers' appointed representative, Mendes and Mount, shall be binding on the Reinsurers and all settlements made by the Reassured in cases where the Reinsurers have elected not to exercise their right to co-operate with the Reassured shall be binding on the Reinsurers.    The Reinsurers shall pay to the Reassured any amounts that may be recoverable under this Contract within fifteen (15) days after the receipt of the necessary papers proving the loss.

DIVISION OF                            ARTICLE XVII
SETTLEMENT COSTS

Where the Reassured provide a cover under which expenses incurred by the treaty company in connection with the investigation and adjustment of claims and suits are included as a part of the loss, then such expenses shall like-wise be considered a part of the ultimate net loss hereinbefore referred to.    Otherwise such expenses shall be apportioned between the Reassured and the Reinsurers in the ratio of their respective liabilities as finally determined, it being understood however that the Reinsurers shall not be liable for any part of the salaries of officials of or office expenses of the Reassured.

COMMUTATION                           ARTICLE XVIII

A.    In the event of the Reassured becoming liable to make periodical payments under any contract reinsured hereunder, the Reinsurers shall (at any time after 24 months from the date of the accident) be at liberty to redeem the payments falling due from them by the payment of a lump sum to be determined as follows:  In such cases the amount of the claim under this Contract may be settled by mutual agreement, but if not so settled, the Reassured and the Reinsurers shall refer the matter to two arbitrators, one to be chosen by each party and such arbitrators shall choose an umpire;  in the event of the arbitrators failing to agree, the decision of the umpire shall be final and binding upon all parties.    The seat of arbitration shall be in New York, N.Y.

B.    The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalized.

-10-

INSOLVENCY                          ARTICLE XIII

The Reinsurers hereby agree that in the event of the insolvency of any of the Companies constituting the Reassured, this contract of reinsurance shall be so construed that the reinsurance shall be payable directly to the insolvent Company or to its liquidator, receiver or statutory successor by the Reinsurers in the event of the insolvency of any of the Companies constituting the Reassured on the basis of the liability of the Reassured under the contract or contracts reinsured without diminution because of the insolvency of any Company constituting the Reassured. It is further agreed that the liquidator, the receiver, or the statutory successor of the insolvent Company shall give written notice to the Reinsurers of the pendency of a claim against the insolvent company on the contract or contracts reinsured within a reasonable time after such claim is filed in the insolvency proceedings; that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences which they may deem available to the insolvent Company or its liquidator, receiver, or statutory successor.
The expense thus incurred by the Reinsurers shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to such insolvent Company solely as a result of the defence undertaken by the Reinsurers.

CANCELLATION                        ARTICLE XIV

A.   This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

B.   In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contract of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

    1)  termination of each such contract

          or

    2)  the respective anniversary dates of such contracts
       next following the effective date of cancellation

whichever shall first occur.

-11-

ARBITRATION                    ARTICLE XXI

Any dispute arising under this Contract shall be sub-
mitted to a court of arbitration composed of two arbitrators,
one to be appointed by the Reassured and the other by the
Reinsurers.
The arbitrators shall, before entering upon the reference,
appoint an umpire.
The arbitrators and the umpire shall consider this Contract
an honourable engagement rather than merely a legal obligation
they are relieved of all judicial formalities and may abstain
from following the strict rules of law.
The award of the arbitrators or, in the event of their dis-
agreement, of the umpire, shall be precedent to any liability
or right of action of either party.
The costs of the reference and of the award shall be in the
discretion of the arbitrators or umpire, as the case may be,
who may direct to and by whom and in what manner the same
shall be paid.
The seat of arbitration shall be New York, N.Y.

SERVICE OF SUIT                ARTICLE XXII

It is agreed that in the event of the failure of the Reinsurers
to pay any amount claimed to be due hereunder, the Reinsurers, at the
request of the Reassured, will submit to the jurisdiction of any
court of competent jurisdiction within the United States and will
comply with all requirements necessary to give such Court jurisdiction
and all matters arising hereunder shall be determined in accordance
with the law and practice of such Court.
It is further agreed that service of process in such suit may be
made upon Mendes and Mount, 27, William Street, New York 5, New
York or their nominee or nominees, and that in any suit instituted
against any one of them upon this Contract, the Reinsurers will
abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.

The above-named are authorized and directed to accept service
of process on behalf of the Reinsurers in any such suit and/or
upon the request of the Reassured to give a written undertaking
to the Reassured that they will enter a general appearance upon
Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or
district of the United States which makes provision therefor,
Reinsurers hereby designate the Superintendent, Commissioner or
Director of Insurance or other officer specified for that purpose
in the statute, or his successor or successors in office, as their

-12-

true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract reinsurance, and hereby designate the above-named as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

This Policy covers its proportion of 45% of the indemnity provided by the foregoing wording and shall likewise receive the same proportion of the premium stipulated therein.

W F & D LTD. LONDON

DATE 18th July, 1955

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part
of the original Policy dated the        25th        day of January, 1955  and
numbered      594/54/5261    and should be attached thereto.

Re      AGENCY MANAGERS LIMITED, NEW YORK as United States
Name of/Assured.  Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY &
CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF
NEW YORK

IT IS UNDERSTOOD AND AGREED THAT effective July 1st 1955,

the words "American Fidelity & Casualty Company" wherever

appearing herein are deleted and replaced by the words

"American Home Fire Assurance Company".

All other terms and conditions shall remain unchanged.

W. F & D Ltd, London. Ref. No. 594/54/5261

DATE 15th October, 1955

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy dated the          25th          day of January, 1955  and numbered  594/54/5261     and should be attached thereto.

*Name of Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY COMPANY AND CITIZENS CASUALTY COMPANY OF NEW YORK.

IT IS UNDERSTOOD AND AGREED THAT the last paragraph of ARTICLE II of the wording attached to this Policy is amended to read as follows :-

"It is expressly understood and agreed, however, that except as regards the exclusion of Surety insurance as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York, Credit insurance as defined in paragraph 17 of the said Section 46 and any form of Financial Guarantee business, the foregoing exclusions shall not apply where the operations outlined are only incidental to the Original Insured's main operations."

ALL other terms and conditions of this Policy shall remain unchanged.

W F & D LTD. LONDON

DATE  8th November, 1955.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/54/5261   and should be attached thereto.

Re
*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK.

IT IS UNDERSTOOD AND AGREED THAT notwithstanding anything

contained herein to the contrary, effective July 1st, 1955,

the name of the Reassured is amended to read as follows :-

> "AGENCY MANAGERS LIMITED, NEW YORK as United States
> Casualty Reinsurance Managers of and on behalf of
> the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
> HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
> OF NEW YORK".

ALL other terms and conditions of this Policy shall
remain unchanged.

20119

W F & D LTD LONDON.

DATE 26th November, 1955

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy numbered 594/54/5261 and should be attached thereto.

Re.
*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT the name of the Reassured, appearing in the endorsement dated 19th October, 1955, should read as follows :-

"AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK. "

All other terms and conditions of this Policy shall remain unchanged.

20119

W F & D Ltd. London

DATE 5th January, 1956.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy numbered  594/54/5261    and should be attached thereto.

*Name of Assured*  Re  AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED thateffective from inception of this Policy paragraph 3 of Article III of the wording is amended to read as follows:-

"3. The amount of $500,000 each accident in excess of which this Contract attaches and the Reinsurers' limit of liability of $500,000 each accident shall be applied separately to:-

1) Boiler and machinery Insurances,
2) Personal Injury Liability and Property Damage Liability Insurances,
3) Workmen's Compensation and Employers' Liability Insurances,
4) All other insurances covered hereunder,

in respect of each reassured protected under Contracts of Reinsurance written by the Reassured."

ALL other terms and conditions of this Policy shall remain unchanged.

20119

W F & D LTD. LONDON

DATE 11th January, 1956.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/54/5261    and should be attached thereto.

Re

*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS HEREBY UNDERSTOOD AND AGREED that in arriving at the
ultimate net loss of the Reassured hereunder recoveries under
the following Excess of Loss Reinsurance Contract shall be
disregarded:

"an Excess of Loss Reinsurance Contract covering
up to a limit of £300,000 ultimate net loss each
accident in excess of £150,000 ultimate net loss
each accident and protecting the Reassured only
in the event of two or more of the following
classes

1) Boiler and Machinery Insurances
2) Personal Injury Liability and Property
   Damage Liability Insurances
3) Workmen's Compensation and Employers'
   Liability Insurances,
4) All other insurances covered under this
   Contract

and/or two or more reassured protected under Contracts
of Reinsurance written by the Reassured being involved
in any one accident."

ALL other terms and conditions of this Policy shall remain unchanged.

20119

65000 × -4 JUN 1956

S C H E D U L E



No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

> Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

A.H. Appleyard
MANAGER.

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S No. | L.P.S.O. SLIP No. | L.P.S.O. DATE |
|---|---|---|---|
| PER CENT | 576 | 65000 | 4 6 56 |

| | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 6.00 | 347 | W F 612 205 |
| 10.00 | 212 | 151 |
| 10.00 | 524 | D 421 56 |
| 7.50 | 440 | 28 9 54 |
| 4.00 | 91 | 14770 |
| 2.67 | 795 | E 2141 |
| 1.33 | 796 | F 2141 |
| 1.50 | 484 | C O N F |
| 2.00 | 130 | |

W. F & D LTD, LONDON

DATE 11th May, 1956.
594/56/5261

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/54/5261 and should be attached thereto.

Re

*Name of Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT effective January 1st
1956 :-

1) the Reinsurers subscribing to this Policy are the
Underwriting Members of Lloyds, each for his own
part and not one for another, who are Members of
the Syndicates the Definitive Numbers of which
in the attached list and the proportions reinsured
are set out in the Table on the Schedule attached
hereto.

2) a further annual minimum premium of £13,500 (being
45% of £30,000) is due and payable hereunder in
quarterly instalments of £3,375 on January 1st
1956, April 1st 1956, July 1st 1956 and October
1st 1956 respectively.

All other terms and conditions of this Policy remain unchanged.

119

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## S C H E D U L E

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

MANAGER

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO. | L.P.S.O. SLIP No | L.P.S.O. DATE |
|---|---|---|---|
| PER CENT | 576 | 5000 20 | 9572 |

| | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 6.00 | 347 | 205 W F 612 |
| 8.50 | 212 | 151 |
| 1.50 | 204 | 151 |
| 10.00 | 524 | 57/0   421 |
| 7.50 | 440 | 28   9   54 |
| 4.00 | 91 | 14770 |
| 2.67 | 795 | E   2141 |
| 1.33 | 796 | E   2141 |
| 1.50 | 484 | CONF |
| 2.00 | 130 | |

W. F & D LTD. LONDON

65600 * 20 SEP 1957

DATE 23rd August, 1957

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/54/5261    and should be attached thereto.

Re

*Name of Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT effective January 1st
1957 :-

1) the rate of "1⅖%" appearing in paragraph A of
Article XII is amended to read "1.375%"

2) a further annual minimum premium of $13,500 (being
45% of $30,000) is due and payable hereunder in
quarterly instalments of $3,375 on January 1st
1957, April 1st 1957, July 1st 1957 and October
1st 1957 respectively.

3) the Reinsurers subscribing to this Policy are the
Underwriting Members of Lloyd's, each for his own
part and not one for another, who are Members of
the Syndicates the Definitive Numbers of which
in the attached list and the proportions reinsured
are set out in the Table on the Schedule attached
hereto.

All other terms and conditions of this Policy remain unchanged.

20119

W. F & D LTD., LONDON    594/57/5261

DATE 6th November, 1957.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/54/5261    and should be attached thereto.

Re

*Name of/Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

Notwithstanding anything contained in this Contract to the
contrary, it is understood and agreed that as respects liability
assumed by the Reassured on both an aggregate basis and an
accident basis, or on an aggregate basis alone, in respect of
Property Damage Liability Insurance and Products Bodily Injury
Liability Insurance providing aggregate limits of indemnity as
well as per accident limits, the Reinsurers shall indemnify the
Reassured for that portion of the liability attaching to them
(whether due to per accident or aggregate limits, or both) which
represents the excess of the sum of $500,000 (Five hundred thousand
United States Dollars) ultimate net loss in the aggregate in respect
of each annual premium period of each policy, or in respect of the
full policy period if such period does not exceed fifteen months;
but the liability of the Reinsurers under this Contract for the
aggregate ultimate net loss under any such policy during said
period shall not exceed $500,000 (Five hundred thousand United States
Dollars).

It is nevertheless understood and agreed that if the Reassured
sustain a loss in excess of $500,000 (Five hundred thousand United
States Dollars) as the result of one accident which involves
business falling both within the first paragraph of this Endorsement
and also other business covered under this Contract, then the entire
loss to the Reassured shall be covered under Article III of the
Contract and shall be excluded entirely from the scope of this
Endorsement.

The term "policy" as used in this Endorsement means a policy
issued direct to an insured by a Company reinsured by the Reassured.

ALL other terms of this Contract shall remain unchanged.

W F & D Ltd, London.

DATE 20th January, 1958

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered   594/54/5261    and should be attached thereto.

Name of/Assured    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK

IT IS HEREBY UNDERSTOOD AND AGREED that liability in respect
of a contract issued by the Reassured in reinsurance of the
American Fidelity and Casualty Company, covering Auto Public
Liability and Property Damage Liability for a limit of $950,000
excess of $50,000, is excluded from the protection of this
Contract and the premium income in respect of the said contract
shall not be included in the statements of the Reassured's gross
net earned premium income rendered in accordance with Article XII.

All other terms of this Policy shall remain unchanged.

W F & D LTD. LONDON.

DATE 9th September, 1958.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/54/5261    and should be attached thereto.

Re
*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK


IT IS UNDERSTOOD AND AGREED that this Contract is terminated
at Midnight, December, 31st 1957.

The Liability of the Reinsurers in respect of all contracts of
reinsurance protected hereunder which are current at Midnight
December 31st, 1957 shall continue in force in accordance
with the provisions of paragraph B. of Article XX.

20119

(3)  SPECIAL EXCESS OF LOSS
$300,000 XS $150,000
LLOYDS & COMPANIES
1/1/56 to 12/31/57

J (A)

Form approved by Lloyd's
Underwriters' Fire and
Non-Marine Association.

No. 594/56 / 5541

Any person not an Underwriting Member
of Lloyd's subscribing this Policy, or any
person uttering the same if so subscribed,
will be liable to be proceeded against under
Lloyd's Acts.

Printed at Lloyd's London, England
18-9-56

50. 225 of the Indemnity
set forth in the
attached wording



No Policy or other Contract dated on or after 1st Jan., 1924, will be recognised by the Committee of Lloyd's
as entitling the holder to the benefit of the Funds and/or Guarantee lodged by the Underwriters of the Policy
or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

# LLOYD'S POLICY

(Subscribed only by Underwriting Members of Lloyd's all of whom have complied with the requirements of
the Assurance Companies Acts 1909 and 1946 as to security and otherwise.)

**Whereas**   AGENCY MANAGERS LIMITED, NEW YORK as UNITED
STATES CASUALTY Reinsurance Managers of and
on behalf of the NORTHERN ASSURANCE COMPANY and
AMERICAN HOME ASSURANCE COMPANY and CITIZENS
of CASUALTY COMPANY OF NEW YORK

(hereinafter called "the Assured"),   have   paid $3,766.50 Minimum
& Deposit Premium or Consideration to Us, who have hereunto subscribed our Names to
Insure against Loss as follows:—

In accordance with the wording attached which

is hereby declared to be incorporated in and

to form an integral part of this Policy —

Form J (A) (15.11.45)
N.M.A. 210

HB/...

doing the parts annotation coprate
ob
ob
ob

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

NOW KNOW YE, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the Schedule hereto are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for Another, our Heirs, Executors, and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors, Administrators, and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions herein expressed) not exceeding the Sum of 0·050., 22% of the Limits of Liability set forth in the attached wording

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,



MANAGER.

Dated in London, the
Day of December
and 1956.
One Thousand Nine Hundred

20202 J(A) JJ 14,

—see back hereof—

*Spec Excess*
*Part I*

| In all communications please quote the following reference | |
|---|---|
| **594** | 56/5541 |

## FORM J (A)



**LLOYD'S LONDON**

IN ORDER to bring the printed portion of this Policy into conformity with the attached typewritten wording, it is understood and agreed that wherever the word "Assured" appears in the said printed portion the word "Reassured" shall be substituted therefor

*Assured*

AGENCY MANAGERS LIMITED, NEW YORK as UNITED STATE CASUALTY Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK

*Premium* Minimum & Deposit $3,766.50

Policy and Stamp

Date of Expiry

*The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.*

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:—

*Replaced effective Jan 1. 1958 by new pol. 58/5541.*

PERCENTAGES SIGNED HEREUNDER ARE PERCENTAGES OF THE INDEMNITY SET FORTH IN THE ATTACHED WORDING

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Assured shared between the Members of those Syndicates.

| PER CENT (AMOUNT, PERCENTAGE OR PROPORTION) | BROKER NO. | SYNDICATE (UNDERWRITER'S REFERENCE) | LPSO. SLIP NO. | LPSO. DATE |
|---|---|---|---|---|
| 5.33 | 5766 | 32111 5 | 9 5 |  |
| 7.60 | 795 | TPX 4524 |  |  |
| 5.73 | 650 | GENX 5924 |  |  |
| 8.49 | 849 | GENX 5923 |  |  |
| 8.45 | 605 | 12657 14/3 |  |  |
| 4.45 | 4991 | 3 3 5 8 XL |  |  |
| 5.33 | 1096 | X 4 8 2 1 |  |  |
| 2.22 | 1302 | 2 1 1 1 56 |  |  |
| 2.33 | 9867 | 8/1511 |  |  |
| 1.33 | 4337 | 8/1511 |  |  |
| 1.89 | 36 | TPA 5011 |  |  |
| .33 | 3112 | 0 5 6 1 |  |  |
| .33 | 120 | 1 56 TP |  |  |
| 2.22 | 56 | EX 2890 TP |  |  |
| 2.22 | 857 | GR/EC ATP |  |  |
| 1.78 |  |  |  |  |
| .89 |  |  |  |  |

W. F & D LTD., LONDON

DATE 1st April, 1957

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/57/5541   and should be attached thereto.

*Name of Assured*   AGENCY MANAGERS LIMITED, NEW YORK as UNITED STATES
Re              CASUALTY reinsurance Managers of and on behalf
                of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
                HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
                of NEW YORK


IT IS UNDERSTOOD AND AGREED THAT paragraph C of Article VIII
is amended to read as follows :-

 "C. An annual minimum and deposit premium of U.S. $7,500
shall be paid by the Reassured to the Reinsurers on
January 1st of each year this Contract is in force.  As
soon as practicable after the expiration of each calendar year
of this Contract, the Reassured shall furnish the Reinsurers
with a statement of its Gross Net Earned Premium Income
during the year then immediately past, and if it is found
that the premium due to the Reinsurers, calculated at the
aforementioned rate of .25% exceeds the annual minimum and
deposit premium of U.S. $7,500, the amount in excess thereof
shall thereupon become payable to the Reinsurers."



ATTACHING TO AND FORMING PART OF   LLOYD'S

POLICY NO. 594/56/5541 issued by UNDERWRITING MEMBERS OF LLOYD'S

to AGENCY MANAGERS LIMITED, NEW YORK as UNITED STATES CASUALTY

Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE

COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY and CITIZENS

CASUALTY COMPANY OF NEW YORK (hereinafter referred to either

individually or in combination as "the Reassured") it being

understood and agreed that the said UNDERWRITING MEMBERS OF LLOYD'S

shall pay to the Reassured   50.22 % of any amount which

the Reassured shall be entitled to recover under the provisions of

the Excess of Loss Retrocession Contract attached hereto in

consideration of the payment to UNDERWRITING MEMBERS OF LLOYD'S

of the same percentage of the premium which is payable by

the Reassured thereunder and which the Reassured have agreed to

make.

The Underwriting Members of Lloyd's and the Insurance Companies

who subscribe to the said Excess of Loss Retrocession Contract

are hereinafter together called "the Reinsurers".

## CASUALTY EXCESS OF LOSS RETROCESSION CONTRACT

WHEREAS the Reassured have effected excess of loss reinsurance contracts numbered 4342 and 5261 which protect the Reassured up to the sum of ∯850,000 ultimate net loss each accident in excess of the sum of ∯150,000 ultimate net loss each accident in respect of the following classes of casualty business

    1) Boiler and Machinery Insurances
    2) Personal Injury Liability and Property
       Damage Liability Insurances
    3) Workmen's Compensation and Employers'
       Liability Insurances,
    4) All other insurances covered thereunder,

in respect of Contracts of Reinsurance written by the Reassured (hereinafter referred to as "original contracts") to their Reinsureds (hereinafter referred to as "original reinsureds)

WHEREAS the aforesaid amounts of ∯850,000 and ∯150,000 apply separately

    1) to each of the four classes of casualty business
       referred to above, and

    2) to each original reinsured protected under the original
       contracts, and

WHEREAS the Reassured desire to reinsure a portion (as stated in Article I) of the liability which may attach to them in the event of two or more of the aforementioned classes and/or two or more original reinsureds being involved in any one accident

NOW THEREFORE THIS CONTRACT WITNESSETH AS FOLLOWS :-

REINSURING CLAUSE          ARTICLE I

    In consideration of the payment of premium as stipulated in Article VIII and subject otherwise to the terms and conditions of this Contract, the Reinsurers hereby agree that in the event of two or more of the said classes of casualty insurance and/or two or more original reinsureds protected under the original contracts being involved in one accident the Reinsurers will indemnify the Reassured for that portion of the liability attaching to the Reassured under the original contracts which represents the excess of the sum of ∯150,000 (one hundred and fifty thousand United States Dollars) ultimate net loss in respect of each accident.

−2−

the liability of the Reinsurers hereunder being limited to the sum of $300,000 (Three hundred thousand United States Dollars) ultimate net loss in respect of each accident.

EXCLUSIONS                                    ARTICLE II

This Contract does not apply to

a) Railroad business written and classified by the Reassured as such

b) Aviation business written and classified by the Reassured as such

c) the ownership, maintenance and navigation of any vessel whose gross register exceeds 500 tons

d) "Fidelity and Surety Insurance" as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York

e) "Credit Insurance" as defined in paragraph 17 of the said Section 46

f) any form of financial guarantee business

g) liability for loss arising from the operations of the Federal Securities Act of 1933

h) Workmen's Compensation and Employers' liability in respect of underground coal mining operations

i) manufacture, storage, filling, breaking down or transport of explosives.

It is expressly understood and agreed, however, that except as regards the exclusion of Surety insurance as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York, Credit Insurance as defined in paragraph 17 of the said Section 46 and any form of Financial Guarantee business, the foregoing exclusions shall not apply where the operations outlined are only incidental to the original Assured's main operations.

As regards interest under Plate Glass and All Risks business (except All Risks business accepted by the Burglary Departments of the companies reinsured by the Reassured) no liability shall attach hereto in respect of any loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

-3-

as regards interests other than Workmen's Compensation and Liability, which, at time of loss or damage, are on shore OUTSIDE the territorial limits of the United States of America and Canada, no liability shall attach hereto in respect of any such loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

PERIOD                          ARTICLE III

A.    This Contract applies only to original contracts entered into by the Reassured which commence or are renewed on or after January 1st, 1956, and shall continue in force until cancelled by either party in accordance with the provisions of Article XV or by the mutual agreement of both parties.

B.    For the purpose of this Article all original contracts entered into by the Reassured for a long or indefinite period shall be deemed to be renewed from their respective anniversary dates next following January 1st, 1956.

DEFINITION OF EACH
ACCIDENT OR ONE ACCIDENT    ARTICLE IV

The term "each accident" or "one accident" as used herein shall be understood to mean "each accident or occurrence or series of accidents or occurrences arising out of any one event "provided that as respects

    (a) Products Liability, said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

    (b) classes of insurance hereby reinsured other than those enumerated in paragraphs (a), (c) and (d) hereof, said term shall also be understood to mean, as regards each original assured, "injuries to one or more than one person resulting from infection, contagion, poisoning, or contamination proceeding from or traceable to the same causative agency".

    (c) Property damage (other than Automobile and Products) risks, said term shall also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of the same".

-4-

(d) an occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof. If the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one assured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(e) as regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retroactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

ULTIMATE NET LOSS                    ARTICLE V

A.    The term "ultimate net loss" as used herein shall mean the sum actually paid by the Reassured (excluding all expenses incurred by the Reassured in settlement or defence of claims) in the settlement of losses or liabilities after making deductions for all recoveries, all salvages, and all claims upon other reinsurers (whether recovered or not) other than the Reassured's obligatory quota share reinsurers.

B.    All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

C.    Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

–5–

NET RETAINED
LINES                              ARTICLE VI

A.      This Contract applies only to that portion of the original
contracts which the Reassured retain net for their own account
and for account of their obligatory quota share reinsurers and in
calculating the amount of any loss hereunder and also in computing
the amount in excess of which this Contract attaches, only loss
or losses in respect of that portion of any original contract
which the Reassured retain net for their own account and for account
of their obligatory quota share reinsurers shall be included.

B.      The amount of the Reinsurers' liability hereunder in
respect of any loss or losses shall not be increased by reason
of the inability of the Reassured to collect from any other
reinsurers (whether specific or general) any amounts which may
have become due from them, whether such inability arises from
the insolvency of such other reinsurers or otherwise.

EXCESS OF LOSS
REINSURANCES                       ARTICLE VII

        This Contract in no way applies to protect any liability
of the Reassured in respect of Excess of Loss Reinsurances of
other Reinsurance Companies written or accepted by the Reassured
and the expression "Reinsurance Companies" shall not apply to
Companies normally transacting direct business but who accept
some incidental reinsurance business.

PREMIUM                            ARTICLE VIII

A.      The premium payable to the Reinsurers shall be calculated
at the rate of .25% (one quarter of one per cent.) of the Gross
Net Earned Premium Income of the Reassured.

B.      The term "Gross Net Earned Premium Income" shall mean the
gross earned premiums accruing to the Reassured from all business
the subject matter of this Contract, after deducting return premiums and
premiums paid away for facultative reinsurances recoveries under
which would inure to the benefit of this Contract.

C.      A minimum and deposit premium of U.S. $7,500 shall be paid
by the Reassured to the Reinsurers at the inception of this
Contract.  As soon as practicable after the expiration thereof,
the Reassured shall furnish the Reinsurers with a statement
of its Gross Net Earned Premium Income and if it is found that the
premium due to the Reinsurers, calculated at the afore-mentioned
rate of .25% exceeds the minimum and deposit premium
of U.S. $7,500 the amount in excess thereof shall thereupon
become payable to the Reinsurers.

-6-

ACCESS TO RECORDS                    ARTICLE IX

The Reinsurers, or their authorised representatives shall
at all times during the currency of this Contract, or within
eighteen months after its termination, have free access to the
books and records of the Reassured in so far as they relate to
business falling within the scope of this Contract, and in
the event of any claim for loss being made hereunder the Reinsurers
shall have free access to all claims records during the continuance
of this Contract or at any time thereafter until the final settlement
of all such claims.

FEDERAL REINSURANCE
STAMP TAX                            ARTICLE X

A.    The Reinsurers hereby agree to allow as a deduction from
the premium payable under this Contract the amount required for
the purpose of purchasing United States Government Stamps for
attachment hereto in respect of the Federal Stamp Tax due hereon.

B.    In the event of any return of premium becoming due under
this Contract, the Reinsurers will deduct from the amount of
the return the same percentage as the allowance towards the
Federal Stamp Tax made by them on the total premium.

C.    Nevertheless where such return of premium becomes due owing
to the cancellation of this Contract by the Reinsurers the above
deduction of the Tax allowance shall not be made except
in so far as the Reassured have a right to recover the tax from
the United States Government.

TAX CLAUSE                           ARTICLE XI

In consideration of the terms under which this Contract is
issued, the Reassured undertake not to claim any deduction in respect
of the premium hereon when making Canadian tax returns or when
making tax returns, other than Income or Profits Tax returns, to
any State or Territory of the United States or to the District
of Columbia.

CLAIMS                               ARTICLE XII

A.    The Reassured shall advise the Reinsurers with reasonable
promptitude of any accident or event in which the Reinsurers are
known to be involved and shall, on demand, provide the Reinsurers
with full information relative thereto.

B.    The Reinsurers, through their appointed representative
Mendes and Mount, 27 William Street, New York 5, New York, shall
have the right to co-operate with the Reassured in the defense
and/or settlement of any claims in which they may be interested.

-7-

C.    All settlements made by the Reassured in co-operation with the Reinsurers' appointed representative, Mendes and Mount, shall be binding on the Reinsurers and all settlements made by the Reassured in cases where the Reinsurers have elected not to exercise their right to co-operate with the Reassured shall be binding on the Reinsurers.    The Reinsurers shall pay to the Reassured any amounts that may be recoverable under this Contract within fifteen (15) days after the receipt of the necessary papers proving the loss.

DIVISION OF
SETTLEMENT COSTS                ARTICLE XIII

     Where the Reassured provide a cover under which expenses incurred by the original reinsured in connection with the invest-igation and adjustment of claims and suits are included as a part of the loss, then such expenses shall likewise be considered a part of the ultimate net loss hereinbefore referred to. Otherwise such expenses shall be apportioned between the Reassured and the Reinsurers in the ratio of their respective liabilities as finally determined, it being understood however that the Reinsurers shall not be liable for any part of the salaries of officials of or office expenses of the Reassured.

COMMUTATION                     ARTICLE XIV

A.    In the event of the Reassured becoming liable to make periodical payments under any contract reinsured hereunder, the Reinsurers shall (at any time after 24 months from the date of the accident) be at liberty to redeem the payments falling due from them by the payment of a lump sum to be determined as follows:  In such cases the amount of the claim under this Contract may be settled by mutual agreement, but if not so settled, the Reassured and the Reinsurers shall refer the matter to two arbitrators, one to be chosen by each party and such arbitrators shall choose an umpire; in the event of the arbitrators failing to agree, the decision of the umpire shall be final and binding upon all parties.  The seat of arbitration shall be in New York, New York.

B.    The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalised.

CANCELLATION                    ARTICLE XV

A.    This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

-8-

B.      In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contracts of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

    1)  termination of each such contract

                or

    2)  the respective anniversary dates of such Contracts
        next following the effective date of cancellation

whichever shall first occur.

INSOLVENCY                          ARTICLE XVI

        The Reinsurers hereby agree that in the event of the insolvency of any of the Companies constituting the Reassured, this Contract of reinsurance shall be so construed that the reinsurance shall be payable directly to the insolvent Company or to its liquidator, receiver or statutory successor by the Reinsurers in the event of the insolvency of any of the Companies constituting the Reassured on the basis of the liability of the Reassured under the contract or contracts reinsured without diminution  becasue of the insolvency of any Company constituting the Reassured.
It is further agreed that the liquidator, the receiver, or the statutory successor of the insolvent Company shall give written notice to the Reinsurers of the pendency of a claim against the insolvent Company on the contract or contracts reinsured within a reasonable time after such claim is filed in the insolvency proceedings; that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjuciated any defence or defences which they may deem available to the insolvent Company or its liquidator, receiver, or statutory successor.
The expense thus incurred by the Reinsurer  shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to such insolvent Company solely as a result of the defence undertaken by the Reinsurers.

ARBITRATION                         ARTICLE XVII

        Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers. The arbitrators shall, before entering upon the reference, appoint an umpire.
The arbitrators and the umpire shall consider this contract an honourable engagement rather than merely a legal obligation

-9-

they are relieved of all judicial formalities and may abstain
from following the strict rules of law.
The award of the arbitrators or, in the event of their dis-
agreement, of the umpire, shall be precedent to any liability
or right of action of either party.
The costs of the reference and of the award shall be in the
discretion of the arbitrators or umpire, as the case may be,
who may direct to and by whom and in what manner the same shall be
paid.
The seat of arbitration shall be New York, New York.

SERVICE OF SUIT                    ARTICLE XVIII

It is agreed that in the event of the failure of the Reinsurers
to pay any amount claimed to be due hereunder, the Reinsurers, at the
request of the Reassured, will submit to the jurisdiction of any
Court of competent jurisdiction within the United States and will
comply with all requirements necessary to give such Court jurisdiction
and all matters arising hereunder shall be determined in accordance
with the law and practice of such Court.
It is further agreed that service of process in such suit may be
made upon Mendes and Mount, 27 William Street, New York 5, New York
or their nominee or nominees, and that in any suit instituted
against any one of them upon this Contract, the Reinsurers will
abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.

The above-named are authorised and directed to accept service
of process on behalf of the Reinsurers in any such suit and/or
upon the request of the Reassured to give a written undertaking
to the Reassured that they will enter a general appearance upon
Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or
district of the United States which makes provision therefor,
Reinsurers hereby designate the Superintendent, Commissioner or
Director of Insurance or other officer specified for that purpose
in the statute, or his successor or successors in office, as their
true and lawful attorney upon whom may be served any lawful process
in any action, suit or proceeding instituted by or on behalf of the
Reassured or any beneficiary hereunder arising out of this contract
of reinsurance, and hereby designate the above-named as the firm to
which the said officer is authorised to mail such process or a true
copy thereof.

W. F & D LTD. LONDON

DATE 9th September, 1958

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/56/5541    and should be attached thereto.

Re

*Name of Assured*  AGENCY MANAGERS LIMITED, NEW YORK as UNITED
STATES CASUALTY Reinsurance Managers of and on
behalf of the NORTHERN ASSURANCE COMPANY LIMITED
AMERICAN HOME ASSURANCE COMPANY and CITIZENS
CASUALTY COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED that this Contract is terminated
at Midnight, December, 31st 1957.

The Liability of the Reinsurers in respect of all contracts
of reinsurance protected hereunder which are current at
Midnight December 31st, 1957 shall continue in force in
accordance with the provisions of paragraph B. Article XV.

W. F. & D LTD., LONDON

DATE 18th February, 1958

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/55/5541    and should be attached thereto.

*Name of Assured*      AGENCY MANAGERS LIMITED, NEW YORK as UNITED
STATES CASUALTY Reinsurance Managers of and
on behalf of the NORTHERN ASSURANCE COMPANY LIMITED
AMERICAN HOME ASSURANCE COMPANY and CITIZENS
CASUALTY COMPANY OF NEW YORK

Notwithstanding that the under-mentioned Contract issued by
the Reassured (hereinafter called the "special contract")
has been excluded from the protection afforded to the Reassured
under Excess of Loss Contracts 4642 and 5261 and that a separate
Excess of Loss Contract in respect thereof has been effected
by the Reassured, it is understood and agreed that losses
sustained by the Reassured under the special contract shall fall
within the protection of this Contract 5541 in accordance with
the terms thereof in the event of two or more classes specified
thereunder and/or two or more original Reinsureds, including
the class of business and the original reinsured covered under
the special contract, being involved in any one accident.

### special contract referred to above

Name of original          American Fidelity and Casualty Company
reinsured

Class of Business         Auto Public Liability and Property
                          Damage Liability

Net Retention of          £150,000 any one accident.
the Reassured
protected hereunder

All other terms and conditions of this Contract shall remain
unchanged.

20119

W F & D Ltd., London

63001 + 12SEP1957                    21st August, 1957

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/56/5541    and should be attached thereto.

*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as UNITED
STATES CASUALTY Reinsurance Managers of and
on behalf of the NORTHERN ASSURANCE COMPANY LIMITED
AMERICAN HOME ASSURANCE COMPANY and CITIZENS
CASUALTY COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT effective January 1st 1957 :-

1) the Reinsurers subscribing to this Policy are the
Underwriting Members of Lloyds, each for his own part
and not one for another who are Members of the
Syndicates the Definitive Numbers of which in the
attached list and the proportions subscribed are set
forth in the table on the Schedule attached hereto.

2) a further annual minimum and deposit premium of
$3,766.50 (being 50.22% of $7,500) is due and
payable hereunder for the year 1957.

20119

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.



## SCHEDULE

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*A.H. Appleyard*

MANAGER.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S No | L.P.S.O. SLIP No | L.P.S.O. DATE |
|---|---|---|---|
| P E R   C E N T | 5 7 6 | 6 3 0 0 1 1 2 | 4 5 8 1 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 3 . 5 5 | 7 9 5 | T P X 4 5 2 4 | |
| 1 . 7 8 | 7 9 6 | T P X 4 5 2 4 | |
| 7 . 6 0 | 6 5 0 | C A S X 6 5 8 5 | |
| 5 . 7 3 | 8 4 9 | C A S X 6 5 8 5 | |
| 8 . 8 9 | 6 0 5 | 1 2 6 6 7 | |
| 5 . 3 3 | 4 9 9 | 2 6 / 3 / 5 7 | |
| 4 . 4 4 | 1 0 9 | 6 X 4 8 2 1 | |
| 2 . 2 2 | 1 3 0 | | |
| 1 . 5 3 | 9 9 0 | 2 2   1 1 / 1 / 5 6 | |
| 2 . 2 3 | 8 6 | 7 8 / 1 5 1 1 | |
| 2 . 2 3 | 3 6 | T P A   2 0 / 1 / 5 6 | |
| 2 . 2 2 | 3 1 1 | 2 0 / 1 / 5 6 | |
| 1 . 7 8 | 5 6 | E X 2 8 9 0   T P | |
| . 8 9 | 8 6 7 | G R / E C   A T P | |



SPECIAL EXCESS OF LOSS

$300,000 XS $150,000
LLOYDS & COMPANIES
1/1/58 to 12/31/66

W F & C Ltd., London

DATE 21st July, 1966

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/56/5541    and should be attached thereto.

Re

*Name of/Assured*  AGENCY MANAGERS LIMITED, NEW YORK, as United
States Casualty Reinsurance Managers of and on
behalf of THE INDEMNITY MARINE ASSURANCE COMPANY
LIMITED (U.S.BRANCH) CITIZENS CASUALTY COMPANY
OF NEW YORK, CONSTELLATION INSURANCE COMPANY,
NATIONWIDE MUTUAL INSURANCE COMPANY, SKANDINAVIA
INSURANCE COMPANY LIMITED and their Quota Share
Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective January 1st, 1966
the names of the Reassured is amended to read as follows :-

"AGENCY MANAGERS LIMITED, NEW YORK, as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH) NATIONWIDE MUTUAL
INSURANCE COMPANY, CONSTELLATION INSURANCE
COMPANY, CITIZENS CASUALTY COMPANY OF NEW YORK,
THE MONARCH INSURANCE COMPANY OF OHIO, SKANDINAVIA
INSURANCE COMPANY LIMITED and their Quota Share
Reinsurers.   "

All other terms and conditions remain unchanged.



63004 * -6 JUL 1966

W. F. & D. LTD, LONDON.

DATE 9th June, 1966

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541   and should be attached thereto.   —

Re

*Name of/Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.S.
BRANCH) CITIZENS CASUALTY COMPANY OF NEW YORK, GREAT
AMERICAN INSURANCE COMPANY, NATIONWIDE MUTUAL
INSURANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
LIMITED, and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective January 1st,
1966,

1) the name of the Reassured is amended to read as follows:-

"AGENCY MANAGERS LIMITED, NEW YORK, as United States
Casualty Reinsurance Managers of and on behalf of
THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.
S.BRANCH) CITIZENS CASUALTY COMPANY OF NEW YORK,
CONSTELLATION INSURANCE COMPANY, NATIONWIDE MUTUAL
INSURANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
LIMITED and their Quota Share Reinsurers. "

In consequence of the foregoing amendment, any
liability which may attach to the GREAT AMERICAN
INSURANCE COMPANY under contracts of Reinsurance
in force at Midnight December 31st, 1965 shall be
assumed by the CONSTELLATION INSURANCE COMPANY.

2) the Lloyd's participation in the total coverage
afforded by the wording attached to this Policy
is amended from 54.99% to 52.49% and is subscribed
by the UNDERWRITING MEMBERS OF LLOYD'S, each for
his own part and not one for another, who are
Members of the Syndicates the Definitive Numbers
of which in the attached list, and the proportions
subscribed are set forth in the Table on the
Schedule attached hereto.

3) a minimum and deposit premium of $3,411.85
(being 52.49% of $6,500) is due and payable hereon
for the calendar year 1966.

All other terms and conditions remain unchanged.

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's, entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing ...

S C H E D U L E



**Now Know Ye**, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S No. | L.P.S.O. No. | L.P.S.O. DATE | | COM. |
|---|---|---|---|---|---|
| PER CENT | 576 | 63004 | 6 | 7 66 | 1 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 7.24 | 772 | 3210300524 | | | |
| 9.05 | 605 | 12667 | | | |
| 4.52 | 109 | 06X4821 | | | |
| 2.26 | 131 | L1A3 | | | |
| 1.36 | 990 | 097E | | | |
| 2.26 | 783 | 207V1511A | | | |
| 4.23 | 311 | 14XS | | | |
| .75 | 567 | 14XS | | | |
| 3.62 | 56 | 51XE2890 | | | |
| .91 | 371 | 065A2006S | | | |
| 3.62 | 322 | 202 | | | |
| 2.71 | 235 | 935 | | | |
| .91 | 164 | WF46 | | | |
| 1.81 | 33 | 400E | | | |
| 1.36 | 469 | 1118P | | | |
| 1.36 | 510 | 6860 | | | |
| 2.71 | 347 | 205 | | | |
| 1.81 | 484 | 0T525558 | | | |

18      52.49

W. F & D. LTD., LONDON.  63006 ✳ 28 JAN 1965  DATE 1st January, 1965.

ENDORSEMENT TO LLOYD'S POLICY  Ref: 594/65/5541

*This Endorsement is to be deemed to be embodied in and form part*

*of the original Policy numbered* 594/58/5541 *and should be attached thereto.*

*Name of/Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S. BRANCH), CITIZENS
CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL
INSURANCE COMPANY, SKANDINAVIA INSURANCE
COMPANY LIMITED (U.S. BRANCH), NATIONWIDE
MUTUAL INSURANCE COMPANY, and their Quota
Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, effective January
1st, 1965,

1) the name of the Reassured is amended to read
as follows :-

AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and on
behalf of THE INDEMNITY MARINE ASSURANCE COMPANY
LIMITED (U.S. BRANCH), CITIZENS CASUALTY COMPANY
OF NEW YORK, GREAT AMERICAN INSURANCE COMPANY,
NATIONWIDE MUTUAL INSURANCE COMPANY, SKANDINAVIA
INSURANCE COMPANY LIMITED, and their Quota Share
Reinsurers.

Notwithstanding the foregoing amendment, any
liability which may attach to the COSMOPOLITAN
MUTUAL INSURANCE COMPANY under contracts of
reinsurance in force at midnight, December 31st.
1964 shall be protected hereunder until the expiry
date (or, in the case of long-term contracts, the
first anniversary date next following December
31st 1964) of such contracts of reinsurance.

2) the Lloyd's participation in the total coverage
afforded by the wording attached to this Policy
is amended from 55.09% to 54.99% and is subscribed
by the UNDERWRITING MEMBERS OF LLOYD'S, each for
his own part and not one for another, who are

PAGE 2 - TO ENDORSEMENT TO LLOYD'S POLICY NO. 594/58/5541.

           Members of the Syndicates the Definitive
Numbers of which in the attached list,
and the proportions subscribed, are set
forth in the Table on the Schedule attached
hereto.

3) a minimum and deposit premium of £4,124.25
(being 54.99% of £7,500.00) is due and
payable hereon for the calendar year 1965.

    All other terms and conditions remain unchanged.

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as
entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy
or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## S C H E D U L E

**You Know He,** that We the Underwriters, members of the Syndicate(s) whose definitive Number
in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for
own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assu
all such Loss and/or Damage which he or they may from time to time sustain by any one or more of
aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that t
due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his propo...
as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum
assured which is in the said Table set opposite the definitive Number of the Syndicate of which such
Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on
behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*[signature]*

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or
Proportion of the Total Amount assured shared between the
Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS No. | L.P.S.O. No. | L.P.S.O. DATE | | |
|---|---|---|---|---|---|
| PER CENT | 576 | 63006 | 28 | 1 65 | 1 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 7.43 | 772 | 3210300524 | | | |
| 2.64 | 650 | GENX59235 | | | |
| 2.00 | 849 | GENX59235 | | | |
| 9.28 | 605 | 12667 | | | |
| 4.64 | 109 | 06X4821 | | | |
| 2.32 | 131 | L1A3 | | | |
| 1.39 | 990 | 097E | | | |
| 2.32 | 783 | 207V1511A | | | |
| 4.08 | 311 | 14XS | | | |
| 1.02 | 567 | 14XS | | | |
| 2.78 | 56 | 51XE2890 | | | |
| .70 | 867 | GREX030 | | | |
| .93 | 371 | 065A41164 | | | |
| 2.32 | 322 | 202 | | | |
| 2.78 | 235 | 935 | | | |
| .93 | 164 | WF869 | | | |
| 1.86 | 33 | 400E | | | |
| 1.39 | 469 | 1118/P | | | |
| 1.39 | 510 | 6860 | | | |
| 2.79 | 347 | 205 | | | |

54.99

W F & D. Ltd . London

DATE 1st January, 1964

## ENDORSEMENT TO LLOYD'S POLICY 594/64/5541

**This Endorsement is to be deemed to be embodied in and form part**

**of the original Policy numbered** 594/58/5541 **and should be attached thereto.**

RS

*Name of/Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of an on behalf of THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED (U.S.BRANCH), CITIZENS CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN INSURANCE COMPANY, COSMOPOLITAN MUTUAL INSURANCE COMPANY, SCANDINAVIA INSURANCE COMPANY LIMITED (U.S.BRANCH), NATIONWIDE MUTUAL INSURANCE COMPANY, and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED that effective January 1st, 1964,

1) the Lloyd's participation in the total coverage afforded by the wording attached to this Policy is amended from 56.47% to 55.09% and is subscribed by the UNDERWRITING MEMBERS OF LLOYD'S, each for his own part and not one for another, who are Members of the Syndicates the Definitive Numbers of which in the attached list, and the proportions subscribed, are set forth in the Table on the Schedule attached hereto.

2) a minimum and deposit premium of $4,131.75 (being 55.09% of $7,500.00) is due and payable hereon for the calendar year 1964.

20119

63008 * 23 JAN 1964

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## S C H E D U L E

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

**IN WITNESS** whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

E. B. Phillips

*Manager*

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates. | | | | |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S No. | L.P.S.O. No. | L.P.S.O. DATE | |
|---|---|---|---|---|
| PER CENT | 576 | 63008 | 23 | 1 | 64 | 1 |

| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE No. | UNDERWRITER'S REFERENCE |
|---|---|---|
| 4.44 | 795 | TX00524 |
| 2.96 | 470 | 3210300524 |
| 2.64 | 650 | 59234GENX |
| 1.99 | 849 | 59234GENX |
| 9.26 | 605 | 12667 |
| 2.78 | 499 | 61829T3 |
| 4.63 | 109 | 06X4821 |
| 2.31 | 131 | L1A3 |
| 1.39 | 990 | 097E |
| 2.31 | 783 | 207V1511A |
| 2.31 | 311 | 14XS |
| 2.78 | 56 | 51XE2890 |
| .93 | 867 | GR/E |
| .93 | 371 | 065A15063 |
| 2.31 | 322 | 202 |
| 2.78 | 235 | 935 |
| .93 | 164 | WF869 |
| 1.85 | 33 | 090C |
| 1.39 | 469 | 1118/P |
| 1.39 | 510 | 6860 |
| 2.78 | 347 | 205 |

55.09

W. F & D. LTD., LONDON

DATE 28th August, 1963.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541 and should be attached thereto.

RE

Name of Assured

AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of THE INDEMNITY MARINE ASSURANCE
COMPANY LIMITED (U.S.BRANCH), CITIZENS
CASUALTY COMPANY OF NEW YORK, GREAT AMERICAN
INSURANCE COMPANY, COSMOPOLITAN MUTUAL INS-
URANCE COMPANY, NATIONWIDE MUTUAL INSURANCE
COMPANY, SKANDINAVIA INSURANCE COMPANY LIMITED.
and their Quota Share Reinsurers.

IT IS UNDERSTOOD AND AGREED THAT, notwithstanding
anything contained in Article II, this Contract is
extended to include Fidelity Insurance when written
as part of an "Umbrella" policy, provided Reinsurers shall
not be liable for losses discovered or for losses sustain
prior to January 1st, 1963, such date being the retro-
active date in respect of this extension, such insurance
hereunder shall be included under Section 4of the Preamb

All other terms and conditions remain unchanged.

20119

W. F. & D. LTD., LONDON.

DATE 2nd April, 1963.

ENDORSEMENT TO LLOYD'S POLICY        594/63/5541

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered    594/58/5541 and should be attached thereto.
                         RE
*Name of Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
                   Casualty Reinsurance Managers of and on behalf of
                   THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED
                   (U.S.BRANCH), CITIZENS CASUALTY COMPANY OF NEW YORK,
                   COSMOPOLITAN MUTUAL INSURANCE COMPANY, THE CONSTITUTIO
                   INSURANCE CORPORATION OF NEW YORK, SKANDINAVIA
                   INSURANCE COMPANY LIMITED (U.S.BRANCH), NATIONWIDE
                   MUTUAL INSURANCE COMPANY, and their Quota Share
                   Reinsurers.

         IT IS UNDERSTOOD AND AGREED THAT effective January 1st,
    1963 :

    1)   the name of the Reassured is amended to read as follows:

         AGENCY MANAGERS LIMITED, NEW YORK as UnitedStates
         Casualty Reinsurance Managers of and on behalf of
         THE INDEMNITY MARINE ASSURANCE COMPANY LIMITED
         (U.S.BRANCH), CITIZENS CASUALTY COMPANY OF NEW YORK,
         GREAT AMERICAN INSURANCE COMPANY, COSMOPOLITAN
         MUTUAL INSURANCE COMPANY, SKANDINAVIA INSURANCE COMPANY
         LIMITED (U.S.BRANCH), NATIONWIDE MUTUAL INSURANCE
         COMPANY, and their Quota Share Reinsurers.

    Notwithstanding the foregoing amendment, any liability
    which may attach to THE CONSTITUTION INSURANCE CORPORATION
    OF NEW YORK under contracts of reinsurance in force at
    midnight, December 31st, 1962, shall be protected hereunder
    until the expiry date (or in the event of long-term contra
    the first anniversary date next following December 31st,
    1962) of such contracts of reinsurance.

    2)   the Lloyd's participation in the total coverage
         afforded by the wording attached to this Policy is
         amended from 56.68 % to 56.47% and is subscribed by
         the UNDERWRITING MEMBERS OF LLOYD'S, each for his own
         part and not one for another, who are Members of the
         Syndicates the Definitive Numbers of which in the
         attached list, and the proportions subscribed are set
         forth in the Table on the Schedule attached hereto.

20119

-2-

3)   a minimum and deposit premium of $4,235.25
     (being 56.47% of $7,500) is due and payable
     hereon for the calendar year 1963.

All other terms and conditions shall remain unchanged.

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**6 MAY 1963**

## S C H E D U L E

**SIX PENCE**

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved; and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*E. B. Phillips*

MANAGER

| Definitive Numbers of Syndicates ... Proportion of the Total Amount ... Members of those S. | | ...centage or ...etween the |
|---|---|---|

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO | LPSO NO. | LPSO DATE | |
|---|---|---|---|---|
| PER CENT | 576 | 63003 | 16 | 5 | 63 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | |
| 4.94 | 795 | 32103TX00524 | | |
| 2.47 | 470 | 32103TX00524 | | |
| 2.64 | 650 | 59233GENX | | |
| 1.99 | 849 | 59233GENX | | |
| 9.26 | 605 | 12667 | | |
| 2.78 | 499 | 61821N2 | | |
| 4.63 | 109 | 06X4821 | | |
| 2.31 | 131 | LIAB | | |
| 1.39 | 990 | 097E | | |
| 2.31 | 783 | 207V1511A | | |
| 2.31 | 311 | 14XS | | |
| 2.78 | 56 | 51XE2890 | | |
| .93 | 867 | GRE | | |
| .92 | 371 | 74A17T62 | | |
| 2.31 | 322 | 202 | | |
| 2.78 | 235 | 935 | | |
| 1.85 | 729 | 47XEXC | | |
| 1.39 | 998 | 38X1284 | | |
| .46 | 164 | WF869 | | |
| 1.85 | 33 | 090C | | |
| 1.39 | 469 | 1118P | | |
| 1.39 | 510 | 6860 | | |
| 1.39 | 347 | 205 | | |

56.47

W F & D LTD., LONDON.

DATE 20th June, 1962

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541 and should be attached thereto.

RE

*Name of/Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
THE NORTHERN ASSURANCE COMPANY OF AMERICA, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers, CONSTITUTION INSURANCE CORPORATION OF
NEW YORK, COSMOPOLITAN MUTUAL INSURANCE COMPANY OF
NEW YORK, and the UNITED STATES BRANCH OF SKANDINAVIA
INSURANCE COMPANY LIMITED.

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1962

1) the name of the Reassured is amended to read as
   follows :-

   "AGENCY MANAGERS LIMITED, NEW YORK as United States
   Casualty Reinsurance Managers of and on behalf of
      THE INDEMNITY MARINE ASSURANCE COMPANY LTD (U.S.BRANCH)
      CITIZENS CASUALTY COMPANY OF NEW YORK,
      COSMOPOLITAN MUTUAL INSURANCE COMPANY
      THE CONSTITUTION INSURANCE CORPORATION OF NEW YORK,
      SKANDINAVIA INSURANCE COMPANY LTD (U.S.BRANCH),
      NATIONWIDE MUTUAL INSURANCE COMPANY
   and their Quota Share Reinsurers.

   Notwithstanding the foregoing amendment, any liability which
   may attach to THE NORTHERN ASSURANCE COMPANY OF AMERICA and
   AMERICAN HOME ASSURANCE COMPANY under contracts of reinsurance
   in force at midnight, December 31st, 1961, shall be protected
   hereunder until the expiry date (or in the event of long-term
   contracts, the first anniversary date next following December
   31st, 1961) of such contracts of reinsurance.

2) the exclusions a) to i) listed in Article II are deleted
   and replaced by thefollowing exclusions a) to g).

   a) Business of the Reassured which is designated by
      them as aviation Business provided, however, that
      this exclusion does not apply to Workmen's
      Compensation Business.

20119

- 2 -

to Lloyd's Endorsement Dated 20th June, 1962 Policy No. 504/58/5541

    b) Fidelity and Surety Insurance as defined in Section
       46 of Article 4 of the Insurance Law of the State of
       New York.

    c) Credit Insurance as defined in paragraph 17 of the
       said Section 46.

    d) Any form of financial guarantee business.

    e) Liability for loss arising from the operations
       of the Federal Securities Acts of 1933.

    f) Workmen's Compensation and Employers' Liability in
       respect of underground coal mining operations.

    g) Protection and Indemnity business and Ocean Marine
       business written and classified by the Reassured as
       such.

3) the Lloyd's participation in the total coverage afforded by
the wording attached to this Policy is amended from 56.78%
to 56.68% and is subscribed by the UNDERWRITING MEMBERS OF
LLOYD'S, each for his own part and not one for another, who
are Members of the Syndicates the Definitive Numbers of which
in the attached list, and the proportions subscribedare set
forth in the Table on the Schedule attached hereto;

4) a minimum and deposit premium of £4,251.00 (being 56.68% of
£7,500) is due and payable hereon for the calendar year
1962.

All other terms and conditions remain unchanged.

62416 * 12 JUL 1962

S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office

NOW Know Ye, that We the Underwriting members of the Syndicate(s) whose definitive number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of these Syndicates

| AMOUNT PERCENTAGE OR PROPORTION | BROKER'S NO. | L.P.S.O. SLIP NO. | L.P.S.O. DATE | | |
|---|---|---|---|---|---|
| PER CENT | 576 | 62416 | 12 | 7 | 62 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | |
| 5.53 | 795 | 32103TX00524 | | | |
| 1.84 | 470 | 32103TX00524 | | | |
| 5.26 | 650 | 50121GENX | | | |
| 3.96 | 849 | 50121GENX | | | |
| 9.22 | 605 | 12667 | | | |
| 2.77 | 499 | 61822M2 | | | |
| 4.61 | 109 | 06X4821 | | | |
| 2.31 | 131 | 350 | | | |
| 1.38 | 990 | 097E | | | |
| 1.84 | 783 | 207V1511A | | | |
| 2.31 | 311 | 14XS | | | |
| 1.84 | 56 | 51XE2890 | | | |
| .92 | 867 | GR/E | | | |
| .92 | 371 | 74A22362 | | | |
| 1.84 | 322 | 202 | | | |
| 2.77 | 235 | 935 | | | |
| 1.84 | 729 | 47XEXC | | | |
| 1.38 | 998 | 38X1284 | | | |
| .92 | 164 | WF869 | | | |
| 1.84 | 33 | 090C | | | |
| 1.38 | 469 | 1118P | | | |

56.68

W. F. & D. LTD., LONDON.

DATE 18th July, 1961

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541 and should be attached thereto.

Re

*Name of/Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers,
CONSTITUTION INSURANCE CORPORATION OF NEW YORK, UNITY
FIRE AND GENERAL INSURANCE COMPANY and the UNITED STATES
BRANCH OF SKANDINAVIA INSURANCE COMPANY LIMITED.


IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1961,

1) The Unity Fire and General Insurance Company is replaced
   by the Cosmopolitan Mutual Insurance Company of New York

2) the name of the Northern Assurance Company Limited is
   changed to The Northern Assurance Company of America

3) Article IV is deleted and replaced by the following
   Article IV :-

   DEFINITION OF "EACH
   ACCIDENT"                    ARTICLE IV

        In cases where the Reassured's contracts of reinsurance
   contain a definition of "each accident" such definition shall
   apply to this Contract, but if the Reassured's contracts of
   reinsurance do not contain such a definition, then the term
   "each accident" as used herein shall be understood to mean
   "each accident or occurrence or series of accidents or
   occurrences arising out of any one event" provided that as
   respects

        (a) PRODUCTS LIABILITY.
            Said term shall alternatively be understood to
            mean "injuries to all persons proceeding from the
            use or consumption of one prepared or acquired lot
            of merchandise or product".

        (b) PRODUCTS PROPERTY DAMAGE
            Said term shall alternatively be understood to
            mean "all damage to property of others proceeding
            from the use or consumption of one prepared or
            acquired lot of merchandise or product".

20119

Page 2 to Lloyd's Endorsement Dated 17th July, 1961 of

Policy No. 594/58/5541

(c) PROPERTY DAMAGE (other than Automobile and Products)
Said term shall alternatively subject toprovisions
(1) and (2) below be understood to mean "loss or
losses caused by a series of operations, events or
occurrences arising out of operations at one specific
site and which cannot be attributed to any single one
of such operations, events or occurrences, but rather
to the cumulative effect of same".

In assessing each accident within the foregoing
definition it is understood and agreed that

(1) the series of operations, events or occurrences
shall not extend over a period longer than 12
(twelve) consecutive months

and

(2) the Reassured may elect the date on which the
period of not exceeding 12 (twelve)consecutive
months shall be deemed to have commenced.

In the event that the series of operations, events
or occurrences extend over a period longer than 12
(twelve) consecutive months then each consecutive
period of 12 months, the first of which commences
on the date elected under (2) above, shall form
the basis of claim under this Contract.

(d) PUBLIC LIABILITY (other than Automobile and Products)
Said term shall alternatively be understood to mean
as regards each original Insured "injuries to one or
more than one person resulting from infection,
contagion, poisoning or contamination proceeding
from or traceable to the same causative agency".

(e) An occupational or other disease suffered by an
employee which disease arises out of the employment
and for which the employer is liable, the same shall
be deemed an accident within the meaning hereof.
In case the Reassured shall within a policy year
sustain several losses arising out of such an
occupational or other disease of one specific kind
or class, suffered by several employees of one
original Insured, such losses shall be deemed to
arise out of one accident and the date of such
accident shall be deemed to be the commencing date
of the policy year.   A loss as respects each
employee affected by the disease shall be deemed to

<u>Page 3 to Lloyd's Endorsement Dated 18th July, 1961 of</u>
<u>POLICY No. 594/58/5541</u>

have been sustained by the Reassured at the date
when compensable disability of the employee
commenced and at no other date.

(f) As regards business where the measure of loss is
the "neglect, error or omission" of the insured, it
is understood that neglect, error or omission shall
be deemed to be an accident within the meaning
hereof, and the date of loss shall be the date on
which the first act of negligence, error or
omission occurred, except that where the Contract
of Reinsurance entered into by the Reassured grants
a retroactive cover and the first such act occurred
during the retroactive period it shall be deemed to
have occurred on the first day of the said Contract
of Reinsurance.

4) effective January 1st 1961 the Underwriters subscribing this
policy's participation of 56.78% of the total coverage
afforded by the wording attached thereto, are the UNDERWRITING
MEMBERS OF LLOYD'S, each for his own part and not one for
another, who are Members of the Syndicates the Definitive
Numbers of which in the attached list, and the proportions
subscribed are set forth in the Table on the Schedule attached
hereto;

5) a Minimum and Deposit Premium of $4,258.50.(being 56.78% of
$7,500) is due and payable hereon for the calendar year 1961.

All other terms and conditions shall remain ucnahgned.

63005 * 24 AUG 1961

## S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's
entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Poli
or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Offic

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s)
in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his
own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured
all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the
aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the
due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion
as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum
assured which is in the said Table set opposite the definitive Number of the Syndicate of which such
Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on
behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or
Proportion of the Total Amount assured shared between the
Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION PER CENT | SYNDICATE NO. 576 | L.P.S.O. SLIP NO. 63005 | L.P.S.O. DATE 24 8 61 |
|---|---|---|---|
| 5.51 | 475 | 22105TX40524 |
| 1.84 | 470 | 22105TX40524 |
| 5.24 | 650 | 59231GENX |
| 3.95 | 849 | 59231GENX |
| 9.19 | 605 | 12667 |
| 2.76 | 499 | 61802J1 |
| 4.60 | 109 | 06X4821 |
| 2.30 | 131 | 350 |
| 1.38 | 990 | 097E |
| 1.86 | 86 | 78/1511 |
| .35 | 433 | 78/1511 |
| 1.24 | 596 | 78/1511 |
| 2.30 | 36 | 30TPA20J56 |
| 2.30 | 311 | 14XS |
| 1.84 | 56 | 41XE2890 |
| .92 | 867 | GR/E |
| .92 | 371 | 74A2J61 |
| .92 | 322 | 202 |
| 2.76 | 235 | 935 |
| 1.84 | 729 | 47XEXC |
| 1.38 | 998 | 38X1282 |
| .46 | 468 | 00000329D60 |
| .92 | 164 | WF869 |

56.78

W. F. & D. LTD., LONDON.

DATE 6th December, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541  and should be attached thereto.

Re

*Name of/Assured* AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers,
CONSTITUTION INSURANCE CORPORATION OF NEW YORK, UNITY
FIRE AND GENERAL INSURANCE COMPANY and the UNITED
STATES BRANCH OF SKANDINAVIA INSURANCE COMPANY
LIMITED.

IT IS UNDERSTOOD AND AGREED THAT the Nuclear

Incident Exclusion Clause - Liability - Reinsurance attached

to this Policy, is cancelled and replaced by the Nuclear

Incident Exclusion Clause - Liability - Reinsurance attached

hereto.

All other terms and conditions remain unchanged.

20119

TACHING TO AND FORMING PART OF ENDORSEMENT DATED 6th DECEMBER
1960 to LLOYD'S POLICY NO. 594/58/5541

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.

I    It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.   Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature, and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a)  become effective on or after 1st May, 1960, or
(b)  become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

I    Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, processed, stored, transported or disposed of by or on behalf of an insured, or

(c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:

" hazardous properties " include radioactive, toxic or explosive properties; " nuclear material " means source material, special nuclear material or byproduct material; " source material ", " special nuclear material ", and " byproduct material " have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof. " spent fuel " means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; " waste " means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof. " nuclear facility " means

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; " nuclear reactor " means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word " injury " or " destruction " includes all forms of radioactive contamination of property.

V.   The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a)  become effective on or after 1st May, 1960, or
(b)  become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

W. F. & D. LTD., LONDON.

63007 * 29 JUN 1960
DATE 23rd May, 1960

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/5541    and should be attached thereto.

Re

*Name of Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF
NEW YORK and their Obligatory Quota Share Reinsurers

IT IS UNDERSTOOD AND AGREED THAT effective January 1st, 1960.

1) the Constitution Insurance Corporation of New York,
the Unity Fire and General Insurance Company and
the United States Branch of Skandinavia Insurance
Company Limited, have appointed Agency Managers
Limited as their Casualty Reinsurance Underwriters and
Managers, and as from the aforesaid date this Contract
is extended to cover the said Corporation and Companies.

2) the Lloyd's participation in the total coverage
afforded by the wording attached to this policy, is
amended from 52.619% to 56.78% and the Underwriters
subscribing to such amended participation are the
UNDERWRITING MEMBERS OF LLOYD'S, each for his own
part and not one for another, who are Members of the
Syndicates the Definitive Numbers of which in the
attached list, and the proportions subscribed are set
forth in the Table on the Schedule attached hereto;

3) a minimum and deposit premium of $4,258.50 (being 56.78%
of $7,500) is due and payable hereon for the calendar
year 1960.

All other terms and conditions shall remain unchanged.

6300 29 JUN 1960



## S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office

**Now Know Ye**, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) is the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

**LLOYD'S POLICY SIGNING OFFICE**

*[signature]*

**MANAGER**

> Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

P.S. 60

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS NO. | L.P.S.O. SLIP NO. | L.P.S.O. DATE |
|---|---|---|---|
| P E R   C E N T | 5 7 6 | 6 3 0 0 7 | 2 9    6 5 0 2 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 5 • 5 1 | 7 9 5 | E   4 5 2 4 | |
| 1 • 8 4 | 4 7 0 | E   4 5 2 4 | |
| 5 • 2 4 | 6 5 0 | 5 9 2 3 0 G E N X | |
| 3 • 9 5 | 8 4 9 | 5 9 2 3 0 G E N X | |
| 9 • 1 9 | 6 0 5 | 1 2 6 6 7 | |
| 3 • 6 8 | 4 9 9 | 2 3   1 2   5 9 X L T F | |
| 4 • 6 0 | 1 0 9 | 6 X 4 8 2 1 | |
| 2 • 3 0 | 1 3 0 | | |
| 1 • 3 8 | 9 9 0 | 9 7   1 1   1   5 8 | |
| 1 • 8 6 | 8 6 | 7 8   1 5 1 1 | |
| • 3 5 | 4 3 3 | 7 8   1 5 1 1 | |
| 1 • 2 4 | 5 9 6 | 7 8   1 5 1 1 | |
| 2 • 3 0 | 3 6 | 2 0   1   5 6 T P A 3 0 | |
| 2 • 3 0 | 3 1 1 | 1 4 X S | |
| 1 • 8 4 | 5 6 | E X   2 8 9 0   T P | |
| • 9 2 | 8 6 7 | C R   E C   A T P | |
| • 9 2 | 3 7 1 | 7 4 | |
| • 9 2 | 3 2 2 | 2 0 | |
| 2 • 7 6 | 2 3 5 | 9 3 5   2   1 2 | |
| 1 • 8 4 | 7 2 9 | | |
| 1 • 3 8 | 9 9 8 | 3 8   1 2 8 4 | |
| • 4 6 | 4 6 8 | 3   4 0 1   7 T 5 9 | |

P.S. 60

W F. & D. LTD., LONDON.

DATE 10th May, 1960

## ENDORSEMENT TO LLOYD'S POLICY

### This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541     and should be attached thereto.

Re  
Name of Assured

AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK and their Obligatory Quota Share Reinsurers

IT IS UNDERSTOOD AND AGREED THAT effective 1st July, 1959, notwithstanding that the under-mentioned Contract issued by the Reassured (hereinafter called the "special contract") has been excluded from the protection afforded to the Reassured under Excess of Loss Contracts 4642 and 5261 and that a separate Excess of Loss Contract inrespect thereof has been effected by the Reassured, it is understood and agreed that losses sustained by the Reassured under the special contract shall fall within the protection of this Contract 5541 in accordance with the terms thereof in the event of two or more classes specified thereunder and/or two or more original Reinsureds, including the class of business and the original reinsured covered under the special contract, being involved in any one accident.

#### special contract referred to above

Name of original  
reinsured                              All state Insurance Company, Illinois.

Class of Business                   Auto Public Liability and Property Damage Liability written through the agency of, and serviced by, Markel Services, Inc.,

Net Retention of  
the Reassured  
protected hereunder                 $150,000 any one accident.

All other terms and conditions shall remain unchanged.

W. F. & D. LTD., LONDON.

63101 * 14SEP1959
DATE 28th August, 1959

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/58/5541   and should be attached thereto.

Name of/Assured    Re    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY
OF NEW YORK and their Obligatory Quota Share
Reinsurers.


     IT IS HEREBY UNDERSTOOD AND AGREED that all Contracts of
Reinsurance entered into by the Reassured which have an inception
date, renewal date or anniversary date of 1st January, 1959 shall,
for the purposes of this Contract, be deemed to contain the
Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance,
a copy of which is.attached to this Endorsement.

     All other terms of this Contract remain unchanged.

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured directly or indirectly and whether as Insurer or Reinsurer from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to.—

    I.   Nuclear reactor power plants including all auxiliary property on the site, or

    II.   Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and " critical facilities " as such, or

    III.   Installations for fabricating complete fuel elements or for processing substantial quantities of " special nuclear material ", and for reprocessing, salvaging, chemically separating, storing or disposing of " spent " nuclear fuel or waste materials, or

    IV.   Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a)   where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b)   where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term " special nuclear material " shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

    (a)   substantial quantities, and

    (b)   the extent of installation, plant or site.

*Note.*—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a)   all policies issued by the Reassured on or before 31st December 1957 shall be free from the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b)   with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

Printed at Lloyd's, London, England.

12/12/57

N.M.A. 1119

W. F. & D LTD., LONDON.

DATE 2nd June, 1959

### ENDORSEMENT TO LLOYD'S POLICY    Ref. 594/59/5541

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/58/5541    and should be attached thereto.

*Name of Assured*  Re  AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and
on behalf of the NORTHERN ASSURANCE COMPANY
LIMITED, AMERICAN HOME ASSURANCE COMPANY and
CITIZENS CASUALTY COMPANY OF NEW YORK and
their Obligatory Quota Share Reinsurers

IT IS HEREBY UNDERSTOOD AND AGREED that

1) the Lloyd's participation in the total coverage
afforded by the wording attached to the above-
numbered Policy is increased, as from January 1st,
1959, from 50.21% to 52.619% and the Underwriters
subscribing to such increased participation are
the UNDERWRITING MEMBERS OF LLOYD'S, each for his
own part and not one for another, who are Members
of the Syndicates the Definitive Numbers of which
in the attached list, and the proportions subscribed,
are set forth in the Table on the Schedule attached
hereto;

2) a further minimum and deposit premium of $3,946.43
(being 52.619% of $7,500) is due and payable hereon
in respect of the calendar year 1959.

63101 ✳ 14 SEP 1959

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## S C H E D U L E

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates

| AMOUNT, PERCENTAGE OR PROPORTION | Brokers No | L.P.S.O. SLIP No. | L.P.S.O. DATE |
|---|---|---|---|
| PER CENT | 576 | 63101 | 14 959 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 5·467 | 795 | E 4524 | |
| 5·194 | 650 | G E N X 5923 | |
| 3·918 | 849 | G E N X 5923 | |
| 9·111 | 605 | 12667 | |
| 5·467 | 499 | X L   T   P   28 N 58 | |
| 4·556 | 109 | 6 X 4821 | |
| 2·278 | 130 | | |
| 1·367 | 990 | 22  11   1   56 | |
| 1·845 | 36 | 78 / 1511 | |
| ·342 | 433 | 78 / 1511 | |
| 1·230 | 596 | 78 / 1  11 | |
| 2·278 | 36 | T  P  A 20  1  56 | |
| 2·278 | 311 | 21  11   58 | |
| 1·622 | 56 | E X   2  90  T P | |
| ·911 | 867 | G R / E C   A T P | |
| ·911 | 371 | 28  11   58  74 | |
| ·911 | 322 | 0 | |
| 2·733 | 235 | 935   12 | |



63211 * 15 SEP 1958



# LLOYD'S POLICY

*(Subscribed only by Underwriting Members of Lloyd's all of whom have complied with the requirements of the Assurance Companies Acts 1909 and 1946 as to security and otherwise.)*

No Policy or other Contract dated on or after 1st Jan., 1924, will be recognised by the Committee as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters concerned or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing

**Whereas** AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOLE ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK and their Obligatory Quota Share Reinsurers

(hereinafter called "the Assured"), have paid £3,765.75 Minimum & Deposit Premium or Consideration to Us, who have hereunto subscribed our Names to

Insure against Loss as follows:—

In accordance with the wording attached which

is hereby declared to be incorporated in and

to form an integral part of this Policy –

J (A) Camb... 4/9 14

Form approved by Lloyd's Underwriters' Fire and Non-Marine Association.

Any person not an Underwriting Member of Lloyd's subscribing this Policy, or any person altering the same if so subscribed, will be liable to be proceeded against under Lloyd's Acts.

Printed at Lloyd's, London, England.

...of the Indemnity ...forth in the ...ached wording

No. .../58 / 5541

during the period commencing with the

of

of

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

NOW KNOW YE, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the Schedule hereto are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for Another, our Heirs, Executors, and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors, Administrators, and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions herein expressed) not exceeding the Sum of 50.21,5 of the limits of liability set forth in the attached wording

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a Member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE

MANAGER.

Dated in London, the 19th    One Thousand Nine Hundred

Day of August

and    Fifty-eight

Form J (A) (15.11.45)
N.M.A. 210

| In all communications please quote the following reference | |
| --- | --- |
| **594** | 5a, 000 |

## FORM J (A)



**LLOYD'S** **LONDON**

*Assured*  AGENCY MANAGERS LIMITED, NEW YORK, United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK and their Obligatory Quota Share Reinsured

Minimum & Deposit
*Premium*  $3,765.75

*Policy and Stamp*

*Date of Expiry*        --

*The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.*

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to:—

PERCENTAGES SIGNED HEREUNDER ARE PERCENTAGES OF THE INDEMNITY SET FORTH IN THE ATTACHED WORDING

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Sum Assured shared between the Members of those Syndicates.

| BROKER'S NO | LPSO SLIP NO | LPSO DATE | SYNDICATE | UNDERWRITER'S REFERENCE | PER CENT |
|---|---|---|---|---|---|
| 576 | 632111 5 | 95 | 795 | TPX 4524 | 5.33 |
| | | | 650 | GEN X 5923 | 7.60 |
| | | | 849 | GEN X 5923 | 5.73 |
| | | | 605 | 123 67 14/3 | 5.33 |
| | | | 491 | 3 3 58. XL | 5.45 |
| | | | 096 | X 4821 | 4.23 |
| | | | 130 | | 1.33 |
| | | | 990 | 2 111 56 | 1.33 |
| | | | 867 | 8/1511 | 1.33 |
| | | | 437 | 8/1511 | 2.22 |
| | | | 361 | TPA 20 56 | 2.22 |
| | | | 3112 | 0 1 56 TP | 1.78 |
| | | | 56 | EX 2890 TP | .89 |
| | | | 867 | GR/EC ATP | |

ATTACHING TO AND FORMING PART OF  LLOYD'S POLICY NO. 594/58/3541

## EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN HOME
ASSURANCE COMPANY and CITIZENS CASUALTY COMPANY OF NEW
YORK and their Obligatory Quota Share Reinsurers

(hereinafter referred to either
individually or in any combination
as the "Reassured")

by

various INSURANCE COMPANIES and
UNDERWRITING MEMBERS OF LLOYD'S,
each for its or his own part and
not one for another

(hereinafter together referred to as the "Reinsurers")

PREAMBLE

WHEREAS the Reassured have effected excess of loss reinsurance
contracts numbered 4642 and 5261 which protect the Reassured up to
the sum of $850,000 ultimate net loss each accident in excess of
the sum of $150,000 ultimate net loss each accident in respect of
the following classes of casualty business

1) Boiler and Machinery Insurances
2) Personal Injury Liability and Property
   Damage Liability Insurances
3) Workmen's Compensation and Employers'
   Liability Insurances,
4) All other insurances covered thereunder,

in respect of Contracts of Reinsurance written by the Reassured
(hereinafter referred to as "original contracts") to their
Reinsureds (hereinafter referred to as "original reinsureds"), and

WHEREAS the aforesaid amounts of $850,000 and $150,000 apply
separately

1) to each of the four classes of casualty business
   referred to above, and
2) to each original reinsured protected under the original
   contracts, and

-2-

WHEREAS the Reassured desire to reinsure a portion (as stated in Article I) of the liability which may attach to them in the event of two or more of the aforementioned classes and/or two or more original reinsureds being involved in any one accident

NOW THEREFORE THIS CONTRACT WITNESSETH AS FOLLOWS :-

REINSURING CLAUSE          ARTICLE I

A.    In consideration of the payment of premium as stipulated in Article VIII and subject otherwise to the terms and conditions of this Contract, the Reinsurers hereby agree that in the event of two or more of the said classes of casualty insurance and/or two or more original reinsureds protected under the original contracts being involved in one accident the Reinsurers will indemnify the Reassured for that portion of the liability attaching to the Reassured under the original contracts which represents the excess of the sum of $150,000 (One hundred and fifty thousand United States Dollars) ultimate net loss in respect of each accident, the liability of the Reinsurers hereunder being limited to the sum of $300,000 (Three hundred thousand United States Dollars) ultimate net loss in respect of each accident.

B.    For the purposes of this Contract it is understood and agreed that :-

1) all contracts of reinsurance of the Reassured which have an inception date, renewal date or anniversary date of 1st January, 1958 shall be deemed to contain the Nuclear Incident Exclusion Clause - Liability - Reinsurance except only that if the Reassured have been unable to give the prescribed notice in term or ever open contracts of reinsurance because the due date for giving such notice has passed then the Nuclear Incident Exclusion Clause shall be in-corporated in all such contracts of reinsurance not later than 31st December, 1958. As regards contracts of reinsurance which have an inception date, renewal date or anniversary date after 1st January, 1958, the Nuclear Incident Exclusion Clause - Liability - Reinsurance shall be included at the next such inception, renewal or anniversary date and in no case later than 31st December, 1958, provided neverthe-less that

-3-

2) all Boiler and Machinery contracts of reinsurance of the
Reassured (or the Boiler and Machinery portion only of
those contracts of reinsurance of the Reassured which
cover other hazards in addition to Boiler and Machinery)
which have an inception date, renewal date or anniversary
date of January 1, 1958 or subsequent thereto, shall be
deemed to contain the Nuclear Incident Exclusion Clause -
Physical Damage and Liability (Boiler and Machinery
Policies) - Reinsurance.

EXCLUSIONS                      ARTICLE II

This Contract does not apply to

a) Railroad business written and classified by the
Reassured as such

b) Aviation business written and classified by the
Reassured as such

c) the ownership, maintenance and navigation of any
vessel whose gross register exceeds 500 tons

d) "Fidelity and Surety Insurance" as defined in
Section 46 of Article 4 of the Insurance Laws of
the State of New York

e) "Credit Insurance" as defined in paragraph 17 of
the said Section 46

f) any form of financial guarantee business

g) liability for loss arising from the operations of
the Federal Securities Act of 1933

h) Workmen's Compensation and Employers' liability
in respect of underground coal mining operations

i) manufacture, storage, filling, breaking down or
transport of explosives.

It is expressly understood and agreed, however, that except as
regards the exclusion of Surety insurance as defined in Section 46
of Article 4 of the Insurance Laws of the State of New York, Credit
insurance as defined in paragraph 17 of the said Section 46 and any
form of Financial Guarantee business, the foregoing exclusions shall
not apply where the operations outlined are only incidental to the
Original Assured's main operations.

-4-

As regards interest under Plate Glass and All Risks business (except All Risks business accepted by the Burglary Departments of the companies reinsured by the Reassured) no liability shall attach hereto in respect of any loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

As regards interest other than Workmen's Compensation and Liability, which, at time of loss or damage, are on shore OUTSIDE the territorial limits of the United States of America and Canada, no liability shall attach hereto in respect of any such loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

## PERIOD                    ARTICLE III

A.   This Contract applies only to original contracts entered into by the Reassured which commence or are renewed on or after January 1st, 1958, and shall continue in force until cancelled by either party in accordance with the provisions of Article XV or by the mutual agreement of both parties.

B.   For the purpose of this Article all original contracts entered into by the Reassured for a long or indefinite period shall be deemed to be renewed from their respective anniversary dates next following January 1st, 1958.

## DEFINITION OF EACH
## ACCIDENT OR ONE ACCIDENT   ARTICLE IV

In cases where the Reassured's contracts of reinsurance contain a definition of "each accident" or "one accident" such definition shall apply to this Contract, but if the Reassured's contracts of reinsurance do not contain such a definition, then the term "each accident" or "one accident" as used herein shall be understood to mean "each accident or occurrence or series of accidents or occurrences arising out of any one event "provided that as respects

(a) Products Liability, said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(b) classes of insurance hereby reinsured other than those enumerated in paragraphs (a), (c) and (d) hereof, said term shall also be understood to mean, as regards each original assured, "injuries to one or more than one person resulting from infection, contagion, poisoning, or contamination proceeding from or traceable to the same causative agency".

– 5 –

(c) Property damage (other than Automobile and Products) risks, said term shall also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of the same".

(d) an occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof. If the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one assured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(e) as regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retroactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

ULTIMATE NET LOSS                    ARTICLE V

A.  The term "ultimate net loss" as used herein shall mean the sum which the Reassured have become legally obligated to pay (excluding all expenses incurred by the Reassured in settlement or defence of claims) in the settlement of losses or liabilities after making deductions for all recoveries, all salvages, and all claims upon other reinsurers (whether recovered or not).

B.  All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

- 6 -

C.  Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

**NET RETAINED**
**LINES**                              ARTICLE VI

A.  This Contract applies only to that portion of the original contracts which the Reassured retain net for their own account and in calculating the amount of any loss hereunder and also in computing the amount in excess of which this Contract attaches, only loss or losses in respect of that portion of any original contract which the Reassured retain net for their own account shall be included.

B.  The amount of the Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Reassured to collect from any other reinsurers (whether specific or general) any amounts which may have become due from them, whether such inability arises from the insolvency of such other reinsurers or otherwise.

**EXCESS OF LOSS**
**REINSURANCES**                        ARTICLE VII

This Contract in no way applies to protect any liability of the Reassured in respect of Excess of Loss Reinsurances of other Reinsurance Companies written or accepted by the Reassured and the expression "Reinsurance Companies" shall not apply to Companies normally transacting direct business but who accept some incidental reinsurance business.

**PREMIUM**                             ARTICLE VIII

A.  The premium payable to the Reinsurers shall be calculated at the rate of .25% (one quarter of one per cent.) of the Gross Net Earned Premium Income of the Reassured.

B.  The term "Gross Net Earned Premium Income" shall mean the gross earned premiums accruing to the Reassured from all business the subject matter of this Contract, after deducting return premiums and premiums paid away for facultative reinsurances recoveries under which would inure to the benefit of this Contract.

-7-

C.   An annual minimum and deposit premium of U.S. $7,500 shall be paid by the Reassured to the Reinsurers on January 1st of each year this Contract is in force.  As soon as practicable after the expiration of each calendar year of this Contract, the Reassured shall furnish the Reinsurers with a statement of its Gross Net Earned Premium Income during the year then immediately past, and if it is found that the premium due to the Reinsurers, calculated at the aforementioned rate of .25%, exceeds the annual minimum and deposit premium of U.S. $7,500, the amount in excess thereof shall thereupon become payable to the Reinsurers.

ACCESS TO RECORDS                ARTICLE IX

     The Reinsurers, or their authorised representatives shall at all times during the currency of this Contract, or within eighteen months after its termination, have free access to the books and records of the Reassured in so far as they relate to business falling within the scope of this Contract, and in the event of any claim for loss being made hereunder the Reinsurers shall have free access to all claims records during the continuance of this Contract or at any time thereafter until the final settlement of all such claims.

FEDERAL REINSURANCE
STAMP TAX                        ARTICLE X

A.   The Reinsurers have agreed to allow for the purpose of purchasing U.S. Government Stamps for attachment hereto one per cent. of the premium payable hereon to the extent such premium is subject to Federal Stamp Tax.

B.   In the event of any return of premium becoming due hereunder the Reinsurers will deduct from the amount of the return the same percentage as the allowance which they have made towards the Federal Stamp Tax.

C.   Nevertheless where such return of premium becomes due owing to the cancellation hereof by Reinsurers the above deduction of the tax allowance shall not be made except in so far as the Reassured have a right to recover the tax from the U.S. Government.

TAX CLAUSE                       ARTICLE XI

     In consideration of the terms under which this Contract is issued, the Reassured undertake not to claim any deduction in respect of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

-8-

CLAIMS                          ARTICLE XII

A.    The Reassured shall advise the Reinsurers with reasonable
promptitude of any accident or event in which the Reinsurers are
known to be involved and shall, on demand, provide the Reinsurers
with full information relative thereto.

B.    The Reinsurers, through their appointed representative
Mendes and Mount, 27 William Street, New York 5, New York, shall
have the right to co-operate with the Reassured in the defense
and/or settlement of any claims in which they may be interested.

C.    All settlements made by the Reassured in co-operation with
the Reinsurers' appointed representative, Mendes and Mount, shall
be binding on the Reinsurers and all settlements made by the
Reassured in cases where the Reinsurers have elected not to exercise
their right to co-operate with the Reassured shall be binding on the
Reinsurers.  The Reinsurers shall pay to the Reassured any amounts
that may be recoverable under this Contract within fifteen (15)
days after the receipt of the necessary papers proving the loss.

DIVISION OF
SETTLEMENT COSTS                ARTICLE XIII

      Where the Reassured provide a cover under which expenses
incurred by the original reinsured in connection with the invest-
igation and adjustment of claims and suits are included as a part
of the loss, then such expenses shall likewise be considered a part
of the ultimate net loss hereinbefore referred to.  Otherwise such
expenses shall be apportioned between the Reassured and the
Reinsurers in the ratio of their respective liabilities as finally
determined, it being understood however that the Reinsurers shall
not be liable for any part of the salaries of officials of or office
expenses of the Reassured.

COMMUTATION                     ARTICLE XIV

A.    In the event of the Reassured becoming liable to make
periodical payments under any contract reinsured hereunder, the
Reinsurers shall (at any time after 24 months from the date of
the accident) be at liberty to redeem the payments falling due
from them by the payment of a lump sum to be determined as
follows:  In such cases the amount of the claim under this Contract
may be settled by mutual agreement, but if not so settled, the
Reassured and the Reinsurers shall refer the matter to two
arbitrators, one to be chosen by each party and such arbitrators
shall choose an umpire; in the event of the arbitrators failing
to agree, the decision of the umpire shall be final and binding
upon all parties.  The seat of arbitration shall be in New York,
New York.

-9-

B.    The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalised.

CANCELLATION                    ARTICLE XV

A.    This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

B.    In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contracts of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

    1) termination of each such contract

                or

    2) the respective anniversary dates of such Contracts
       next following the effective date of cancellation

whichever shall first occur.

INSOLVENCY                      ARTICLE XVI

The Reinsurers hereby agree that in the event of the insolvency of any of the Companies constituting the Reassured, this Contract of reinsurance shall be so construed that the reinsurance shall be payable directly to the insolvent Company or to its liquidator, receiver or statutory successor by the Reinsurers in the event of the insolvency of any of the Companies constituting the Reassured on the basis of the liability of the Reassured under the contract or contracts reinsured without diminution because of the insolvency of any Company constituting the Reassured.
It is further agreed that the liquidator, the receiver, or the statutory successor of the insolvent Company shall give written notice to the Reinsurers of the pendency of a claim against the insolvent Company on the contract or contracts reinsured within a reasonable time after such claim is filed in the insolvency proceedings; that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences which they may deem available to the insolvent Company or its liquidator, receiver, or statutory successor.

-10-

The expense thus incurred by the Reinsurer shall be chargeable
subject to court approval against the insolvent Company as part
of the expense of liquidation to the extent of a proportionate
share of the benefit which may accrue to such insolvent Company
solely as a result of the defence undertaken by the Reinsurers.

ARBITRATION                    ARTICLE XVII

    Any dispute arising under this Contract shall be submitted
to a court of arbitration composed of two arbitrators, one to be
appointed by the Reassured and the other by the Reinsurers.
The arbitrators shall, before entering upon the reference,
appoint an umpire.
The arbitrators and the umpire shall consider this contract
an honourable engagement rather than merely a legal obligation
they are relieved of all judicial formalities and may abstain
from following the strict rules of law.
The award of the arbitrators or, in the event of their dis-
agreement, of the umpire, shall be precedent to any liability
or right of action of either party.
The costs of the reference and of the award shall be in the
discretion of the arbitrators or umpire, as the case may be,
who may direct to and by whom and in what manner the same shall be
paid.
The seat of arbitration shall be New York, New York.

SERVICE OF SUIT                ARTICLE XVIII

    It is agreed that in the event of the failure of the Reinsurers
to pay any amount claimed to be due hereunder, the Reinsurers, at
the request of the Reassured, will submit to the jurisdiction of
any Court of competent jurisdiction within the United States and will
comply with all requirements necessary to give such Court jurisdiction
and all matters arising hereunder shall bedetermined in accordance
with the law and practice of such Court.
It is further agreed that service of process in such suit may be
made upon Mendes and Mount, 27 William Street, New York 5, New York
or their nominee or nominees, and that in any suit instituted
against any one of them upon this Contract, the Reinsurers will
abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.

    The above-named are authorised and directed to accept service
of process on behalf of the Reinsurers in any such suit and/or
upon the request of the Reassured to give a written undertaking
to the Reassured that they will enter a general appearance upon
Reinsurers' behalf in the event such a suit shall be instituted.

-11-

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereby designate the Superintendent, Commissioner or director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract of reinsurance, and hereby designate the above-named as the firm to which the said officer is authorised to mail such process or a true copy thereof.

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY
### (BOILER AND MACHINERY POLICIES)—REINSURANCE.

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

    (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

    (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

---

Printed at Lloyd's, London, England.

23/8/58

N.M.A. 1166.

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original contracts of the Reassured (new, renewal and replacement) of the classes specified in clause II of this paragraph (2) from the time specified in clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision).

I. **Limited Exclusion Provision**

It is agreed that the policy does not apply to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Farmers' Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature  and the liability portion of combination forms related to the three classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Home-Owners Policies.

III. The inception-dates and thereafter of all original contracts as described in II above, whether new, renewal or replacement, which become effective on or after 1st June 1958; provided this paragraph (2) shall not be applicable to policies issued by the Reassured which are effective prior to 1st January 1959 if the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Reassured of the Limited Exclusion Provision in the policies specified in clause II foregoing.

(3) Except for those classes of contracts specified in clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability contracts of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability

shall be deemed to include with respect to such coverages, from the time specified in clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision).

IV. **Broad Exclusion Provision**

It is agreed that the policy does not apply:

(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard; provided that except for byproduct material, this paragraph (b) shall  not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility after sale or distribution to others;

(c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance. operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America. its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard;

(d) to the transportation, handling, use, sale, distribution or disposal of byproduct material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard.

As used herein:

1. The term " nuclear energy hazard " means the radioactive, toxic, explosive or other hazardous properties of source material, special nuclear material or byproduct material.

2. The terms " source material ", " special nuclear material " and " byproduct material " shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided, except for byproduct material (a) contained in or combined with special nuclear material or (b) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, " byproduct material " shall not include any radioactive isotope away from a nuclear facility.

3. The term " nuclear facility " means:

(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(b) any equipment or device (i) designed or used for the separation of isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or of irradiated materials containing special nuclear material, (iii) incorporating or making use of such irradiated materials, or (iv) designed or used for processing waste byproduct material;

(c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material or waste consisting of or containing special nuclear material or byproduct material;

and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations. Subdivision (ii) of paragraph (b) foregoing is not applicable to the occasional mechanical processing or fabricating or fabricating of

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY
### (BOILER AND MACHINERY POLICIES)—REINSURANCE.

(1)  This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)  Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to " loss ", whether it be direct or indirect, proximate or remote

    (a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

    (b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3)  However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4)  Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

    (b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

Printed at Lloyd's, London, England.
13/9/58
N.M.A. 1166.

COPY OF CLAUSES REFERRED TO IN PARAGRAPH 8, OF ARTICLE I.

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1)  This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)  Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original contracts of the Reassured (new, renewal and replacement) of the classes specified in clause II of this paragraph (2) from the time specified in clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

I.   **Limited Exclusion Provision**

It is agreed that the policy does not apply to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability.

II   Family Automobile Policies (liability only), Farmers' Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the three classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Home-Owners Policies.

III.  The inception-dates and thereafter of all original contracts as described in II above, whether new, renewal or replacement, which become effective on or after 1st June 1958; provided this paragraph (2) shall not be applicable to policies issued by the Reassured which are effective prior to 1st January 1959 if the Governmental Authority having jurisdiction thereof shall have failed to approve the use by the Reassured of the Limited Exclusion Provision in the policies specified in clause II foregoing

(3)  Except for those classes of contracts specified in clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability contracts of the Reassured (new, renewal and replacement) affording the following coverage:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability

shall be deemed to include with respect to such coverages, from the time specified in clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

IV   **Broad Exclusion Provision**

It is agreed that the policy does not apply:

(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard; provided that except for byproduct material, this paragraph (b) shall not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility state or distribution to others:

(c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance, operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America, its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard;

(d) to the transportation, handling, use, sale, distribution or disposal of byproduct material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard.

As used herein:

1   The term "nuclear energy hazard" means the radioactive, toxic, explosive or other hazardous properties of source material, special nuclear material or byproduct material.

2.  The term "source material", "special nuclear material" and "byproduct material" shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided, except for byproduct material (a) contained in or combined with special nuclear material or (b) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, "byproduct material" shall not include any radioactive isotope away from a nuclear facility

3.  The term "nuclear facility" means:

(a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(b) any equipment or device (i) designed or used for the separation of the isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or of irradiated materials containing special nuclear material, (iii) incorporating or making use of such irradiated materials, or (iv) designed or used for processing waste byproduct material;

(c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material or waste consisting of or containing special nuclear material or byproduct material;

and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations. Subdivision (ii) of paragraph (b) foregoing is not applicable to the occasional



① <u>FIRST EXCESS OF LOSS</u>

$350,000 XS $150,000

LLOYDS - 11/23/51 to 12/31/57
EXCESS INS.-1/1/56 to 12/31/57

# LLOYD'S POLICY

No Policy or other Contract dated on or after 1st Jan., 1924, will be recognised by the Committee of Lloyd's all as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriter of the as enabling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriter of the or Contract as security for their liabilities unless at hours at foot the Seal of Lloyd's Policy Signing O

Form approved by Lloyd's for Underwriting Members of Lloyd's. Underwriters who are members of Lloyd's. Non-Marine Association (Lloyd's)

(Subscribed only by Underwriting Members of Lloyd's all of whom have complied with the requirements of the Assurance Companies Acts 1909 and 1946 as to security and otherwise.)

**Whereas** AGENCY MANAGERS LIMITED, as Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK (hereinafter referred to either individually or in any combination as the Assured) have paid $13,000 Minimum and Reassured

NEW YORK as United States Casualty

as the Names hereunto subscribed our Names

Premium on Consideration to Us, who have hereunto subscribed our Names Deposit

to insure against loss as follows:—

As per wording attached which is hereby declared to be incorporated in and to form an integral part of this Policy –

100% for Reinsurance

No. 5914/51/4604

J (A)

The minimum and Deposit Premium of U.S. £13800 Stated herein is the minimum and Deposit Premium applicable to the period from November 23rd 1951 to December 31st 1952

along the period commencing with the expending with the ................. as 60th day inclusive

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

NOW KNOW YE, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the Schedule hereto are set out in the Table overleaf or attached overleaf, hereby bind Ourselves, each for his own part and not one for Another, our Heirs, Executors, and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors, Administrators, and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions herein expressed) not exceeding the Sum of the limits of liability set forth in the attached wording.

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,

MANAGER.

Dated in London, the 30th

Day of September, One Thousand Nine Hundred and Fifty-two

—see back hereof—

9090 J(a) KK 33

Form J (A) (15-11-45).
NMA 2102 HB/





In all communications please quote the following reference

**594**

FORM J (A)

LLOYD'S    LONDON

Assured    AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurances Managers of and on behalf of the NORTHERN ASSURANCE LIMITED, AMERICAN FIDELITY & CASUALTY CO. CITIZENS CASUALTY COMPANY OF NEW YORK

Premium    as per wording

Policy and Stamp

Date of Expiry

The Assured is requested to read this Policy and if incorrect, return it immediately for alteration

In the event of any occurrence likely to result in a claim under this Policy, immediate notice should be given to

## Definitive Numbers of the Syndicates and Amount, Percentage or Proportion of the Total Liability insured shared between the Members of those Syndicates.

| Amount, Percentage or Proportion | Syndicate No | Underwriters Reference | | Amount, Percentage or Proportion | Syndicate No | Underwriters Reference |
|---|---|---|---|---|---|---|
| 17.937% | 404 | 29 A.R. | | 1.345% | 583 | 97 |
| 8.969% | 347 | WF 404 | | 2.242% | 858 | Catas 5.12.51 |
| 17.937% | 212 | TPA | | 1.345% | 33 | Conf.60 |
| 6.727% | 130 | | | | | |
| 5.382% | 900 | A82 XS | | | | |
| 1.345% | 517 | A82 XS | | | | |

| BROKER'S NO | | | POLICY NO | |
|---|---|---|---|---|
| 576 | | | 594/51/4642 | |

| Amount, Percentage or Proportion | Syndicate No | Underwriters Reference | L.P.& O. DATE | L.P.& O. SLIP NO. | |
|---|---|---|---|---|---|
| 4.484% | 56 | TPA 28.11.51 | 13 OCT 52 | 65906 | (2) |
| 5.381% | 964 | Catas | | | |
| 2.242% | 795 | 1221 23.11.51 | | | |
| 4.484% | 255 | PX 28.11 | | | |
| 2.691% | 484 | Conf.91 | | | |
| 2.242% | 975 | T.P.X.29.11.51 | | | |
| 1.794% | 56 | EX 1711 | | | |
| 1.794% | 677 | 19.11.51 | | | |
| 1.794% | 479 | XL | | | |
| 1.794% | 870 | H/TB 71 | | | |
| 1.794% | 857 | TAR | | | |
| 1.345% | 301 | N.256 | | | |
| 5.587% | 109 | 6X 3324 | | | |
| 1.345% | 867 | GP/E | | | |

& D LTD. LONDON.                    DATE 15th October, 1952.

## ENDORSEMENT TO LLOYD'S POLICY

**This Endorsement is to be deemed to be embodied in and form part**
**of the original Policy dated the    30th    day of September, 1952 and**
**numbered 594/51/4642 and should be attached thereto.**

Re
*Name of Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
FIDELITY & CASUALTY COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED that as from inception of this
Policy, paragraph A of Article VI of the wording attached thereto
is amended to read as follows :-

> "The term "ultimate net loss" as used herein shall mean
> the sum actually paid by the Reassured (excluding all
> expenses incurred by the Reassured in the settlement or
> defence of claims) in the settlement of losses or
> liabilities after making deductions for all recoveries,
> all salvages, and all claims upon other reinsurers
> (whether recovered or not) other than the Reassured's
> obligatory quota share reinsurers".

ALL other terms of this Policy remain unchanged.

ATTACHING TO AND FORMING PART OF LLOYD'S POLICY No. 594/51/4642

EXCESS OF LOSS CASUALTY RETROCESSION CONTRACT

issued to

AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty
Reinsurance Managers of and on behalf of the NORTHERN
ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY
COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK

(hereinafter referred to either
individually or in any combination
as the "Reassured")

by

CERTAIN UNDERWRITING MEMBERS OF LLOYD'S
each for his own part and not one for another

(hereinafter referred to as the "Reinsurers")

BUSINESS REINSURED                    ARTICLE I
HEREUNDER

        In consideration of the payment of premium as provided in
Article XII the Reinsurers shall indemnify the Reassured,
within the limits and subject to the terms and conditions herein
set forth, in respect of the liability attaching to them under
Contracts of Reinsurance written in the United States of America
or in Canada (covering liability wheresoever occurring) in respect
of the following classes of insurance as set forth in Section 46
of Article 4 of the Insurance Laws of the State of New York
including any and all amendments thereto or revisions thereof:

    "Accident and Health Insurance" as defined in subparagraph
    (a) of paragraph 3.

    "Water Damage Insurance" as defined in paragraph 6.

    "Burglary and Theft Insurance" as defined in paragraph 7.

    "Glass Insurance" as defined in paragraph 8.

    "Boiler and Machinery Insurance" as defined in paragraph 9.

    "Elevator Insurance" as defined in paragraph 10.

    "Collision Insurance" as defined in paragraph 12.

    "Personal Injury Liability Insurance" as defined in
    paragraph 13.

    "Property Damage Liability Insurance" as defined in
    paragraph 14.

2.

"Workmen's Compensation and Employers' Liability Insurance" as defined in paragraph 15.

All amendments to or revisions of the above paragraphs of Section 46 of Article 4 of the Insurance Laws of the State of New York effective during the currency of this Contract shall be immediately notified to the Reinsurers.

EXCLUSIONS                    ARTICLE II

This Contract does not apply to

a) Railroad business written and classified by the Reassured as such

b) Aviation business written and classified by the Reassured as such

c) Working or navigation of any vessel

d) "Fidelity and Surety Insurance" as defined in Section 46 of Article 4 of the Insurance Laws of the State of New York

e) "Credit Insurance" as defined in paragraph 17 of the said Section 46

f) Any form of financial guarantee business

g) liability for loss arising from the operations of the Federal Securities Act of 1933

h) Workmen's Compensation and Employers' liability in respect of underground coal mining operations

i) Manufacture, storage, filling, breaking down or transport of explosives.

It is expressly understood and agreed, however, that the foregoing exclusions shall not apply where the operations outlined are only incidental to the Original Assureds main operations. This Contract is also subject to the exclusions outlined in Articles X and XI.

3.

REINSURING CLAUSE                ARTICLE III

A.   The Reinsurers shall indemnify the Reassured for that portion
of the liability attaching to them in respect of business falling
within the scope of this Contract which represents the excess of
the sum of $150,000 (one hundred and fifty thousand United States
Dollars) ultimate net loss in respect of each accident, the
liability of the Reinsurers under this contract being limited
to the sum of $350,000 (Three hundred and fifty thousand United
States Dollars) ultimate net loss in respect of each accident.

B.   The amount of $150,000 each accident, in excess of which
this Contract attaches and the Reinsurers' limit of liability
of $350,000 each accident shall be applied separately to:-

     1) Boiler and machinery Insurances.
     2) Personal Injury Liability and Property Damage Liability
        Insurances
     3) Workmen's Compensation and Employers' Liability Insurances
     4) All other insurances covered hereunder.

ATTACHMENT                       ARTICLE IV

     This Contract applies only to Contracts of Reinsurance
entered into by the Reassured which commence or are renewed
on or after November 23rd, 1951 and shall continue in force
until cancelled by either party in accordance with the
provisions of Article XX or by the mutual agreement of both
parties.

DEFINITION OF "EACH              ARTICLE V
ACCIDENT"

     The term "each accident" as used herein shall be
understood to mean "each accident or occurrence or series
of accidents or occurrences arising out of any one event"
provided that as respects

     (a) Products Liability, said term shall also be understood
         to mean "injuries to all persons and all damage to
         property of others proceeding from the use or
         consumption of one prepared or acquired lot of
         merchandise or product".

     (b) Classes of insurance hereby reinsured other than those
         enumerated in paragraphs (a), (c) and (d) hereof, said
         term shall also be understood to mean, as regards each
         original assured, "injuries to one or more than one
         person resulting from infection, contagion, poisoning,
         or contamination proceeding from or traceable to the
         same causative agency",

4.

(c) Property damage (other than Automobile and Products) risks, said term shall also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences, but rather to the cumulative effect of the same".

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable, the same shall be deemed an accident within the meaning hereof. If the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one assured, such losses shall be deemed to a rise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

(e) As regards business where the measure of loss is the "neglect, error or omission" of the insured, it is understood that neglect, error or omission shall be deemed to be an accident within the meaning hereof, and the date of loss shall be the date on which the first act of negligence, error or omission occurred, except that where the Contract of Reinsurance entered into by the Reassured grants a retroactive cover and the first such act occurred during the retroactive period it shall be deemed to have occurred on the first day of the said Contract of Reinsurance.

ULTIMATE NET LOSS                    ARTICLE VI

A. The term "ultimate net loss" as used herein shall mean the sum actually paid by the Reassured (excluding all expenses incurred by the Reassured in the settlement or defence of claims), in the settlement of losses or liabilities after making deduction for all recoveries, all salvages and all claims upon other reinsurers (other than the Reassured's obligatory quota share reinsurers), whether recovered or not.

B. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

C. Nothing in this Article shall be construed to mean that losses under this Contract are not recoverable until the Reassured's ultimate net loss has been ascertained.

5.

NET RETAINED                       ARTICLE VII
LINES

This Contract applies only to that portion of any contract of
reinsurance which the Reassured retain net for their own account
and for account of their Obligatory Quota Share Reinsurers and in
calculating the amount of any loss hereunder and also in computing
the amount in excess of which this Contract attaches, only loss
or losses in respect of that portion of any contract of reinsurance
which the Reassured retain net for their own account and for account
of their Obligatory Quota Share Reinsurers shall be included.

INABILITY TO RECOVER              ARTICLE VIII
FROM OTHER REINSURERS

The amount of the Reinsurers' liability hereunder in
respect of any loss or losses shall not be increased by reason
of the inability of the Reassured to collect from any other
reinsurers (whether specific or general) any amounts which may
have become due from them, whether such inability arises from
the insolvency of such other reinsurers or otherwise.

MAXIMUM RETENTION                  ARTICLE IX

It is warranted that the amount retained by the Reassured
net for their own account and for account of their obligatory
quota share reinsurers shall not exceed

1) $500,000 each accident in respect of each class of
   insurance (as set forth in Article I of this Contract)
   for each reassured

2) as respects boiler and machinery insurance, a daily
   indemnity applying to any one location as defined in
   the Boiler and Machinery Manual of the National Bureau
   of Casualty Underwriters of $5,000 per diem provided,
   however, that where the contract issued by the Reassured
   contains no daily limit, such business shall be protected
   hereunder provided that the liability of the Reassured
   attaches in excess of a deductible of at least
   $2,000,000 each accident (including direct damage,
   if any).

WAR EXCLUSION                      ARTICLE X

A. As regards interest under Plate Glass and All Risks business
(except All Risks business accepted by the Burglary Departments
of the companies reinsured by the Reassured) no liability shall
attach hereto in respect of any loss or damage which is occasioned
by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War,
Rebellion, Insurrection, Military or Usurped Power or Martial
Law or Confiscation by order of any Government or Public Authority.

6.

B. As regards interests, other than Workmen's Compensation and Liability, which, at time of loss or damage, are on shore OUTSIDE the territorial limits of the United States of America and Canada, no liability shall attach hereto in respect of any such loss or damage which is occasioned by War, Invasion, Hostilities, Acts of Foreign Enemies, Civil War, Rebellion, Insurrection, Military or Usurped Power or Martial Law or Confiscation by order of any Government or Public Authority.

EXCESS OF LOSS          ARTICLE XI
REINSURANCE CLAUSE

    This Contract in no way applies to protect any liability of the Reassured in respect of Excess of Loss Reinsurances of other Reinsurance Companies written or accepted by the Reassured and the expression "Reinsurance Companies" shall not apply to Companies normally transacting direct business who accept some incidental reinsurance business.

PREMIUM          ARTICLE XII

A. The premium payable to the Reinsurers shall be calculated at the rate of 8½% applied to the Gross earned premium income of the Reassured.
The term "gross earned premium income" as used herein shall be understood to mean the gross earned premiums accruing to the Reassured from all business the subject matter of this Contract after deducting return premiums and premiums paid away for facultative reinsurances, recoveries under which, in accordance with the provisions of Article VI, would inure to the benefit of the Reinsurers.

B. The Reassured shall pay to the Reinsurers a minimum annual premium of $12,500 in four quarterly instalments of $3,125 on January 1st, April 1st, July 1st and October 1st of each year.

C. The Reassured shall forward to the Reinsurers within 45 days after the close of each calendar quarter a statement of the Reassured's gross earned premium income during the quarter then immediately past and adjustment of premium shall thereupon be made in respect of each calendar year of this Contract as follows :-

    1) if the earned premium for the first quarter exceeds $3,125 the amount in excess thereof shall thereupon be paid to the Reinsurers

    2) if the earned premium for the first two quarters exceeds $6,250 the amount in excess thereof after deducting any additional premium paid under paragraph 1) above shall thereupon be paid to the Reinsurers

7.

3) if the earned premium for the first three quarters exceeds $9,375, the amount in excess thereof after deducting any Additional Premium paid under paragraphs 1) and 2) above shall thereupon be paid to the Reinsurers

4) the statement rendered in respect of the fourth quarter shall include a recapitulation of the earned premium accruing to the Reinsurers for the first three quarters, and the total earned premium for the year shall then be determined.   If such total earned premium:-

   (a) exceeds the aggregate of :-

      (i) the Minimum and Provisional Premium of $12,500

         and

      (ii) the total of any additional premiums paid to the Reinsurers under the provisions of paragraphs 1), 2) and 3) of this Article the amount in excess thereof shall be paid to the Reinsurers

   (b) is less than the aggregate arrived at in paragraph (a) above, the balance shall be refunded to the Reassured, provided nevertheless that in no event shall the premium retained by the Reinsurers be less than $12,500

For the purposes of this Article

1) the "first calendar quarter" shall be deemed to run from November 23rd, 1951 to March 31st, 1952 the deposit premium payable at inception thereof being $4,425

2) the "first calendar year" shall be deemed to run from 23rd November 1951 to December 31st, 1952 the minimum premium applicable to such period being $13,800

FEDERAL REINSURANCE          ARTICLE XIII
STAMP TAX

A.   The Reinsurers hereby agree to allow as a deduction from the premium payable under this Contract the amount required for the purpose of purchasing United States Government Stamps for attachment hereto in respect of the Federal Stamp Tax due  hereon.

8.

B.  In the event of any return of premium becoming due under this Contract, the Reinsurers will deduct from the amount of the return the same percentage as the allowance towards the Federal Stamp Tax made by them on the total premium.

C.  Nevertheless where such return of premium becomes due owing to the cancellation of this Contract by the Reinsurers the above deduction of the Tax allowance shall not be made except insofar as the Reassured have a right to recover the tax from the United States Government.

ACCESS TO RECORDS          ARTICLE XIV

The Reinsurers, or their authorised representatives shall at all times during the currency of this Contract, or within eighteen months after its termination, have free access to the books and records of the Reassured insofar as they relate to business falling within the scope of this Contract, and in the event of any claim for loss being made hereunder the Reinsurers shall have free access to all claims records during the continuance of this Contract or at any time thereafter until the final settlement of all such claims.

TAX CLAUSE          ARTICLE XV

In consideration of the terms under which this Contract is issued, the Reassured undertake not to claim any deduction in respect of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

CLAIMS          ARTICLE XVI

A.  The Reassured shall advise the Reinsurers with reasonable promptitude of any accident or event in which the Reinsurers are known to be involved and shall, on demand, provide the Reinsurers with full information relative thereto.

B.  The Reinsurers, through their appointed representative Mendes and Mount, 27, William St, New York 5, New York, shall have the right to co-operate with the Reassured in the defense and/or settlement of any claims in which they may be interested.

C.  All settlements made by the Reassured in co-operation with the Reinsurers' appointed representative, Mendes and Mount, shall be binding on the Reinsurers and all settlements made by the Reassured in cases where the Reinsurers have elected not to exercise their right to co-operate with the Reassured shall be binding on the Reinsurers.  The Reinsurers shall pay to the

9.

Reassured any amounts that may be recoverable under this Contract within fifteen (15) days after the receipt of the necessary papers proving the loss.

DIVISION OF                 ARTICLE XVII
SETTLEMENT COSTS

Where the Reassured provide a cover under which expenses incurred by the treaty company in connection with the investigation and adjustment of claims and suits are included as a part of the loss, then such expenses shall likewise be considered a part of the ultimate net loss hereinbefore referred to. Otherwise such expenses shall be apportioned between the Reassured and the Reinsurers in the ratio of their respective liabilities as finally determined, it being understood however that the Reinsurers shall not be liable for any part of the salaries of officials of or office expenses of the Reassured.

COMMUTATION                 ARTICLE XVIII

A.   In the event of the Reassured becoming liable to make periodical payments under any contract reinsured hereunder, the Reinsurers shall (at any time after 24 months from the date of the accident) be at liberty to redeem the payments falling due from them by the payment of a lump sum to be determined as follows:   In such cases the amount of the claim under this Contract may be settled by mutual agreement, but if not so settled, the Reassured and the Reinsurers shall refer the matter to two arbitrators, one to be chosen by each party and such arbitrators shall choose an umpire;   in the event of the arbitrators failing to agree, the decision of the umpire shall be final and binding upon all parties.   The seat of arbitration shall be in New York, N.Y.

B.   The Reinsurers' portion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurers for their liability for such claim so capitalized.

INSOLVENCY                 ARTICLE XIX

The Reinsurers hereby agree that in the event of the insolvency of any of the Companies constituting the Reassured, this contract of reinsurance shall be so construed that the reinsurance shall be payable by the Reinsurers on the basis of the liability of the Reassured under the contract or contracts reinsured without diminution because of the insolvency of any Company constituting the Reassured.   It is further agreed that the liquidator, the receiver, or the statutory successor of the insolvent Company shall

10.

give written notice to the Reinsurers of the pendency of a claim against the insolvent Company on the contract or contracts reinsured within a reasonable time after such claim is filed in the insolvency proceedings;  that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense in the proceeding where such claim is to be adjudicated any defence or defences which they may deem available to the insolvent Company or its liquidator, receiver, or statutory successor.
The expense thus incurred by the Reinsurers shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to such insolvent Company solely as a result of the defence undertaken by the Reinsurers.

CANCELLATION                    ARTICLE XX

A.    This Contract may be terminated by either party giving at least ninety days notice to the other party stating the effective date and time on which this Contract shall terminate.

B.    In the event of this Contract being so terminated the liability of the Reinsurers shall continue in force in respect of all Contracts of reinsurance falling within the protection of this Contract which are current at the effective date of the cancellation notice until

    1) termination of each such contract

               or

    2) the respective anniversary dates of such Contracts next following the effective date of cancellation

whichever shall first occur.

ARBITRATION                    ARTICLE XXI

Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers.
The arbitrators shall, before entering upon the reference, appoint an umpire.
The arbitrators and the umpire shall consider this Contract an honourable engagement rather than merely a legal obligation they are relieved of all judicial formalities and may abstain from following the strict rules of law.
The award of the arbitrators or, in the event of their disagreement, of the umpire, shall be precedent to any liability or right of action of either party.

11.

The costs of the reference and of the award shall be in the
discretion of the arbitrators or umpire, as the case may be,
who may direct to and by whom and in what manner the same
shall be paid.
The seat of arbitration shall be New York, N.Y.

SERVICE OF SUIT                ARTICLE XXII

It is agreed that in the event of the failure of the Reinsurers
to pay any amount claimed to be due hereunder, the Reinsurers, at the
request of the Reassured, will submit to the jurisdiction of any
Court of competent jurisdiction within the United States and will
comply with all requirements necessary to give such Court jurisdiction
and all matters arising hereunder shall be determined in accordance
with the law and practice of such Court.
It is further agreed that service of processs in such suit may be
made upon Mendes and Mount, 27, William Street, New York 5, New
York or their nominee or nominees, and that in any suit instituted
against any one of them upon this Contract, the Reinsurers will
abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.

The above-named are authorized and directed to accept service
of process on behalf of the Reinsurers in any such suit and/or
upon the request of the Reassured to give a written undertaking
to the Reassured that they will enter a general appearance upon
Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or
district of the United States which makes provision therefor,
Reinsurers hereby designate the Superintendent, Commissioner or
Director of Insurance or other officer specified for that purpose
in the statute, or his successor or successors in office, as their
true and lawful attorney upon whom may be served any lawful process
in any action, suit or proceeding instituted by or on behalf of the
Reassured or any beneficiary hereunder arising out of this contract of
reinsurance, and hereby designate the above-named as the person to
whom the said officer is authorized to mail such process or a
true copy thereof.

W. F & D LTD. LONDON

DATE 9th September,1958

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/51/4642    and should be attached thereto.

*Name of Assured*  Re

AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED that this Contract is terminated
at Midnight, December, 31st 1957.

The Liability of the Reinsurers in respect of all contracts of
reinsurance protected hereunder which are current at Midnight
December 31st, 1957 shall continue in force in accordance
with the provisions of paragraph B of Article XX.

70119

W F & D Ltd, London  594/57/4642

DATE 31st October, 1957.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/51/4642    and should be attached thereto.
Re

*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

Notwithstanding anything contained in this Contract to the
contrary, it is understood and agreed that as respects liability
assumed by the Reassured on both an aggregate basis and an
accident basis, or on an aggregate basis alone, in respect of
Property Damage Liability Insurance and Products Bodily Injury
Liability Insurance providing aggregate limits of indemnity as
well as per accident limits, the Reinsurers shall indemnify the
Reassured for that portion of the liability attaching to them
(whether due to per accident or aggregate limits, or both) which
represents the excess of the sum of $150,000 (One hundred and
fifty thousand United States Dollars) ultimate net loss in the
aggregate in respect of each annual premium period of each policy,
or in respect of the full policy period if such period does not
exceed fifteen months; but the liability of the Reinsurers under
this Contract for the aggregate ultimate net loss under any such
policy during said period shall not exceed $350,000 (Three hundred
and fifty thousand United States Dollars).

It is nevertheless understood and agreed that if the Reassured
sustain a loss in excess of $150,000 (One hundred and fifty
thousand United States Dollars) as the result of one accident which
involves business falling both within the first paragraph of this
Endorsement and also other business covered under this Contract,
then the entire loss to the Reassured shall be covered under
Article III of the Contract and shall be excluded entirely from
the scope of this Endorsement.

The term "policy" as used in this Endorsement means a policy
issued direct to an insured by a Company reinsured by the Reassured.

ALL other terms of this Contract shall remain unchanged.

0119

V. F & D LTD., LONDON

DATE 26th June, 1957

## ENDORSEMENT TO LLOYD'S POLICY  Ref. No. 594/57/4642

### This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/57/4642    and should be attached thereto.

Re

*Name of Assured*  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS HEREBY UNDERSTOOD AND AGREED that liability in respect
of a contract issued by the Reassured in reinsurance of the
American Fidelity and Casualty Company, covering Auto Public
Liability and Property Damage Liability for a limit of £950,000
excess of £50,000, is excluded from the protection of this
Contract and the premium income in respect of the said contract
shall not be included in the statements of the Reassured's gross
net earned premium income rendered in accordance with Article XII.

IT IS FURTHER UNDERSTOOD AND AGREED that as regards all
Contracts of Reinsurance entered into by the Reassured which
commence or are renewed on or after January 1st, 1957,

1) the Underwriters subscribing to this Policy's participation
of 98.64% in the total coverage afforded by the wording
attached thereto are the UNDERWRITING MEMBERS OF LLOYD'S
each for his own part and not one for another, who are
Members of the Syndicates the Definitive Numbers of which
in the attached list and the proportions subscribed are
set out in the table on the Schedule attached hereto.

2) the rate of premium appearing in paragraph A of Article XII
is reduced from 5% to 4% for all business the subject
matter hereof other than that business, as set forth in the
endorsement dated 6th March, 1955, which remains subject
to the specially reduced rate of 2½%.

3) a further minimum and deposit premium of £12,330 (being
98.64% of £12,500) is due and payable hereunder in respect
of the calendar year 1957 and shall be payable in four
quarterly instalments of £3,082.50 January 1st, April 1st,
July 1st and October 1st, 1957.

ALL other terms of this Policy remain unchanged.

20119

65002 ≠ -6 AUG 1957



## S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which each Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING O       E.

MANAGER.

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates. | | | |
|---|---|---|---|

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS NO | L.P.S.O. SLIP NO | L.P.S.O. DATE |
|---|---|---|---|
| PER CENT | 576 | 65002 | 6 | 8 57 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 18.10 | 524 | 57/0464 | |
| 5.43 | 347 | WF 404  205 | |
| 18.10 | 212 | 201 | |
| 6.79 | 130 | | |
| 6.79 | 88 | A 82 X5 | |
| 1.81 | 36 | 28 11 51 TP | |
| 2.72 | 964 | 118 P 16/4 | |
| 1.51 | 795 | E 1221 15/1 | |
| .75 | 796 | E 1221 15/1 | |
| 2.72 | 235 | PX 28/11 | |
| .90 | 484 | CONF | |
| 2.26 | 975 | 142 E | |
| 1.81 | 56 | EX 1711 TP | |
| 1.81 | 677 | 29 N57 XS N97 | |
| .90 | 479 | X 57 | |
| 1.81 | 870 | TB 71 | |
| 1.81 | 857 | TAH 16/5 | |
| 1.36 | 301 | N 236 | |
| 2.26 | 109 | 6X 3524 | |
| 1.36 | 867 | GR/E/C | |
| 1.36 | 585 | 97 | |
| .90 | 838 | E | |
| 1.36 | 53 | CONF 60 | |
| 1.16 | 86 | 78/1511 | |
| .20 | 453 | 78/1511 | |
| .90 | 990 | 22 28 9 53 | |

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS NO | L.P.S.O. SLIP NO | L.P.S.O. DATE |
|---|---|---|---|
| | | 65002 | 6 | 8 57 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 7.69 | 41 | 14730 | |
| 3.17 | 311 | CAS 57/4569 | |
| .90 | 819 | TP WF 10 | |

W. F & D Ltd. London.

DATE 7th May, 1956

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/51/4642 and should be attached thereto.

Re

*Name of /Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT as regards all Contracts of
Reinsurance entered into by the Reassured which commence or are
renewed on or after January 1st 1956,

1) this Policy's participation in the total coverage
afforded by the wording attached thereto is reduced
from 100% to 98.64% and the Underwriters subscribing
to such reduced participation arethe Underwriting Members
of Lloyd's each for his own part and not one for another,
who are members of the Syndicates the Definitive Numbers
of which in the attached list and the proportions
subscribed are set out in the table on the Schedule
attached hereto.

2) the rate of premium appearing in paragraph A of Article XII
is reduced from 8½% to 5% for all business the subject
matter hereof other than that business, as set forth in the
endorsement dated 6th March, 1953 which remains subject to
the specially reduced rate of 2⅓%.

3) a further minimum and deposit premium of £12,330 (being
98.64% of £12,500) is due and payable hereunder in respect
of the calendar year 1956 and shall be payable in four
quarterly instalments of £3,082.50 on January 1st, April 1st,
July 1st and October 1st, 1956.

4) the word Reinsurers wherever appearing in the wording
attached to this Policy shall mean certain Underwriting
Members of Lloyd's and the Excess Insurance Company Limited.

All other terms of this Policy shall remain unchanged.

20119

65002 * 11 OCT 1956

SCHEDULE



No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

A.X. Appleyard

MANAGER

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS No | LPSO SLIP No | LPSO DATE |
|---|---|---|---|
| PER CENT | 57 | 65002 | 11 10 56 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 18.10 | 404 | 29 AR | |
| 5.43 | 347 | WF 404 205 | |
| 18.10 | 212 | 151 201 | |
| 6.79 | 130 | | |
| 6.79 | 8 | AB2 EXCESS 15 | |
| 1.81 | 36 | NTP A28 11 51 | |
| 2.72 | 964 | CATAS B | |
| 1.51 | 79 | E1221 | |
| .75 | 796 | E1221 15/1 | |
| 2.72 | 235 | PX 2H/11 | |
| .90 | 484 | CONF | |
| 2.26 | 975 | TPX/15/1 | |
| 1.81 | 56 | EX 1711 TP | |
| 1.81 | 677 | EXCESS N 97 | |
| .90 | 479 | X 57 | |
| 1.81 | 870 | TH 71 | |
| 1.81 | 857 | TAR C5 1 | |
| 1.36 | 301 | N 236 | |
| 2.26 | 109 | 6X3324 | |
| 1.36 | A67 | GR/E/C | |
| 1.36 | 583 | 97 E | |
| .90 | 838 | CATAS | |
| 1.36 | 33 | CONF 60 | |
| 1.36 | 86 | 78/1511 | |
| .90 | 990 | 22 28 9 53 | |
| 7.69 | 91 | 14730 | |

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates.

| AMOUNT, PERCENTAGE OR PROPORTION | BROKERS No | LPSO SLIP No | LPSO DATE |
|---|---|---|---|
| | | 65002 | 11 10 56 |
| | SYNDICATE | UNDERWRITER'S REFERENCE | |
| 3.17 | 311 | 15/11/55 | |
| .90 | A19 | TP WF 10 | |

W. F & D LTD. LONDON

DATE 11th January, 1956.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/51/4642    and should be attached thereto.

Re
*Name of/Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS HEREBY UNDERSTOOD AND AGREED that in arriving at the
ultimate net loss of the Reassured hereunder recoveries under
the following Excess of Loss Reinsurance Contract shall be
disregarded:

"an Excess of Loss Reinsurance Contract covering
up to a limit of $300,000 ultimate net loss each
accident in excess of $150,000 ultimate net loss
each accident and protecting the Reassured only
in the event of two or more of the following
classes

1) Boiler and Machinery Insurances
2) Personal Injury Liability and Property
   Damage Liability Insurances
3) Workmen's Compensation and Employers'
   Liability Insurances,
4) All other insurances covered under this
   Contract

and/or two or more reassured protected under Contracts
of Reinsurance written by the Reassured being involved
in any one accident."

ALL other terms and conditions of this Policy shall remain unchanged.

20119

W F & D LTD. LONDON

DATE 5th January, 1956.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered    594/51/4642  and should be attached thereto.

Re
*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK


IT IS UNDERSTOOD AND AGREED that effective from inception of this

Policy paragraph B of Article III of the wording is amended to

read as follows :-

> "B.    The amount of £150,000 each accident, in excess
> of which this Contract attaches and the Reinsurers'
> limit of liability of £350,000 each accident shall
> be applied separately to:-
>
>     1) Boiler and Machinery Insurances,
>     2) Personal Injury Liability and Property
>        Damage Liability Insurances,
>     3) Workmen's Compensation and Employers'
>        Liability Insurances,
>     4) All other insurances covered hereunder,
>
> in respect of each reassured protected under Contracts
> of Reinsurance written by the Reassured. "


ALL other terms and conditions of this Policy shall remain
unchanged.

W F & D LTD., LONDON.

DATE 28th November, 1955.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered 594/51/4642    and should be attached thereto.

*Name of Assured*    Re    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT the name of the Reassured,
appearing in the endorsement dated 19th October, 1955,
should read as follows :-

"AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK. "

All other terms and conditions of this Policy shall remain
unchanged.

20119

W. F. & D. LTD., LONDON

DATE 8th November, 1955.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy numbered  594/51/4642    and should be attached thereto.

*Name of/Assured*   Re

AGENCY MANAGERS LIMITED, NEW YORK as United
States Casualty Reinsurance Managers of and on
behalf of the NORTHERN ASSURANCE COMPANY LIMITED,
AMERICAN HOME ASSURANCE COMPANY and CITIZENS
CASUALTY COMPANY OF NEW YORK.

IT IS UNDERSTOOD AND AGREED THAT notwithstanding anything

contained herein to the contrary, effective July 1st, 1955,

the name of the Reassured is amended to read as follows :-

"AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
HOME ASSURANCE COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK."

ALL other terms and conditions of this Policy shall
remain unchanged.

20119

W. F. & D. LTD., LONDON  Ref. No.594/55/4642

DATE 19th October,1955

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy dated the    30th    day of September,1952 and numbered 594/51/4642    and should be attached thereto.

Re
Name of/Assured    AGENCY MANAGER LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of
the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN
FIDELITY & CASUALTY COMPANY and CITIZENS CASUALTY
COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT the last paragraph of
ARTICLE II of the wording attached to this Policy is amended
to read as follows :-

"It is expressly understood and agreed, however, that
except as regards the exclusion of Surety insurance
as defined in Section 46 of Article 4 of the Insurance
Laws of the State of New York, Credit insurance as
defined in paragraph 17 of the said Section 46 and any
form of Financial Guarantee business, the foregoing
exclusions shall not apply where the operations outlined
are only incidental to the Original Insured's main
operations."

ALL other terms and conditions of this Policy shall remain
unchanged.

20119

W. F & D LTD., LONDON.

DATE 18th July, 1955.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy dated the         30th        day of September, 1952 and numbered   594/51/4642    and should be attached thereto.

Re
*Name of/Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED THAT effective July 1st 1955, the words "American Fidelity & Casualty Company" wherever appearing herein are deleted and replaced by the words "American Home Fire Assurance Company".

All other terms and conditions shall remain unchanged.

20119

W. F & D. LTD., LONDON.

DATE 24th May, 1955.

## ENDORSEMENT TO LLOYD'S POLICY    Ref: 594/55/4642

This Endorsement is to be deemed to be embodied in and form part

of the original Policy dated the          30th          day of September, 1952 and

numbered  594/51/4642     and should be attached thereto.

Re
*Name of Assured*    AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY
& CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF
NEW YORK.

IT IS UNDERSTOOD AND AGREED that the Reinsurers
subscribing to this Policy as from January 1st, 1955 are the
Underwriting Members of L^oyd's, each for his own part and not
one for another, who are members of the Syndicates the Definitive
Numbers of which in the attached list and the proportions
subscribed are set out in the table on the schedule attached
hereto.

IT IS FURTHER UNDERSTOOD AND AGREED that a further
annual minimum and deposit Premium of $12,500 is due to
the Reinsurers in respect of the calendar year 1955 and shall
be payable to the Reinsurers in four quarterly instalments of
$3,125 on January 1st, April 1st, July 1st and October 1st,
1955.

ALL other terms of this policy remain unchanged.

20119

65000 ✳ 21 JUN 1955

SCHEDULE



ENDORSEMENT TO LLOYD'S POLICY NO.594/51/4642

No Policy or other Contract dated on or after 1st January, 1924, will be recognized by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*A. X. Appleyard*

MANAGER.

| AMOUNT, PERCENTAGE OR PROPORTION PER CENT | BROKER'S NO 576 | L.P.S.O. SLIP NO 65000 21 | L.P.S.O. DATE 6 55 | | AMOUNT, PERCENTAGE OR PROPORTION | BROKER'S NO | L.P.S.O. SLIP NO 65000 |
|---|---|---|---|---|---|---|---|
| | SYNDICATE | UNDERWRITER'S REFERENCE | | | 7.69 | SYNDICATE 91 | UNDERWRI 14287 |
| 18.10 | 404 | 29 AR | | | 3.17 | 311 | |
| 5.43 | 347 | WF 404 205 | | | | | |
| 18.10 | 212 | 201 | | | | | |
| 6.79 | 130 | | | | | | |
| 6.79 | 88 | A 82 EXCESS 15 | | | | | |
| 1.81 | 36 | 28/11/51 NT 7 A | | | | | |
| 4.52 | 964 | CATAS | | | | | |
| 1.51 | 795 | 6/1/55 1221 E | | | | | |
| .75 | 796 | 6/1/55 1221 E | | | | | |
| 2.72 | 235 | PX 28/1 | | | | | |
| .90 | 484 | CONF | | | | | |
| 2.26 | 975 | TPX/2/1 | | | | | |
| 1.81 | 56 | EX 1711 9 TP | | | | | |
| 1.81 | 677 | EXCESS N 97 | | | | | |
| .90 | 479 | X 57 | | | | | |
| 1.81 | 870 | TB 71 | | | | | |
| 1.81 | 857 | TAR 5 1 | | | | | |
| 1.36 | 301 | 7/1/55 N 236 | | | | | |
| 1.36 | 1096 | X 3324 | | | | | |
| 1.36 | 867 | GR/E | | | | | |
| 1.36 | 583 | E 97 | | | | | |
| 2.26 | 838 | CATAS | | | | | |
| 1.36 | 33 | CONF 60 | | | | | |
| 1.36 | 867 | 8/1511 | | | | | |
| .90 | 990 | 22 28 9 53 | | | | | |

W. F. & D. Ltd., London

DATE 23rd May, 1955.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy dated the    30th    day of September, 1952 and numbered   594/51/4642   and should be attached thereto.

Re

*Name of/Assured*   AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK

IT IS UNDERSTOOD AND AGREED that the amount of $500,000 which appears in Article IX of the wording attached to the above-numbered policy is replaced, as from September 22nd, 1954, by the amount of $1,000,000.

ALL other terms of this Policy shall remain unchanged.

20119

W. F & D LTD. LONDON

DATE 31st August, 1954.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy dated the     30th     day of September, 1952 and numbered  594/51/4642   and should be attached thereto.

Name of Assured   AGENCY MANAGERS LIMITED, NEW YORK as United States
                   Casualty Reinsurance Managers of and on behalf of the
                   NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY
                   & CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF
                   NEW YORK.


IT IS UNDERSTOOD AND AGREED that exclusion c) of Article II
of the wording attached to this Policy is amended to read
as follows :-

        "the ownership, maintenance and navigation
         of any vessel whose gross register exceeds
         500 tons"


ALL other terms of this Policy shall remain unchanged.

W F & D LTD, LONDON

DATE June,15th,1954
Ref: 594/54/4642

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part

of the original Policy dated the          30th                day of September,1952 and

numbered 594/51/4642       and should be attached thereto.

Re
*Name of/Assured*
AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED,AMERICAN FIDELITY
& CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF
NEW YORK.

IT IS UNDERSTOOD AND AGREED that the Reinsurers
subscribing to this Policy as from January 1st, 1954 are the
Underwriting Members of Lloyd's, each for his own part and not
one for another, who are members of the Syndicates the Definitive
Numbers of which in the attached list and the proportions
subscribed are set out in the table on the schedule attached
hereto.

IT IS FURTHER UNDERSTOOD AND AGREED that a further
annual minimum and deposit Premium of $12,500 is due to
the Reinsurers in respect of the calendar year 1954 and shall
be payable to the Reinsurers in four quarterly instalments of
$3,125 on January 1st, April 1st, July 1st and October 1st,
1954.

ALL other terms of this policy remain unchanged.

20119

65001 ✱ -2 JUL 1954



S C H E D U L E

No Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye, that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.

*A.X. Appleyard*

MANAGER.

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of these Syndicates.

| Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. |
|---|---|---|
| 18.100 % | 404 | 29.AR. |
| 5.450 % | 347 | WF.404. |
| 18.100 % | 212 | 201 |
| 6.787 % | 130 | |
| 6.787 % | 88 | A.82XS |
| 1.810 % | 36 | 28.11.51 |
| 6.787 % | 964 | Catas. |
| 2.263 % | 795 | 1221 |
| 4.525 % | 235 | 28.11. PK |
| 1.810 % | 484 | Conf. |
| 2.263 % | 975 | TPK.12.1. |
| 1.810 % | 56 | EX.1711.TP |
| 1.810 % | 677 | 29.11.51. H. |
| .905 % | 479 | XL |
| 1.810 % | 970 | H/TB.71 |
| 1.810 % | 857 | TAR. |
| 1.357 % | 301 | N.236 |
| 1.357 % | 109 | 6X.3324 |
| 1.357 % | 867 | GR/F |
| 1.357 % | 583 | 97.S. |

Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of these Syndicates.

| Amount, Percentage or Proportion. | Syndicate No. | Underwriters' Reference. |
|---|---|---|
| 2.263 % | 838 | Catas. |
| 1.357 % | 33 | Conf.60 |
| 1.357 % | 86 | 78/1511. |
| .905 % | 990 | 28.9.53 TP. |
| 5.883 % | 91 | 14297 |

BROKER'S NO. 576

POLICY NO. 54/4642

L.P.S.O. DATE  2 JUL 54

L.P.S.O. SLIP NO. 65001  (2)

W. F & D LTD. LONDON.

DATE 22nd June, 1953.

## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part
of the original Policy dated the      30th      day of September, 1952 and
numbered  594/51/4642      and should be attached thereto.

Name of Assured.  AGENCY MANAGERS LIMITED, NEW YORK as United States
Casualty Reinsurance Managers of and on behalf of the
NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY
& CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF
NEW YORK (hereinafter referred to either individually
or in any combination as the "Reassured")

IT IS UNDERSTOOD AND AGREED that as from September 1st, 1952
Article XIX of the wording attached to this policy is amended
to read as follows :-

"The Reinsurers hereby agree that in the event of the
insolvency of any of the Companies constituting the Reassured,
this contract of reinsurance shall be so construed that the
reinsurance shall be payable directly to the insolvent
Company or to its liquidator, receiver or statutory successor
by the Reinsurers in the event of the insolvency of any of
the Companies constituting the Reassured on the basis of
the liability of the Reassured under the contract or contracts
reinsured without diminution because of the insolvency of any
Company constituting the Reassured.   It is further agreed that
the liquidator, the receiver, or the statutory successor of
the insolvent Company shall give written notice to the
Reinsurers of the pendency of a claim against the insolvent
Company on the contract or contracts reinsured within a
reasonable time after such claim is filed in the insolvency
proceedings;   that during the pendency of such claim the
Reinsurers may investigate such claim and interpose, at their
own expense, in the proceeding where such claim is to be
adjudicated any defence or defences which they may deem
available to the insolvent Company or its liquidator, receiver,
or statutory successor.
The expense thus incurred by the Reinsurers shall be chargeable
subject to court approval against the insolvent Company as part
of the expense of liquidation to the extent of a proportionate
share of the benefit which may accrue to such insolvent Company
solely as a result of the defence undertaken by the Reinsurers.

ALL other terms of this policy remain unchanged.

W. F & D Lto., London

DATE 6th March, 1953.

65000 ✱ 24 APR 1953



## ENDORSEMENT TO LLOYD'S POLICY

This Endorsement is to be deemed to be embodied in and form part of the original Policy dated the **30th** day of September, 1952 and numbered **594/51/4642** and should be attached thereto.

Re
Name of Assured    AGENCY MANAGERS LIMITED, NEW YORK as United States Casualty Reinsurance Managers of and on behalf of the NORTHERN ASSURANCE COMPANY LIMITED, AMERICAN FIDELITY & CASUALTY COMPANY and CITIZENS CASUALTY COMPANY OF NEW YORK.

Notwithstanding the provisions of Article XII of the wording attached to this policy, it is understood and agreed that in respect of any Contract accepted by the Reassured where

1) the gross annual premium of the Reassured exceeds ∅100,000 (One hundred thousand United States Dollars) and

2) the liability of the Reassured in respect of any one accident does not exceed ∅75,000 (Seventy five thousand United States Dollars)

the rate of premium payable to the Reinsurers shall be reduced, as from inception hereof, from 8½% to 2½% of the gross earned premium income of the Reassured.

It is further understood and agreed that the Reinsurers subscribing to this Policy as from January 1st, 1953 are the Underwriting Members of Lloyd's, each for his own part and not one for another, who are members of the Syndicates the Definitive Numbers of which in the attached list and the proportions subscribed are set out in the table on the schedule attached hereto.

ALL other terms of this policy remain unchanged.

No one of the Contractors and of the Assured jointly covered by this Policy or Contract entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

## SCHEDULE

**Now Know Ye,** that We the Underwriters, members of the Syndicate(s) whose definitive Number(s) in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said List of the Amount, Percentage or Proportion of the total Sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

**IN WITNESS** whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.



MANAGER.

| Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates. | | | Definitive Numbers of Syndicates and Amount, Percentage or Proportion of the Total Amount assured shared between the Members of those Syndicates. | | |
|---|---|---|---|---|---|
| Amount, Percentage or Proportion | Syndicate No. | Underwriters' Reference | Amount Percentage or Proportion | Syndicate No. | Underwriters' Reference |
| 18.10 % | 404 | 29 AR | 2.263 % | 838 | Catas |
| 9.05 % | 347 | WF.404 | 1.357 % | 33 | CONF.60 |
| 18.10 % | 212 | 201 | 1.357 % | 86 | 76 |
| 6.787 % | 130 | | | | |
| 6.787 % | 88 | A82/XS | | | |
| 4.525 % | 36 | TPA | BROKER & NO. | | POLICY NO. |
| 5.43 % | 964 | Catas | 576 | | 594/53/4642 |
| 2.263 % | 795 | 1221 | L.P.S.O. DATE | | |
| 4.525 % | 235 | PX 28.11 | 24 APR 53 | | 65000 (2) |
| 2.715 % | 484 | Conf. | | | |
| 2.263 % | 975 | TPX 2.1 | | | |
| 1.81 % | 56 | EX 1711 | | | |
| 1.81 % | 677 | 29.11.51 | | | |
| 1.81 % | 479 | XL | | | |
| 1.81 % | 870 | N/TB71 | | | |
| 1.81 % | 857 | TAR | | | |
| 1.357 % | 301 | N.236 | | | |
| 1.357 % | 109 | 6X 3324 | | | |
| 1.357 % | 867 | GR/E | | | |
| 1.357 % | 583 | 97 | | | |

# INTERESTS AND LIABILITIES AGREEMENT

to the

## SECOND CASUALTY RETROCESSIONAL EXCESS OF LOSS AGREEMENT

(hereinafter called "Agreement")

entered into by and between

### AGENCY MANAGERS INC.
New York, New York

(hereinafter called the "Manager") as Reinsurance Manager for the Dominion Insurance Company of America, New York, New York and/or certain other Insurance and/or Reinsurance Companies and/or its Quota Share Reinsurers (hereinafter together called the "Members") and

(hereinafter called the Subscribing Retrocessionaire)

This Interests and Liabilities Agreement shall become effective January 1, 1975 and shall cover the net excess liability of the Members under Original Reinsurance Contracts covering Casualty Business and becoming effective on and after January 1, 1975 and shall remain effective until terminated in accordance with Article 19 of the attached Agreement.

This Agreement obligates the Subscribing Retrocessionaire for          % part of the liability and amounts set forth in the Agreement attached to this Interests and Liabilities Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives this    10th  day of October      1975.

AGENCY MANAGERS INC. for and on behalf of the Members as their interests may appear

_____
Vice Chairman

and on this          day of              1975.

<u>ARTICLE 4</u>

<u>DEFINITIONS</u>

A.   The term "Casualty Business" as used in this Agreement shall be understood to include the following classes of business:

A)   Automobile Bodily and Personal Injury and Property Damage
B)   Other Bodily Injury and Personal Injury and Property Damage
C)   Accident and Sickness
D)   Burglary and Theft
E)   Fidelity and Surety
F)   Workmen's Compensation and Employers' Liability including Occupational Disease
G)   Boiler and Machinery (when classified as Casualty)
H)   The Casualty portion of Multi-Peril Covers.

B.   The term "Loss Occurrence" as used in this Agreement shall follow the definition of this term, or any similar term having the same general meaning, as appearing in the Original Reinsurance Contract out of which the loss arises and the date of such Loss Occurrence shall be the date ascribed to it by the terms of the Original Reinsurance Contract: provided,

1.   With respect to Occupational Disease and other diseases and where Original Reassured's Original Reinsurance Contracts provide for aggregate limits of liability the limits and retentions hereunder shall also apply in the aggregate any one original policy year. In the event of termination of this Agreement this aggregate protection shall cease at the next normal anniversary date of the original policy year.

"Aggregate" shall mean ultimate net losses occurring in the aggregate during any one original policy year.

"Original policy year" shall mean each separate original policy period of not exceeding twelve months commencing at the inception, anniversary or renewal date as and from the inception of this Agreement.

2.   It is understood that, with respect to the business covered hereunder the proportion of losses under Original Reinsurance Contracts written on a so-called "Aggregate Excess" basis and a so-called "Loss Ratio" basis that can be included within these definitions shall be the same proportion as the gross loss applicable to the Original Reinsurance Contract arising out of or caused by one event or occurrence bears to the total gross loss as included within the scope of the rating period of the Original Reinsurance Contract.

## ARTICLE 5

### COVER

The Retrocessionaire shall be liable for the amount of ultimate net loss in excess of an initial ultimate net loss of $1,000,000 each and every occurrence each and every Original Reinsurance Contract, subject to a limit of liability to the Retrocessionaire of $1,500,000 ultimate net loss each and every Original Reinsurance Contract.

## ARTICLE 6

### NET RETAINED LIABILITY

In calculating the amount of any loss hereunder and also in computing the amount in excess of which this Agreement attaches, only loss or losses in respect to that portion of any Original Reinsurance Contract or Contracts which the Manager retains net for the Members' account shall be included. It is understood and agreed that the amount of the Retrocessionaire's liability hereunder in respect to any loss or losses shall not be increased by reason of the inability of the Manager to collect from any other retrocessionaires, whether such inability arises from the insolvency of such other retrocessionaires or otherwise. Members may maintain reinsurances individually for their own accounts for their net shares of liability covered hereunder and such reinsurances will be ignored in determining the loss in excess of which this Agreement applies.

## ARTICLE 7

### EXCLUSIONS

This Agreement does not cover:

A.  Life Insurance, Credit Insurance, Financial Guarantee Insurance, Insolvency Insurance, Title Insurance.

B.  Business excluded by the following Nuclear Incident Exclusion Clauses: (See Attached)

    1.  Nuclear Incident Exclusion Clause-Physical Damage-Reinsurance
    2.  Nuclear Incident Exclusion Clause-Liability-Reinsurance
    3.  Nuclear Incident Exclusion Clause-Physical Damage and Liability (Boiler and Machinery Policies)-Reinsurance
    4.  Nuclear Incident Exclusion Clause-Physical Damage and Liability (Boiler and Machinery Policies)-Reinsurance-Canada.

C.  Aviation Hull and Aviation Liability Business (this exclusion shall not apply to Workmen's Compensation Business) except when it is an incidental part of an Original Reinsurance Contract.

D.  War risk as excluded in Original Reinsurance Contracts.

## ARTICLE 10

## NOTICE OF LOSS AND LOSS SETTLEMENTS

In the event of an accident, disaster, casualty or occurrence occurring which either results in or appears to be of serious enough nature as probably to result in a loss involving this Agreement the Manager shall give notice as soon as reasonably practicable to Retrocessionaires through Guy Carpenter & Company, Inc., 110 William Street, New York, New York 10038, and the Manager shall keep the Retrocessionaire advised of all subsequent developments in connection therewith.

The Retrocessionaire agrees to abide by the settlements of the Manager, such settlements to be considered as satisfactory proof of loss, and amounts falling to the share of the Retrocessionaire shall be immediately payable to the Manager by them upon reasonable evidence of the amount paid or to be paid by the Manager being presented to the Retrocessionaire through Guy Carpenter & Company, Inc. by the Manager.

## ARTICLE 11

## EXCESS OF ORIGINAL POLICY LIMITS

This Agreement shall protect the Members within the limit hereof, in connection with any loss for which the Manager may be legally liable to pay in excess of the limit of its original policy, where loss in excess of the limit has been incurred because of its failure to settle within the policy limit or by reason of alleged or actual negligence, fraud or bad faith in rejecting an offer of settlement or in the preparation of the defense or in the trial of any action against its insured or in the preparation or prosecution of an appeal consequent upon such action.

## ARTICLE 12

## INSPECTION OF RECORDS

The Manager shall place at the disposal of the Retrocessionaire at all reasonable times upon reasonable notice to the Manager in writing, and the Retrocessionaire shall have the right to inspect through its authorized representatives all books, records and papers of the Manager in connection with any premium payable hereunder, or claims made hereunder.

## ARTICLE 13

## TAXES

In consideration of the terms under which this Agreement is issued, the Manager and the Members undertake not to claim any deduction in respect of the premium hereon when making tax returns other than Income or Profits Tax returns to any State or Territory or the District of Columbia.

## ARTICLE 17

## ARBITRATION

Should an irreconcilable difference of opinion arise between the parties to this Agreement as to the interpretation of this Agreement or transactions with respect to this Agreement, such difference shall be submitted to arbitration upon the request of one of the parties, one arbiter to be chosen by the Manager and one by the Retrocessionaire and an umpire to be chosen by the two arbiters before they enter into arbitration.

Should the arbiters fail to agree upon the choice of an umpire within 30 days of the appointment of the last arbiter, then either arbiter, or both together, may request the Superintendent of Insurance of the State in which arbitration is to be held (or the official in charge of Insurance matters whatever his title may be) to appoint an umpire. Should this official decline to make such an appointment, then following notice from said official of such declination, or 30 days following the date such request was made if no response has been received from said official, either arbiter or both together, may petition the court in the state where arbitration is to be held to appoint an umpire.

In the event that either party should fail to choose an arbiter within sixty (60) days following written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering into arbitration.

Each party shall present their case to the arbiters and the umpire within thirty (30) days of the appointment of the umpire and the written decision of any two of the three shall be final and binding upon the Manager, the Members and the Retrocessionaire.

The arbiters and the umpire are relieved from all judicial formalities and may abstain from the strict rules of law, interpreting this Agreement as an honorable undertaking rather than as a merely legal obligation. By agreement between any two of the three, they may extend the time intervals contained in this Article.

The arbiters and the umpire shall be active or retired disinterested executive officers of insurance or reinsurance companies.

Each party shall pay the fee of its chosen arbiter and half of the fee of the umpire; the remaining costs of arbitration shall be paid as the written decision directs. In the event both arbiters are chosen by one part, the fees of the arbiters and the umpire shall be equally divided between the parties.

Unless otherwise mutually agreed between the Manager and the Retrocessionaire any arbitration shall take place in New York, New York.

B.  In the event of termination the liability of the Retrocessionaire shall continue as respects coverage afforded under Original Reinsurance Contracts in force at the time of termination, including those Original Reinsurance Contracts written or renewed during the notice period, until:

a.  Termination date, or 12 months whichever occurs first, as respects Original Reinsurance Contracts written for a set term;

b.  The first anniversary date following the termination of this Agreement, or 12 months following the termination of this Agreement, whichever occurs first, as respects Original Reinsurance Contracts written for a continuous term,

and the premium payable to the Retrocessionaire for the protection afforded during this period shall be 150% of the rate prescribed in the PREMIUM AND REPORTS ARTICLE multiplied by the Gross Net Earned Premium Income on Original Reinsurance Contracts covered during this period.

Notwithstanding the foregoing the Manager may, by giving written notice to the Retrocessionaire prior to the effective date of termination, elect to terminate the Retrocessionaire's entire liability for losses occurring subsequent to the time and date of termination.

## ARTICLE 20

### TERMINATION DURING LOSS

Should this Agreement terminate, or should an anniversary date occur, while a Loss Occurrence covered hereunder is in progress, it is understood and agreed that subject to the other terms and conditions of this Agreement, the Retrocessionaire shall be responsible for the loss in progress in the same manner and to the same extent it would have been responsible had the Agreement terminated, or anniversary date occurred at Midnight, the day following the conclusion of the loss in progress.

## ARTICLE 21

### SERVICE OF SUIT

(Applies only to those Retrocessionaires who are domiciled outside the United States of America)

In the event of the failure of the Retrocessionaire hereon or any of them to pay any amount claimed to be due hereunder, the Retrocessionaire hereon, at the request of the Managers, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

– 10 –

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

*(Wherever the word "Reassured" appears in this clause, it shall be deemed to read "Reassured", "Reinsured", "Company", or whatever other word is employed throughout the text of the reinsurance agreement to which this clause is attached to designate the company or companies reinsured.)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

    I.  It is agreed that the policy does not apply under any liability coverage,

        to { *injury, sickness, disease, death or destruction* / bodily injury or property damage } with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II.  Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

        (a) become effective on or after 1st May, 1960, or

        (b) become effective before that date and contain the Limited Exclusion Provision set out above; provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

    I.  Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* / bodily injury or property damage }

        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief,* / first aid, } to expenses incurred with respect to { *bodily injury, sickness, disease or death* / bodily injury } resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

- 1 -

## NUCLEAR INCIDENT EXCLUSION CLAUSE — PHYSICAL DAMAGE — REINSURANCE

*(Wherever the word "Reassured" appears in this clause, it shall be deemed to read "Reassured", "Reinsured", "Company", or whatever other word is employed throughout the text of the reinsurance agreement to which this clause is attached to designate the company or companies reinsured.)*

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material," and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954, or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

    (a) substantial quantities, and

    (b) the extent of installation, plant or site.

12/12/57

NUCLEAR INCIDENT EXCLUSION CLAUSE —

PHYSICAL DAMAGE AND LIABILITY

(BOILER AND MACHINERY POLICIES) REINSURANCE

*(Wherever the word "Reassured" appears in this clause, it shall be deemed to read "Reassured", "Reinsured", "Company", or whatever other word is employed throughout the text of the reinsurance agreement to which this clause is attached to designate the company or companies reinsured.)*

1. This Reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

2. Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph:

This Policy does not apply to "loss", whether it be direct or indirect, proximate or remote

(a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

(b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

3. However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.