UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

B.D. COOKE & PARTNERS LIMITED, AS
ASSIGNEE OF CITIZENS CASUALTY COMPANY
OF NEW YORK (IN LIQUIDATION),

                                        Plaintiff,

                        -against-

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

                                        Defendants.

---

Civil Action No. 08-CIV-3435 (RJH)

**ELECTRONICALLY FILED**

# MEMORANDUM OF LAW
## IN SUPPORT OF B.D. COOKE'S MOTION TO REMAND

CHADBOURNE & PARKE LLP
John F. Finnegan
Attorneys for Plaintiff
30 Rockefeller Plaza
New York, New York  10112

(212) 408-5100

Carey G. Child
Nancy Monarch
LeeAnn O'Neill
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

Of Counsel

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...........................................2

I.    THE PARTIES.................................................................................2

II.   PROCEDURAL BACKGROUND.........................................................3

      A.    THE LIQUIDATION PROCEEDING UNDER THE EXCLUSIVE
            JURISDICTION OF THE NEW YORK SUPREME COURT ........................3

      B.    THE NY SUPREME COURT APPROVED THE ASSIGNMENT AND
            RETAINED JURISDICTION ..........................................................4

      C.    THE NATIONWIDE ACTION IN THE NY SUPREME COURT .................4

      D.    B.D. COOKE COMMENCED THE PRESENT ACTION IN THE NY
            SUPREME COURT BY VERIFIED COMPLAINT, THE FACE OF
            WHICH DEMONSTRATED THAT THERE WAS NO BASIS FOR
            ARBITRATION OR REMOVAL ...................................................5

      E.    UNDERWRITERS PURPORT TO DEMAND ARBITRATION, BUT
            FAIL TO REBUT THE ABSENCE OF ANY BASIS FOR
            ARBITRATION ......................................................................6

      F.    UNDERWRITERS FILE A NOTICE OF REMOVAL, WHICH AGAIN
            FAILS TO REBUT THE VERIFIED COMPLAINT........................7

III.   FACTUAL BACKGROUND ...............................................................8

      A.    THE UNDERWRITERS' REINSURANCE OF CITIZENS ............................8

      B.    THE ASSIGNMENT TO B.D. COOKE IN THE LIQUIDATION
            PROCEEDING .......................................................................9

      C.    UNDERWRITERS AGREE TO CLAIMS UNDER THE
            REINSURANCE AGREEMENTS, AND OFFER REASONS OUTSIDE
            THE TERMS OF THOSE CONTRACTS IN FAILING TO PAY THE
            AGREED CLAIMS ...............................................................11

ARGUMENT...................................................................................12

i

I.     THE ARBITRATION AGREEMENTS RELIED UPON BY UNDERWRITERS
       ARE "INCAPABLE OF BEING PERFORMED" AND THEREFORE OUTSIDE
       OF THE CONVENTION. ...........................................................................................12

       A.     THE LIQUIDATION OF CITIZENS TERMINATED
              UNDERWRITERS' RIGHT TO COMPEL ARBITRATION, EVEN
              UNDER THE CONVENTION.......................................................................13

       B.     AS ASSIGNEE, B.D. COOKE "STEPS INTO THE SHOES" OF THE
              LIQUIDATOR AND THE ARBITRATION AGREEMENTS REMAIN
              "INCAPABLE OF BEING PERFORMED" .....................................................15

       C.     CONTRARY TO UNDERWRITERS' SUGGESTION, THE
              LIQUIDATOR'S ASSIGNMENT AND PLAN DID NOT REVIVE
              THEIR LONG-SINCE-TERMINATED ABILITY TO COMPEL
              ARBITRATION ...........................................................................................17

       D.     B.D. COOKE'S ENTITLEMENT TO THE SAME PROTECTIONS AS
              THE LIQUIDATOR HAS ALREADY BEEN CONFIRMED BY THE
              NY SUPREME COURT.................................................................................19

II.    THE ARBITRATION AGREEMENTS RELIED UPON BY UNDERWRITERS
       CANNOT PROVIDE A BASIS FOR REMOVAL BECAUSE THEY DO NOT
       RELATE TO THE SUBJECT MATTER OF THIS ACTION....................................21

III.   THE ARBITRATION AGREEMENTS RELIED UPON BY UNDERWRITERS
       CANNOT PROVIDE A BASIS FOR REMOVAL BECAUSE THEY ARE
       SUBJECT TO A WAIVER BY THE UNDERWRITERS OF ANY REMOVAL
       RIGHTS ...............................................................................................................24

CONCLUSION..............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                    Page

Allendale Mut. Ins. Co. v. Excess Ins. Co.,
   992 F. Supp. 278 (S.D.N.Y. 1998) ..................................................................24

B.D. Cooke & Partners Ltd. v. Nationwide Mut. Ins. Co.,
   Index No. 600655/02 (N.Y. Sup. Ct. Oct. 15, 2003) (attached as Child Aff. Ex. 4).....4, 20

B.D. Cooke & Partners Ltd. v. Nationwide Mut. Ins. Co.,
   791 N.Y.S.2d 103 (App. Div. 2005) .........................................................4, 20

Borsack v. Chalk & Vermilion Fine Arts, Ltd.,
   974 F. Supp. 293 (S.D.N.Y. 1997) ..............................................................15

Cargill Int'l S.A. v. M/T Pavel Dybenko,
   991 F.2d 1012 (2d Cir. 1993)...............................................................13, 16

Corcoran v. Ardra Insurance Co.,
   567 N.E.2d 969 (N.Y. 1990)...............................................................14, 17

Ideal Mut. Ins. Co. v. Phoenix Greek Gen. Ins. Co.,
   No. 83 Civ. 4687 (CSH), 1987 WL 28636 (S.D.N.Y. Dec. 11, 1987) ..............................14

In re Int'l Ribbon Mills, Ltd.,
   325 N.E.2d 137 (N.Y. 1975)......................................................................16

Knickerbocker Agency v. Holz,
   149 N.E.2d 885 (N.Y. 1958)......................................................................14

Richard T. Blake & Assocs., Inc. v. Aetna Cas. & Sur. Co.,
   681 N.Y.S.2d 73 (App. Div. 1998) ..............................................................16

S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc.,
   745 F.2d 190 (2d Cir. 1984).....................................................................23

Stephens v. Am. Int'l Ins. Co.,
   66 F.3d 41 (2d Cir. 1995)..............................................................14, 15, 17

Travelers Ins. Co. v. Keeling,
   No. 91 Civ. 7753, 1993 WL 18909 (S.D.N.Y. Jan. 19, 1993)...........................................25

Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,
   126 F.3d 15 (2d Cir. 1997)........................................................................13

**Other Authorities**

28 U.S.C § 1447(c) ............................................................................................................1, 12

Convention, 21 U.S.T. 2517, reprinted at 9 U.S.C.A. §§ 201-208
    (December 29, 1970) ...............................................................................................1, 13, 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| B.D. COOKE & PARTNERS LIMITED, AS ASSIGNEE OF CITIZENS CASUALTY COMPANY OF NEW YORK (IN LIQUIDATION),<br><br>         Plaintiff,<br><br>    -against-<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>          Defendants. | Civil Action No. 08-CIV-3435 (RJH)<br><br>**ELECTRONICALLY FILED** |

## MEMORANDUM OF LAW
## IN SUPPORT OF B.D. COOKE'S MOTION TO REMAND

Plaintiff B.D. Cooke & Partners Limited ("B.D. Cooke"), by its attorneys,

Chadbourne & Parke LLP, respectfully submits this memorandum of law in support of its

Motion for an order pursuant to 28 U.S.C. § 1447(c) remanding this action to the Supreme

Court of New York, County of New York, from which it was improperly removed by

defendants Certain Underwriters at Lloyd's, London ("Underwriters").

## PRELIMINARY STATEMENT

Underwriters' removal of this action — solely on the basis of the Convention on

the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and its

implementing statute, 9 U.S.C. § 201-208, — was improper because the most basic and

fundamental requirements for removal jurisdiction under the Convention do not exist.

Among other things, Convention removal requires a valid written agreement

under which the parties undertake to arbitrate the "subject matter of action or proceeding" to

be removed.  Underwriters admit that they must meet this requirement, but then rely upon

arbitration agreements that cannot possibly satisfy it, for three independent reasons:

<u>First</u>, those arbitration agreements have been "incapable of being performed" *since 1971*.

- They are all contained in contracts under which Underwriters reinsured Citizens Casualty Company of New York ("Citizens"). **B.D. Cooke is not a signatory.** Citizens — the party against whom Underwriters could compel arbitration —was placed into liquidation in 1971. Under established New York case law, Citizens' Liquidator could not be compelled to arbitrate *even under the Convention*, which does not apply where the arbitration agreement is "incapable of being performed."

- As a non-signatory asserting rights solely as the **assignee of the Liquidator**, B.D. Cooke "steps into the shoes" of the Liquidator. Because the arbitration agreements never gave Underwriters the right to compel arbitration against the Liquidator, B.D. Cooke's assignor, they do not give such a right against B.D. Cooke.

<u>Second</u>, besides being "incapable of being performed," the arbitration agreements are not an agreement to arbitrate the subject matter of this action, which does not include any dispute arising out of the reinsurance agreements relied upon by Underwriters.

<u>Third</u>, even if they otherwise applied to the subject matter of this action, the arbitration agreements relied upon by Underwriters cannot provide a basis for removal because they are each subject to a contractual undertaking whereby Underwriters waived any right to remove.

The actual dispute in this action turns on the meaning and effect of the assignment. The fact that Underwriters' Notice of Removal fails to demonstrate the most basic elements of Convention removal jurisdiction suggests that it is an attempt to evade the New York Supreme Court, which approved the assignment in the first place, and which has, in a prior action, already rejected Underwriters' interpretation of the assignment.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.    The Parties

Plaintiff B.D. Cooke is a corporation organized under the laws of the United Kingdom, and its registered address is in Kent, England. (Verified Complaint ¶ 3.) B.D. Cooke is the current manager of a pool of United Kingdom insurers (the "B.D. Cooke Pool") led by the Dominion Insurance Company Limited ("Dominion"). (Verified Complaint ¶ 14.)

2

Defendants Underwriters are underwriters at Lloyd's of London (domiciled in many locations around the world, likely including various states within the United States) that variously participated as reinsurers in one or more excess-of-loss reinsurance contracts, to the extent such contract reinsured Citizens Casualty Company of New York ("Citizens"). (Verified Complaint ¶¶ 5, 17, 27.)

## II.    Procedural Background

### A.    The Liquidation Proceeding Under The Exclusive Jurisdiction Of The New York Supreme Court

B.D. Cooke claims as assignee of the New York Superintendent of Insurance, as Liquidator of Citizens.  (Verified Complaint ¶ 1.)  By an Order dated June 17, 1971, Citizens was declared insolvent, and the liquidation of Citizens by the Liquidator was thereafter supervised by the Supreme Court of the State of New York, New York County ("NY Supreme Court") in a proceeding re-captioned *In Re the Liquidation of Citizens Casualty Co. of New York* (index number 40357/71, the "Liquidation Proceeding")  (*See* Tafuro Aff. ¶ 5 and Ex. 1 at DOI02055-64.[1])  Consistent with its and the Liquidator's exclusive jurisdiction over the liquidation of Citizens, the NY Supreme Court enjoined "all other persons" from "bringing or further prosecuting" any "action" or any "other proceeding".  (*Id.* Ex. 1 at DOI02063-64.)

---

[1]    The supporting affidavits of John Tafuro ("Tafuro Aff.", sworn to on February 4, 2003) and Simon Janes ("Janes Aff.", sworn to on February 5, 2003) are submitted herein under cover of the supporting affidavit Carey G. Child ("Child Aff.", sworn to on May 6, 2008), having been originally submitted in a prior related New York State Court action (the "Nationwide Action" discussed below).  In addition, the supporting affidavits of Thomas McNamara (sworn to on April 25, 2008) and Andrew David Tyler (sworn to on May 1, 2008), and submitted for the first time in this action, are cited herein as the "McNamara Aff." and the "Tyler Aff.".

**B.**     **The NY Supreme Court Approved The Assignment And Retained Jurisdiction**

As part of the Liquidation Proceeding, the NY Supreme Court approved the Liquidator's assignment to B.D. Cooke of Citizens' reinsurance assets (the "Assignment"). As discussed more fully in section III.B below, the Assignment was approved by the NY Supreme Court and was specifically "together with all of the rights which the Liquidator would have had thereunder if the [Liquidation Proceeding] were not closed. . ." The NY Supreme Court also approved the Liquidator's petition, which provided, among other things, that the NY Supreme Court would retain "continuing jurisdiction over any disputes concerning the assignments and transfers" described therein. (Tafuro Aff. Ex. 5 at 12.)

**C.**     **The Nationwide Action In The NY Supreme Court**

The NY Supreme Court again exercised its jurisdiction in resolving a dispute concerning the Assignment at issue in this action. Nationwide Mutual Insurance Company is, like Underwriters, a reinsurer of Citizens under reinsurance contracts assigned to B.D. Cooke under the Assignment. Like Underwriters, Nationwide asserted (among other things) that the amount collectible under the Assignment was capped, and that B.D. Cooke's ability to collect under the Assigment was further impaired by the closure of the Citizens liquidation estate. In *B.D. Cooke & Partners Limited, As Assignee of Citizens Cas. Co v. Nationwide Mutual Insurance Co.*, (the "Nationwide Action"), the NY Supreme Court, in a memorandum decision and order, *inter alia*, rejected the contention by Nationwide that the Assignment was capped, and held that B.D. Cooke was entitled to collect as assignee under the Assignment. *Id.*, No. 600655/02, slip op. at 6, 7, 13 (N.Y. Sup. Ct. Oct. 15, 2003) (Child Aff. Ex. 4). The decision was upheld on appeal, in pertinent part, by the Appellate Division, First Department. 791 N.Y.S.2d 103 (App. Div. 2005).

4

D.    **B.D. Cooke Commenced The Present Action In The NY Supreme Court By Verified Complaint, The Face Of Which Demonstrated That There Was No Basis For Arbitration Or Removal**

B.D. Cooke commenced this action by a Verified Complaint in NY Supreme Court on February 26, 2008.[2]  Although B.D. Cooke claimed as the Liquidator's assignee under certain reinsurance contracts, the Verified Complaint demonstrated that there was no dispute regarding those reinsurance contracts, because Underwriters had: (1) already agreed to the claims under the reinsurance contracts, and (2) instead objected to payment solely on the basis of the terms of the Assignment and another, separate, agreement between the parties (which they refer to as a "Commutation") not at issue in the action.  (Verified Complaint ¶¶ 2, 33, 37, 38, 44, 50.)

The only *non-contingent* cause of action asserted in the Verified Complaint is for declaratory relief regarding the terms of the Assignment, specifically:

> "a declaration as to the meaning and effect of the Assignment, including without limitation that (A) there is no cap on the amount that B.D. Cooke is entitled to collect under the Assignment; and (B) the Assignment is an assignment and does not constitute a novation of any of the assigned reinsurance agreements."  (Verified Complaint, First Cause of Action and first prayer for relief.)

In that regard, the Verified Complaint demonstrated that the NY Supreme Court had retained jurisdiction to interpret the Assignment, and Underwriters had, in any event, agreed to submit to jurisdiction of the court upon request.  (Verified Complaint ¶¶ 7, 9, 10, 29, 30.)

B.D. Cooke also asserted two causes of action for monetary damages with respect to claims that Underwriters had already agreed to under the terms of the reinsurance

---

[2]    Contrary to Underwriters' innuendo, Hague Convention service was made upon Underwriters, and was independently accepted by their counsel.  (Child Aff. ¶ 7.)

agreements, expressly premised upon the understanding that those claims did not involve any

dispute under the reinsurance agreements:

> "This cause of action is asserted in this action expressly subject to, and
> without waiver of, arbitration of any disputes under the Excess-of-Loss
> Reinsurance Agreements as provided in any arbitration clauses contained in
> such Excess-of-Loss Reinsurance Agreements. However, there are no
> apparent disputes between the parties concerning the Excess-of-Loss
> Reinsurance Agreements with respect to the Agreed Claims, which were
> instead agreed to by Lloyd's Underwriters, as set forth in Paragraph 33, and
> sub-Paragraphs 33.1 through 33.97. Lloyd's Underwriters, through Equitas,
> have explained their failure to pay the Agreed Claims solely on bases other
> than the Excess-of-Loss Reinsurance Agreements. If, and to the extent, there
> are, or there are deemed to be, disputes within any arbitration provision of any
> of the Excess-of-Loss Reinsurance Agreements, B.D. Cooke expressly
> reserves the right to arbitrate such disputes." (Verified Complaint ¶¶ 44, 50.)

As this language demonstrates, B.D. Cooke asserted these causes of action contingent upon

its understanding that there was no dispute under the reinsurance agreements, and also

contemplated that — if a dispute were deemed to exist — B.D. Cooke did not intent to

litigate such disputes in this action.[3]

### E.    Underwriters Purport to Demand Arbitration, But Fail to Rebut the Absence of any Basis For Arbitration

By letter from their counsel dated April 4, 2008 (the "Arbitration Demand"),

Underwriters demanded that "the claims and demands set forth in the complaint be submitted

to a court of arbitration." (Child Aff. ¶ 4 and Ex. 2.) The purported basis for the arbitration

demand was the "agreements to arbitrate contained in" the reinsurance agreements (which

---

[3]    In a remarkably-audacious maneuver, Underwriters assert that this language — which
expressly states that there are no disputes under the Lloyd's Reinsurance Contacts,
somehow means that B.D. Cooke "concedes the arbitration agreements. . . apply" to this
action. (Notice of Removal ¶¶ 16, 17.) This is self-evidently false, and could only be
asserted by Underwriters on the basis of a misleadingly-selective "quotation" of what
B.D. Cooke actually said in the Verified Complaint. (*Compare* Notice of Removal ¶ 16
*with* Verified Complaint ¶¶ 44, 50.)

the Underwriters refer to as "retrocession contracts.") (*Id.* Ex. 2 at 1.) The Underwriters

specifically identified three matters as "arising under" those contracts:

> First, "whether. . . B.D. Cooke and [Underwriters] commuted the retrocession
> contracts pursuant to a commutation agreement executed in February 2002."
> (Child Aff. ¶ 4 and Ex. 2 at 1.) Underwriters failed to address how a dispute
> regarding the Commutation could possibly be arbitrable under the reinsurance
> contracts, particularly when the Commutation specifically stated that "[t]he
> Parties hereto agree to submit to the exclusive jurisdiction of the English High
> Court in respect of any dispute, controversy or claim arising out of or in
> connection with this Agreement, or its breach, termination, formation or
> validity." (Tyler Aff. Ex. 1 at 7.)
>
> Second, "whether. . . [the amounts sought by B.D. Cooke] come within the
> terms of [the Assignment]." (Child Aff. ¶ 4 and Ex. 2 at 1.) Once again,
> Underwriters failed to explain how a dispute expressly concerning "the terms
> of" the Assignment could possibly "arise under" the reinsurance contracts.
>
> Third, "whether. . . specific losses identified in the Complaint, ¶ 33, come
> within the coverage provided by the [reinsurance] contracts." (Child Aff. ¶ 4
> and Ex. 2 at 2.) Notably, Underwriters did not even **allege** the existence of a
> dispute regarding the reinsurance contracts or assert that the claims were not
> covered. They did not address, much less rebut, the facts in the Verified
> Complaint showing that those specific losses had already been agreed to by
> the Underwriters, and that there was therefore no dispute under the
> reinsurance contracts.

**F.  Underwriters File a Notice of Removal, Which Again Fails to Rebut the
Verified Complaint**

On or about April 7, 2008, Underwriters filed a Notice of Removal based solely

on the Convention and its implementing statute. Once again Underwriters failed to rebut, or

even address, the Verified Complaint in several respects. Indeed, as was implicit in the

Arbitration Demand, the Underwriters conceded that the arbitration agreements were limited

to disputes "arising under" the reinsurance contracts.[4] (*Compare* Child Aff. Ex. 2 at 1 *with*

Notice of Removal at ¶ 10.)

---

[4]  Perhaps recognizing the fatally-narrow scope of the arbitration agreements that were
actually assigned to B.D. Cooke, Underwriters put before the Court different, broader
language that appears in other contracts. (Notice of Removal at ¶ 11.) This is

### III.    Factual Background

### A.    The Underwriters' Reinsurance of Citizens

Beginning in approximately 1950 and continuing for many years prior to its insolvency, Citizens was a member of a casualty reinsurance pool (the "Agency Managers Pool") managed by Agency Managers, Limited, later known as Agency Managers, Inc. ("Agency Managers").  (Janes Aff. ¶ 2.)  Citizens and certain other insurance and reinsurance companies agreed to become members of the Agency Managers Pool, and to assume a percentage interest in all reinsurance business written by Agency Managers on behalf of the Agency Managers Pool.  (Verified Complaint ¶ 11.)

Among its other duties, Agency Managers procured reinsurance for the benefit of Citizens and the other pool members in respect of the reinsurance obligations that those pool members (including Citizens) in turn owed under the reinsurance business written on their behalf by Agency Managers.  (Verified Complaint ¶ 16.)  The reinsurance procured by Agency Managers for the benefit of Citizens and the other pool members included certain excess-of-loss reinsurance procured from reinsurers such as the Underwriters.  (Verified Complaint ¶ 17.)  Under nine of those contracts, Underwriters reinsured Citizens (the "Lloyd's Reinsurance Contracts"), but each of those nine contracts also reinsured other members of the Agency Managers Pool.  (McNamara Aff. ¶¶ 5, 6, 11.)  Citizens' rights (but

---

demonstrably misleading even on the basis of the Notice of Removal.  The reinsurance contract containing this arbitration clause did not come into effect until January 1, 1975.  (Notice of Removal Ex. 4 at Art. 1.)  As such, Citizens could not possibly have been a party to that contract, and that contract could not have been among the contracts assigned to B.D. Cooke by Citizens' Liquidator.  This is because Underwriters themselves allege that Citizens had become insolvent and been "dissolved in 1971. . .."  (*Id.* at ¶ 26.  *See also* McNamara Aff. at ¶ 14 (stating that the contract relied upon by Underwriters "does not, and never did, reinsure Citizens" and that all Agency-Managers-procured contracts that covered Citizens incepted prior to 1968).)

not those of the other reinsureds) under those nine contracts eventually were vested in the Liquidator and later assigned to B.D. Cooke by the Liquidator. [5]  (*See* Tafuro Aff. Ex. 1 at DOI02053, Ex. 15.)

Each of the nine Lloyd's Reinsurance Contracts contains an arbitration clause that applies only to "dispute[s] arising under this contract," and each also contains a provision requiring Underwriters, as the reinsurer, to submit to the jurisdiction of any court of competent jurisdiction "upon request:"

> "It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."
> (McNamara Aff. ¶ 12 and Exs. 1 -9 at Arts. XIX, XXII, XXII, XXII, XXII, XVIII, XVIII and XXII, respectively.)

## B.    The Assignment to B.D. Cooke in the Liquidation Proceeding

By virtue of Citizens' reinsurance of Dominion and the B.D. Cooke Pool, Dominion was a creditor of the Citizens estate.  (Verified Complaint ¶ 19; Tafuro Aff. ¶ 9.) By 1996, the liquidation of Citizens had already been proceeding for twenty-five years.  Yet, in a Petition (the "Petition") submitted to the court in the Liquidation Proceeding, the Liquidator stated that Dominion was the largest creditor of the Citizens estate and that its claims would take years to resolve.  (Tafuro Aff. ¶¶ 9-14 and Ex. 5.)  In order to expedite the

---

[5]    As such, Underwriters evidently are confused in asserting that the Verified Complaint "seeks declaratory relief and damages with respect to one or more of about five dozen reinsurance contracts."  (Notice of Removal at ¶ 2.)  As set forth above, declaratory relief is requested only in respect of the meaning of the Assignment.  Monetary relief is requested only with claims made under the Assignment (i.e., under the Citizens portion of the nine Lloyd's Reinsurance Contracts), and then only contingent upon the understanding that Underwriters have already agreed to those claims under those contracts.

closing of the Citizens estate, the Liquidator's Petition sought the Court's approval to assign the Liquidator's rights under Citizens' reinsurance agreements to B.D. Cooke in exchange for concessions regarding Dominion's claims against the Citizens estate. (Tafuro Aff. ¶¶ 15-20.)

By Order dated March 6, 1997 (the "Approval Order"), the NY Supreme Court approved the Petition and the Liquidator's plan for early closure of the estate. (Tafuro Aff. ¶ 23 and Ex. 14.) This included the Assignment, which assigned to B.D. Cooke the Liquidator's rights under Citizens' reinsurance contracts, a subset of which were the nine Lloyd's Reinsurance Contracts. (*See id.*. Ex. 15.) Among other things, the Assignment transferred to B.D. Cooke all of the Liquidator's "right, title, and interest" in the reinsurance contracts, "together with all of the rights which Assignor would have had under such agreements if the Citizens estate were not closed pursuant to the Assignor's Plan for the closing of the Citizens' liquidation." (*Id.* Ex. 15; Verified Complaint ¶ 29.)

The Liquidator's ability to make a valid assignment of Citizens' reinsurance rights to B.D. Cooke enabled the Liquidator to maximize the value of the Citizens estate, to close out the Citizens' liquidation proceedings, and to make a distribution to creditors. (*See* Tafuro Aff. ¶¶ 30-31.) In that regard, Liquidator's Petition and plan approved by the Court's Order also provided for the NY Supreme Court to retain "continuing jurisdiction" with respect to interpreting the Assignment.[6] (*Compare id.* Ex. 5 at 12 (the Petition, stating that "the Supreme Court of the State of New York, New York County, shall have continuing jurisdiction over any disputes concerning the assignments and transfers described above and their effect, except said Court shall not resolve disputes solely involving computations of

[6]    As noted above, the NY Supreme Court had previously exercised its exclusive jurisdiction by enjoining "all other persons" from "bringing or further prosecuting" any other proceedings. (*Id.* Ex. 1 at DOI02063-64.)

amounts due thereunder." *with id.* Ex. 14 (Approval Order, granting the Petition and approving the plan).

**C.    Underwriters Agree to Claims Under the Reinsurance Agreements, And Offer Reasons Outside the Terms of Those Contracts in Failing to Pay the Agreed Claims**

Claims under the Lloyd's Reinsurance Contracts are managed for Underwriters by Equitas Management Services Limited n/k/a Resolute Management Services Limited ("Equitas") and have been presented to Equitas by ROM Reinsurance Management Co., Inc. ("ROM"). (Verified Complaint ¶ 31; McNamara Aff. ¶¶ 2, 8.)

As set forth in the Verified Complaint, it is the practice at Lloyd's for Underwriters to signify their agreement to pay claims by providing a "signing number." (Verified Complaint ¶ 32; Tyler Aff. ¶ 7.) Through the reinsurance broker, B.D. Cooke has received "signing numbers" for no fewer than 97 claims presented under the Lloyd's Reinsurance Contracts (the "Agreed Claims"). (Verified Complaint ¶ 33; Tyler Aff. Ex. 6.) As a matter of Lloyd's practice, the agreement of a claim, evidenced by the signing number, means there is no dispute about that claim under the reinsurance contract (here the Lloyd's Reinsurance Contracts), and that — barring only an issue *outside* the reinsurance contract — the claim is to be paid. (Tyler Aff. ¶ 7.) In that regard, Underwriters have explained their failure to pay the 97 Agreed Claims solely on purported bases *outside* of any reinsurance contract, and based solely on their interpretation of the Assignment and the Commutation. (Tyler Aff. ¶¶ 9-10.)

Moreover, even beyond their signing numbers and statements to B.D. Cooke, Underwriters have provided the ultimate real-world evidence — cold, hard cash —that there can be no possible dispute regarding the Agreed Claims arising out the Lloyd's Reinsurance

11

Contracts.  Specifically, Underwriters have made payments in respect of each of the 97

Agreed Claims through ROM, albeit without paying the Citizens portion assigned to

B.D. Cooke.  (McNamara Aff. ¶ 10.)  The significance of these payments is clear when it is

recalled that each of the Lloyd's Reinsurance Contracts reinsured both Citizens and other

members of the Agency Managers Casualty Pool.  (McNamara Aff. ¶ 8.)  Thus, in reviewing,

agreeing, or paying a claim — either in respect of the Underwriters' reinsurance of Citizens

under that contract, or in respect of their reinsurance of other members of the Agency

Managers Casualty Pool under that same contract — Equitas is applying identical

reinsurance terms to the identical claim, under the same reinsurance contract.  (*Id.* ¶¶ 8-9.)

## ARGUMENT

Section 1447(c) of Article 28 of the United States Code provides that "[i]f at

anytime before final judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  B.D. Cooke seeks remand to

NY Supreme Court under this provision, because the arbitration agreements that form the

sole basis of Underwriters' Notice of Removal: (1) are incapable of being performed, and

therefore outside of the Convention; (2) do not relate to the subject matter of this action, and

therefore do not provide a basis for removal; and (3) are subject, in any event, to a waiver by

Underwriters of their right to removal.  This Court therefore lacks subject matter jurisdiction.

I.      **The Arbitration Agreements Relied Upon By Underwriters Are "Incapable of Being Performed" And Therefore Outside of the Convention.**

Underwriters base removal solely upon Convention removal jurisdiction.  (Notice

of Removal at 1.)  The Convention, by its terms, requires a written agreement under which

"the parties undertake to" arbitrate "a subject matter capable of settlement by arbitration" and

does not apply where "said agreement is null and void, inoperative or incapable of being

performed." Convention, 21 U.S.T. 2517, *reprinted at* 9.U.S.C.A. § 201, Art. II, ¶¶ 1, 2, 3 (December 29, 1970) (emphasis added). *See also Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993) (recognizing Convention exception for arbitration agreements that are "null and void, inoperative or incapable of being performed"); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (same, for exception for "subject matter [ ] not capable of settlement by arbitration").

Here, Underwriters rely upon arbitration agreements contained in the Lloyd's Reinsurance Contracts. However, whatever right Underwriters may have originally had to compel arbitration under those contracts was terminated upon the insolvency of Citizens, and thus the arbitration agreements have been "incapable of being performed" since 1971.

### A.    The Liquidation Of Citizens Terminated Underwriters' Right To Compel Arbitration, Even Under The Convention

The Lloyd's Reinsurance Contracts relied upon by Underwriters are contracts between Underwriters and Citizens (and other members of the Agency Managers Pool), not between Underwriters and B.D. Cooke. (*See* McNamara Aff. Exs. 1 - 9 (identifying parties to the contracts).) Upon the liquidation of Citizens, the Liquidator was vested with title to those contracts and they became assets of the Citizens estate (to the extent of Citizens' rights under them). (*See* Tafuro Aff. Ex. 1 at DOI02053.) The Liquidator then assigned its interests in those contracts to B.D. Cooke under the court-approved Assignment. (*Id.* Ex. 15.)

The same court order that placed Citizens in liquidation and vested the Liquidator with title to the Lloyd's Reinsurance Contracts in 1971, also terminated any ability of Underwriters' to compel arbitration. In that order, the NY Supreme Court specifically enjoined "all other persons" from "bringing or further prosecuting" any "action" or any

13

"other proceeding". (*Id.* Ex. 1 at DOI02063-64.) This reflected the exclusive jurisdiction of the Liquidator and the NY Supreme Court, which under settled New York law, terminated the Underwriters ability to compel arbitration, even under the Convention.

New York's Supreme Courts have exclusive jurisdiction over all matters relating to the liquidation of a New York insurance company. *Knickerbocker Agency v. Holz*, 149 N.E.2d 885, 890 (N.Y. 1958) (stating that "[i]t is the Supreme Court, upon the institution of suit by the Superintendent of Insurance. . .which has exclusive jurisdiction of a liquidation proceeding. . ..") (*internal citations omitted*). As a result, a liquidator cannot be forced to arbitrate any claims either for or against an insolvent company, because this would conflict with Supreme Court's exclusive jurisdiction. *Id.* Thus, as this Court has recognized, the "liquidators of insurance companies are simply not bound to arbitrate claims involving the companies." *Ideal Mut. Ins. Co. v. Phoenix Greek Gen. Ins. Co.*, No. 83 Civ. 4687 (CSH), 1987 WL 28636, at *1 (S.D.N.Y. Dec. 11, 1987).

This means that the liquidation of Citizens rendered the arbitration agreements "incapable of being performed" within the meaning of the Convention. In *Corcoran v. Ardra Insurance Co.,* 567 N.E.2d 969 (N.Y. 1990), a reinsurer asserted that the Convention superseded New York law and required arbitration of a reinsurance claim by the liquidator of an insolvent New York insurance company. The Court of Appeals found that the reinsurance contract's arbitration clause was "incapable of being performed," due to the "Supreme Court's exclusive jurisdiction in liquidation matters;" therefore, the disputes were "not 'capable of settlement by arbitration'" within the meaning of the New York Convention. *Id.* at 232-33. Similarly, in *Stephens v. American International Insurance Co.*, 66 F.3d 41, 44-

14

45 (2d Cir. 1995), the Second Circuit Court of Appeals refused to apply the Convention to override a Kentucky statute that renders arbitration clauses unenforceable during liquidation.[7]

As a result, by the time the Liquidator's rights were assigned to B.D. Cooke, the arbitration agreements contained in the Lloyd's Reinsurance Contracts had been "incapable of being performed" for more than 25 years, and the Underwriters had no right to compel arbitration. Underwriters have no greater rights against B.D. Cooke than they did against the Liquidator, B.D. Cooke's assignor.

### B.      As Assignee, B.D. Cooke "Steps Into The Shoes" Of The Liquidator And The Arbitration Agreements Remain "Incapable of Being Performed"

As a matter of first principles, the starting point for analysis is the fact that B.D. Cooke is not a signatory to the arbitration agreements relied upon by Underwriters. The plain language of the Convention contemplates — contrary to the facts here — a written agreement to arbitration *between the parties*. Convention, Art. II(1) ("an agreement in writing under which *the parties* undertake to submit to arbitration. . ..") (emphasis added).

B.D. Cooke does not dispute that non-signatories may, under certain circumstances, be compelled to arbitrate under the Convention. B.D. Cooke does, however, dispute that Underwriters can simply gloss over this issue. In that regard, the Convention does not establish any independent basis for binding a non-signatory. Instead, under the Convention, the "general rules of contract law apply to determine which parties are subject to arbitration." *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 301 (S.D.N.Y.

---

[7]    Underwriters fail to address the *Corcoran* decision. Instead, they rely upon cases from other jurisdictions, that did not involve liquidation, in which the McCarran-Ferguson Act was found not to apply to international insurance contracts made under the New York Convention. (*See* Notice of Removal ¶¶ 23, 24.) These cases are not only inapposite because they do not involve liquidation proceedings, but are also contrary to the law of this Circuit, as shown by *Stephens*.

1997). *See also Cargill*, 991 F.2d at 1020 (recognizing that third-party beneficiary theory could bind non-signatory to arbitration).

Here, the "general rules of contract law," specifically the general law of assignment, makes clear that B.D. Cooke, as assignee, cannot be compelled to arbitrate if its assignor, the Liquidator, could not be compelled to arbitrate. By operation of basic assignment law, B.D. Cooke steps directly into the shoes of the Liquidator, inheriting only those legal rights and obligations under the Lloyd's Reinsurance Contracts that the Liquidator would have had. *See Richard T. Blake & Assocs., Inc. v. Aetna Cas. & Sur. Co.*, 681 N.Y.S.2d 73, 74-75 (App. Div. 1998) (stating that "[i]t is well established that an assignee stands in the shoes of the assignor. . ..") (*citing In re Int'l Ribbon Mills, Ltd.*, 325 N.E.2d 137, 139 (N.Y. 1975)). Although this is true by operation of law, it is also specifically confirmed in the Assignment itself. The Liquidator's assignment of "all of its right, title and interest in and to the" Lloyd's Reinsurance Contracts (among others) is expressly to include the rights the Liquidator had by virtue of the Liquidation Proceeding:

> ". . . together with all of the rights which Assignor would have had under such agreements if the Citizens estate were not closed pursuant to Assignor's Plan for the closing of the Citizens' liquidation." (Tafuro Aff. Ex. 15 at 2.)

In addition to this general vesting of B.D. Cooke with "all of the rights" that the Liquidator would have had, the NY Supreme Court clearly indicated that it would retain jurisdiction over disputes concerning interpretation of the Assignment. The Approval Order specifically approved the Liquidator's Petition and plan, which expressly stated that "the Supreme Court of the State of New York, New York County, shall have continuing jurisdiction over any disputes concerning the assignments and transfers described above and their effect. . .." (Tafuro Aff. Ex. 5 at 12.).

**C.     Contrary To Underwriters' Suggestion, The Liquidator's Assignment And Plan Did Not Revive Their Long-Since-Terminated Ability To Compel Arbitration**

Under the 1971 liquidation order by the NY Supreme Court, the Underwriters were enjoined from commencing or prosecuting an arbitration, or any other proceeding. (Tafuro Aff. Ex. 1 at DOI02063-64.)  Under *Corcoran* and *Stephens*, the Liquidator was entitled to affirmatively exercise rights under reinsurance contracts by seeking amounts owed under those contracts, but was not subject to arbitration clauses contained in those same contracts, even in the face of the Convention.  *Corcoran*, 77 N.Y.2d at 232; *Stephens*, 66 F.3d at 44, 45.

Although Underwriters fail to squarely address the effect of the 1971 liquidation order, of *Corcoran*, or of *Stephens*, they do not (nor could they) dispute that they were precluded from compelling arbitration against the Liquidator.  As a result, Underwriters are left to (1) ignore the effect of the liquidation upon their right to compel arbitration; and (2) suggest (without fully explaining) that the Liquidator's court-approved plan to make an assignment to B.D. Cooke and close the Citizens estate somehow *revived* Underwriter's ability to compel arbitration, even though any such right *had, by that time, been terminated for more that 25 years*.  We will address each contention in turn.

First, Underwriters quibble that the language in the Liquidator's court-approved Petition and plan, which states that the NY Supreme Court would retain "continuing jurisdiction" over disputes concerning the Assignment "does not confer 'exclusive' jurisdiction on" the NY Supreme Court.  (Notice of Removal ¶ 27 (emphasis added).)  This contention merely serves to highlight the inconvenient facts and law that Underwriters have chosen to ignore — namely, the pre-existing exclusive jurisdiction that terminated their right to compel arbitration in 1971.  The Petition and the Approval Order do not purport to

17

"confer" any jurisdiction, exclusive or otherwise, because they did not need to. Exclusive jurisdiction existed as a matter of New York liquidation law, and indeed had been exercised by the NY Supreme Court in its 1971 liquidation order. Just as the NY Supreme Court's exclusive jurisdiction terminated Underwriters right to compel arbitration, its retention of "continuing jurisdiction" confirms that the arbitration agreements remain "incapable of being performed" and thus equally incapable of providing a basis for Convention removal jurisdiction.

Second, Underwriters attempt to suggest that the Liquidator's Petition, Assignment, and closure of the Citizens estate somehow *revived* their long-since-terminated right to compel arbitration. (Notice of Petition ¶ 26 (commenting that the Citizens estate was closed in 1998).) Underwriters fail to explain this theory, or how it is even relevant in light of the facts that: (1) Underwriters' right to arbitrate was a right to arbitrate against Citizens; (2) Underwriters never had a right to arbitrate against the Liquidator; (3) B.D. Cooke is the assignee of the Liquidator, not the assignee of Citizens. More importantly, Underwriters simply ignore clear language (quoted in the Verified Complaint) demonstrating that the closure of the Citizens estate was to be without prejudice to B.D. Cooke receiving all of the Liquidator's rights. (Verified Complaint ¶ 29.)

In that regard, the Liquidator's Petition expressly contemplated (1) the Assignment to B.D. Cooke; and (2) the closure of the Citizens estate, which was made possible by the Assignment. (Tafuro Aff. ¶ 31 and Ex. 5 at ¶ 10.) The Petition made clear not only that B.D. Cooke was to receive all of the Liquidator's rights, but also that the closure of the estate would not impair those rights, stating that the assignment was to be:

> "together with all of the rights which the Liquidator would have had
> thereunder if the Citizens estate were not closed as proposed in this Petition."

(Tafuro Aff. Ex. 5 at 11. *See also* Tafuro Aff. Ex. 15 at 2 (the Assignment, incorporating substantially-identical language).)

This language precludes the Underwriters from arguing that closure of the Citizens estate as proposed in the Petition, somehow allows Underwriters to compel B.D. Cooke to arbitrate, even though one of the "rights which the Liquidator would have had" was the right not to be compelled to arbitrate. As explained below, any possible doubt about the non-effect of the closure of the Citizens estate was removed by the Nationwide Action.

### D.    B.D. Cooke's Entitlement To The Same Protections As The Liquidator Has Already Been Confirmed By The NY Supreme Court

The liquidation of Citizens vested the Liquidator of Citizens with at least three rights that effectively terminated rights that Citizens' reinsurers otherwise would have had under their contracts:

> First, as discussed above, whereas Citizens could be compelled to arbitrate, a liquidator has the right to make claims under reinsurance contacts, without being subject to the arbitration clauses under same contracts.

> Second, whereas the reinsurers could refuse to pay any claim that had not been first paid by Citizens on the ground that reinsurance is a contract of indemnity, the Liquidator was entitled to recover based on Citizens' *liability* and without regard to whether it had been paid by Citizens.

> Third, whereas Citizens was subject to a reinsurer's common law and contractual rights of setoff, claims could only be pursued against the Liquidator, and were extinguished, within the Liquidation Proceeding.

Just as Underwriters now attempt to suggest that their ability to compel arbitration was somehow revived by closure of the Citizens estate, their fellow Citizens' reinsurer, Nationwide, argued that those same facts somehow revived reinsurers' right to (A) deny claims that had not been paid by Citizens; (B) offset claims outside of the Liquidation Proceeding. These arguments were squarely rejected in the Nationwide Action.

The trial court in the Nationwide Action held that B.D. Cooke was entitled to collect what the Liquidator was entitled to collect, without regard to reinsurance being a contract of indemnity:

> "Reinsurance contracts are indemnity contracts, where, ordinarily, the reinsurer would not have to pay the cedent until the cedent paid its policyholder. However, under New York law, that principle does not apply where the ceding company is insolvent. The claim need not be paid, before plaintiff may collect what the liquidator could have collected on the claim." *Nationwide Action*, slip Op. at 8-9 (Child Aff. Ex. 4).

The Appellate Division upheld the trial court on this point, but reversed the trial court in allowing Nationwide to assert offset:

> "[T]he motion court properly found that the judicially approved petition to close the liquidation, and the liquidator's assignment to plaintiff upon which it was predicated, were unambiguous in providing that plaintiff's entitlement to reinsurance recoverables was not to be limited by the closing of said estate. However, the court should also have found that the liquidation order further provides that the claims defendant asserts by the remaining affirmative defense refers to alleged offsets that did not survive the liquidation proceedings. All such claims, indeed all of the defendant's claims against the estate, were to be either asserted and adjudicated in the liquidation proceeding or thereafter barred. Thus, they did not encumber the subsequent assignment to plaintiff." *Nationwide Action*, 791 N.Y.S.2d at 103-104.

As these decisions, and basic principles of assignment law confirm, B.D. Cooke "stepped into the shoes" of the Liquidator, and received "all of the rights which the Liquidator would have had thereunder if the Citizens estate were not closed." Because those rights included the right to collect under the reinsurance contract without being compelled to arbitrate, the arbitration agreements relied upon by Underwriters are "incapable of being performed" and removal of this action was improper.

II.    **The Arbitration Agreements Relied Upon By Underwriters Cannot Provide A Basis For Removal Because They Do Not Relate To The Subject Matter Of This Action**

Even if the arbitration agreements were not "incapable of being performed," removal was independently improper.  Underwriters concede that they have the burden of showing, *inter alia*, "an agreement in writing to arbitrate *the subject of the dispute*."  (Notice of Removal ¶ 8, emphasis added)  Although such grounds for removal must appear either on the *face* of the complaint or the notice of removal (9 U.S.C. § 205), Underwriters have failed to show any such agreement to arbitrate "the subject of the dispute."

Instead of applying the actual arbitration clauses to the actual matters set forth in the Verified Complaint, Underwriters simply baldly (and falsely) assert that the Verified Complaint "seeks damages and declaratory relief on a series of excess reinsurance contracts, all of which contain explicit detailed arbitration agreements."  (Notice of Removal ¶ 10.)  This statement (1) blatantly mischaracterizes the Verified Complaint; and (2) does not even attempt to address what the arbitration agreements actually cover.

First, the declaratory relief sought under the Verified Complaint is entirely and expressly limited to interpreting the Assignment, not interpreting the "excess reinsurance contracts."  The declaratory relief sought is, in its entirety:

> "a declaration as to the meaning and effect of the Assignment, including without limitation that (A) there is no cap on the amount that B.D. Cooke is entitled to collect under the Assignment; and (B) the Assignment is an assignment and does not constitute a novation of any of the assigned reinsurance agreements."  (Verified Complaint, First Cause of Action and first prayer for relief.)

In fact, Underwriters have necessarily admitted that this is a dispute about the Assignment. In their arbitration demand, the Underwriters characterize the dispute to be arbitrated as "whether. . . [the amounts sought by B.D. Cooke] *come within the terms of a 1997*

***assignment*** [i.e., the Assignment]." (Child Aff. Ex. 2 at 1, emphasis added)  This

demonstrates that the Underwriters have no basis for contending that the arbitration

agreements they rely upon (contained in the Lloyd's Reinsurance Contracts) somehow

constitute an agreement to arbitrate "the subject of" a dispute that they admit is about the

"terms of" the Assignment.[8]

      <u>Second</u>, the actual scope of the arbitration agreements relied upon by

Underwriters confirms that they cannot possible constitute an agreement to arbitrate "the

subject of" any dispute within the Verified Complaint.  The Lloyd Reinsurance Contracts all

contain the same arbitration wording, limiting the scope of arbitration to any "dispute ***arising***

***under*** this Contract."  (McNamara Aff. ¶ 12 and Exs. 1-9, emphasis added.)  This is

demonstrably an intentionally-narrow clause.  The parties chose not to use broad phrases —

used elsewhere in those same contracts or in later Agency Managers contracts — that would

apply "in the event of any failure of the Reinsurers to pay any amount claimed to be due" or

to disputes arising under ***or relating to*** the contracts ***or transactions in respect of*** the

contract.  (*Compare* McNamara ¶ 12 *with, e.g.,* McNamara Ex. 1 at Art. XVII *and*

McNamara Ex. 10 at Art. 17.)  As the Second Circuit has found, use of the language "any

dispute or difference aris[ing] under" an agreement "will ensure that the arbitration clause is

---

[8]    A similar example of the Underwriters' lack of regard for whether a dispute is *actually arbitrable*, is their attempt to arbitrate a purported dispute as to "whether. . . B.D. Cooke and [Underwriters] commuted the retrocession contracts pursuant to a commutation agreement executed in February 2002." (Child Aff. ¶ 4 and Ex. 2 at 1.)  However, as Underwriters are themselves party to that Commutation, they are well aware that, under its express terms, the parties agreed to submit — rather than to arbitration — "to the ***exclusive jurisdiction of the English High Court*** in respect of any dispute, controversy or claim arising out of or in connection with this Agreement, or its breach, termination, formation or validity." (Tyler Aff. ¶ 11 and Ex. 1 at 7, emphasis added.)

narrowly interpreted." *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc.*, 745 F.2d 190, 194 (2d Cir. 1984).

The Verified Complaint — uncontroverted by Underwriters — demonstrates that there is no "dispute arising under" the Lloyd's Reinsurance Contracts," even with respect to B.D. Cooke's contingent claims damages. (Verified Complaint ¶¶ 2, 31-34, 44, 50.)

- Rather than dispute those claims under the terms of the Lloyd's Reinsurance Contracts, Underwriters have agreed to those claims. (Verified Complaint ¶¶ 2, 31-34. This was done under market procedures signifying that there is no dispute about that claim under the reinsurance contract, and that — barring only an issue *outside* the reinsurance contract — the claim is to be paid. (Tyler Aff. ¶ 6-7.)

- Indeed, Underwriters have paid amounts on each of these same claims, under these same contracts, further demonstrating that there is no dispute "arising under" those contracts. (McNamara Aff. ¶¶ 8-10.)

- Underwriters have explained their failure to pay solely in terms of disputes arising out of documents *other than* the Lloyd's Reinsurance Contracts — the Assignment and the Commutation. (Tyler Aff. ¶ 9-10.)

- Underwriters have never identified any basis for non-payment "arising under" any terms, express or implied, of the Lloyd's Reinsurance Contracts, even in response to the Verified Complaint. (Tyler Aff ¶ 9; Notice of Removal.)

Having failed to make the required showing on the "face of" the complaint or in their Notice of Removal — Underwriters should not be heard at this late date to articulate a purported dispute "arising under" the Lloyd's Reinsurance Contracts. However, even if they were permitted to do so, it would be of no avail, because B.D. Cooke's claims for monetary damages are expressly contingent upon there being no dispute under the Lloyd's Reinsurance Contracts. (Verified Complaint ¶¶ 44, 50.) Since B.D. Cooke does not intend to litigate in this action any dispute under the Lloyd's Reinsurance Contracts, allowing Underwriters to belatedly manufacture such a dispute would simply remove those issues from this action, and Underwriters would still be unable to meet their burden of showing an agreement in writing to arbitrate "the subject of the dispute[s]" then remaining in this action.

**III.    The Arbitration Agreements Relied Upon By Underwriters Cannot Provide A Basis For Removal Because They Are Subject To A Waiver By The Underwriters Of Any Removal Rights**

For the reasons set forth above, this Court is without removal jurisdiction and this action should be remanded. There is, however, yet another, independent ground for concluding that Underwriters removal of this action was improper. *Even if* the arbitration agreements relied upon by Underwriters were not "incapable of being performed" and *even if* those agreements were "an agreement in writing to arbitrate *the subject of the dispute*," Underwriters would not be entitled to remove because they have waived any such right that might otherwise exist.

Specifically, each of the Lloyd's Reinsurance Contracts containing the arbitration agreements relied upon by Underwriters also contains a requirement (referred to as a "Service of Suit" clause) that Underwriters "submit to" court jurisdiction upon request in the following, or substantially similar, language:

> "It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Mendes and Mount, 27 William Street, New York, New York 10005, or their nominee or nominees, and that in any suit instituted against any one of them upon this Contract, the Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." (Verified Complaint ¶ 7; McNamara Aff. Ex. 1 -9 at Arts. XIX, XXII, XXII, XXII, XXII, XXII, XVIII, XVIII and XXII, respectively.)

This provision functions as a forum selection clause, and waives the right to litigate the case in another forum. In fact, that is the "unquestionable purpose" of the clause. *Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 285 (S.D.N.Y. 1998). More importantly, in a directly on-point case, this Court has confirmed that such clauses included

in reinsurance contracts executed prior to the implementation of the New York Convention in 1970 waive the right to removal and thus requires remand. In *Travelers Insurance Co. v. Keeling*, No. 91 Civ. 7753, 1993 WL 18909 (S.D.N.Y. Jan. 19, 1993), this Court ordered remand, finding that the presence of arbitration clauses in the agreements could not "subvert the effect of a [service of suit] clause whose meaning has been recognized in this jurisdiction for over 40 years . . . ." *Id.* at *4-5.

## CONCLUSION

For the foregoing reasons, B.D. Cooke respectfully requests that the Court remand this case to New York State Court and award plaintiff just costs and attorney's fees in accordance with the law.

Respectfully submitted,

Dated: New York, New York
        May 9, 2008

CHADBOURNE & PARKE LLP

By_____
    John F. Finnegan (JFF-3336)
    Attorneys for Plaintiff
    30 Rockefeller Plaza
    New York, New York 10112
    (212) 408-5100

Carey G. Child
Anne Linder
LeeAnn O'Neill
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Of Counsel