UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------X

B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)

        Plaintiff,

    -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

        Defendants.

----------------------------------------------------------------------------X

Civ. Action No. 08-CIV-3435 (RJH)


## MEMORANDUM OF LAW OF CERTAIN UNDERWRITERS AT LLOYD'S, LONDON IN SUPPORT OF THEIR MOTION TO STAY ACTION AND COMPEL ARBITRATION


Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004
(212) 804-4200

Attorneys For Defendants
CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON


Of Counsel

James Veach
Joshua L. Milrad

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

A.    Background ............................................................................................................ 1

B.    Agreements to Arbitrate ....................................................................................... 2

THE NEW YORK CONVENTION REQUIRES ARBITRATION OF EVERY
ALLEGATION CONTAINED IN COOKE'S COMPLAINT .................................... 7

A.    The Four Convention Requirements ..................................................................... 9

     1.    The Arbitration Agreements are in Writing ................................................. 10

     2.    Site of Arbitration Within a Territory of a Signatory .................................. 12

     3.    The Subject Matter is Commercial .............................................................. 12

     4.    The Dispute is Not Purely U.S-related ........................................................ 15

B.    Other Issues .......................................................................................................... 16

     1. National Casualty ........................................................................................... 16

     2. Second Circuit Decisions in Ardra and Stevens ........................................... 18

CONCLUSION ........................................................................................................... 22

## TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>ACE Capital Re Overseas, Ltd. v. Central United Life Ins. Co.</u>, 307 F. 3d 24
(2d Cir. 2002).................................................................................................5

<u>American Bureau of Shipping v. Tencara Shipyard S.P.A.</u>, 170 F.3d 349, 1999
A.M.C. 1858 (2d Cir. 1999)..........................................................................11

<u>Apple and Eve, LLC</u>, 499 F. Supp. 2d 245(S.D.N.Y. 2007)...........................................8

<u>Antillean Marine Shipping Corp. v. Through Transp. Mut. Ins., Ltd.</u>, 2002 WL 32075793
(S.D.Fla. Oct. 31, 2002).................................................................................21

<u>Assuranceforeningen Skuld (Gjensidig) v. Apollo Ship Chandlers, Inc.</u>, 847 So.2d 991
(Fla.Ct.App.2003)...........................................................................................22

<u>Bank of America v. Diamond State, Ins. Co.</u>, 2002 WL 31720328 (S.D.N.Y. 2002)..................11

<u>Bennett v. Liberty Nat. Fire Ins. Co.</u>, 968 F. 2d 969 (9th Cir. 1992)............................14

<u>Bergesen v. Joseph Muller Corp.</u>, 710 F.2d 928 (2d Cir. 1983).....................................7

<u>Bernstein v. Centaur Ins. Co.</u>, 606 F. Supp. 98 (S.D.N.Y. 1984)..................................20

<u>Best Concrete Mix Corp. v. Lloyd's of London Underwriters</u>, 413 F. Supp. 2d 182 (E.D.N.Y.
2006)............................................................................................................10

<u>Bitumenes Orincoco, S.A. v. New Brunswick Power Holding Corp.</u>, 2007 WL 485617
(S.D.N.Y. 2007)................................................................................................12

<u>Boutari & Son v. Attiki Importers</u>, 22 F.3d 51 (2d Cir. 1994)......................................17

<u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>, 991 F. 2d 1012 (2d Cir. 1993)..........................9

<u>Certain Underwriters at Lloyd's v. Porter</u>, 2007 WL 3047128 (S.D. Ind. 2007)....................9

<u>Cheshire Place v. West of England Ship Owners Mutual Ins. Association</u>
(Luxembourg), 815 F.Supp. 593 1993 A.M.C. 2701 (E.D.N.Y. 1993)..............................9, 10

<u>City of New York v. Pullman Inc.</u>, 477 F. Supp. 438 (S.D.N.Y. 1979)..........................17-18

<u>Continental Ins. Co. v. Jantran, Inc.</u>, 906 F.Supp. 362 (E.D.La.1995)............................21

Corcoran v. Ardra Ins. Co. Ltd., 657 F. Supp. 1223 (S.D.N.Y. 1987), aff'd 842 F.2d 31
    (2d Cir. 1988); cert denied, 500 U.S. 953, 111 S.Ct. 2260 (1991) on remand  156
    A.D.2d 70, 553 N.Y.S.2d 695 (1st Dep't 1990), 77 N.Y.2d 225, 567 N.E.2d 969, 566
    N.Y.S.2d 575 (1990) ....................................................................................13, 15

Costle v. Fremont Indemnity Co., 839 F. Supp. 265 (D. Vt. 1993)...............................14

Curacao v. Solitron. 356 F. Supp. 1 (S.D.N.Y ), aff'd, 489 F.2d 1313 (2d Cir. 1973),
    cert. denied 416 U.S. 986, 94 S. Ct. 2389, 40 L.Ed.2d 763 (1974) ..........................14

David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F. 2d 245 (2d Cir.) ...........8-9

Deloitte Noraudit A/S v. Deloitte, Haskins & Sells, 9 F. 3d 1060 (2d Cir. 1993)..........10, 11

Dimercurio v. Sphere Drake Ins., PLC, 202 F.3d 71 (1st Cir. 2000) ..............................9

Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762  (9th Cir. 1989) .......................17

Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. 1, 466 F. Supp. 2d 1293.
    (S.D. Ga. 2006) .......................................................................................................21

Hamilton Life Ins. Co. of N.Y. v. Republic Nat. Life Ins. Co., 408 F.2d 606
    (2d Cir. 1969)..........................................................................................................12

Hamilton Life Insurance Company v. Republic National Life Insurance Company,
    408 F. 2d 606 (2d Cir. 1960)..................................................................................19

HD Brous & Co. v. Mrzylglocki, 2004 U.S. Dist. LEXIS 3095 (S.D.N.Y. 2004) .........10

In the Matter of the Arbitration between Arhontisa Maritime Ltd. v. Twinbrook Corp.,
    2001 U.S. Dist. LEXIS 15536 (S.D.N.Y. 2001) ...................................................10

Industrial Risk Insurers M.A.N. Gutehoffnungshutte, 141 F.3d 1434 (11th Cir. 1998).................7

In re Arbitration Between England Shipowners Mut. Ins. Ass'n (Luxembourg) &
    Am. Marine Corp, 1992 WL 37700 (E.D.La February 18, 1992) ...........................21

Island Territory of Curacao v. Solitron Devices, Inc., 356 F. Supp. 1 (S.D.N.Y. 1973)...............12

Ledee v. Ceramiche Ragno, 684 F.2d 184 (1st Cir. 1982) ..............................................9

Matter of Knickerbocker Agency [Holz], 4 N.Y.2d 245, 173 N.Y.S.2d 602 (1957) ....................14

Meadows Indemnity Co. Ltd. v. Baccala & Shoop Ins. Services, Inc., 760 F.Supp. 1036
   (E.D.N.Y. 1991).................................................................................................. 9-10

McCallister Bros. Inc v. A & S Transportation Co., 621 F.2d 519 (2d Cir. 1980).....................10

McDermott Int'l, Inc. v. Underwriters at Lloyd's of London, 1992 WL 3695
   (E.D.La. Feb. 14, 1992), appeal dismissed, 981 F.2d 744 (5th Cir.1993), cert. denied,
   508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993).......................................21

Miller v. National Fidelity Life Ins. Co., 588 F. 2d 185 (5th Cir. 1979)...................................19, 20

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)..........................8

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927
   460 US 1 (1983)...................................................................................................7

Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953 (10th Cir. 1992),
   cert. denied, 506 U.S. 1021 (1992) ..................................................................9, 11

Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993).........................................7

S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190 (2d Cir. 1984) ..................7

Scherk v. Alberto-Culver Co., 417 U. S. 506 (1974)................................................................8

Selcke v. New England Ins. Co., 995 F. 2d 688 (7th Cir. 1993) ..................................................14

Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogenerational
   International, Inc., 198 F.3d 88 (2d. Cir. 1999)................................................8, 9, 10

Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054 (2d Cir. 1982) ......................................20

Stephens v. American Intern. Ins. Co., 66 F. 3d 41 (2d Cir. 1995) ......................13, 16, 19, 20, 21

Stephens v. National Distillers & Chemical Corp., 69 F.3d 1226 (2d Cir. 1995) ..........................19

Stony Brook Marine Transportation Corp. v. Leslie Wilton, 1997 A.M.C. 351, 1996
   WL 913180, 1996 U.S. Dist. LEXIS 22222 (E.D.N.Y. 1996) .................................10

Sumitomo Marine & Fire Ins. Co., 75 N.Y.2d 295, 552 N.Y.S. 2d 891, 552 N.E.2d
   139 (1990)...........................................................................................................5

Teachers Ins. & Annuity Ass'n v. Spirt, 463 U.S. 1223, 103 S.Ct. 3565,(1983)  modified and

affirmed, 735 F.2d 23 (2d Cir. 1984).................................................................20

Thomson-CSF, S.A. v. Am. Arbitration Ass'n., 654 F.3d 773 (2d Cir. 1995)......................10, 11

Triton Lines, Inc. v. Steamship Mutual Underwriting Assoc, 707 F. Supp.
    277 (1989)...............................................................................................21

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 2001 A.M.C.
    2080 (2d Cir. 2001)....................................................................................9

Verlinden B.V. v. Central Bank of Nig., 461 U.S. 480, 103 S. Ct. 1962 (1983)..........................20

Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15
    (2d Cir. 1997)..........................................................................................11

## Treaties

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T.
    2517, T.I.A.C. No. 6997, 330 U.N.T.S. 38, as implemented at 9 U.S.C. §§ 201-208...............1

Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents
    (Hague Convention); Fed. R. Civ. P. 4 ..................................................................2

## Statutes

Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.,.....................................................7

Enforcement of Foreign Arbitral Awards, 9 U.S. C. §§ 201 et seq. ...............................1, 10, 13

McCarran-Ferguson Act, 15 U.S.C. §§ 1011, 1012.......................................19-20, 21, 22

## Other Authorities

Diaconnis & D. Hammond, Reinsurance Law at § 6:1.1 (PLI 2008)..........................................5

G. Richard Shell, Trade Legalism and International Relations Theory: An Analysis of the World
    Trade Organization, 44 Duke L. J. 829, 888 (1995) ..................................................7

K. Thompson, REINSURANCE 140 (4th ed. 1966) ........................................................5

P.T. O'Neill & J.W. Woloniecki, The Law of Reinsurance in England and Bermuda at 601

(Sweet & Maxwell 1998)..................................................................................................5

R. Reinarz, Property and Liability Reinsurance Management .......................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)        Civ. Action No. 08-CIV-3435 (RJH)

        Plaintiff,

    -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

        Defendants.

-----------------------------------------------------------------------X

## MEMORANDUM OF LAW OF CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, IN SUPPORT OF THEIR MOTION TO STAY ACTION AND COMPEL ARBITRATION

Defendants Certain Underwriters at Lloyd's, London (Underwriters), by their attorneys, Mound Cotton Wollan & Greengrass, respectfully submit this memorandum of law in support of their motion to:

(1) compel respondent B.D. Cooke & Partners Limited (Cooke) to arbitrate pursuant to the arbitration agreements in the subject "Excess-of-Loss Casualty Reinsurance Contracts" (excess reinsurance contracts) and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.C. No. 6997, 330 U.N.T.S. 38, as implemented at 9 U.S.C. §§ 201-208 (Convention or New York Convention), a United States treaty; and

(2) stay the Cooke action.

### A.      Background

As set out in the Affirmation of James Veach in Support of Underwriters' Motion to Compel Arbitration (Aff.), on February 26, 2008, plaintiff B.D. Cooke & Partners Limited (Cooke) filed a summons and verified complaint in the Supreme Court of the State of New York,

County of New York, captioned <u>B.D. Cooke & Partners Limited, as Assignee of Citizens Casualty Company of New York (in Liquidation) v. Certain Underwriters at Lloyd's, London</u> (Index No. 08/650051) (Cooke Complaint).  Aff., ¶ 2, Ex. 1.  On April 7, 2008, Underwriters filed a petition to remove the Cooke action to this Court pursuant to the special removal provisions contained in the Convention.  9 U.S.C. § 205.

On information and belief, Cooke has yet to effect service of its summons and verified complaint even though the excess reinsurance contracts at issue all designate a New York City law firm -- Mendes & Mount -- as agent for service of process.  <u>See</u> representative excess of loss reinsurance agreements attached as Exs. 4 (Art. XX) and 5 (Art. 21) to the Affirmation. Underwriters object to Cooke's attempts to effect service pursuant to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents (Hague Convention) (<u>see</u> Fed. R. Civ. P. 4), but appear here voluntarily to seek a referral to arbitration under the New York Convention.

On April 4, 2008, Underwriters demanded arbitration of all matters alleged and raised in the subject complaint.  Aff.,  Ex. 2.  Underwriters sent their demand to arbitrate to Cooke's counsel via e-mail, Federal Express, and certified mail.  On April 7, 2008 Underwriters asked counsel for Cooke whether Cooke would agree to arbitrate.  Cooke's counsel advised that counsel had not been instructed to accept the demand for arbitration.  Aff. ¶,¶ 7-8.  Accordingly, on April 11, 2008, Underwriters sent another copy of its demand to arbitrate directly to Cooke at its offices in the United Kingdom.  Aff., ¶8.

### B.      Agreements to Arbitrate

The Cooke action seeks to recover more than $1.9 million in losses under various unidentified excess reinsurance contracts.  Cooke alleges that these losses were "agreed" by the

claims manager for Underwriters. The Underwriters' claims manager disputes those assertions, particularly the allegation that he "agreed" to pay the claims listed in the Complaint at ¶ 33. Underwriters demand arbitration of all claims alleged in the Cooke complaint.

Cooke attached to its complaint an Exhibit "A" that lists several dozen excess reinsurance contracts under the heading: "Agency Managers London Reinsurance Program." Agency Managers filed for Bankruptcy protection in 1988 and no longer exists. Aff., ¶ 35. Many of the excess reinsurance contracts identified in Complaint Ex. "A" were executed <u>after</u> 1971. Citizens Casualty Insurance Company (Citizens) was placed in liquidation on June 17, 1971 (and had ceased doing business many months before that date). Hence, Citizens could not have participated on many of the excess reinsurance agreements referenced in the Cooke complaint's Ex. "A."

The pre-1971 excess reinsurance contracts that Cooke identifies in its Ex. "A" contain the following arbitration agreements:

> Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers. The arbitrators shall, before entering upon the reference, appoint an umpire. The arbitrators and the umpire shall consider this Contract an honourable engagement rather than merely a legal obligation [and] they are relieved of all judicial formalities and may abstain from following the strict rules of law. The award of the arbitrators or, in the event of their disagreement, of the umpire, shall be precedent to any liability or right of action of either party. The costs of the references and of the award shall be in the discretion of the arbitrators or umpire, as the case may be, who may direct to and by whom and in what manner the same shall be paid. The seat of arbitration shall be New York, N.Y.

Although it is unclear now to what extent excess reinsurance contracts executed by

Agency Managers <u>after</u> Citizens ceased assuming reinsurance would be relevant, excess reinsurance agreements executed in or after 1971 contain even more detailed arbitration agreements:

> Should an irreconcilable difference of opinion arise between the parties to this Agreement as to the interpretation of this Agreement or transactions with respect to this agreement, such difference shall be submitted to arbitration upon the request of one of the parties, one arbiter to be chosen by the Manager and one by the Retrocessionaire, and an umpire to be chosen by the two arbiters before they enter into arbitration.
>
> Should the arbiters fail to agree upon the choice of an umpire within 30 days of the appointment of the last arbiter, then either arbiter, or both together, may request the Superintendent of Insurance of the State in which arbitration is to be held (or the official in charge of Insurance matters whatever his title may be) to appoint an umpire. Should this official decline to make such an appointment, then following notice from said official of such declination, or 30 days following the date such request was made if no response has been received from said official, either arbiter or both together, may petition the court in the state where arbitration is to be held to appoint an umpire.
>
> In the event that either party should fail to choose an arbiter within sixty (60) days following written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering into arbitration.
>
> Each party shall present their case to the arbiters and the umpire within thirty (30) days of the appointment of the umpire and the written decision of any two of the three shall be final and binding upon the Manager, the Members and the Retrocessionaire.
>
> The arbiters and the umpire are relieved from all judicial formalities and may abstain from the strict rules of law, interpreting this agreement as an honourable undertaking rather than as a merely legal obligation. By

> agreement between any two of the three, they may extend the time intervals contained in this article.
>
> The arbiters and the umpire shall be active or retired disinterested executive officers of insurance or reinsurance companies.
>
> Each party shall pay the fee of its chosen arbiter and half of the fee of the umpire: the remaining costs of arbitration shall be paid as the written decision directs. In the event both arbiters are chosen by one party, the fees of the arbiters and the umpire shall be equally divided between the parties.
>
> Unless otherwise mutually agreed between the manager and the Retrocessionaire any arbitration shall take place in New York, New York (emphasis added).

In any event, all of the excess reinsurance contracts alluded to in the Cooke complaint contain broad agreements to arbitrate, see, e.g., ACE Capital Re Overseas, Ltd. v. Central United Life Ins. Co., 307 F. 3d 24, 32-34 (2d Cir. 2002), and all call for arbitration in New York City.

It is not at all surprising that international reinsurance contracts contain arbitration agreements; "most reinsurance contracts contain arbitration agreements intended to steer the parties toward this type of dispute resolution." J. Diaconnis & D. Hammond, Reinsurance Law at § 6:1.1 (PLI 2008). Arbitration is the norm in resolving reinsurance disputes and reinsurance agreements "invariably ... provide for arbitration of disputes between parties through arbitration." R. Reinarz, Property and Liability Reinsurance Management 49 (1969); K. Thompson, REINSURANCE 140 (4th ed. 1966); see also Sumitomo Marine & Fire Ins. Co., 75 N.Y.2d 295, 298, 552 N.Y.S. 2d 891, 892, 552 N.E.2d 139 (1990). And this is certainly true in the London reinsurance market. P.T. O'Neill & J.W. Woloniecki, The Law of Reinsurance in England and Bermuda at 601 (Sweet & Maxwell 1998).

Cooke and its counsel know about these agreements to arbitrate. Cooke's second and third causes of action -- breach of contract and account stated -- are "asserted . . . expressly subject to, and without waiver of, arbitration of any disputes under the Excess-of-Loss-Reinsurance Agreements as provided in any arbitration clauses contained in such Excess-of-Loss-Reinsurance Agreements." Complaint, ¶,¶ 44 and 50. Counsel thus seeks to rely on and preserve its right to arbitrate with respect to the more than $1.9 million allegedly owed.

Indeed, in an earlier dispute with a member of the Agency Managers pool, a pool of reinsurers that reinsured Citizens and others -- but not an excess of loss reinsurer -- counsel for Cooke in this proceeding demanded arbitration. Aff., ¶ 44, Ex. 12. That dispute concerned moneys allegedly owed by another member of the Agency Managers pool -- Nationwide Mutual Insurance Company (Nationwide)-- to Cooke as a Citizens' assignee. See Aff. ¶¶ 10 - 23. The decision cited in Cooke's complaint -- BD. Cooke & Partners Ltd., As Assignee of Citizens Cas. Co. of New York v. Nationwide Mutual Ins. Co., Index No. 600655/02 (Cooke v. Nationwide) -- concerned inter-pool reinsurance arrangements and not the excess reinsurance contracts at issue here.

For reasons perhaps best known to Nationwide, Cooke and Nationwide chose to litigate their differences in Supreme Court, New York County. Strategically, Cooke may have chosen the better course by agreeing to litigate, an option always available to parties to an arbitration agreement if both parties so elect. But what is important here is that Cooke and its counsel began what later became the Cooke v. Nationwide litigation with a demand for arbitration. In this case, Underwriters demand arbitration and -- as far as we can determine -- every excess reinsurance contract that could possibly be involved in this dispute requires arbitration if either party so demands.

Before we anticipate Cooke's objections to arbitration, we address the Convention and explain why this dispute and these explicit agreements to arbitrate fall under it.

### THE NEW YORK CONVENTION REQUIRES ARBITRATION OF EVERY ALLEGATION CONTAINED IN COOKE'S COMPLAINT

The New York Convention was drafted in 1958 to address the need to facilitate international arbitration and the enforcement of arbitral awards. Bergesen v. Joseph Muller Corp., 710 F.2d 928 929 (2d Cir. 1983). The United States acceded to the treaty in 1970 and Chapter Two of the Federal Arbitration Act was passed later that year. The New York Convention and American support for the Convention though the FAA constitute a "widely used system" to enforce international arbitration awards "with minimal standards of judicial review for basic fairness and consistency with national public policy." Industrial Risk Insurers M.A.N. Gutehoffnungshutte, 141 F.3d 1434, 1440 (11th Cir. 1998) quoting G. Richard Shell, Trade Legalism and International Relations Theory: An Analysis of the World Trade Organization, 44 Duke L. J. 829, 888 (1995).

Both the Convention and the Federal Arbitration Act, 9. U.S.C. § 1 et seq., manifest "a Congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 941, 460 US, 1, 11 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id., S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984) ("[D]oubts as to arbitrability should be resolved in favor of coverage [and] . . . language excluding certain disputes from arbitration must be clear and unambiguous or unmistakably clear."); see also, Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993) (Lloyd's names compelled to arbitrate their securities-related claims in London and their

7

arguments in favor of litigation rejected "in the face of strong public policy in favor of forum

selection and arbitration clauses (citations omitted)."

This strong policy favoring arbitration "applies with special force in the field of

international commerce." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S.

614, 631 (1985). When parties to an international commercial agreement also agree to arbitrate

their differences, "concerns of international comity, respect for the capacities of foreign and

transnational tribunals, and sensitivity to the needs of the international commercial system for

predictability in the resolution of disputes require that we enforce the parties' agreement, even

assuming that a contrary result would be forthcoming in a domestic context (emphasis added)."

Id. Indeed, arbitration is "an almost indispensable precondition to achievement of the orderliness

and predictability essential to any international business transaction." Scherk v. Alberto-Culver

Co., 417 U. S. 506, 518 (1974).

Consequently, "so long as the parties are bound to arbitrate and the district court has

personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a

timely motion to compel arbitration and thereby enforce the New York Convention . . . even

though the agreement in question calls for arbitration in a distant forum." Apple and Eve, LLC,

499 F. Supp. 2d 245, 248 (S.D.N.Y. 2007) (parties directed to arbitrate in China even though

agreement to arbitrate failed to specify where in China the hearing would be held). Of course,

the excess reinsurance contracts at issue here all call for arbitration in New York City.

With respect to whether the Convention applies, this Circuit is "mindful that 'the goal of

the Convention is to promote the enforcement of arbitral agreements in contracts involving

international commerce . . . .'" Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith

Cogenerational International, Inc., 198 F.3d 88, 92 (2d. Cir. 1999), quoting David L. Threlkeld

8

& Co. v. Metallgesellschaft Ltd., 923 F. 2d 245, 250 (2d Cir.), cert. dismissed, 501 U.S. 1267,

112 S. Ct. 17 (1991); see also Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957

(10th Cir. 1992), cert. denied, 506 U.S. 1021 (1992)("Where an agreement is truly international .

. . , and reflects numerous contacts with the foreign forum," the parties' arbitration agreement

and choice of law must be given effect).

### A.    The Four Convention Requirements

A court in the United States "faced with a request to refer a dispute governed by [the

Convention] performs a 'very limited inquiry' into whether an arbitration agreement exists and

falls within the Convention's coverage." Certain Underwriters at Lloyd's v. Porter, 2007 WL

3047128 (S.D. Ind. 2007) citing Dimercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 74 (lst Cir.

2000), quoting Ledee v. Ceramiche Ragno, 684 F.2d 184, 186-87 (lst Cir. 1982).

The Convention and its implementing legislation, Chapter Two of the Federal Arbitration

Act, 9. U.S. C. §§ 201, 202 et seq., sets out four requirements for enforcement of arbitration

agreements under the Convention.  There must be a:

> (1) written agreement;

> (2) that provides for arbitration in the territory of a signatory of the Convention;

> (3) the subject matter of which must be commercial; but

> (4) which cannot involve a dispute that is entirely domestic.  Smith/Enron, 198 F. 3d

at 92, citing Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F. 2d at 1012, 1018 (2d Cir. 1993); see

also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 146 2001 A.M.C.

2080 (2d Cir. 2001);  Cheshire Place v. West of England Ship Owners Mutual Ins. Association

(Luxembourg), 815 F.Supp. 593, 595, 1993 A.M.C. 2701 (E.D.N.Y. 1993); Meadows Indemnity

Co. Ltd. v. Baccala & Shoop Ins. Services, Inc., 760 F.Supp. 1036, 1039-40 (E.D.N.Y. 1991);

9

Stony Brook Marine Transportation Corp. v. Leslie Wilton, 1997 A.M.C. 351, 1996 WL 913180,

1996 U.S. Dist. LEXIS 22222 (E.D.N.Y. 1996). The excess reinsurance contracts at issue in this

proceeding satisfy all four of these requirements.

### 1.    The Arbitration Agreements are in Writing

The explicit arbitration agreements in the excess reinsurance contracts meet the

Convention's writing requirement. In this case, Cooke sued as Citizens' assignee. Citizens was

a casualty insurer domiciled in New York, but Citizens has now been liquidated, its corporate

charter dissolved, and its estate closed. Cooke has stepped into the shoes of Citizens' liquidator,

who previously stood in Citizens' shoes.

This Circuit recognizes that while "ordinary principles of contract and agency determine

which parties are bound by an agreement to arbitrate," McCallister Bros. Inc v. A & S

Transportation Co., 621 F.2d 519 524 (2d Cir. 1980), "'it does not follow that . . . an obligation

to arbitrate attaches only to one who has personally signed the written arbitration provision.'"

Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp. 2d 182, 186

(E.D.N.Y. 2006), quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n., 654 F.3d 773, 776 (2d

Cir. 1995).

Accordingly, the Second Circuit recognizes many different "theories for binding

nonsignatories . . . ." See generally, Cheshire Place,  815 F.Supp. at 595, 1993 AMC 2701;

Thomson-CSF,  64 F.3d at 778-779; Deloitte Noraudit A/S v. Deloitte, Haskins & Sells, 9 F. 3d

1060, 1064 (2d Cir. 1993); Smith/Enron Cogeneration, 198 F.3d at 98;  HD Brous & Co. v.

Mrzylglocki, 2004 U.S. Dist. LEXIS 3095 (S.D.N.Y. 2004); In the Matter of the Arbitration

between Arhontisa Maritime Ltd. v. Twinbrook Corp., 2001 U.S. Dist. LEXIS 15536 (S.D.N.Y.

2001).

Cooke cannot avoid arbitration under the subject reinsurance agreements after it received a "'direct benefit' from a contract containing an arbitration clause.'" American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353, 1999 A.M.C. 1858 (2d Cir. 1999) quoting Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 778-779 (2d Cir. 1995); see also Deloitte Noaraudit A/S, 9 F. 3d at 1064 (non-signatory who had received a copy of an agreement, raised no objection to it, and made use of a trade name pursuant to the agreement estopped from arguing that it was not bound by the arbitration clause in the agreement).

Nor can Cooke escape its obligation to arbitrate by arguing that the assignment of Citizens' excess reinsurance contracts extended to Cooke the right to collect under those contracts, but somehow extinguished the reinsurers' right to arbitrate under the same contracts. See Bank of America v. Diamond State, Ins. Co., WL 31720328 (S.D.N.Y. 2002). Whether viewed in the context of Cooke's seeking to recover moneys under the excess reinsurance contracts -- and thus getting the benefit of those contracts -- or viewed in the context of a functional novation of the excess reinsurance contracts executed by Agency Managers on Citizens' behalf, Cooke cannot have it both ways. As the court noted in Diamond State, a "novation [in and of itself] does not preclude arbitration...." *3. In short, Cooke cannot get the benefit of indemnification, while avoiding the obligation to arbitrate.

Here, of course, Cooke is estopped from avoiding arbitration under the excess reinsurance contracts for another reason. As alleged, Cooke "expressly reserves the right to arbitrate * * * disputes within any arbitration provision of any of the Excess-of-Loss-Reinsurance Agreements . . . ." Complaint, ¶,¶ 44, 50. Thus, as was true in Diamond State, Cooke has " clearly manifested an intent to arbitrate issues under the contract . . . ." Id.

11

## 2.    Site of Arbitration Within a Territory of a Signatory

The agreements to arbitrate in the excess reinsurance contracts all call for arbitration in

New York City.  Cooke and Dominion Insurance Company, Ltd., (which also assigned certain

rights to Cooke,) are U.K. citizens.  Underwriters are located in the U.K.  Cooke's agent, Run-

Off Management, Inc. (ROM) is located in New York City, as is Underwriters' agent for service

of process.  Both the United Kingdom and the United States are Convention signatories.  9

U.S.C. § 201;  Riley, 969 F.2d at 958.

This Circuit has enforced arbitration agreements between non-U.S. parties where the

parties were required to conduct their hearing in the United States.  See, e.g., Bitumenes

Orincoco, S.A. v. New Brunswick Power Holding Corp., 2007 WL 485617 (S.D.N.Y. 2007).

Acting pursuant to the Convention, the court in Bitumines referred a Venezuelan fuel supply

company and a Canadian power company to arbitration in New York even though both parties

were non-U.S. citizens (and one party disputed whether the contract containing  the arbitration

agreement had been executed); see also Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R"

Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) ("Convention's applicability was. . . clear" in arbitration

between two non-domestic parties and one U.S. corporation located in New York City).

## 3.    The Subject Matter is Commercial

"[J]udged by any test," the excess reinsurance contracts in this proceeding are "clearly . .

. commercial."  Island Territory of Curacao v. Solitron Devices, Inc., 356 F. Supp. 1, 13

(S.D.N.Y. 1973)(court "logically speculate(s) that [the commercial limitation in the Convention]

was to exclude matrimonial and other domestic relations awards, political awards, and the like");

see also Hamilton Life Ins. Co. of N.Y. v. Republic Nat. Life Ins. Co., 408 F.2d 606, 609 (2d

Cir. 1969) (referring three-party dispute to arbitration even though one of the parties was "at the time in financial difficulty . . . and under supervision by the New York State Insurance Department").

In other cases -- some of which are discussed below -- a statutory receiver for an insolvent ceding insurer has sued the failed company's reinsurers to collect: (1) reinsurance moneys allegedly due the estate (and its policyholders and creditors), see, e.g., Corcoran v. Ardra Ins. Co. Ltd., 657 F. Supp. 1223 (S.D.N.Y. 1987), aff'd 842 F.2d 31 (2d Cir. 1988); cert denied, 500 U.S. 953, 111 S.Ct. 2260 (1991) on remand 156 A.D.2d 70, 553 N.Y.S.2d 695 (1st Dep't 1990), 77 N.Y.2d 225, 567 N.E.2d 969, 566 N.Y.S.2d 575 (1990) or (2) reinsurance premium purportedly due the estate. See, e.g., Stephens v. American Intern. Ins. Co., 66 F. 3d 41 (2d Cir. 1995). In such circumstances -- an insurance receiver acting under court supervision during an on-going liquidation or rehabilitation -- the statutory receiver may argue that his/her efforts to collect reinsurance moneys for their estates somehow transforms a commercial reinsurance contract into something other than "commercial" relationship.

That is exactly what the Liquidator of the Nassau Insurance Company (Nassau) did in the Ardra case. In the District Court, the Liquidator conceded the "presence of elements (1), (2) and (4)" of the requirements for enforcement of the Convention. Corcoran v. Ardra, 657 F. Supp. at 1228. With respect to element (3) -- whether Nassau's Liquidator had a "commercial relationship" with Ardra's Bermuda reinsurer -- the "Superintendent contend[ed] that he [did] not stand precisely in Nassau's 'commercial' shoes . . . ." Corcoran v. Ardra, 657 F. Supp. at 1229. Judge Peter Leisure, therefore, considered, but did not decide, "if Ardra's relationship with the Superintendent, as the Liquidator of Nassau, [was] qualitatively different (i.e.,

regulatory versus commercial) from Ardra's former relationship with Nassau." Id. 657 F. Supp. at 1229. (S.D.N.Y. 1987).

Several courts have labeled similar attempts to avoid arbitration using these arguments as "disingenuous" where an insurance receiver "seeks to enforce contractual provisions requiring the payment of reinsurance proceeds, yet on the other hand, . . . seeks to avoid enforcement of arbitration provisions contained in the same contracts." Costle v. Fremont Indemnity Co., 839 F. Supp. 265 272 (D. Vt. 1993) citing Bennett v. Liberty Nat. Fire Ins. Co., 968 F. 2d 969, 972, n. 4 (9th Cir. 1992); Selcke v. New England Ins. Co., 995 F. 2d 688 (7th Cir. 1993) and analagous Bankruptcy Court authority. Nevertheless, Judge Leisure remanded the Ardra case to the New York State courts to answer the question of whether the dispute between Nassau's liquidator arose "out of a legal relationship, . . . considered as commercial." 657 F. Supp. at 1229, 1235-6.

The New York Court of Appeals rejected the Liquidator's argument that "his (the Liquidator's) activities do not constitute 'commercial matters'" (citation omitted). The Court held that:

> [t]he commercial nature of the relationship is determined at the inception of the agreement, however, not at the time of enforcement and there can be little doubt that the original agreement between Nassau and Ardra arose "out of a legal relationship . . . considered as commercial' under domestic law.

77 NY 2d at 231, 567 N.E. 2d at 972, 566 N.Y.S.2d at 578, citing 9 U.S.C. § 202 and Curacao v. Solitron, 356 F. Supp. 1, 123 (S.D.N.Y ), aff'd, 489 F.2d 1313 (2d Cir. 1973), cert. denied 416 U.S. 986, 94 S. Ct. 2389, 40 L.Ed.2d 763 (1974). That should have ended the matter. The Court of Appeals, however, then found an almost totally unprecedented exception to the otherwise unbroken support U.S. courts have shown the New York Convention.

Relying on its own judicially-created exception to arbitration, <u>Matter of Knickerbocker Agency [Holz]</u>, 4 N.Y.2d 245, 251, 173 N.Y.S.2d 602 (l957), the Court of Appeals found that the arbitration agreements in the commercial reinsurance contracts at issue in that case concerned "subject matters" incapable of settlement by arbitration" because they were "null and void, inoperative or incapable of being performed." <u>Corcoran v. Ardra Ins. Co., Ltd.</u>, 77 N.Y.2d at 232, 566 N.Y.S.2d at 578.    The question, however, of whether the Convention <u>applies</u> to this dispute has been answered.  The question now is whether this judicially-implied and unique exception to enforcement of the New York Convention should be extended to a dispute:

     1. between two commercial entities;

     2.  years after the insolvent insurer's estate closed;  and

     3.  years after all of  the insolvent insurer's policyholders and other creditors have been paid.

This is not a question that requires a remand to the state court to answer.

### 4.    The Dispute is Not Purely U.S-related

The essence of this dispute involves non-U.S.-related entities and the subject excess reinsurance contracts.  The site of the arbitration hearing is in New York City, although this is not a purely U.S.-related dispute.

The facts and circumstances of this case satisfy all four requirements for enforcement of the arbitration agreements in the excess reinsurance contracts.  The Convention applies and the strong federal policy favoring the arbitration of international commercial agreements requires that it be honored,

### B.    Other Issues

Based on Cooke's complaint, Underwriters anticipate that Cooke will rely on litigation in state court concerning the Petition and Plan that closed the Citizen estate.  Cooke may also rely on the Second Circuit's decisions in <u>Ardra</u>, 842 F. 2d 31,  as well as <u>Stephens</u>,  66 F. 3d 41 (2d Cir. 1995) to support Cooke's motion to remand its action to the Supreme Court, New York County.   We address both of these anticipated arguments below.

### 1. National Casualty

The Cooke complaint quotes from an order approving the Petition and the Plan pursuant to which the reinsurance contracts were assigned to Cooke.  Complaint ¶ 9.  That order provided that the Supreme Court, New York County, "shall have continuing jurisdiction over any disputes concerning the assignments and transfers described above and their effect, except said Court shall not resolve disputes solely involving computation of amounts due thereunder."   The subject of the arbitration demanded by Underwriters includes a determination of the "amounts due," if any.

Counsel tries to draw a parallel between Underwriters' demand for arbitration and a previous dispute between Cooke and Nationwide.  <u>See</u> Cooke complaint, ¶ 10.  Cooke mischaracterizes Underwriters' position with respect to the losses at issue, speculates about Underwriters' "interpretation of  the Assignment," and claims that Underwriters' "interpretation" is "contrary to  .   .   .  summary judgment in the Nationwide Action against Lloyd's Underwriters' fellow reinsurer."  Complaint ¶ 39.

To the contrary, first,  Nationwide was never a "fellow reinsurer" of  Underwriters. Nationwide belonged to the Agency Managers pool and Nationwide's reinsurance obligations

arose under the pooling agreement among Citizens, Nationwide, and other pool members. The Supreme Court's holding in the <u>Nationwide</u> case was premised on, among other things, Nationwide's status as a pool member and its having participated in the reinsurance claims process through its agents, Agency Managers and later Rom. Agency Managers and ROM, however, were never agents for Underwriters. Underwriters are parties to excess reinsurance contracts and were never fellow pool members with Nationwide.

Second, in the <u>Nationwide</u> litigation, Nationwide directly challenged the Assignment, on several grounds and ultimately argued that Nationwide was "no longer liable for any claim." Aff., ¶ 45. (Initially, Nationwide argued that it had not even received notice of the Plan and thus had been deprived of an opportunity to attend a public hearing on the proposed Plan. Nationwide later dropped its due process argument.)

In this case, however, Underwriters question, among other things, whether the subject losses fall within the reserved claims and losses that are subject to the Assignment. In addition, Underwriters demand arbitration with respect to a 2002 commutation of the assigned excess reinsurance contracts. In 2002, Underwriters made an $800,000 net payment pursuant to this commutation with Cooke. Whether assignee Cooke commuted the excess reinsurance contracts pursuant to its 2002 commutation does not concern the terms of the Assignment, but rather the parties' <u>post-assignment</u> conduct.

Third, Cooke's complaint quotes from a retained jurisdiction provision within the 1997 Order, but that provision does not confer "exclusive jurisdiction" on the Supreme Court, New York County. In analogous cases involving parties' contractual forum selection agreements, the rule in this Circuit is clear: "'[w]hen only jurisdiction is specified the clause (restricting jurisdiction) will generally not be enforced without some further language indicating the parties'

intent to make jurisdiction exclusive.'" <u>Boutari & Son v. Attiki Importers</u>, 22 F.3d 51, 52-53 (2d

Cir. 1994) <u>quoting</u> <u>Docksider, Ltd. v. Sea Technology, Ltd.</u>, 875 F.2d 762, 764 (9th Cir. 1989)

(additional citation omitted).  Judge Edward Weinfeld  summarized this rule in <u>City of New</u>

<u>York v. Pullman Inc.</u>, 477 F. Supp. 438, 442, n. 11 (S.D.N.Y. 1979): "[a]n agreement *conferring*

jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it

contains specific language of exclusion - or leaves it in the control of one party with power to

force on its own terms the appropriate forum."

In any event, the "continuing jurisdiction"  language partially quoted in the Cooke

complaint, ¶ 9, does not make that Court's jurisdiction exclusive.  Indeed, this provision makes

clear that:

> (1) the Supreme Court, New York County, did <u>not</u> retain jurisdiction with respect to
>
> "disputes involving computations of amounts due" under the Assignment;
>
> (2) the Superintendent is not a necessary party in any proceeding that interested parties
>
> elect to bring before the Supreme Court; and
>
> (3) the Supreme Court did not rule out an arbitrated resolution of the parties' differences.

Here, Underwriters -- unlike Nationwide in the litigation described above -- do not

challenge the Assignment on notice or due process grounds.  Nor do Underwriters argue that the

Assignment requires interpretation or clarification.  Rather, Underwriters seek, among other

things,  proof that the losses/claims fall within the Assignment.  Underwriters also seek

arbitration with respect to whether the parties' <u>post-assignment</u> conduct, to wit, a commutation

agreement executed years after the Citizens estate closed, extinguished Cooke's/Dominion's

right to collect additional moneys from the assigned excess reinsurance contracts.  These are not

matters subject to the retained jurisdiction provision partially quoted in the Cooke complaint.

## 2. Second Circuit Decisions in Ardra and Stevens

As noted above, Judge Leisure remanded the Ardra contract action to the New York state courts to answer the question of whether the dispute in that action arose from a commercial relationship between the parties.   The Second Circuit dismissed Ardra's appeal, treated its appeal as a mandamus petition, and denied the mandamus petition in order for the single question framed by Judge Leisure to be resolved in the state courts  Arden, 842 F.2d at 36.  The Second Circuit noted that the District Court had not resolved the arbitrability question,

> for if the state court determines that the pertinent powers of the Superintendent are strictly derived from the rights of Nassau, and thus are "commercial," the state court itself will be required, under the Supremacy Clause of the Constitution, to order arbitration pursuant to the Convention.

842 F. 2d at 35.

The Second Circuit has yet to rule on whether New York's 1957-era judicial exception to arbitration prevails over a United States treaty, but the Second Circuit has in another case upheld the right to arbitrate in the context of other proceedings involving the liquidators of insolvent New York insurers.  Hamilton Life Ins. Co. v. Republic National Life Ins. Co., 408 F. 2d 606, 611 (2d Cir. 1960); see also Miller v. National Fidelity Life Insurance Co., 588 F. 2d 185, 187 (5th Cir. 1979).

The Second Circuit touched on the New York Convention in connection with the insolvency of a reinsurer that failed and became subject to a liquidation proceeding in the Commonwealth of Kentucky.  Stephens v. American International Ins. Co., 66 F.3d 41 (Stephens I); see also  Stephens v. National Distillers & Chemical Corp., 69 F.3d 1226 (2d Cir. 1995)(Stephens II).  In Stephens (I), the Second Circuit held that the anti-arbitration provisions in the Kentucky Insurers Rehabilitation and Liquidation Law were preserved by the McCarran-

Ferguson Act, 15 U.S.C. §§ 1011, 1012, and the Kentucky liquidator of the insolvent Kentucky reinsurer could not be compelled to arbitrate a dispute over premium allegedly due the failed company. In two concluding paragraphs and with limited analysis, the court extended its holding to the Convention. 66 F. 3rd at 45. <u>Stephens (I)</u> should not be extended to the facts of this case for several reasons.

First, <u>Stevens(I)</u> dealt with a state statute enacted by the Kentucky legislature after the failed reinsurer, Delta America Re, was placed in liquidation. The Kentucky Legislature addressed an on-going reinsurance liquidation proceeding and chose to bar arbitration of reinsurance disputes with the failed company's receiver. (The Kentucky Legislature subsequently deleted the anti-arbitration statute from Kentucky's insurance laws.) <u>Stevens (I)</u> did not concern an anti-arbitration "policy" that morphed into a judicially-implied exception to the enforcement of international commercial contracts. <u>See</u>, <u>e.g.</u>, <u>Bernstein v. Centaur Ins. Co.</u>, 606 F. Supp. 98, 103 (S.D.N.Y. 1984)(McCarran-Ferguson Act exempts state practices from preemption only if a state's law would be impaired and does not stretch the exception to include "state policies" for which no specific law is enacted); <u>Miller</u>, 588 F.2d at 187.

Second, two months after <u>Stephens I</u> was decided, another Second Circuit panel ruled in another case involving the same Kentucky insolvency that the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a) <u>et seq.</u>, preempted Kentucky statutory prejudgment requirements notwithstanding the McCarran-Ferguson Act. <u>Stephens (II)</u>, 69 F. 3d at 1232. The Panel in <u>Stephens II</u> relied on among other things, Congressional "authority over foreign Commerce and foreign relations," <u>quoting</u> <u>Verlinden B.V. v. Central Bank of Nig.</u>, 461 U.S. 480, 488, 103 S. Ct. 1962 (1983); <u>Spirt v. Teachers Ins. & Annuity Ass'n</u>, 691 F.2d 1054 (2d Cir. 1982), <u>judgment</u>

vacated  Teachers Ins. & Annuity Ass'n v. Spirt, 463 U.S. 1223, 103 S.Ct. 3565,(1983)

modified and affirmed, 735 F.2d 23 (2d Cir. 1984).

    The panel  in Stephens II  noted that another panel  had ruled in Stephens I that the

McCarran Ferguson Act prohibited application of the FAA so as to "preempt a Kentucky

insurance law."  The panel in Stephens II had alternative grounds on which to rule that

"international law preempted the relevant [Kentucky] insurance law" relating to prejudgment

security.  The Stephens II Panel, therefore, did not need to "consider whether the alternative

ground discussed above [was] in conflict with the holding of American Distillers."  69 F.3d at

1233.

    Third, the Second Circuit did not explicitly consider whether the McCarran-Ferguson Act

applies only to "commerce among the several states" and not foreign commerce.  Other courts,

however, have concluded that the McCarran-Ferguson Act does "not apply to international

insurance contracts made under the [New York] Convention." See, e.g., In re Arbitration

Between England Shipowners Mut. Ins. Ass'n (Luxembourg) & Am. Marine Corp, 1992 WL

37700, at *4-5 (E.D.La February 18, 1992) (McCarran -Ferguson Act does not apply  to

contracts falling under the Convention); Goshawk Dedicated Ltd. v. Portsmouth Settlement Co.

1, 466 F. Supp. 2d 1293, 1301-03 (S.D. Ga. 2006) (New York Convention supersedes the

McCarran-Ferguson Act);  see also Triton Lines, Inc. v. Steamship Mutual Underwriting Assoc.,

707 F. Supp. 277 (1989) (McCarran-Ferguson Act does not abrogate the Federal Arbitration

Act); Antillean Marine Shipping Corp. v. Through Transp. Mut. Ins., Ltd., 2002 WL 32075793,

at *3 (S.D.Fla. Oct. 31, 2002) (McCarran-Ferguson Act "does not apply to international

insurance contracts made under the Convention"); McDermott Int'l, Inc. v. Underwriters at

Lloyd's of London, 1992 WL 3695, at *4 (E.D.La. Feb. 14, 1992), appeal dismissed, 981 F.2d

744 (5th Cir.1993), cert. denied, 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) ("rejects argument that the McCarran-Ferguson Act mandates the application of Louisiana law in favor of applying federal arbitration law"); Continental Ins. Co. v. Jantran, Inc., 906 F.Supp. 362, 366 (E.D.La.1995) ("McCarran-Ferguson Act does not apply to contracts made under the Convention and does not require the application of state law which prohibits enforcement of mandatory arbitration"); Assuranceforeningen Skuld (Gjensidig) v. Apollo Ship Chandlers, Inc., 847 So.2d 991, 993 (Fla.Ct.App.2003) (rejecting application of McCarran-Ferguson and compelling arbitration under the convention).

Fourth, Stephens (I) concerned an ongoing liquidation proceeding in which the Kentucky liquidator was vigorously pursuing reinsurance and other creditors in order to collect assets to distribute to the estate's creditors. In this case, there is no ongoing liquidation, no state statute forbidding arbitration, and, thus, no ground on which to argue that honoring U.S. treaty commitments under the New York Convention will interfere with an insurance insolvency proceeding.

## CONCLUSION

Underwriters respectfully request that the Cooke action be stayed and the parties referred to arbitration pursuant to the terms of the excess reinsurance contracts and the Convention.

Dated: New York, New York
      May 9, 2008

                    **CERTAIN UNDERWRITERS AT**
                    **LLOYD'S, LONDON**

                    James Veach (JV - 1525)
                    Joshua L. Milrad (JM - 2105)
                    MOUND COTTON WOLLAN &
                    GREENGRASS
                    Attorneys for defendant Certain
                    Underwriters at Lloyd's London
                    One Battery Park Plaza
                    New York, New York 10004
                    Tel: (212) 804-4200
                    Fax: (212) 804-8066

To:

John F. Finnegan, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

    - and –

Carey G. Child, Esq.
Chadbourne & Parke LLP
1200 New Hampshire Avenue, NW
Washington, DC 20036

Attorneys for B.D. Cooke & Partners Limited

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )

                                    ss:

COUNTY OF NEW YORK   )

        Jacob Mendelsohn, being duly sworn, deposes and says:

        That deponent is not a party to this action, is over the age of 18 years and resides in Brooklyn, New York.

        That on the 9th day of May, 2008 deponent served upon all parties the annexed MEMORANDUM OF LAW OF CERTAIN UNDERWRITERS AT LLOYD'S, LONDON IN SUPPORT OF THEIR MOTION TO STAY ACTION AND COMPEL ARBITRATION via the Court's ECF System:

                                          _____

                                          Jacob Mendelsohn

Sworn to Before Me This
9th day of May, 2008

_____
Notary Public

        IRENE SIEGEL
    Notary Public State of New York
       No. 41-4872330
     Qualified in Queens County
Commission Expires October 14, 2010