UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)      Civ. Action No. 08-CIV-3435 (RJH)

Plaintiff,

       -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Defendants.
-------------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN
## <u>OPPOSITION TO B. D. COOKE'S MOTION TO REMAND</u>



MOUND COTTON WOLLAN &
GREENGRASS

Attorneys for defendant Certain Underwriters at
Lloyd's, London
One Battery Park Plaza
New York, New York 10004
Tel: (212) 804-4200
Fax: (212) 804-8066



Of Counsel:

James Veach (JV - 1525)
Joshua L. Milrad (JM - 2105)

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................. 1

Cooke's "Factual and Procedural Background" ...................................................................... 3

    A.    Cooke's "Procedural" Background ........................................................................ 3

    B.    "Factual" background .............................................................................................. 6

POINT I

THE ARBITRATION AGREEMENTS THAT COOKE RESERVES ITS RIGHT TO USE
ALSO PERMIT THE REMOVAL OF THE COOKE ACTION TO THIS COURT AND
REQUIRE THAT THE PARTIES PROCEED TO ARBITRATION PURSUANT TO THE
CONVENTION(Answering Cooke Br., Pt. I, at 12-19) ................................................................. 8

    A.    Cooke Preserves and Reserves its Right to Arbitrate ........................................... 10

    B.    Cooke is not standing in the "Liquidator's shoes"; nor is Cooke confined
           to the "Exclusive Jurisdiction" of the Supreme Court, New York
           County(answering Cooke Br., Pt. II(B)(C) at 15-18 .............................................. 12

    C.    The Nationwide Litigation is Not Relevant to whether the Convention
           Requires the Arbitration of this Dispute (answering Cooke Br., Pt. II
           (d) at 19-20.) ......................................................................................................... 15

POINT II

UNDERWRITERS' DEFENSE TO COOKE'S SUIT FOR $2 MILLION BASED ON
A PRIOR COMMUTATION/RELEASE, THE PARTIES' DIFFERENCES OVER THE
AMOUNT PURPORTEDLY DUE, AND WHETHER THE AMOUNTS SOUGHT FALL
UNDER THE ASSIGNMENT ARE ALL DISPUTES "ARISING UNDER" THE
REINSURANCE CONTRACTS (Answering Cooke's Pr., Pt. II, at 21-23) ................................ 16

Point III

HAVING SUBMITTED TO THE JURISDICTION OF THE SUPREME COURT,
NEW YORK COUNTY, UNDERWRITERS PROPERLY REMOVED COOKE'S
ACTION TO THIS COURT PURSUANT TO REMOVAL PROVISIONS PROVIDED
BY CONGRESS PURSUANT TO THE CONVENTION (Answering Cooke Br., Pt. III,
at 24-25) ................................................................................................................................. 19

Conclusion ............................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

Arciniaga v. General Motors Corp., 460 F.3d 231 (2d Cir. 2006)................................. 19

Arkwright-Boston Manufacturers Mutual Insurance Company, et al. v. Ross, 1990
    WL 292149 (S.D. Texas 1990) ........................................................................... 10, 13

Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002) ............................................................ 19

Bennett v. Liberty Mut. Fire Ins. Co., 968 F.2d 969 (9th Cir. 1992)............................. 10

Bohlinger v. Zanger, 306 N.Y. 228, 117 N.E.2d 338 (1954) ........................................ 12

Borghos v. Certain Underwriters at Lloyd's of London, 36 Cal. 4th 496, 115 P.
    3d 68 (2005)............................................................................................................ 20

Boston Manufacturers Mutual Insurance Company , et al. v. Ross, 1990 WL 292149
    (S.D. Texas 1990) ............................................................................................... 10, 13

Boutari & Son v. Attiki Importers, 22 F.3d 51 (2d Cir. 1994) ...................................... 15

Brener v. Becker Paribas, Inc.,  628 F. Supp. 442 (S.D.N.Y. 1985) ............................. 20

Cargill B.V. v. S/S Ocean Traveller,   726 F. Supp. 56 (S.D.N.Y. 1989) ...................... 18

Childers v. Chesapeake and Potomac Telephone Co., 670 F.Supp. 624 (D. Md. 1987).............. 18

City of New York v. Pullman Inc., 477 F. Supp. 438 (S.D.N.Y. 1979) ......................... 14

Corcoran v. Ardra Ins. Co., Ltd., 77 N.Y.2d 225, 566 N.Y.S.2d 575 (1991)............................ 9, 13

Costle v. Fremont Indemnity Co., 839 F. Supp. 265 (D. Vt. 1993)................................ 10

Craig v. Bank of New York, 169 F.Supp.2d 202 (S.D.N.Y. 2001) ................................. 12

Cycle Sport, Inc. v. Dinli L.P., 2004 WL 936850 (E.D. La. April 29, 2004)................................ 19

David Threlkeld & Co. v. Metallgesellshaft, Ltd., 923 F. 2d 245 (2d Cir.) cert.
    dismissed, 501 U.S. 1267, 112 S. Ct. 17, 115 L. Ed.2d 1094 (1991) ........................ 17

DiMercurio v. Sphere Drake Insurance, PLC, No. 1, 202 F.3d 71 (1st Cir. 2000) .................. 6, 14

Dinallo v. DiNapoli, 9 N.Y.3d 94, 846 N.Y.S. 2d 593 (2007) ...................................... 11

Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762 (9th Cir. 1989) ...................................... 15

Dominion Video Satellite, Inc. v. Eckstein Satellite, L.L.C., 430 F.3d 1269
    (10th Cir. 2005) .......................................................................................... 6, 8, 15, 17

Foster v. Philadelphia Mfrs. 140 Pa.Cmwlth. 186, 592 A.2d 131 (Pa. Cmwlth.,1991) ............... 10

Genesco, Inc. v. Kakiuchi & Co., Ltd., 815 F.2d 840 (2d Cir. 1987) ...................................... 16, 17

Hamilton Life Ins. Co. v. Republic National Life Ins. Co., 408 F.2d 606 (2d Cir. 1960) ............ 10

Hetherington & Berner, Inc. v. Melvin Pine & Co., 256 F.2d 103 (2d Cir. 1958) ....................... 17

Holmes v. Westport Shipyards, Inc., 2004 WL 3007087 (S.D. Fl. 2004) ..................................... 18

In Re Delta America Re Ins. Co., 900 F.2d 890 (6th Cir.) ............................................................. 21

In Re Petition of J.W. Pryke, 83 Civ. 6156  (S.D.N.Y.  September 8, 1983) ................................ 20

In re:  Managed Care Health Care, 2003 WL 22410373 (S.D. Fla. 1993) ................................... 18

Koken v. Cologne Reinsurance (Barbados) Ltd., 34 F.Supp.2d 240 (M.D.Pa.,1999) .................. 10

McDermott International Inc. v. Lloyd's Underwriters of London, 944 F.2d 1199
    (5th Cir. 1991) ....................................................................................................... *passim*

Matter of Knickerbocker Agency [Holtz], 4 N.Y.2d 245, 173 N.Y.S.2d 602 (1958) ................... 9

Miller v. National Fidelity Life Insurance Co., 588 F.2d 185 (5th Cir. 1979) ............................. 10

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.
    Ct. 3346 (1985) ........................................................................................................ 17

Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's, Civ.
    A. No. 96-1627, 1996 WL 495157 (E.D. La. Aug. 30, 1996) .................................................. 20

Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co., 93 F.Supp.2d 300
    (W.D.N.Y.2000) ...................................................................................................... 12

Roby  v.  Corporation of Lloyd's,  996 F. 2d 1353 (2d Cir. 1993) ............................................... 18

S.A. Mineraqcao da Trididate-Samitri v. Utah Int'l Inc., 745 F.2d 190 (2d Cir. 1984) ............... 17

Security Life Ins. Co. v. Hannover Life Reassurance Co., 167 F. Supp.2d 1086
    (Minn. 2001) ........................................................................................................... 20

Sedco v. Petroleos Mexicanos Mexican National Oil Co., 767 F.2d 1140
  (5th Cir. 1995)..................................................................................................... 14

Selke v. New England Ins. Co., 995 F.2d 688 (7th Cir. 1993) ...................................... 10

Smith v. Colgate-Palmolive Co., 752 F.Supp. 273 (S.D. Ind. 1990)............................ 18

Stephens v. American Home Assurance Co., 811 F.Supp. 937 (S.D.N.Y.1993) ........................ 12

Thomson-CSF, S.A. v. American Arbitration Association, 64 F. 3d 773 (2d Cir. 1995) ............ 12

Trade Arbed, Inc. v. M/V KANDALAKSHA, 2003 WL 22097460 *3 (S.D.N.Y. 2003) ........... 17

Travelers Insurance Co. v. Keeling, 1993 WL 18909 (S.D.N.Y. 1993)..................... 19, 22, 23, 24

West Shore Pipe Line v. Associated Elec. & Gas, 791 F. Supp. 200 (N.D. Ill. 1992) ................ 20

Williams v. Cigna Financial Advisers, Inc., 56 F.3d 656 (5th Cir. 1995) ..................................... 19

Wright v. Arion Ins. Co., 498 U.S. 890, 111 S. Ct. 233, 112 L. Ed.2d 193 (1990)...................... 21

**Statutes**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9
  U.S.C. §§ 201-208 ................................................................................................... *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)          Civ. Action No. 08-CIV-3435 (RJH)

Plaintiff,

        -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Defendants.
-----------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN
## OPPOSITION TO B. D. COOKE'S MOTION TO REMAND

      Defendants Certain Underwriters at Lloyd's, London,  respectfully submit their memorandum of law in response to the motion of plaintiff B.D. Cooke & Partners Ltd. (Cooke) to remand its action to the Supreme Court, New York County.

### Preliminary Statement

      Cooke argues that Underwriters "improper(ly)" removed Cooke's action pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208 (Convention) because the "most basic and fundamental requirements" for removal under the Convention do not exist, to wit, an agreement between the parties to arbitrate their differences. Memorandum of Law in Support of B.D. Cooke's Motion to Remand at 1 (Cooke Br.).

      Cooke does not deny that explicit agreements to arbitrate appear in <u>all</u> of the reinsurance excess contracts upon which Cooke brought suit. See Affidavit of Thomas B. McNamara dated April 25, 2008, Exs.  1 - 9 (McNamara Aff.) submitted in opposition to Underwriters' motion to compel arbitration.   Indeed, Cooke <u>reserves its right to arbitrate</u> pursuant to these very arbitration agreements.  Cooke Verified Complaint, ¶, ¶ 44, 50.

1

Instead, Cooke contends that the arbitration agreements that appear in all of the excess reinsurance contracts:

1.    have been "incapable of being performed" since 1971 (Cook Br., Pt. I at 12-19;

2.    do not apply to the allegations in the Cooke complaint (Cooke Br. Pt. II at 21-24); and

3.    are subject to service of suit clauses whereby Underwriters -- well before Congress implemented the Convention -- "waived" their right to remove (Cooke Br. Pt. III at 24-25.

These are extraordinary arguments given that the two causes of action pursuant to which Cooke seeks to recover "$1,903,420.61, exclusive of interest and costs," Verified Complaint, annexed as Ex. 1 to Affirmation of Carey G. Child in Support of Cooke Motion to Remand (Child Aff.; Cooke Complaint), are both:

asserted . . . expressly subject to, and without waiver of, arbitration of any disputes under the Excess-of-Loss Reinsurance Agreements as provided in any arbitration clauses contained in such Excess-of-Loss Reinsurance Agreement (emphases added).

Complaint, ¶, ¶ 44, 50; Child Aff. Ex. 1. Therefore, if there were a "dispute under the reinsurance agreement . . . . -- if a dispute were deemed to exist -- B.D. Cooke did not intent (sic) to litigate such disputes in this action," but rather to arbitrate. Cooke Br. at 6. Cooke is in luck because there certainly is a dispute to arbitrate. See Declaration of Christopher David Piller, sworn to on June 5, 2008, ¶,¶ 47-64, submitted herewith.

In other words, Cooke maintains that there are no binding agreements to arbitrate in the excess reinsurance contracts unless Cooke chooses to rely on them. Cooke's reservation and preservation of its right to arbitrate under the very reinsurance contracts upon which it brought suit eliminates all three of its arguments that there are no binding arbitration agreements pursuant to which Underwriters removed their action to this Court.

2

Perhaps no authority need be cited other than Cooke's own "Verified Complaint" to demonstrate that Underwriters properly removed Cooke's action. But certainly for that reason and for the additional reasons set further below, Underwriters is entitled to the relief sought -- an order directing the parties to arbitrate their differences and staying this action.

### Cooke's "Factual and Procedural Background"

Cooke devotes half of its brief to "Factual and Procedural Background." Memorandum of Law in Support of B.D. Cooke's Motion to Remand at 2 -12 (Cooke Br.). But the most significant facts and matters are those that Cooke does not raise.

### A. Cooke's "Procedural" Background

In order to enforce an international arbitration agreements, the Convention and Chapter Two of the Federal Arbitration Act require only:

> (1) a written agreement;
>
> (2) that provides for arbitration in the territory of a signatory of the Convention;
>
> (3) the subject matter of which must be commercial; but
>
> (4) which cannot involve a dispute that is entirely domestic.

See authority cited in Underwriters Memorandum of Law in Support of Their Motion to Stay and Compel Arbitration at 9. The excess reinsurance contracts at issue in this proceeding satisfy all four of these requirements and Underwriters do not dispute these "facts." On what basis, therefore, should these agreements to arbitrate not be enforced?

To lay the groundwork for arguments that follow, Cooke quotes from the June 17, 1971 Order that commenced the court-ordered supervision of Citizens' liquidation. Cooke Br. at 3. Cooke states that the stay issued in conjunction with the liquidation order is "consistent with [the Supreme Court's] and the Liquidator's exclusive jurisdiction over the liquidation of Citizens . . .

." Cooke Br. at 3. Cooke also attaches to its moving papers affidavits submitted in an unrelated and litigated case that Cooke initially sought to arbitrate. See Veach Affirmation, sworn to on May 9, 2008, Ex. 8.

Citizens liquidation order and the circumstances surrounding Citizens failure are irrelevant with respect to whether a dispute arising under the assigned reinsurance contracts must be arbitrated. The court-supervised proceedings relating to Citizens -- New York Supreme Court Docket No. 40357/71 – closed in 1998. Unlike the Liquidator in Citizens, Cooke does not operate under the judicial supervision of the Supreme Court, New York County. Cooke is certainly not a fiduciary for Citizens' creditors, all of whom were paid a portion of their allowed claims when the Citizens estate closed.

Cooke next selectively quotes from the assignment to B.D. Cooke of Citizens' "reinsurance assets." Cooke states that the assignment was "approved by the NY Supreme Court and was specifically [sic] 'together with all of the rights which the Liquidator would have had thereunder if the [Liquidation Proceeding] were not closed . . . .'" Cooke Br. at 4. It is unclear whether Cooke is implying that Cooke operates as a fiduciary under the New York Supreme Court's oversight. Cooke negotiated a commercial arrangement pursuant to which Cooke received money for certain approved, paid losses due from the estate, waived its right to collect a portion of certain outstanding losses (to the extent those outstanding losses appeared in the Liquidator's books and records), and, in exchange, acquired the right to seek certain reinsurance recoverables from Citizens' reinsurers pursuant to the excess reinsurance agreements upon which it brought suit.

Cooke, however, is not a fiduciary, Cooke is not bound to stay within the "exclusive jurisdiction" of the Supreme Court, New York County, and no court oversees Cooke's efforts to

collect on the assigned reinsurance contracts. Cooke is free to arbitrate or, if the parties elect to litigate, commence an action in <u>any</u> jurisdiction. Nor is Cooke bound by New York State case law that bars reinsurers from arbitrating their disputes with a New York insurance receiver. Proof of this can be found in Cooke's own "Verified Complaint," ¶,¶ 44, 50, wherein Cooke reserves its right to arbitrate disputes under the very reinsurance contracts at issue here.

Cooke alludes to litigation against Nationwide Mutual Insurance Company concerning the assignment. Cooke Br. at 4. <u>B.D. Cooke & Partners Ltd. v. Nationwide Mutual Insurance Company</u>, Index No. 600655/02, slip op. at 11-12 <u>aff'd</u> in <u>part</u>, <u>rev'd</u> in <u>part</u>, 16 A.D.3d 208, 791 N.Y.S.2d 103 (lst Dep't 2005) (<u>Nationwide</u> case). The <u>Nationwide</u> case involved litigation with a <u>member</u> of the Agency Managers pool. The <u>Nationwide</u> case did not concern the relationship between an excess of loss reinsurer and Agency Managers. The differences are significant.

For example, in the <u>Nationwide</u> case, the court ruled against Agency Manager Pool member Nationwide in part because Run-Off Management Reinsurance Management Company ("ROM"), the successor to Agency Managers, Inc., acted as an agent for Nationwide and was thus charged with certain knowledge concerning the claims at issue. "Defendant [Nationwide] authorized ROM to handle claims of losses. Defendant [Nationwide] makes no showing that ROM has acted against its interests or that it made any errors in determining the amount of defendant's liability, except, perhaps, in regards to offsets." Slip. Op. at 11. In this case, Cooke has contracted with ROM to collect the very reinsurance at issue in this dispute and Underwriters certainly question how ROM and Cooke have submitted and accounted for reinsurance losses that Cooke and ROM seek to collect.

In a footnote, Cooke asserts that service of its verified complaint was made upon Underwriters "pursuant to the Hague Convention" and separately upon counsel for Underwriters.

Cooke Br. at 5, n. 2. Underwriters deny that Cooke did (or can) properly effect service by leaving a copy of its complaint with an officer of Equitas, Ltd. (Equitas) or Resolute Management Services, Limited (Resolute).

Adequacy of service is not an issue inasmuch as Underwriters appeared in Supreme Court, New York County, and properly removed Cooke's action to this Court. But the method that Cooke chose to attempt service <u>does</u> relate to its argument that service of suit clauses in the reinsurance agreements somehow bar removal. Cooke Br., Pt. III at 24-25. Using the service of suit provision, Cooke could easily have effected service on Underwriters by delivering a copy of its complaint to Mendes & Mount, a designated agent for service located at 750 Seventh Avenue, New York, NY 10019. Instead, Cooke's counsel hired a process server in London to attempt service on an officer of Resolute and Equitas, an officer who advised Cooke's process server that he, the officer, was not authorized to accept service on behalf of Underwriters.

Underwriters did not "oust" the Supreme Court, New York County, of jurisdiction, any more than arbitration of a dispute under the FAA "ousts" any court, state or federal, of jurisdiction over any dispute subject to arbitration. <u>DiMercurio v. Sphere Drake Insurance, PLC, No. 1</u>, 202 F.3d 71,76 (1st Cir. 2000); <u>McDermott International Inc. v. Lloyd's Underwriters of London</u>, 944 F.2d 1199, 1206 (5th Cir. 1991). Cooke now seeks to avoid the removal of its action pursuant to a service of suit clause that it never used in the first place.

### B. "Factual" Background

Cooke cites to and quotes from its own "verified complaint" to provide "factual background," but omits discussing the contractual relationship between Dominion and Cooke or between ROM and Cooke. Cooke Br. at 8. Cooke quotes from an affidavit prepared by Thomas McNamara, a Senior Vice President at ROM, and Mr. McNamara's assertion that the subject

6

dispute concerns nine contracts, as well as an affidavit submitted by Andrew Tyler, a Cooke

Vice-President. Mr. Tyler contends that no dispute remains between the parties. Tyler Aff.,

¶,¶ 8, 9. To the contrary, this dispute concerns claims for balances due under two reinsurance

contracts and questions concerning the alleged amounts due, whether certain balances have

already been paid, whether Underwriters have no further duty to indemnify given the terms of a

2002 commutation/release agreement, and whether the amounts allegedly due fall with the terms

of the subject assignment. Declaration of Christopher David Piller, sworn to on June 5, 2008,

¶,¶ 47-64, a copy of which is submitted simultaneously with this memorandum.

Cooke cites provisions in the New York Supreme Court's 1997 order that approved the

Plan to close the Citizens estate and allowed the Supreme Court, New York County, to maintain

continuing jurisdiction over "non-computational" disputes concerning the reinsurance

agreements assigned. Cooke Br. at 10. That order, however, did not vest the Supreme Court,

New York County, with "exclusive jurisdiction," as evidenced by Cooke's preserving its right to

arbitrate disputes arising under contracts subject to the assignment. Second, the disputed matters

in this case concern the "computation of amounts due" under the excess reinsurance contracts, a

phrase that Cooke's counsel carefully avoids quoting anywhere in its brief. Third, Cooke's own

counsel began its litigation with Nationwide with a demand for arbitration, a clear

acknowledgement that even Cooke's own counsel recognizes the voluntary nature of the

Supreme Court's "continuing jurisdiction."

Finally, Cooke claims that by assigning certain numbers to claims submitted by Cooke's

agent, ROM, Underwriters eliminated any dispute between the parties. Cooke Br. at 11. As set

forth in the Piller Declaration, ¶¶ 29-46, Underwriters' having agreed to certain coverage issues

does not mean that no dispute between the parties remains. The parties disagree on, among other

things, the <u>amount</u> of reinsurance recoverables due.  Underwriters appropriately demanded proof

that the claims submitted to them fall within the terms of the subject assignment.  Requests for

information relating to the assignment remain unanswered even though Cooke, as Citizens'

assignee, is required under the reinsurance contracts' access to records to respond.  <u>See</u>, <u>e.g.</u>,

Veach Aff., Ex, 4, Art. XIV.

Of course, in all of this factual background, Cooke stays away from the origins  of the

Plan to close the Citizens estate.  Cooke does not discuss or allude to representations made by

Dominion/B.D. Cooke while the plan was being drafted.  Veach, Aff., Ex. 8. Thus, we end where

we started: Cooke's preservation of its right to arbitrate under the excess reinsurance contracts

upon which it sued remains the most salient procedural and factual matter relevant to the

question before this Court.


## POINT I

**THE ARBITRATION AGREEMENTS THAT COOKE RESERVES ITS
RIGHT TO USE ALSO PERMIT THE REMOVAL OF THE COOKE
ACTION TO THIS COURT AND REQUIRE THAT THE PARTIES
PROCEED TO ARBITRATION PURSUANT TO THE
<u>CONVENTION(Answering Cooke Br., Pt. I, at 12-19)</u>**

Cooke argues that its action must be remanded to the Supreme Court, New York County,

because this Court lacks "subject matter jurisdiction" in that the arbitration agreements contained

within the excess reinsurance contracts are  "incapable of being performed" and thus "outside the

Convention." Cooke Br. at 12.  Cooke contends that "whatever right Underwriters may have

originally had to compel arbitration  was terminated upon the insolvency of Citizens . . . ."

Cooke Br. at 13.

Citing New York authority holding that the <u>Liquidator</u> of an insolvent New York insurer

cannot be compelled to arbitrate, thus "maintaining [the liquidation court's] exclusive jurisdiction

8

over liquidation proceedings," Corcoran v. Ardra Ins. Co., Ltd., 77 N.Y.2d 225, 233, 566

N.Y.S.2d 575 (1991); Matter of Knickerbocker Agency [Holtz], 4 N.Y.2d 245, 250, 173

N.Y.S.2d 602 (1958), Cooke argues that the arbitration agreements within the excess reinsurance

contracts were "terminated * * * more than 25 years [ago]" and never "revived." Cooke Br. at 15,

17.

Quoting from the Liquidator's October 11, 1996 petition "approving the Liquidator's

plan to expedite the closing of the [Citizens] estate," Cooke insists that the assignment of the

excess reinsurance contracts included "all the rights which the Liquidator would have had

thereunder if the Citizens estate were not closed." Cooke Br. at 18. Cooke then argues that "one

of the 'rights which the Liquidator would have had' was the right not to be compelled to

arbitrate." Cooke Br. at 19.

Finally, Cooke contends that the Nationwide case "confirmed * * * B.D. Cooke's

entitlement to the same protections as the Liquidator." Cooke Br. at 19. Arguing by analogy,

Cooke maintains that the Nationwide case establishes that Cooke stepped not into Citizens'

shoes, but rather the Liquidator's shoes, received all of the "rights" the Liquidator would have

enjoyed if the Citizens estate were still open, and thus rendered the arbitration agreements in the

assigned excess reinsurance contracts "incapable of being performed." Cooke Br. at 20.

To the contrary, Cooke cannot claim the benefit of arbitration agreements in one breath

and deny Underwriters their right to arbitrate with the next. Cooke is not a deputy New York

State liquidator enjoying the same "rights" as a Supreme Court-supervised insurance receiver.

Nor is the litigation that Cooke initially sought to arbitrate with Nationwide -- a member of the

Agency Managers Pool -- relevant to whether Cooke, as the assignee of excess reinsurance

contracts, can pick and choose which rights and obligations it wishes to honor under those assigned reinsurance contracts.

## A. Cooke Preserves and Reserves its Right to Arbitrate

As discussed above, Cooke asserts and preserves its right to arbitrate under the excess reinsurance contracts at issue. Verified Complaint, ¶,¶ 44, 50. This completely undercuts Cooke's argument that the Citizens liquidation "terminated any ability of Underwriters' (sic) to compel arbitration." Cooke Br. at 13 .

Cooke's efforts, however, to preserve its own right to arbitrate does not stop Cooke from invoking New York state decisions that bar arbitration pursuant to a New York State judicially-created exception, decisions based on reasoning that other courts have rejected. Costle v. Fremont Indemnity Co., 839 F. Supp. 265, 275 (D. Vt. 1993); Koken v. Cologne Reinsurance (Barbados) Ltd., 34 F.Supp.2d 240, 256 (M.D.Pa.,1999); Foster v. Philadelphia Mfrs. 140 Pa.Cmwlth. 186, 190, 592 A.2d 131, 133 (Pa. Cmwlth.,1991). Many other courts have compelled insurance receivers to arbitrate actions commenced against an insolvent insurer's reinsurers. See, e.g., Bennett v. Liberty Mut. Fire Ins. Co., 968 F.2d 969 (9th Cir. 1992); Selke v. New England Ins. Co., 995 F.2d 688 (7th Cir. 1993); Hamilton Life Ins. Co. v. Republic National Life Ins. Co., 408 F.2d 606, 611 (2d Cir. 1960); see also Miller v. National Fidelity Life Insurance Co., 588 F.2d 185, 187 (5th Cir. 1979); Arkwright-Boston Manufacturers Mutual Insurance Company, et al. v. Ross, 1990 WL 292149 (S.D. Texas 1990). Regardless of the wisdom of New York's policy, whether Cooke should be compelled to arbitrate this dispute has little to do with whether the New York Superintendent of Insurance in his role as the receiver of an insolvent New York insurer can be compelled to arbitrate.

The New York Legislature has bestowed upon the Superintendent "broad fiduciary powers to manage the affairs of distressed" New York insurers. Dinallo v. DiNapoli, 9 N.Y.3d 94, 846 N.Y.S. 2d 593 (2007). While under New York law, a court-supervised liquidator cannot be compelled to arbitrate, Cooke is obviously not a New York Supreme Court-supervised receiver for a failed New York insurer. The Superintendent of Insurance his receivership role:

- acts in a fiduciary capacity for all of the estate's creditors;

- has different obligations and rights with respect to timely notice of claims and losses;

- has the authority to sue the failed company's directors and officers;

- acts under court-supervision pursuant to NYIL Art. 74;

- may shield documents from New York State's Freedom of Information Laws that other state agencies would be compelled to produce;

- may compel anyone possessing property or records belonging to an insolvent insurer to assign, transfer, or deliver such property and to submit to an examination under oath;

- void preferential transfers of property and payments under penalty of criminal prosecution. NYIL 7425.

See New York Insurance Law Article 74; see generally Gillis and Calareso, Litigation Must Prepare for Risk that Insurers May Go Into Rehabilitation or Liquidation, 75 NY St. Bar Journal 201 (March/April 2003).

Cooke enjoys none of these powers and shares none of these obligations or risks. Accordingly, Cooke is in no position to accept an assignment of reinsurance contracts -- not merely an assignment of reinsurance proceeds -- and then thumb its nose at the contractual obligation to arbitrate disputes concerning how much is due under those reinsurance contracts.

11

**B.      Cooke is not standing in the "Liquidator's shoes"; nor is Cooke confined to the "Exclusive Jurisdiction" of the Supreme Court, New York County(answering Cooke Br., Pt. II(B)(C) at 15-18.**

Cooke concedes that "non-signatories may, under certain circumstances, be compelled to arbitrate under the Convention."  Cooke Br. at 15. This is understandable given that the Second Circuit recognizes many instances in which non-signatories that assume the benefits of contracts are bound by all their provisions, including the obligation to arbitrate.  See, e.g., Thomson-CSF, S.A. v. American Arbitration Association, 64 F. 3d 773, 776 (2d Cir. 1995).

Cooke claims that it "stepped directly into the shoes of the Liquidator, inheriting only those legal rights and obligations under the Lloyd's Reinsurance Contract that the Liquidator would have had." Cooke Br. at 16  This ignores that the Liquidator himself stood in the shoes of Citizens and inherited only the rights and obligations that Citizens enjoyed under the excess reinsurance contracts.  In the Matter of the Liquidation of Union Indemnity Ins. Co. of New York, 89 N.Y.2d 94, 109, 651 N.Y.S.2d 383, 674 N.E.2d 313 (1996) ("liquidator of an insurance company 'stands in the shoes' of the insolvent, gaining no greater rights than the insolvent had"); see also Stephens v. American Home Assurance Co., 811 F.Supp. 937, 947 (S.D.N.Y.1993), vacated and remanded on other grounds, 70 F.3d 10 (2d Cir.1995)); Bohlinger v. Zanger, 306 N.Y. 228, 234, 117 N.E.2d 338 (1954); see also Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co., 93 F.Supp.2d 300, 309 (W.D.N.Y.2000); Craig v. Bank of New York, 169 F.Supp.2d 202, 210 (S.D.N.Y. 2001).

The unique exception to United States support for the Convention created in the Ardra case derived from policy considerations involving the role of the Superintendent of Insurance as liquidator of an insolvent New York insurer and the role of the Supreme Court in overseeing that process.  As the District Court observed:

> Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be entrusted to a single management under the *supervision of one court.* Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies . . . .

Corcoran v. Ardra, 657 F.Supp 1223, 1233 (S.D.N.Y. 1987) (internal citations omitted). The circumstance set out in Ardra do not apply where: (1) the order closing the estate specifically terminated any liability on the part of the liquidator; (2) creditors have been paid and their claims discharged; and (3) there are no on-going court proceedings involving the Citizens estate.

The assignment of the reinsurance contracts occurred simultaneously with the closing of the Citizens estate. At that point, there were no Liquidator shoes for Cooke to step into. Cooke is no longer burdened with the Liquidator's fiduciary obligations and can no longer invoke a statutory receiver's burdens as the basis for ignoring its contractual obligation to arbitrate.

Other courts recognize that assignment of reinsurance contracts does not strip away the obligation to arbitrate under the Convention. Arkwright-Boston Manufacturers Mutual Insurance Company , et al. v. Ross, 1990 WL 292149 (S.D. Texas 1990). In Arkwright, an injured seaman obtained a judgment against the owner of the ship on which he was injured. The ship's owner had insurance with a liability insurer that arranged for reinsurance in the London Market. The liability insurer failed and was liquidated (wound-up) in Bermuda. The plaintiff seaman attempted to sue the London reinsurers, but also obtained an assignment of the insurer's claims against the London reinsurers.

The District Court rejected the plaintiff seaman's attempt to sue the London reinsurers because of the plaintiff's lack of privity, but allowed the plaintiff to proceed against the London reinsurers pursuant to the assignment. The London reinsurers insisted on arbitrating under the

13

arbitration agreements within their reinsurance contracts and pursuant to the Convention. The District held that "as (the insurer's) assignee, (the seaman) must comply with the terms of the contract under which he seeks recovery." 1990 WL 292149 *2 (S.D. Texas 1990). The District Court stayed the plaintiff's suit "pending his exhaustion of arbitration as provided in the contract." Id., citing Sedco v. Petroleos Mexicanos Mexican National Oil Co., 767 F.2d 1140, 1146, 46 (5th Cir. 1995); see also DiMercurio v. Sphere Drake Insurance PLC, 202 F.3d 71 (lst Cir. 2000) (assignee of rights under insurance policy bound to arbitrate under the Convention).

Cooke contends that Underwriters seek to "revive their long terminated ability to compel arbitration." Cooke Br. at 17. To the contrary, the contractual right to compel arbitration never ended. Based on a New York state policy perceived as advancing and protecting the interests of statutory receivers, New York courts may have suspended the contractual obligation to arbitrate during on-going insolvency proceedings. But there are no statutory receivership proceedings underway, as is made clear in the caption of Cooke's complaint: "B.D. Cooke & Partners Limited, as assignee of Citizens Casualty Company (in Liquidation) v. Certain Underwriters at Lloyd's, London."

Cooke characterizes the difference between the Supreme Court's retaining "exclusive jurisdiction" as opposed to "jurisdiction" as but a "quibble." Cook Br. at 17. To the contrary, the lack of the term "exclusive" is critical. As Judge Weinfeld noted in City of New York v. Pullman Inc., 477 F. Supp. 438, 442, n. 11 (S.D.N.Y. 1979): "[a]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language (citation omitted) of exclusion - or leaves it in the control of one party with power to force on its own terms the appropriate forum." "The general rule in cases containing forum selection clauses is that '[w]hen only jurisdiction is specified the clause will

generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'" <u>Boutari & Son v. Attiki Importers</u>, 22 F.3d 51, 52-53 (2d Cir. 1994) <u>quoting</u> <u>Docksider, Ltd. v. Sea Technology, Ltd.</u>, 875 F.2d 762, 764 (9th Cir. 1989) (additional citation omitted).

The right to arbitrate reinsurance disputes is almost universal.  Had the Liquidator and Dominion/B.D. Cooke intended to strip out the contractual right to arbitrate, their intent would have been made known before or during the hearing on the Plan.  If the Liquidator and Dominion,  in conjunction with the assignment, wanted Cooke cloaked with some of the protections created for the benefit of statutory receivers, appropriate notice would have been given.  None was and, under these circumstances -- and particularly given Cooke's own invocation of the agreements' arbitration agreements -- any ambiguity should not be used to trump the agreements to arbitrate or the FAA or the Convention.

### C.    The Nationwide Litigation is Not Relevant to Whether the Convention Requires the Arbitration of this Dispute (answering Cooke Br., Pt. II (d) at 19-20.)

Finally, Cooke seeks to extend the holding in the <u>Nationwide</u> case to the arbitration question before this Court.  The <u>Nationwide</u> case, however, did not concern the contractual obligation to arbitrate.  Nor did it concern the FAA or commitments made under the Convention to more than one hundred countries around the world pursuant to Treaty Power of the U.S. Constitution.  See 9 U.S.C.A. § 201.  Nor did the <u>Nationwide</u> case concern the judicially-created exception to New York's strong policy favoring arbitration, an exception created solely for statutory receivers. About the only connection between the <u>Nationwide</u> case and the issues in this case was the demand for arbitration that counsel in this case made on behalf of Cooke in the <u>Nationwide</u> case.  Veach Aff., Ex. 12.

## POINT II

### UNDERWRITERS' DEFENSE TO COOKE'S SUIT FOR $2 MILLION BASED ON A PRIOR COMMUTATION/RELEASE, THE PARTIES' DIFFERENCES OVER THE AMOUNT PURPORTEDLY DUE, AND WHETHER THE AMOUNTS SOUGHT FALL UNDER THE ASSIGNMENT ARE ALL DISPUTES "ARISING UNDER" THE REINSURANCE CONTRACTS (Answering Cooke's Pr., Pt. II, at 21-23)

Cooke argues that "[e]ven if the arbitration agreements were not 'incapable of being performed,'" "removal was independently improper" in that the "actual scope of the arbitration agreements . . . cannot possible (sic) constitute an agreement to arbitrate 'the subject of' any dispute within [Cooke's] verified complaint." Cooke Br. Pt. II at 21, 22.

Cooke contends that in addition to its garden-variety contract claim and its cause of action for an account stated, Cooke also seeks a declaratory judgment "entirely and expressly limited to interpreting" the assignment of the subject contracts. Cooke argues that this declaratory relief is not arbitrable under the agreement to arbitrate. Cooke Br. Pt. II at 22. Cooke further contends that "there is no dispute 'arising under' the excess reinsurance agreements because Resolute's assigning claim numbers to disputed claims "means that there is no dispute about that claim under the reinsurance contract" and, hence, nothing to arbitrate. Cooke Br., p. 23.

First, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone, 460 U.S. at 24-25, 103 S. Ct. at 941. This "emphatic federal policy in favor of arbitral dispute resolution 'applies with special force in the field of international commerce.'" Genesco, Inc. v. Kakiuchi & Co., Ltd., 815 F.2d 840, 847 (2d Cir. 1987) quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 618, 105 S. Ct. 3346, 3356-57 (1985). In this Circuit, "federal policy favoring arbitration requires" that arbitration clauses be construed "as broadly as possible." Genesco, 815 F. 2d at 847.

Arbitration must be ordered unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." David Threlkeld & Co. v. Metallgesellshaft, Ltd., 923 F. 2d 245, 250 (2d Cir.) cert. dismissed, 501 U.S. 1267, 112 S. Ct. 17, 115 L. Ed.2d 1094 (1991); S.A. Mineraqcao da Trididate-Samitri v. Utah Int'l Inc., 745 F.2d 190, 194 (2d Cir. 1984) quoting additional authority.

In this proceeding, the agreements to arbitrate "any dispute arising under" the subject reinsurance agreements are certainly "sufficiently broad to encompass" all of the claims alleged in Cooke's complaint.  Genesco, Inc. v. Kakiuchi & Co., Ltd., 815 F. 2d 840 at 854 ("all claims and disputes of whatever nature arising under this contract" sufficiently broad to require arbitration of RICO and Robinson-Patman Act violations subject to arbitration); see also Trade Arbed, Inc. v. M/V KANDALAKSHA, 2003 WL 22097460 *3 (S.D.N.Y. 2003) ("broad arbitration clauses governing all disputes arising under the charter cover even a dispute involving a non-signatory").

Cooke argues that the "declaratory relief sought under the Verified Complaint is entirely and expressly limited to interpreting the Assignment" and not interpreting the reinsurance agreements.  Cooke Br. at 21.  Arbitration panels, however, often provide declaratory relief. See, e.g., Hetherington & Berner, Inc. v. Melvin Pine & Co., 256 F.2d 103, 107 (2d Cir. 1958); Dominion Video Satellite, Inc. v. Eckstein Satellite, L.L.C., 430 F.3d 1269, 1277 (10th Cir. 2005).  Second, the declaratory relief added to the Cooke complaint ties directly to Cooke's assertions under the contract.  Third, the contract causes of action and the request for declaratory relief are inextricably intertwined. and hence both should and must be arbitrated together.  In re: Managed Care Health Care, 2003 WL 22410373 at *8 (S.D. Fla. 1993) (claims derivative of and inextricably intertwined with assigned contract require arbitration); Smith v. Colgate-Palmolive

17

Co., 752 F.Supp. 273 (S.D. Ind. 1990) (evaluation of the tort claim inextricably intertwined with

terms of the labor contract requiring arbitration);  Childers v. Chesapeake and Potomac

Telephone Co., 670 F.Supp. 624, 628 (D. Md. 1987) (collective bargaining agreement and

wrongful discharge claim "inextricably intertwined" with labor agreement requiring arbitration.)

     Mere pleading, inartful or otherwise, cannot defeat the contractual right to arbitrate.

> It defies reason to suggest that a plaintiff may circumvent forum selection and
> arbitration clauses merely by stating claims under laws not recognized by the
> forum elected in the agreement. We refuse to allow a party's solemn promise to be
> defeated by artful pleading.

Roby v. Corporation of Lloyd's, 996 F. 2d 1353, 1360 (2d Cir. 1993).  If all it took were a

request for a declaratory judgment or some similar pleading device to defeat arbitration,

arbitration would be an endangered species of dispute resolution. Certainly, legal fictions and

inartful pleading should not be used "as a means of 'distorting fundamental contract rights.'"

Holmes v. Westport Shipyards, Inc., 2004 WL 3007087 (S.D. Fl. 2004) quoting Cargill B.V. v.

S/S Ocean Traveller,  726 F. Supp. 56, 61 (S.D.N.Y. 1989).

     With respect to whether there remains a dispute with respect to how much is due and

owing under the subject reinsurance agreements, we point to the notice of removal, see Notice of

Removal ¶14, the affidavit in support of the motion to compel arbitration, and the annexed  Piller

Declaration.  How the amount allegedly due has been computed is one of many unresolved

disputes between the parties.  Cooke cannot sidestep serious questions about a commutation/

release of all claims under the assigned contracts, whether certain claims have been previously

paid, and Cooke's obligation to respond to questions concerning the claims by the artifice of

demanding declaratory relief and pretending no dispute exists between the parties.

**Point III**

**HAVING SUBMITTED TO THE JURISDICTION OF THE SUPREME
COURT, NEW YORK COUNTY,  UNDERWRITERS PROPERLY
REMOVED COOKE'S ACTION TO THIS COURT PURSUANT TO
REMOVAL PROVISIONS PROVIDED BY CONGRESS PURSUANT TO
THE CONVENTION (Answering Cooke Br., Pt. III,  at 24-25)**

Finally, Cooke argues in the further alternative that even if the arbitration agreements that it invokes in its Verified Company are "capable of being performed" and even if the dispute between the parties falls within the scope of the subject arbitration agreements,  Underwriters have "waived any such right that might otherwise exist" by virtue of the excess reinsurance contracts' service of suit clauses. Cooke Br. at 24-25.  Cooke relies on Travelers Insurance Co. v. Keeling, 1993 WL 18909 (S.D.N.Y. 1993).  Arguing that these service of suit clauses, "unquestionab(ly)" serve as "forum selection" devices, Cooke contends that Underwriters "waived" their right to remove Cooke's complaint years before the United States adhered to the Convention. See Cooke Br. at 24.  See Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002) ("easy removal is exactly what Congress intended in §205").

First, waiver of the right to arbitration and, by extension, the rights aiding the implementation of those rights, is "not a favored finding, and there is a presumption against it." Cycle Sport, Inc. v. Dinli L.P., 2004 WL 936850 *3 (E.D. La. April 29, 2004) citing Williams v. Cigna Financial Advisers, Inc., 56 F.3d 656, 661 (5th Cir. 1995) citing other authority;  Arciniaga v. General Motors Corp., 460 F.3d 231, 235(2d Cir. 2006). Thus, the party invoking waiver has a heavy burden.  Id.  Under the facts and circumstances of this case, Cooke does not even come close to satisfying that burden.

19

Most United States courts that have considered the relationship between service of suit clauses and arbitration clauses in reinsurance contracts, particularly international reinsurance agreements, have concluded that the service of suit clause

> does not by its terms limit the obligation to arbitrate but simply provides a consent to jurisdiction to enforce payments by reinsurers granted through arbitration. * [A]n arbitration award cannot be enforced without access to the courts. The service of suit clause is therefore designed to guarantee the enforcement of arbitration awards and is not designed to supersede an obligation to arbitrate disputes within the scope of the arbitration clause.

NECA Ins., Ltd. v. National Union Fire Insurance Company of Pittsburgh, 595 F. Supp. 955, 957-58 (S.D.N.Y. 1984) (Sweet, J.) citing Judge Brieant's unreported decision -- In Re Petition of J.W. Pryke, 83 Civ. 6156 (S.D.N.Y. September 8, 1983) staying an action commenced in a Pennsylvania state court. See also, McDermott, 944 F.2d 1199; Hart v. Orion Insurance Company, 453 F.2d 1358, 1361 (10th Cir. 1971); Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's, Civ. A. No. 96-1627, 1996 WL 495157, *1 (E.D. La. Aug. 30, 1996); West Shore Pipe Line v. Associated Elec. & Gas, 791 F. Supp. 200, 203-4 (N.D. Ill. 1992); Brener v. Becker Paribas, Inc., 628 F. Supp. 442, 451-52 (S.D.N.Y. 1985); Security Life Ins. Co. v. Hannover Life Reassurance Co., 167 F. Supp.2d 1086, 1088 (Minn. 2001). Taking note of these Federal decisions, the California Supreme Court recently observed that courts in other jurisdictions have reasoned that the "service of suit clause should be interpreted in view of the presumption favoring arbitration, as intended to facilitate enforcement of the arbitration clause." Borghos v. Certain Underwriters at Lloyd's of London, 36 Cal. 4th 496, 502, 115 P. 3d 68, 72 (2005).

In McDermott, the Fifth Circuit addressed the right to remove under the Convention in the context of a United States insured's suit against Lloyd's underwriters and similar arguments

raised concerning an identically worded service of suit clause. McDermott, 944 F. 2d at 1200.

The Fifth Circuit reasoned that:

> 1. the service of suit clause does not "necessarily apply to disputes concerning the proper forum to decide arbitrability questions";
>
> 2. the service of suit clause's "failure to pay a claim" provision could be interpreted consistently with the arbitration clause to apply to suits enforcing an arbitration award, citing, among other authorities, NECA, Ins. Ltd., 595 F. Supp. 955;
>
> 3. when the insured purchased its contract --as is true in this case - courts did not enforce agreements to waive removal rights and thus Underwriters may have understood that a service of suit clause "only consented to personal jurisdiction in a court selected by McDermott, but . . . did not waive any removal rights," citing In Re Delta America Re Ins. Co., 900 F.2d 890, 893 (6th Cir.) cert. denied Wright v. Arion Ins. Co., 498 U.S. 890, 111 S. Ct. 233, 112 L. Ed.2d 193 (1990); and
>
> 4. the service of suit clause did not -- as is true here -- "explicitly waive Underwriters' removal rights" and thus Underwriters' removal rights were "not necessarily inconsistent with any of its obligations under the service-of-suit clause, thus "Underwriters may remove a case after submitting to the jurisdiction of Louisiana's courts and complying with all necessary requirements to give Louisiana's court power over the suit" and "all matters would be determined in accordance with the practice and law of the court chosen by" the insured"; and
>
> 5. " Underwriters would [not] secure an almost infinitely broad arbitration clause and also permit (the insured) to attack it in the court of its choice."

944 F. 2d at 1205-6.

In McDermott, as is true here, the reinsured acted through a Lloyd's broker. In McDermott, J.H. Minet acted as broker; here, Willis acted as broker for Agency Managers (now ROM). B.D. Cooke offers nothing with respect to the drafting and negotiation of the subject language, but the contract itself was assembled in London and was drafted by equally sophisticated parties. There is no room here for any "presumption afforded the policy drafter. . ." 944 F.Supp. at 1207.

Finally, the Court turned to the Convention itself. In implementing the Convention and providing for a right of removal pursuant to 9 U.S.C. § 205, Congress may not have provided for a strictly "non-waivable right of removal," but, for at least four reasons, a party's waiver of its removal rights under the Convention will only be recognized where that waiver is "explicit." Those reasons included: (1) the danger that a failure to honor Section 205 removal rights might jeopardize the international arbitration rights of United States citizens who might wish to exercise fully their rights to arbitrate under the Convention; (2) the need for uniformity of the Convention's application in United States Courts; (3) the need to take into account that Congress had, in implementing the Convention, "created special removal rights to channel cases into the federal court;" and (4) the necessity for a "bright-line . . . waiver rule" to encourage prompt disposition upon removal and not the delay -- and subsequent state court review and appeals -- that would otherwise follow.

Cooke relies almost exclusively on Judge Keenan's decision in Travelers Ins. Co. v. Keeling, 1993 WL 18909 (S.D.N.Y. 1993), but does not cite or refer to the Second Circuit's denial of the reinsurers' mandamus petition. 996 F.2d 1485. Keeling, however, is limited to the "facts of [that] case." 1993 WL 18909 at * 4. In Keeling, Underwriters, having agreed to a stay of proceedings threatened by Travelers after extensive discussions between the parties, violated that agreement and commenced suit against Travelers in London. Underwriters argued in their London proceeding that their dispute with Travelers was not subject to arbitration.

Travelers then commenced its action against Underwriters -- which, up to this point claimed that the dispute was not subject to arbitration -- in Supreme Court, New York County. The parties entered into a stay of those proceedings, but Travelers moved to dismiss the Underwriters' London suit. Underwriters dismissed their London suit and removed the Travelers'

suit to the District Court "claiming federal question jurisdiction under the Foreign Arbitral Convention." Id. at * 2.     Judge Keenan, relying on much authority involving the removal rights in contracts that did not contain arbitration agreements, turned to McDermott, whose reasoning he found "unpersuasive given the facts of this case." Id. at* 4.

Judge Keenan concluded that the "stepping stone for the McDermott holding was the Fifth Circuit's finding that the presence of the Reinsurance arbitration clause rendered the Agreement' service of suit clause ambiguous." Id. at * 4.  Judge Keenan, citing authority dating back to 1949,  charged Underwriters with knowledge that "service of suit clauses identical to the one disputed here have long been held to waive unequivocally the defendant's right of removal" Id. at * 4

While acknowledging the "Foreign Arbitral Convention's importance," the Court in Keeling held that "requiring an express waiver to the Convention's removal provision . . . would be an unreasonable imposition on the parties' right to contract in this case."  Relying on the "basic contract construction principle that any ambiguities in a contract are to be resolved against the party who drafted the contract," Judge Keenan concluded that the "presence of the arbitration clause in the Reinsurance Agreement does not subvert Underwriters' waiver of removal rights" through the service of suit clause. Id. * 5.

The Second Circuit, setting out the same procedural history discussed below, held that Judge Keenan's remand order was not directly appealable. Keeling, 996 F.2d at 1489.  The Second Circuit treated Underwriters' appeal as leave to file a petition for mandamus "to avoid further delay."  The Second Circuit concluded that mandamus was not appropriate because it was an "extraordinary writ" and the District Court's decision was not a "clear abuse of discretion." In this case, unlike Keeling, Cooke has explicitly preserved its right to arbitrate under the very agreements at issue in this proceeding.  Verified Complaint, ¶ ¶ 44, 50.  Unlike Keeling, in

23

which Underwriters commenced suit and rejected arbitration, Cooke's complaint <u>preserves</u>

Cooke's right to arbitrate.

While the District Court in <u>Keeling</u> may have been acting within its discretionary

authority to remand the parties to a state court, the facts in <u>Keeling</u> are far from "the facts of this

case."

## Conclusion

Underwriters respectfully request that Cooke's motion to remand its action to the

Supreme Court, New York County, be denied, the Cooke action stayed, and the parties referred

to arbitration pursuant to the terms of the excess reinsurance contracts and the Convention.

Dated: New York, New York
      June 5, 2008

                            **CERTAIN UNDERWRITERS AT
                            LLOYD'S, LONDON**

                            James Veach (JV - 1525)
                            Joshua L. Milrad (JM - 2105)
                            MOUND COTTON WOLLAN &
                            GREENGRASS
                            Attorneys for defendant Certain
                            Underwriters at Lloyd's London
                            One Battery Park Plaza
                            New York, New York 10004
                            Tel: (212) 804-4200
                            Fax: (212) 804-8066

To:

John F. Finnegan, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

  - and –

Carey G. Child, Esq.

Chadbourne & Parke LLP
1200 New Hampshire Avenue, NW
Washington, DC 20036

Attorneys for B.D. Cooke & Partners Limited

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )

ss:

COUNTY OF NEW YORK   )

Jacob Mendelsohn, being duly sworn, deposes and says:

That deponent is not a party to this action, is over the age of 18 years and resides in Brooklyn, New York.

That on the 5th day of June, 2008 deponent served upon all parties the annexed MEMORANDUM OF LAW IN OPPOSITION TO B. D. COOKE'S MOTION TO REMAND via the Court's ECF System:

_____
Jacob Mendelsohn

Sworn to Before Me This
5th day of June, 2008

_____
Notary Public

**TODD A. BAKAL**
**Notary Public, State of New York**
No. 02BA5013387
Qualified in New York County
Commission Expires July 15 20 ___