UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

B.D. COOKE & PARTNERS LIMITED, AS ASSIGNEE OF CITIZENS CASUALTY COMPANY OF NEW YORK (IN LIQUIDATION),

                        Plaintiff,

-against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

                        Defendants.

Civil Action No. 08-CIV-3435 (RJH)

**ELECTRONICALLY FILED**

---

## REPLY BRIEF IN SUPPORT OF B.D. COOKE'S MOTION TO REMAND

 

CHADBOURNE & PARKE LLP
Carey G. Child
Attorneys for Plaintiff
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

    -and-

1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

LeeAnn O'Neill
Chadbourne & Parke LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

Of Counsel

## **TABLE OF CONTENTS**

Page

ARGUMENT ...................................................................................................................1

I. REMOVAL UNDER THE ARBITRATION CONVENTION WAS IMPROPER BECAUSE UNDERWRITERS' ABILITY TO COMPEL ARBITRATION WAS EXTINGUISHED IN 1971 .................................................1

    A. UNDERWRITERS' COLLATERAL ATTACK NOTWITHSTANDING, THE COURT-APPROVED ASSIGNMENT GRANTED THE LIQUIDATOR'S RIGHTS TO B.D. COOKE ....................2

    B. B.D. COOKE STEPS INTO THE SHOES OF THE LIQUIDATOR AS ASSIGNEE, NOT INTO THE SHOES OF ITS ASSIGNOR'S ASSIGNOR, CITIZENS ...........................................................................4

    C. UNDERWRITERS CANNOT CREATE AN ESTOPPEL ARGUMENT BY SELECTIVE READING OF THE VERIFIED COMPLAINT ..................................................................................6

II. REMOVAL WAS INDEPENDENTLY IMPROPER BECAUSE THERE IS NO "DISPUTE ARISING UNDER" THE REINSURANCE CONTRACTS, AS REQUIRED BY THE ARBITRATION CLAUSES AND BY THE CONVENTION ............................................................................................7

III. UNDERWRITERS ARE OBLIGATED TO SUBMIT TO THE JURISDICTION OF THE NEW YORK SUPREME COURT AND WAIVED THE RIGHT TO REMOVE TO FEDERAL COURT ..............................................9

CONCLUSION ..............................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          Page

*Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002) ..................................................................................................7

*Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*,
  992 F. Supp. 278 (S.D.N.Y. 1998) ....................................................................................10

*Collins & Aikman Products Co. v. Building Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995) ....................................................................................................9

*Genesco, Inc. v. Kakiuchi & Co., Ltd.*
  815 F.2d 840 (2d Cir. 1987).................................................................................................7

*Gen. Phoenix Corp. v. Malyon*,
  88 F. Supp. 502 (S.D.N.Y. 1949) ......................................................................................10

*In re Managed Care*,
  No. 00-MD-1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003)....................................9

*Lavan Petroleum Co. v. Underwriters at Lloyds*,
  334 F. Supp. 1069 (S.D.N.Y. 1971) ..................................................................................10

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001)................................................................................................7

*Matter of Union Indem. Ins. Co. of New York*,
  674 N.E.2d 313 (N.Y. 1996)...............................................................................................5

*McDermott Int'l, Inc. v. Lloyd's Underwriters of London*,
  944 F.2d 1199 (5th Cir. 1991).............................................................................................9

*Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.*,
  93 F. Supp. 2d 300 (W.D.N.Y. 2000).................................................................................5

*Travelers Ins. Co. v. Keeling,*
  No. 91 Civ. 7753, 1993 WL 18909 (S.D.N.Y. Jan. 19, 1993)..........................................9

**Other Authorities**

9 U.S.C. §§ 201-208...................................................................................................................1

28 U.S.C. § 1447(c)....................................................................................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| B.D. COOKE & PARTNERS LIMITED, AS ASSIGNEE OF CITIZENS CASUALTY COMPANY OF NEW YORK (IN LIQUIDATION),<br><br>          Plaintiff,<br><br>  -against-<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>          Defendants. | Civil Action No. 08-CIV-3435 (RJH)<br><br>**ELECTRONICALLY FILED** |

**REPLY BRIEF IN SUPPORT OF B.D. COOKE'S MOTION TO REMAND**

  Plaintiff B.D. Cooke & Partners Limited ("B.D. Cooke"), by its attorneys, Chadbourne & Parke LLP, respectfully submits this reply brief in support of its Motion for an order pursuant to 28 U.S.C. § 1447(c), remanding this action and awarding costs and attorneys' fees from defendants Certain Underwriters at Lloyd's, London ("Underwriters").

**ARGUMENT**

  B.D. Cooke's moving papers ("BDC Memo") and supporting affidavits set forth three grounds, each of which independently demonstrate that Underwriters' removal of this case — purportedly under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and its implementing statute, 9 U.S.C. §§ 201-208 (the "Convention") — was improper. As discussed below, Underwriters' opposition ("UW Opp.") and supporting declaration of Christopher David Piller ("Piller Dec.") do not to refute — and in material respects actually confirm — those three independent bases for remand:

**I.  Removal Under The Arbitration Convention Was Improper Because Underwriters' Ability To Compel Arbitration Was Extinguished in 1971**

  B.D. Cooke, which claims solely as assignee of the liquidator (the "Liquidator") of Citizens Casualty Company of New York ("Citizens"), demonstrated in its moving papers

that: (1) by operation of law and the terms of that assignment (the "Assignment"), B.D. Cooke stands in the shoes of the Liquidator; (2) the New York Supreme Court exercised exclusive jurisdiction beginning with the liquidation of Citizens in 1971; and (3) under long-established law — and an exception within the Convention where the arbitration agreement has become "null and void, inoperative or incapable of being performed" — Underwriters could not compel arbitration against the Liquidator, even under the Convention, and thus cannot compel arbitration against B.D. Cooke, as assignee. (BDC Memo at 12-20.)

Underwriters respond to that showing, not by rebutting it, but by: (A) mounting a baseless collateral attack on the court-approved Assignment; (B) ignoring the law of assignment and the express terms of the Assignment; and (C) selectively quoting from the Verified Petition to improperly suggest estoppel. None of these arguments change the fact that their ability to compel arbitration, even under the Convention, was extinguished in 1971.

### A. Underwriters' Collateral Attack Notwithstanding, The Court-Approved Assignment Granted The Liquidator's Rights To B.D. Cooke

In the face of B.D. Cooke's showing regarding the court-approved Assignment of the Liquidator's rights, Underwriters respond by stating that B.D. Cooke "is not a deputy New York State liquidator" and has different attributes than the Liquidator. (UW Opp. at 9, 11.) This assertion is self-evident — and self-evidently proves nothing: it is *inherent* that an assignment from the Liquidator would be to someone other than the Liquidator, who would necessarily have different attributes. Beyond that facial inanity of Underwriter's argument, the undisputable facts are that: (1) the Liquidator submitted its plan and petition (the "Petition" or the "Plan") for closing the Citizens estate to the New York Supreme Court; and (2) that court approved the Petition, including the Assignment of the reinsurance contracts, expressly inclusive of "all of the rights which the [Liquidator] would have had under such

2

agreements if the Citizens estate were not closed." (Affidavit of John Tafuro, submitted with BDC Memo ("Tafuro Aff.") Exs. 5, 14 and 15.)

In that context, Underwriters' "argument" that B.D. Cooke is not the Liquidator, and has different attributes from the Liquidator, is nothing more than a *post-hoc* assertion that the Liquidator *should not* have assigned its rights, and that the New York Supreme Court *should not* have approved such an assignment. This collateral attack on the court's 1997 approval of the Petition (the "Approval Order") comes more than a decade too late:

- Although Underwriters feign a lack of notice of the Petition (UW Opp. at 15), the Approval Order demonstrates that the New York Supreme Court "direct[ed] the form and method of notice," including to "all of the reinsurers of Citizens." (Tafuro Aff. Ex. 14 at 1 and Ex. 6 at DOI00008.)

- In fact, Underwriters were not only aware of the Plan and Petition, but actually retained counsel to review it. (Affidavit of Carey G. Child, submitted with B.D. Cooke's Memorandum in Opposition to Motion to Compel Arbitration ("BDC Opp.") ("Child Opp. Aff.") Ex. 2.)

- The Petition specifically set forth the grant to B.D. Cooke of "all of the rights which the Liquidator would have had under such agreements if the Citizens estate were not closed." (Tafuro Aff. Ex. 5 at 11.)

- Even so, the Underwriters failed to object. (Tafuro Aff. Ex. 14 at BDC00772, noting objections filed, but none from Underwriters.)

Even if Underwriters' argument were not an impermissible collateral attack on the Approval Order, it is fundamentally wrong. The contention that assignment law should be disregarded, and B.D. Cooke treated differently from its assignor, depends upon two false premises: (1) the interests (*i.e.*, the Liquidator's obligations) served by the rights granted no longer need protection because the Liquidator's obligations have been discharged since the Citizens estate was closed and the other creditors paid; and (2) B.D. Cooke is free from supervision by the New York Supreme Court. (UW Opp. at 11, 13.)

The Liquidator has indicated that his obligations to obtain maximum value for Citizens' assets and to make distributions to Citizens' creditors were dependant upon making

3

a valid Assignment to B.D. Cooke. (Tafuro Aff. ¶¶ 27-31 and Ex. 5 at ¶¶ 12-13.) Indeed, in the absence of the Assignment, the Liquidator would have been unable to distribute assets and close the Citizens estate. (*Id.*) Reflecting the central role an enforceable Assignment played in fulfilling the Liquidator's obligations, the Petition specifically stated that the New York Supreme Court would retain "continuing jurisdiction" regarding interpretation of the Assignment.[1] This gave B.D. Cooke comfort that the Assignment would be enforced as intended, and also precludes Underwriters' assertion that B.D. Cooke is not subject to court supervision. Should any party contend that the Liquidator's assigned rights are being abused, they are free to bring that complaint to the New York Supreme Court — as they would have done if they believed the Liquidator was acting improperly.

### B. B.D. Cooke Steps Into The Shoes Of the Liquidator As Assignee, Not Into The Shoes Of Its Assignor's Assignor, Citizens

B.D. Cooke's moving papers demonstrated that basic principles of assignment law, and specific terms of *this* Assignment, mean that B.D. Cooke "steps into the shoes" of the Liquidator, its assignor, and takes the Liquidator's rights. (BDC Memo at 15-16.) Remarkably, Underwriters attempt to subvert this settled and fundamental proposition by contending that, rather than stepping into the shoes of its assignor, the Liquidator, B.D. Cooke instead stepped into the shoes of Citizens. (UW Opp. at 9, 12.)

Underwriters base this departure from the law of assignment upon two flawed contentions. They first contend that B.D. Cooke stepped into the shoes of Citizens, rather

---

[1] Underwriters misrepresent the "continuing jurisdiction" provision to imply that it carves out an unqualified exception for "computation of amounts due." (UW Opp. at 7.) The actual carve out, irrelevant on its face, was not quoted because it applies to "disputes *solely* involving computations of amounts due," whereas the disputes here, by Underwriters' own statements, involve interpretation of the Assignment, not "solely" computational matters. (Tafuro Ex. 5 at 12, emphasis added; UW Opp. at 7.)

4

than the Liquidator, because "the Liquidator himself stood in the shoes of Citizens and inherited *only* the rights and obligations that Citizens enjoyed under the [] reinsurance contracts." (*Id.* at 12, emphasis added.)  Next, Underwriters contend that B.D. Cooke must have stepped into the shoes of Citizens, rather than the Liquidator because, they claim, the Assignment "occurred simultaneously with the closing of the Citizens estate" and "[a]t that point, there were no Liquidator shoes for [B.D.] Cooke to step into." (*Id.* at 13, emphasis added.)  These arguments are incorrect at every step:

> First, the very cases cited for the notion that the Liquidator is limited to *only* Citizens' rights actually merely state that a liquidator takes no greater rights than the insolvent *as a general rule*, and acknowledge *the general rule will yield* to "specific law to the contrary."[2]  Underwriters concede there is such contrary law here, stating that, under New York law, a "liquidator cannot be compelled to arbitrate." (UW Opp. at 11.)
>
> Second, the claim that B.D. Cooke stepped into Citizens' shoes because "there were no Liquidator shoes" is factually false and nonsensical.  The Assignment and closure *did not* "occur simultaneously." (Tafuro Aff. Ex. 15 at 3; UW Opp. at 4.)  In any event, Underwriters' argument cannot be accepted because it proves too much.  If closure meant "there were no Liquidator shoes," there certainly were no "Citizens' shoes," since that entity was *dissolved 25 years earlier*. (Tafuro Aff. Ex. 1 at DOI02064).
>
> Third, the court-approved Assignment made clear that, rather than being limited by the closure of the Citizens estate, the Liquidator's rights assigned to B.D. Cooke were to be as if "the Citizens estate were not closed." (Tafuro Aff. Ex. 15 at 2.)
>
> Fourth, as demonstrated in B.D. Cooke's moving papers, the New York Supreme Court, which approved the Assignment in the first place, has since confirmed that was *exactly* what the Assignment meant — B.D. Cooke retained special rights that the Liquidator enjoyed (*i.e.* rights specifically beyond those that Citizens had), notwithstanding the closure of the Citizens estate.[3] (BDC Memo at 19-20.)

---

[2]  *Matter of Union Indem. Ins. Co. of New York,* 674 N.E.2d 313, 321 (N.Y. 1996).  Another case cited by Underwriters rejects the gloss that Underwriters attempt to place on *Union Indemnity* — that the available rights would be *only* Citizens' rights, without alteration due to the events in the liquidation proceeding.  *Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.*, 93 F. Supp. 2d 300, 309 (W.D.N.Y. 2000) (receiver's conduct during the receivership gave rise to affirmative defenses under the contract).

[3]  Thus, those decisions, far from "irrelevant," refute Underwriters' position that closure of the estate limited the assigned rights, regardless of whether they directly addressed the

5

Having conceded that, under New York law, the liquidation of Citizens meant that they could not compel the Liquidator to arbitrate, Underwriters' entire argument fails. (UW Opp. at 11.) Assignment law, the language of this specific Assignment, and the subsequent decisions of the New York Supreme Court regarding that Assignment are all in accord: B.D. Cooke steps into the shoes of the Liquidator and, since Underwriters could not compel the Liquidator to arbitrate, neither can they compel the Liquidator's assignee, B.D. Cooke.[4]

### C. Underwriters Cannot Create An Estoppel Argument By Selective Reading Of The Verified Complaint

Underwriters continue to rely on selective quotation of B.D. Cooke's contingent second and third causes of action to allege that B.D. Cooke "asserts and preserves" arbitration, and is thereby acting inconsistently. (UW Opp. at 10.) B.D. Cooke's moving papers quoted the operative language of each cause of action in full, demonstrating that, rather than somehow invoking arbitration, those causes of action are actually contingent upon the understanding that there are no arbitrable disputes.[5] (BDC Memo at 5-6.)

---

Convention. (UW Opp. at 15.) Also, contrary to Underwriters' diversionary efforts (*id.* at 5), that finding did not turn on whether Nationwide was a member of the Agency Managers Pool — a point relied on only for the separate issue of whether Nationwide could dispute claims already approved on behalf of pool members. (*See* BDC Memo at 19-20; Affidavit of Carey Child, submitted with BDC Memo, Ex. 4 at 9-12.)

[4] Because it was the liquidation of Citizens, rather than the Assignment itself, that extinguished the Underwriters' ability to compel arbitration, Underwriters are refuting imaginary arguments in discussing at length the proposition that "the ***assignment*** of reinsurance contracts does not strip away the obligation to arbitrate under the Convention." (UW Opp. at 13-14, emphasis added.) In those cases, the assignee was bound to arbitrate because, unlike here, the assignor was bound to arbitrate. (*Id.*)

[5] Underwriters also have the facts wrong in suggesting that B.D. Cooke somehow acted inconsistently with the New York Supreme Court's continuing jurisdiction by issuing an arbitration demand in its dispute with Nationwide. (Child Opp. Aff. ¶¶ 7-12.)

6

## II. Removal Was Independently Improper Because There Is No "Dispute Arising Under" The Reinsurance Contracts, As Required By The Arbitration Clauses And By The Convention

B.D. Cooke's moving papers demonstrated: (A) the scope of the arbitration clause limits the scope of removal under the Convention, which requires an agreement to arbitrate the subject matter at issue; (B) here, the clauses all apply only to a "dispute arising under" the reinsurance contract containing them; and (C) there is no such dispute in this action. Underwriters' own submissions confirm each of those points. (BDC Memo at 21-23.)

First, cases cited by Underwriters confirm that the Convention requires an agreement to arbitrate the ***subject matter*** at issue. (*See* BDC Opp. at 4-5.)

Second, the parties are fully in agreement that the arbitration clauses relied upon by Underwriters are contained in one of nine or fewer reinsurance contracts, and all state the scope of arbitration as encompassing only "any dispute arising under" the reinsurance contract containing them. (BDC Memo at 9; McNamara Aff. ¶ 12; Piller Dec. ¶¶ 15-16; UW Opp. at 17.) Underwriters' own cases show that this is the most-narrow clause ever identified by the Second Circuit — a clause that does not encompass "collateral matters" and instead ***limits arbitration to a literal interpretation*** of performance under the contract.[6]

Third, Underwriters (perhaps inadvertently) ***confirm*** that there can be no such dispute because they have "agreed" the claims as covered under the reinsurance contracts,

---

[6] *See* BDC Opp. at 6; *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 33 n.9 (2d Cir. 2002), citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224, 226 (2d Cir. 2001). Rather than address this authority — cited in their own papers, and addressing the "arising under" language at issue here — Underwriters invoke *Genesco, Inc. v. Kakiuchi & Co., Ltd.* (UW Opp. at 17), but fail to address the fact that that case not only interpreted ***different language*** – covering "all claims and disputes ***of whatever nature*** arising under this contract," but also specifically ***based its ruling*** that the clause was broad ***upon that different language***. 815 F.2d 840, 854 (2d Cir. 1987) (emphasis added).

7

and dispute them on bases outside of, or collateral to, those contracts. Through the nineteen-page declaration of Mr. Piller, Underwriters strive to "prove" that there are "disputes" regarding the "Agreed Claims" for which B.D. Cooke seeks monetary relief. However, that is not the standard. Removal was improper, not because there is *no* dispute, but because there is *no dispute arising under the reinsurance contracts*, specifically:

- Underwriters issued signing numbers, thereby "agreeing" the claims, meaning that — barring only an issue *outside* the reinsurance contract — the claim is to be paid. (Tyler Aff. ¶ 7; Verified Complaint ¶ 31-33.)

- The Underwriters explained non-payment of the Agreed Claims solely on bases *other than* the reinsurance contracts. (Verified Complaint ¶¶ 44, 50; Tyler Aff. ¶¶ 9-10.)

Mr. Piller confirms each of these points. He concedes that "questions concerning the occurrence/time or nature of the loss, or *whether a loss fell within the terms of the reinsurance contract* or, outside a reinsurance contract's terms and conditions, may have been satisfied *and hence a signing number given to a given loss* …". (Piller Dec. ¶ 30, emphasis added.) Although Mr. Piller hastens to add that this did not preclude other disputes, that is beside the point and is fully consistent with B.D. Cooke's position that the only remaining matters, and the only issues asserted here, were all *outside* the reinsurance contracts. (*Id.*) As further confirmation, Underwriters state the "questions" here as:

> "[W]hether certain balances have *already been paid*, whether Underwriters have no further duty to indemnify given the terms of a *2002 commutation/release agreement*, and whether the amounts allegedly due fall with[in] the *terms of the subject assignment*." (UW Opp. at 7, emphasis added.)

None of these "questions" turns on an interpretation (literal or otherwise) of performance under the contracts. They are, at best, "collateral matters" turning on external payment

8

records and the meaning and effect of the Assignment and/or the "commutation." There is no "dispute arising under" the contracts, nothing to arbitrate, and no basis for removal.[7]

### III. Underwriters Are Obligated To Submit To The Jurisdiction Of The New York Supreme Court And Waived The Right To Remove To Federal Court

Finally, B.D. Cooke demonstrated that Underwriters waived any right to remove through the Service of Suit clause. (BDC Memo at 24-25.) Underwriters first respond by refuting a "straw man" argument, citing cases for the proposition that a Service of Suit clause cannot "supercede" an obligation to arbitrate disputes. (UW Opp. at 20.) That is not the issue. The issue is waiver of removal, which is independent of the validity and applicability of the arbitration clauses. Underwriters next argue that the Service of Suit clause needed to explicitly waive Convention removal, even though B.D. Cooke demonstrated that this Court has specifically rejected that argument as "ludicrous" where, as here, the contracts were entered into ***prior to*** the Convention coming into force in the United States. *Travelers Ins. Co. v. Keeling*, No. 91 Civ. 7753, 1993 WL 18909 at *5 (S.D.N.Y. Jan. 19, 1993). In the face of that case, Underwriters rely on authority outside this Circuit, *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991), without acknowledging that, in *Keeling*, this Court specifically refused to apply *McDermott* based on the same facts

---

[7] Underwriters have not even attempted to show that the declaratory count for interpretation of the Assignment is arbitrable. They instead assert, as if by fiat, that it is "intertwined" with the monetary relief and therefore must be arbitrated. (UW Opp. at 17-18.) Among the many problems with this contention are: (1) the monetary claims must be arbitrable, which they are not, based on the admissions above; (2) even the cases cited by Underwriters (all outside of this jurisdiction) demonstrate that the "intertwined" claims must be "derivative" of the "arbitrable" claims (*e.g. In re Managed Care*, No. 00-MD-1334, 2003 WL 22410373 at *8 (S.D. Fla. Sept. 15, 2003)), whereas the opposite is true here, since Underwriters have not paid on the basis of their "question" regarding the terms of the Assignment; and (3) in this Circuit, "there is no reason why… we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues." *Collins & Aikman Products Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).

9

present here — all of the contracts at issue incepted before the Convention went into effect. 1993 WL 18909 at *5. Contrary to Underwriters' *McDermott* gloss, under 50 years of case law, Underwriters were clearly on notice at the time they negotiated these contracts that the Service of Suit clause waived their removal rights. *See, e.g., Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 992 F. Supp. 278 (S.D.N.Y. 1998); *Lavan Petroleum Co. v. Underwriters at Lloyds*, 334 F. Supp. 1069 (S.D.N.Y. 1971); *Gen. Phoenix Corp. v. Malyon*, 88 F. Supp. 502, 503 (S.D.N.Y. 1949) (the Lloyd's Service of Suit clause "restricts the defendant to the Court in which suit is first begun against it, be it Federal or State").

## CONCLUSION

For these and the other reasons set forth in B.D. Cooke's moving papers, B.D. Cooke respectfully requests that Underwriter's Motion to Compel be denied in its entirety and that plaintiff be awarded costs, expenses, and attorneys fees pursuant to 28 U.S.C. § 1447(c), together with such other or further relief as may be just and proper.

Dated: Washington, D.C.
       June 13, 2008

Respectfully submitted,

CHADBOURNE & PARKE LLP

By   /s Carey G. Child
   Carey G. Child (CC-3286)
   Attorneys for Plaintiff
   30 Rockefeller Plaza
   New York, New York 10112
   (212) 408-5100

     -and-

   1200 New Hampshire Avenue, N.W.
   Washington, D.C. 20036
   (202) 974-5730