UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)           Civ. Action No. 08-CIV-3435 (RJH)

Plaintiff,
                                                                **REPLY DECLARATION OF**
          -against-                                             **CHRISTOPHER DAVID PILLER**

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Defendants.
-----------------------------------------------------------------------X


Christopher David Piller, deposes and says:

1. My June 5, 2008 declaration respectfully requested permission to reply to any affidavits that plaintiff B.D. Cooke and Partners Limited (B.D. Cooke) might submit on June 5, 2008. I respectfully submit the following in further support of Certain Underwriters at Lloyd's, London's (Underwriters) Motion to Stay Action and Compel Arbitration.

2. I have read the affidavit of Carey C. Child, sworn to on June 5, 2008 (Child Opp. Aff.), and the e-mail string attached to Mr. Child's affidavit as Ex. 1.

3. I have also read B.D. Cooke's Memorandum of Law in Opposition to Defendants' Motion to Stay Action and Compel Arbitration (Cooke Opp. Br.) in which counsel argues that there is no "dispute arising under" the excess reinsurance contracts because B.D. Cooke's Verified Complaint "demonstrated that Underwriters had agreed to each and every one of the claims for which B.D. Cooke seeks relief." Cooke Opp. Br., p. 9.

1

236907

4. Counsel also contends that a January 28, 2008 letter from defendant Underwriters does not establish that a dispute exists between B.D. Cooke and Underwriters with respect to balances allegedly due under the subject reinsurance contracts. Cooke Opp. Br., at 12.

5. To support B.D. Cooke's argument, counsel submits his own June 5, 2008 affidavit. To his affidavit, Mr. Child attaches an e-mail chain that begins with a January 23, 2008 e-mail from me to Andrew Tyler at B.D. Cooke concerning B.D. Cooke's request for a waiver that would allow Chadbourne & Parke, LLP, to act for B.D. Cooke and adverse to Resolute Management Services, Ltd. and the Equitas companies. I attached a waiver agreement to my January 23, 2008 e-mail, but Mr. Child has not included that document with his Ex. 1.

6. Mr. Child then quotes selectively from the e-mails exchanged between January 23 and January 30, 2008. Child Opp. Aff., Ex. 1. Among other things, counsel states that the January 23-30, 2008 e-mail chain "<u>confirmed</u> Mr. Tyler's understanding * * * that the question regarding the scope of the Assignment was the only issue preventing payment . . ." Cooke Opp. Br. at 12. Mr. Child, however, did not attach other e-mails exchanged during the same time period, some of which are set out in my June 5, 2008 declaration. Piller Declaration, Ex. 7.

7. My June 5, 2008 declaration describes the discussions between B.D. Cooke and Equitas and latterly RMSL that began in September 2006. These discussions led to a January 11, 2008 meeting. Piller Declaration, ¶ 52.

8. As I stated in my June 5, 2008 declaration, the attendees at the January 11, 2008 meeting discussed the "amount that had been 'adjusted,' <u>i.e.</u>, agreed as to coverage, but held" in accounts pending a "resolution of <u>additional questions concerning, among other things</u>, whether certain subject losses fell within the terms of the assignment . . . ." Cooke Declaration ¶ 52.

2

236907

9. The issues raised in the January 11, 2008 meeting were broader than the "scope of the Assignment." For that reason, RMSL prepared a workbook of claims and amounts at issue to facilitate our discussions and to attempt a reconciliation of claims and losses that were in dispute.

10. The reconciliation effort led to the e-mail chains that Mr. Child does not attach. Those e-mail exchanges are attached as Exs. 1 and 2.

11. On January 23, 2008, I sent an e-mail to Mr. Tyler and Simon Janes in response to B.D. Cooke's request at the January 11, 2008 meeting for claims for which B. D. Cooke's agent ROM had not yet received payment. To prepare this workbook I had to investigate outstanding questions referred to in paragraph 30 of my June 5, 2008 declaration. I also had to make reference to a spreadsheet provided by B.D. Cooke's agent ROM Reinsurance Management Co Inc (ROM). I then attempted to reconcile and understand between the two sets of information. This in itself raised other issues which I articulated in my e-mail to Mr. Tyler when I forwarded the associated workbook to him. Piller Declaration. Ex. 7.

12. On January 24, 2008, Mr. Tyler answered and thanked me for the workbook. In an e-mail that he sent on January 29, 2008, Mr. Tyler advised that he had reviewed our workbook and provided comments. E-mail from A. Tyler to C. Piller, dated January 29, 2008. Ex. 2. Mr. Tyler also added certain losses to those discussed on January 11, 2008 and requested payment for $2,241,999.93 (as opposed to the $1,903,421.60 sought in the Cooke complaint). Mr. Tyler also advised that B.D. Cooke was "looking at" the Eli Lilly claim. This clearly identifies that there were serious reconciliation/computation items being discussed at the same time as well as those questions identified in paragraph 30 of my June 5, 2008 declaration.

3

236907

13. On January 30, 2008, I responded and addressed the comments from Messrs. Tyler and Janes. I asked whether the $209,874.47 Eli Lilly prior payment belonged to the Home Insurance Company, in liquidation and, if so, whether a refund would be forthcoming. The possibility that this amount has been paid to the wrong entity identifies the importance of undertaking a full investigation such as that described in paragraph 30 of my June 5, 2008 declaration, prior to making payments under the reinsurance contracts. RMSL has yet to receive an answer. Ex. 2.

14. On January 30, 2008, I also asked about discrepancies between the workbooks and three other disputed claims, that appeared to be duplicated by Cooke, or for the account of other parties or paid to ROM. Piller Declaration, ¶ 57.

15. I refer the Court back to my initial declaration in which I set out the disputes now extant between B.D. Cooke and Underwriters. Piller Declaration, ¶ 63.

16. At this point, your declarant has nothing more to add.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct. Executed on June 16, 2008

                                                        Christopher David Piller

# EXHIBIT 1

Case 1:08-cv-03435-RJH    Document 26-2    Filed 06/16/2008    Page 1 of 4

# Piller, Chris

| | |
|---|---|
| **From:** | Piller, Chris |
| **Sent:** | 25 January 2008 17:13 |
| **To:** | 'Andy Tyler'; Simon Janes |
| **Cc:** | Brace, Glenn |
| **Subject:** | RE: Lloyd's Underwriters represented by Resolute / Citizens Casualty / Dominion |

Andy,

We are surprised at your response. From our meeting and from information that we have read, we understood the list of claims referenced in our correspondance to be in existance, therefore we do not understand why providing it would be "a complex exercise". Please provide as agreed. Also can you please outline the exercise that you are undertaking on our workbook of claims. We do not know what this could be if not to compare it to the claims list?

We look forward to hearing from you.

Kind regards

cdp

-----Original Message-----
**From:** Andy Tyler [mailto:ATyler@dominion-ic.co.uk]
**Sent:** 24 January 2008 18:22
**To:** Piller, Chris; Simon Janes
**Cc:** Brace, Glenn
**Subject:** RE: Lloyd's Underwriters represented by Resolute / Citizens Casualty / Dominion

Chris
Thank you for the workbook, my people are working on this and we will get back to you.
As regards your offer to pay those claims listed at the time of filing,, we said at our meeting that we do appreciate your offer to get us some cash quickly but it may not be worth the effort. After discussion we can confirm that we do not see the benefit,, we expect to have a resolution before we could complete such a complex exercise.
Regards
Andy

**From:** Piller, Chris [mailto:Chris.Piller@resmsl.co.uk]
**Sent:** 23 January 2008 10:12
**To:** Andy Tyler; Simon Janes
**Subject:** Lloyd's Underwriters represented by Resolute / Citizens Casualty / Dominion

Andy / Simon

Further to our meeting on Friday last (11th January) in which you requested that we provide a list of what we thought were the claims amounts that had been adjusted but "held" in our systems, (due to the insolvent state of Citizens) for Dominion ceded business via Citizens Casualty, please find the attached workbook.

Our systems recognise Citizens, but it is not always straightforward to identify the ceding route, therefore to assist us in determining the Dominion ceded items we have cross referenced data against a spreadsheet provided by Marianne Petillo at ROM for claims billed up to 30th September 2007 (provided at around November 2007) This we believe, was the amount billed and not yet paid for Dominion / Citizens business in ROM's records at that time. Please note that we did find some amounts on Marianne's list that we do not believe we have yet seen for adjusting, these too are identified in the workbook.To cover claims adjusted post 30th September 2007 we have provided a separate list of what is flagged as Citizens these may or may not be Dominion related. Would you please review these to assist us to identify which

23/05/2008

relate to that business? Finally we have included the listing from the ENE settlement. It would appear that at least one the claims on closer inspection may not have been Dominion ceded business, the Eli Lilly claim. Perhaps again you can assist us with confirmation of identification.

At our meeting you undertook to provide us with the list of claims and associated reserves that you presented to the Citizens estate and subsequently withdrew at Citizens' wind-up, we still await this. We understand that the list was the product of a model developed by B D Cooke where during the pre-amble to the wind-up of Citizens, Cooke had calculated its asbestos exposure to Citizens on a claim by claim basis. This then allowed those reserves to be applied against a replica of Citizens reinsurance programme in order to provide the liquidator with estimates of "how much money would be recoverable from each reinsurer". In addition to the above this list would also be extremely useful in pinning down which claims would be currently payable as we agreed in the meeting.

Finally, we are continuing to expedite the advice that we have sought from our US correspondant however in the meantime look forward to hearing from you.

Kind regards

cdp

<<Citizens Casualty workbook.xls>>

*********************************************************************************
Resolute Management Services Limited, 33 St Mary Axe, London EC3A 8LL, UK
NOTICE: This message is intended only for use by the named addressee
and may contain privileged and/or confidential information. If you are
not the named addressee you should not disseminate, copy or take any
action in reliance on it. If you have received this message in error
please notify postmaster@resmsl.co.uk and delete the message and any
attachments accompanying it immediately.

RMSL reserve the right to monitor and/or record emails, (including the
contents thereof) sent and received via its network for any lawful business
purpose to the extent permitted by applicable law

Registered in England: Registered no. 3136297 Registered address above
*********************************************************************************

This e-mail has been scanned for all viruses by Star. The
service is powered by MessageLabs. For more information on a proactive
anti-virus service working around the clock, around the globe, visit:
http://www.star.net.uk

This e-mail and any attachment are confidential and contain proprietary information, some or all of which may be legally privileged. It is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient, please notify the author immediately by telephone or by replying to this e-mail, and then delete all copies of the e-mail on your system. If you are not the intended recipient, you must not use, disclose, distribute, copy, print or rely on this e-mail.

Whilst we have taken reasonable precautions to ensure that this e-mail and any attachment has been checked for viruses, we cannot guarantee that they are virus free and we cannot accept liability for any damage sustained as a result of software viruses. We would advise that you carry out your own virus checks, especially before opening an attachment.

Any views expressed in this message are those of the individual sender,
Except where the sender specifically states them to be the views of the

23/05/2008

Company.

# EXHIBIT 2

Case 1:08-cv-03435-RJH    Document 26-3    Filed 06/16/2008    Page 1 of 3

## Piller, Chris

**From:** Piller, Chris
**Sent:** 30 January 2008 15:58
**To:** 'Andy Tyler'
**Cc:** 'Simon Janes'
**Subject:** RE: Equitas Citizens Casualty reconciliation

Andy,

Thank you for this. We have reviewed the sheets together with your input:

With regard to the post 2005 non-ROM processing additions, you will note that a number of these are post the end of September 2007 cut-off of her status sheet. On Union Carbide, ROM appear to have missed this altogether off their list. As you can see this is a mixture of refunds and payments leading to a small net payment.

On the sheet termed "residual items" these are items that pre-date the ENE settlement. Why would these not have been included in the negotiations?

We look forward to hearing from you as to whether the Eli Lilly claim is a Dominion cession, or Home. If this is a Home cession then we need to discuss this refund. The value is $209,874.47.

Of those items that you have pointed out that Willis have identified, we have three different comments:

1) American Cyanamid is in the "post 2005 non-ROM" (line 11) and therefore to add it again would be to duplicate it.
2) Kaiser Aluminium - value $50,622.68 we have posted as Constellation Re and not Citizens Casualty. Perhaps you would confirm with Willis whether this is correct or not.
3) Kaiser Aluminium - value $44,685.06 - does not appear on our list, however does appear on closer scrutiny to be a Citizens cession. We are checking this out.

Lets resolve the above and then we will both be in a position to understand the value. Likewise, we await your confirmation that each of the items appears on the list of claims reserves withdrawn from the Estate at its closure.

We will get back to you with regard to 3) and look forward to hearing from you too.

Kind regards

cdp


-----Original Message-----
**From:** Andy Tyler [mailto:ATyler@dominion-ic.co.uk]
**Sent:** 29 January 2008 14:54
**To:** Piller, Chris
**Cc:** Simon Janes; Brace, Glenn; Child, Carey
**Subject:** FW: Equitas Citizens Casualty reconciliation

> Chris
> We have reviewed your workbook.
> If you refer to the attachment and open the tab Rom Resolute you will find our comments at the end of the tab.
> To summarise :
> We agree those items listed under Rom Resolute.
> We have added in Post 2005 non Rom as these items are from Dominion, they are agreed by your claims handlers and have not been paid.
> We also added in Residual items as these are also from Dominion ,agreed by you and remain unpaid.
> Finally we add in three items from Willis that are also Dominion agreed by you and unpaid.

23/05/2008

The total due is $ 2,241,999.53
Finally we are looking at Eli Lilly on the ENE
Regards
Andy

**From:** Simon Janes
**Sent:** 29 January 2008 12:48
**To:** Andy Tyler
**Subject:** Equitas Citizens Casualty reconciliation

Andy,

Here is our updated list.

Simon

---

This e-mail and any attachment are confidential and contain proprietary information, some or all of which may be legally privileged. It is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient, please notify the author immediately by telephone or by replying to this e-mail, and then delete all copies of the e-mail on your system. If you are not the intended recipient, you must not use, disclose, distribute, copy, print or rely on this e-mail.

Whilst we have taken reasonable precautions to ensure that this e-mail and any attachment has been checked for viruses, we cannot guarantee that they are virus free and we cannot accept liability for any damage sustained as a result of software viruses. We would advise that you carry out your own virus checks, especially before opening an attachment.

Any views expressed in this message are those of the individual sender,
Except where the sender specifically states them to be the views of the
Company.