UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)       Civ. Action No. 08-CIV-3435 (RJH)

Plaintiff,

    -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Defendants.
-----------------------------------------------------------------------X


## CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
## REPLY MEMORANDUM OF LAW


                MOUND COTTON WOLLAN & GREENGRASS
                Attorneys for defendant Certain Underwriters at
                Lloyd's, London
                One Battery Park Plaza
                New York, New York 10004
                Tel: (212) 804-4200
                Fax: (212) 804-8066

Of Counsel:

James Veach (JV-1525)
Joshua L. Milrad (JM-2105)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

Preliminary Statement......................................................................................................... 1

POINT I

UNDERWRITERS SATISFY ALL THE REQUIREMENTS TO COMPEL
ARBITRATION UNDER THE CONVENTION (Answering Cooke Opp. Br. at 3-5) ................ 2

POINT II

THE COOKE ACTION FALLS EASILY WITHIN THE SCOPE OF THE
AGREEMENT TO ARBITRATE (Answering Cooke Opp. Br. at 5- 13) ..................................... 3

POINT III

COOKE, AS CITIZENS' ASSIGNEE, IS OBLIGATED TO ARBITRATE PURSUANT
TO THE CONTRACTS UPON WHICH COOKE BROUGHT SUIT; THE SUSPENSION
OF A COURT-SUPERVISED INSURANCE RECEIVER'S OBLIGATION TO
ARBITRATE HAS NO BEARING ON THE OBLIGATION OF COOKE, A
COMMERCIAL ENTITY, TO ARBITRATE (Answering Cooke Br., Pt. III, pp. 13-24) ............. 6

Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002) ............................................................................. 1

Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16 (2d Cir. 1995) ................. 4

Cycle Sport v. Dinli L.P., 2004 WL 936850 (E.D. La 2004) ........................................................ 4

Dahiya v. Talmidge International, Ltd., 371 F.3d 207 (5th Cir. 2005) .......................................... 1

Doeff v. Transatlantic Reinsurance Co., 2007 U.S. Dist. LEXIS 91879 (E.D. PA 2007) ........... 10

Employees Protective Ass'n v. Norfolk & W. Ry. Co., 571 F.2d 185 (4th Cir. 1977) ................... 5

Enron Metals & Commodity Ltd. (In Administration) v. HIH Casualty & General Ins.
    Ltd. (In Provisional Liquidation) 2005 EWHC 485 (Ch.) ..................................................... 7

Ford v. Nylcare Health Plans of the Gulf Coast, 141 F.3d 243 (5th Cir. 1998) ............................ 4

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987) ................................................ 4

In Re ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24
    (2d Cir. 2002) ........................................................................................................................ 3

In re Kinoshita & Co., 287 F.2d 951 (2d. Cir. 1961) ................................................................. 3, 4

In re Union Indemnity Insurance Co. of New York, 89 N.Y.2d 94, 674 N.E.2d 313, 651
    N.Y.S.2d 383 (1996) ............................................................................................................. 9

McCallister Bros., Inc. v. A & S Transportation Co., 621 F.2d 519 (2d Cir. 1980) ..................... 9

Nichols v. American Risk Management, Inc., 2002 WL 31556384 (S.D.N.Y. 2002) .................. 9

Norfolk Southern Railway Co. v. Transp. Communication Int'l Union, 2004 WL
    724548 (E.D. Va. 2004) ........................................................................................................ 5

Nunez v. City of New York, 226 N.Y. 246, 123 N.E. 492 (1919) ................................................. 9

Palmer Ventures, L.L.C. v. KPMG L.L.P., 2005 WL 5369528 (M.D. La. 2005) ......................... 1

S.A. Mineracao v. Utah International, 745 F.2d 190 (2d Cir. 1984) ............................................ 4

Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co., 767 F.2d 1140 (5th Cir. 1985) ..... 1

Smith/Enron Cogeneration Ltd. Partnership v. Smith Cogeneration Intl. Inc., 198 F.3d 88 (2d Cir. 1999) ............................................................................................................ 2

St. Paul Fire and Marine Ins. Co. v. Employers Reinsurance Corp., 919 F. Supp. 133 (S.D.N.Y. 1996) ..................................................................................................... 4

Thomas-CSF v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir.1995) ...................................... 9

Thomas James Assoc., Inc. v. Jameson, 102 F.3d 60 (2d Cir. 1996) .................................... 3, 5, 9

Transrol Navegacao, S.A., 782 F. Supp. 848 (S.D.N.Y. 1991) ....................................... 9

Vesta Fire Ins. Co. v. New Cap Reinsurance Corp., 244 B.R. 209, 238 F.2d 186 (2d Cir. 2001) ..................................................................................................... 7, 8

**Statutes**

§ 205 ............................................................................................................................................ 1

9 U.S.C. §§ 201-208 .................................................................................................................. 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
B.D. COOKE & PARTNERS LIMITED, as Assignee of
Citizens Casualty Company of New York (in liquidation)   Civ. Action No. 08-CIV-3435 (RJH)

Plaintiff,

    -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Defendants.
------------------------------------------------------------------------X

## CERTAIN UNDERWRITERS AT LLOYD'S, LONDON REPLY MEMORANDUM OF LAW

Certain Underwriters at Lloyd's, London, respectfully submit their Memorandum of Law in reply to B.D. Cooke's Memorandum of Law in Opposition to Defendants' Motion to Stay Action and Compel Arbitration (Cooke Opp. Br.)

Preliminary Statement

Without citing any authority, Cooke requests that its motion to remand "be decided first." Cooke Opp. Br. at 1. To the contrary: "[t]he arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. Beiser v. Weyler, 284 F.3d 665, 675 (5th Cir. 2002). The Court in Beiser emphasized the "importance of a defendant's right to appeal the refusal to enforce an arbitration clause under the Convention," Beiser, 284 F.3d at 675, citing Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co., 767 F.2d 1140, 1149 (5th Cir. 1985); Palmer Ventures, L.L.C. v. KPMG L.L.P., 2005 WL 5369528 * 9 (M.D. La. 2005); see also Dahiya v. Talmidge International, Ltd., 371 F.3d 207, 217 n. 6 (5th Cir. 2005).

With respect to the issues to be addressed now in the briefing schedule -- whether Cooke's action should be stayed and Cooke compelled to arbitrate -- Cooke essentially advances

1

two arguments:

1. even if Underwriters satisfy "all of the requirements of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards," 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, as implemented at 9 U.S.C. §§ 201-208, there can be "no possible 'dispute arising under'" the excess reinsurance contracts. Cooke Opp. Br. at 2; and

2. even if there were a dispute "arising under" the reinsurance contracts, Underwriters "ability to compel arbitration was extinguished in 1971." Cooke Opp. Br. at 2.

To the contrary, affidavits submitted by Underwriters demonstrate that a "dispute arising under" the excess reinsurance contracts exists and requires resolution by a "court of arbitration." In addition, Cooke's preservation of its right to arbitrate under the subject reinsurance contracts ends the discussion of whether the obligation to arbitrate "expired" thirty-seven years ago.

POINT I

UNDERWRITERS SATISFY ALL THE REQUIREMENTS TO
COMPEL ARBITRATION UNDER THE CONVENTION (Answering
Cooke Opp. Br. at 3-5)

Citing Smith/Enron Cogeneration Ltd. Partnership v. Smith Cogeneration Intl. Inc., 198 F.3d 88, 92 (2d Cir. 1999), Cooke appears to argue that Underwriters did not accurately set out the requirements for arbitration under the Convention. Cooke Opp. Br. at 5.

First, the Convention's requirements are accurately set forth as demonstrated by the cases cited in n. 2 of Cooke's Opp. Br. In addition, the Enron/Smith decision supports Underwriters' motion to compel arbitration. The Second Circuit in that case not only described the history and purpose of the Convention, but also noted the "strong federal policy in favor of arbitration" that requires that "any doubt with respect to the scope of [an] arbitration clause [be resolved] in favor of arbitration . . . ." Smith/Enron, 198 F.3d at 99.

2

POINT II

THE COOKE ACTION FALLS EASILY WITHIN THE SCOPE OF THE
AGREEMENT TO ARBITRATE (Answering Cooke Opp. Br. at 5- 13)

Cooke argues that its suit for $1.9 million in reinsurance recoverables and Underwriters' refusal to pay such amount is not a "dispute that 'arises under' the reinsurance contracts." Cooke Opp. Br. at 7. Cooke suggests that its request for declaratory judgment concerning the assignment raises a "collateral matter" that falls outside the scope of the agreement to arbitrate. Cooke also argues that a commutation of the contracts assigned to Cooke does not "arise under" the agreement to arbitrate. Cooke Opp Br. at 7.

Cooke, however, later concedes that its breach of contract and account stated causes of action for $1.9 million have a "facial relation to the reinsurance agreements." Nevertheless, Cooke presses the argument that these claims are not arbitrable because Underwriters have not offered "sworn evidence" to rebut the assertion that the claims that make up the $1.9 million have been "agreed." Cooke Opp. Br. at 9-12.

A. Scope of the Agreement. With respect to the scope of the agreements to arbitrate, the excess reinsurance agreements require that: "any dispute arising under" the reinsurance agreements be submitted to a "court of arbitration . . ." Aff. of James Veach, dated June 5, 2008, ¶ 25, Ex. 4; Affidavit of Thomas B. McNamara, dated April 25, 2008, ¶ 12. Cooke characterizes the "arising under" language as the "gold standard" of narrow clauses and not subject to any presumptions favoring arbitration, citing In Re ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 33, n. 9 (2d Cir. 2002). Cooke Br. at 6.

To the contrary, in ACE, the Second Circuit went to great lengths to restrict an earlier Second Circuit decision, In re Kinoshita & Co., 287 F.2d 951, 953 (2d. Cir. 1961) (the phrase "arising under" should be narrowly applied) to its "precise facts." ACE, 307 F.3d at 26. And as

3

the Court in St. Paul Fire and Marine Ins. Co. v. Employers Reinsurance Corp., 919 F. Supp. 133, 135 (S.D.N.Y. 1996) noted, "both the Supreme Court and the Second Circuit have taken an increasingly broad view of such phrases as 'arising under' and 'arising out of' in arbitration agreements." 919 F. Supp. at 135 citing, among other authorities, S.A. Mineracao v. Utah International, 745 F.2d 190, 192 (2d Cir. 1984); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 854-855 (2d Cir. 1987). Kinoshita, which created the "gold standard" of narrow arbitration clauses, has been "left . . . in tatters." St. Paul, 919 F. Supp. at 135.

    B. "Non-Contingent Claims." Cooke contends that its "action is in the first instance an action for declaratory relief regarding the meaning and effect of the Assignment." Cooke Opp. Br. at 7. Cooke then argues that any issue concerning the assignment is "at best a collateral matter" that purportedly falls outside the scope of the arbitration agreement. To the contrary, "[b]asing the arbitrability of an action merely on the legal label attached to it would allow artful pleading to dodge arbitration of a dispute otherwise 'arising out of or relating to' (or legally dependent on) the underlying contract." Cycle Sport v. Dinli L.P., 2004 WL 936850 (E.D. La 2004) quoting Ford v. Nylcare Health Plans of the Gulf Coast, 141 F.3d 243 (5th Cir. 1998); see also Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16 (2d Cir. 1995).

    Cooke also argues that one of Underwriters' defenses to Cooke's suit -- a commutation agreement entered into between the parties in 2002 -- does not arise under the subject agreement to arbitrate. Cooke Opp. Br. at 7-8. The subject February 27, 2002 commutation agreement involved an $800,000 payment pursuant to which all of the "rights, privileges, duties, obligations, and liabilities under the Reinsurance Agreements" were terminated. The term "Reinsurance Agreements" is defined with specific reference to all treaties and certificates whereby Syndicates at Lloyd's "reinsure Dominion . . . . and reinsured the B.D. Cooke Principals

4

in respect of the B.D. Cooke/C.F. & A.U. Business . . . . " Affidavit of Andrew David Tyler, sworn to on April 1, 2008, Ex.1, pp. 3-4.

A defense to Cooke's suit based on a 2002 commutation agreement falls within the scope of the subject arbitration agreement. "[E]ven if we assume that the parties did attempt to settle the issue, otherwise arbitrable, by agreement, any disagreement as to the existence or effect of that settlement agreement would itself be a matter for the arbitrator to decide." Norfolk Southern Railway Co. v. Transp. Communication Int'l Union, 2004 WL 724548 *5 (E.D. Va. 2004) quoting Employees Protective Ass'n v. Norfolk & W. Ry. Co., 571 F.2d 185, 193 (4th Cir. 1977). "'[O]nce the court determines that the parties agreed to arbitrate a dispute, then that dispute must be submitted to the arbitrator" (citation omitted) "[and] this includes questions of affirmative defenses to the claim . . . " Thomas James Assoc., Inc. v. Jameson, 102 F.3d 60, 68 (2d Cir. 1996).

C. "Contingent Claims" (Ans. Cooke Opp. Br. at 8-12) Allowing that the second and third causes of action in its complaint bear a "facial relation to the reinsurance agreements," Cooke contends that the differences between the parties do not constitute "disputes arising under" those agreements. Cooke Opp. Br. at 8. Cooke relies on its own Verified Complaint and two affidavits to argue that there are no differences between Cooke and Underwriters to arbitrate. Cooke Opp. Br. at 10-11. Unsatisfied, however, with this "evidence," Cooke's counsel then submits additional e-mail (and argument) to buttress his contention. Affidavit of Carey G. Child, sworn to on June 5, 2008, Ex. 1.

To the contrary, the $1.9 million for which Cooke sued Underwriters is very much in dispute as demonstrated by two sworn declarations from Christopher David Piller, Communications Manager, Inward Reinsurance, at Resolution Management Services, Limited

(RMSL) sworn to on June 5 and June 16, 2008 (Piller I and II) and submitted herewith. Among many other things: Underwriters:

- deny the self-serving assertions in the Tyler affidavit about the significance of "Lloyd's practices" and "signing numbers" (Piller I, ¶ 25-46);

- identify specific claim amounts that appear in the Verified Complaint, but which have been paid (Piller I, ¶51, Piller I, ¶ 57, Ex. 7);

- question whether certain claim amounts set forth in the Verified Complaint, ¶ 33, belong to cedants other than Citizens (Piller II, ¶ 15);

- assert that claims identified in the Verified Complaint, ¶ 33, are subject to a global commutation agreement, a copy of which Cooke has now filed in open court despite the parties agreement to treat as a confidential agreement (Piller I, ¶ 60-61);

- identify documents and records that Cooke as Citizens' assignee has refused to share with Underwriters pursuant to the reinsurance agreements access to records provisions (Piller I, ¶ 63; Piller II, ¶ 17);

- challenge whether certain earlier payments made to ROM Reinsurance Management Co., Inc. ("ROM"), Cooke's run-off agent, pursuant to an opinion from an Early Neutral Evaluator were properly accounted for by ROM (Piller I, ¶ 63); and

- dispute the selectively gathered e-mails affixed to counsel's affidavit (Piller II, ¶ 6-16).

Compare the self-serving account of certain e-mails exchanged as recited in Cook's brief, Cooke Opp. Br at 12-13, with Piller's two declarations (Piller I and II).

### POINT III

COOKE, AS CITIZENS' ASSIGNEE, IS OBLIGATED TO ARBITRATE PURSUANT TO THE CONTRACTS UPON WHICH COOKE BROUGHT SUIT; THE SUSPENSION OF A COURT-SUPERVISED INSURANCE RECEIVER'S OBLIGATION TO ARBITRATE HAS NO BEARING ON THE OBLIGATION OF COOKE, A COMMERCIAL ENTITY, TO ARBITRATE (Answering Cooke Br., Pt. III, pp. 13-24).

In the alternative, Cooke argues that the agreements to arbitrate are "not valid and enforceable" because "the liquidation of Citizens extinguished any ability of Underwriters to compel arbitration, even under the Convention." Cooke Br. at 13. Cooke contends that the liquidation order "enjoined Underwriters from commencing or prosecuting an arbitration."

Cooke Opp. Br. at 15.

As we pointed out in Underwriters initial brief at 19-22 and Underwriters brief in opposition at 10-15, although many other jurisdictions do not agree, New York state case law and New York state policy bar arbitration against the <u>statutory receiver</u> of an insolvent New York insurer acting under court supervision pursuant to New York Insurance Law Art. 74.  But the reasoning in cases involving a New York Superintendent of Insurance acting in his (or her) capacity as a court-appointed receiver does not apply to a <u>commercial entity</u>, such as Cooke, who, as the caption of its complaint alleges, acts: *"AS ASSIGNEE OF CITIZENS' CASUALTY COMPANY OF NEW YORK."*

Cooke alleges that allowing for the "exclusive jurisdiction of [a] Liquidation court" is a "common feature of insolvency proceedings" in the U.S., U.K. and Australia.  Cooke Br. at 17-20 citing <u>Vesta Fire Ins. Co. v. New Cap Reinsurance Corp.</u>, 244 B.R. 209, 238 F. 2d 186 (2d Cir. 2001) and attaching a decision from a United Kingdom proceeding,  <u>Enron Metals & Commodity Ltd. (In Administration) v. HIH Casualty & General Ins. Ltd. (In Provisional Liquidation)</u> 2005 EWHC 485 (Ch.)

Cooke, however, is not a statutory insurance receiver.  Nor is Cooke a state commissioner or superintendent of insurance acting under court supervision.  Nor is Cooke acting in a fiduciary capacity to allow or disallow claims and protect the interests of policyholders, service providers, and general creditors in a failed insurer's assets.  Nor is the Citizens estate open.

Cooke is a commercial venture that proposed a Plan to close the Citizens estate. Veach Aff., Ex. 8.  Cooke then negotiated a commercial arrangement pursuant to which Citizens' reinsurance contracts were assigned to Cooke.  Hence the caption: "<u>B.D. Cooke As Assignee of</u>

7

Citizens Casualty Company of New York (in Liquidation)."

In Vesta, Judge Sweet, affirmed a Bankruptcy Court order denying the creditor/cedant of a failed Australian reinsurer relief from an injunction that prevented the cedant from continuing with its arbitration against the failed reinsurer. In denying the relief sought, Judge Sweet relied on principles of "comity to a foreign bankruptcy proceeding [that] enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner." The Court reasoned that whether a reinsurance arbitration should be allowed to go forward would be more "appropriately put to the Administrator or an Australian court entrusted with the tasks of supervising [the failed reinsurer's] insolvency." Vesta, 244 B.R. at 220.

Judge Sweet also noted in Vesta that those points in favor of arbitration were "well-taken" and that a U.S. bankruptcy court might have allowed the arbitration to proceed, citing many cases in which U.S. Bankruptcy Courts have done just that. 244 B.R. at 219. But Judge Sweet agreed with the Bankruptcy Court that the Australian Administrator for the failed insurer would be in a far better position than an ancillary receiver sitting in New York City to weigh the costs of participating in the arbitration against the merits of the dispute.

None of these considerations are present in this case. This is a contract dispute between two U.K.-domiciled, commercial entities. In Vesta, the court weighed the ancillary powers granted the Bankruptcy Court pursuant to Section 304 against Congressional implementation of the Convention. Here, the Court is faced with a weak New York state anti-arbitration policy ensconced in New York state case law that must be measured against United States commitments made pursuant to Article I, Section 8 of the U.S. Constitution.

Finally, Cooke seeks to avoid the basic assignment principle that "[t]he burden follows

the benefits [of an assignment], no matter into whose hands the benefit may pass," Nunez v. City of New York, 226 N.Y. 246, 251, 123 N.E. 492 (1919), by arguing that Cooke does not "claim directly under the reinsurance contracts, but only by virtue of the Assignment." Cooke Opp. Br. at 22. Cooke then seeks to shoehorn itself into the Second Circuit's decision in Thomas-CSF v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir.1995) to argue that Underwriters seek to bind Cooke to the arbitration agreements in the assigned reinsurance contracts through some "muddled estoppel argument." Cooke Opp. Br at 20.

To the contrary, Cooke is bound to arbitrate under "ordinary principles of contract and agency." McCallister Bros., Inc. v. A & S Transportation Co., 621 F.2d 519, 524 (2d Cir. 1980) to wit: (1) assumption; and (2) estoppel. The facts in Thomas are far removed from the facts here. Here, Cooke has assumed the benefit of the assigned contracts and has the contractual obligation to arbitrate under those contracts.

In addition, Cooke expressly asserts and preserves its right to arbitrate under the reinsurance contracts and does so in its "Verified Complaint." Accordingly, Cooke is estopped from seeking to avoid its contractual duty to arbitrate under the contracts. See, e.g. Transrol Navegacao, S.A., 782 F. Supp. 848, 850 (S.D.N.Y. 1991) (party that asserted right of arbitration in French proceeding could not avoid arbitration on theory that it was a "non-signatory" to the agreement). This "preclusion of inconsistent positions" prevents litigants -- like Cooke -- from "playing 'fast and loose' with the courts." 782 F. Supp. at 852.

Indeed, Cooke's preserving and reserving its right to arbitrate under the reinsurance contracts are judicial admissions. In re Union Indemnity Insurance Co. of New York, 89 N.Y.2d 94, 674 N.E.2d 313, 651 N.Y.S.2d 383 (1996); see also Nichols v. American Risk

9

Management, Inc., 2002 WL 31556384 (S.D.N.Y. 2002). Indeed, in a recent decision, counsel for B.D. Cooke found himself arguing Underwriters' position, i.e., that the beneficiary of a reinsurance contract that originally insured an insolvent insurer "cannot invoke the benefits of a contract and, at the same time, disavow portions that impose an obligation [to arbitrate]." Doeff v. Transatlantic Reinsurance Co., 2007 U.S. Dist. LEXIS 91879 (E.D. PA 2007).

As Judge Savage observed in ruling in favor of counsel's reinsurance client:

> Absent the reinsurance agreement, (plaintiff) would have no cause of action against (the liquidated insurer's reinsurer). Thus, the reinsurance agreement controls any duty that (the reinsurer) owes (the plaintiff), and any cause of action brought by him against(the reinsurer) necessarily arose from the reinsurance agreement, which [calls for arbitration of any dispute arising out of" the reinsurance contracts.]

Id. * 12. The "equitable estoppel" rationale that worked to the advantage of counsel's reinsurance client in the Doeff case applies here as well. Applying standard principles of contract and agency, Cooke is bound to arbitrate the claims upon which it brought suit.

Conclusion

Underwriters respectfully request that Cooke's motion to remand its action to the Supreme Court, New York County, be denied, Cooke's action stayed, and the parties referred to arbitration pursuant to the terms of the excess reinsurance contracts, and the Convention.

Dated: New York, New York
      June 16, 2008

                              MOUND COTTON WOLLAN &
                              GREENGRASS

                              _____
                              James Veach (JV - 1525)
                              Joshua L. Milrad (JM - 2105)
                              Attorneys for defendant Certain
                              Underwriters at Lloyd's London
                              One Battery Park Plaza
                              New York, New York 10004
                              Tel: (212) 804-4200

To:

John F. Finnegan, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

  - and –

Carey G. Child, Esq.
Chadbourne & Parke LLP
1200 New Hampshire Avenue, NW
Washington, DC 20036

Attorneys for B.D. Cooke & Partners Limited