UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

B.D. COOKE & PARTNERS LIMITED, as Assignee of Citizens Company of New York (in liquidation),

    -against-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

    Defendants.

08 Civ. 3435 (RJH)

**REVISED MEMORANDUM OPINION AND ORDER**

This action comes before the Court following defendants' removal of plaintiff's claims pursuant to 9 U.S.C. § 205. Plaintiff had originally brought its claims in New York Supreme Court and now moves to remand. Defendants simultaneously move to stay plaintiff's action and compel arbitration. For the reasons below, plaintiff's motion is denied and defendants' motion is granted.

**BACKGROUND**

The origins of the present dispute lie in the long, convoluted history of a non-party's liquidation. That non-party, Citizens Casualty Insurance Company ("Citizens"), was declared insolvent almost 40 years ago by the New York Supreme Court. (Verified Complaint ¶¶ 1, 8.) As an insurance company incorporated in New York, Citizens's liquidation was governed entirely by New York law. (N.Y. INSURANCE LAW, ART. 74 (2009).) Hence, at the request of the Superintendent of Insurance of the State of New York (the "Superintendent"), the state court placed Citizens in liquidation on June 17,

1971, appointed the Superintendent as liquidator, and vested the Superintendent with "title to all property, contracts and rights of action of Citizens." (Verified Complaint ¶ 8.)

Citizens was involved primarily in the business of reinsurance. Reinsurance is a form of insurance where one insurer, the reinsurer, agrees to indemnify another insurer, the cedent, for losses under policies issued by the cedent. (N.Y. JUR. INS. § 570; *B.D. Cooke & Partners Limited v. Nationwide Mut. Ins. Co.*, No. 600655/02 (N.Y. Sup. Ct. Oct. 15, 2003).) As the reinsurer, Citizens would receive a share of the cedent's premiums in return for indemnification of a portion of cedent's payments under its policies. Citizens frequently did not keep all of the indemnification risk it procured, laying off some of it with other reinsurers, including defendants. (Verified Complaint ¶¶ 11-13, 16-17.) Although the general rule is that a cedent cannot recover from a reinsurer until the cedent has actually paid its claims, an estate's liquidator can usually recover from the estate's reinsurers notwithstanding the absence of such payment because standard contractual provisions usually provide for recovery in this instance. (N.Y. JUR. INS. § 2209.) Because such a clause existed in all of Citizens's contracts, the Superintendent acquired the right to collect on any reinsurance claims Citizens might have had, including those against defendants.

The complicated and protracted nature of Citizens's insolvency arose from its reinsurance of environmental concerns and asbestos exposure in particular. (*B.D. Cooke & Partners Limited v. Nationwide Mut. Ins. Co.*, No. 600655/02, at 4 (N.Y. Sup. Ct. Oct. 15, 2003).) While Citizens' reinsurance contracts were effectively terminated as a result of the liquidation, Citizens remained liable for policies insuring injuries that occurred prior to its liquidation but were not discovered until years later. (*Id.*) Many asbestos

injuries, of course, occurred before 1971 but were not discovered by the injured until years later.  Hence, reinsurance creditors, i.e., insurance companies, continued to submit claims for decades after the liquidation began, and consequently additional claims vested with Citizens as cedent under its contracts with its fellow reinsurers with whom it had laid off its risk, including defendants.  (*Id*.)  By 1996, there were still claims being filed, and the Superintendent was looking for a way to close the estate.  To achieve this goal, the Superintendent reached an agreement with a group of Citizens's largest creditors—a group represented by plaintiff B.D. Cooke & Partners Limited ("Cooke").  (*See* Tafuro Aff. Ex. 5.)  The Superintendent agreed to assign to plaintiff the remaining claims possessed by the estate, and in return, plaintiff agreed to surrender its claims against the estate.  (*Id*.)  The New York Supreme Court approved the Superintendent's plan to close the estate, including the assignment of Citizens's claims to plaintiff, and the Superintendent's request that the court retain jurisdiction over any continuing disputes involving claims.  (Tafuro Aff. Exs. 5, 14.)  On April 9, 1998, the liquidation proceeding finally terminated.  (Tafuro Aff. Ex. 4.)

Some time later, by complaint dated February 26, 2008, Cooke, as assignee of Citizens's liquidator, brought three claims in New York Supreme Court against defendants, certain underwriters at Lloyd's, London (the "Lloyd's Underwriters"). (Verified Complaint ¶¶ 36-51.)  The first claim asks the court for a declaration that the assignment permits Cooke to pursue Citizens's claims against the Lloyd's Underwriters "without limitation". (*Id*. ¶¶ 37, 42, and Demand for Judgment.)  Cooke alleges that defendants are wrong to contend that the assignment by the liquidator either caps the amount it can recover or that, in the alternative, the assignment constitutes a novation

relieving defendants of liability altogether.  (*Id*. ¶¶ 37-39.)  Cooke's second and third claims are claims for "breach of contract" and "account stated", requesting the amounts owed plaintiff as assignee under the defendants' original "excess-of-loss" reinsurance contracts with Citizens.  (*Id*. ¶¶ 43-51.)  Cooke states that while it believes the dispute with defendants lies in the interpretation of other documents, to the extent it lies in the excess-of-loss contracts, Cooke reserves its right to arbitrate pursuant the arbitration clause found in these contracts.  (*Id*. ¶¶ 44, 50.)

Defendants promptly removed the case to this Court, alleging in its notice of removal that the arbitration clauses found in the excess-of-loss reinsurance contracts were governed by the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "Convention"), and its implementing legislation, Chapter Two of the Federal Arbitration Act, 9 U.S.C. § 201, *et seq* (the "FAA"), and that therefore the action was removable under the FAA.  (Notice of Removal.)  After conferring with the Court in conference, the parties agreed to brief plaintiff's motion to remand in parallel with defendants' motion to compel arbitration and stay the state action.

## DISCUSSION

Defendants removed pursuant to 9 U.S.C. § 205, which instructs courts that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."  Of course, the grounds for removal are the

4

same as the basis for this Court's jurisdiction, i.e., whether or not the state action falls under the Convention. 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."). Whether or not a state action falls under the Convention depends on four factors: (1) the existence of a written agreement to arbitrate the dispute; (2) provision of arbitration in the territory of a signatory of the Convention; (3) the commercial nature of the dispute; and (4) the international nature of the dispute. *Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999).

Plaintiff makes three arguments in favor of remand. First, it disputes the first factor bearing on the applicability of the Convention. It argues that while Citizens's contracts with defendants contain arbitration clauses, this dispute is not within the scope of those clauses. Second, even if the subject matter of its action falls under the Convention, remand is still appropriate because, having stepped into the liquidator's shoes by virtue of the assignment, it cannot be compelled to arbitrate under New York law. Third and finally, plaintiff argues that defendants have waived their removal rights pursuant to the "SERVICE OF SUIT" clause in their reinsurance contracts. The Court addresses each argument in turn.

**I.      The Parties Dispute is Within the Scope of the Arbitration Clause**

The arbitration clauses in question are identical and read as follows:

> Any dispute arising under this Contract shall be submitted to a court of arbitration composed of two arbitrators, one to be appointed by the Reassured and the other by the Reinsurers. The arbitrators shall, before entering upon the reference, appoint an umpire. The arbitrators and the umpire shall consider this Contract an honourable engagement rather than merely a legal obligation [and] they are relieved of all judicial formalities and may abstain from following the strict rule of law. The award of the arbitrators or, in the event of their disagreement, of the umpire, shall be precedent to any liability or right of action of either party. The

5

costs of the references and of the award shall be in the discretion of the arbitrators or umpire, as the case may be, who may direct to and by whom and in what manner the same shall be paid.  The seat of arbitration shall be New York, N.Y.

(Veach Aff. Ex. 4.)[1]  The issue is therefore whether the current dispute "aris[es] under" the contracts.

As it does in its complaint, plaintiff argues that the dispute at issue concerns the scope of the liquidator's assignment and perhaps a related agreement not at issue. (Verified Complaint ¶¶ 37-38; Pl. Remand Br. at 21-23.)  Plaintiff urges that defendants have conceded that there is a dispute over the assignment, (Pl. Remand Br. at 21-22), and failed to demonstrate any dispute over the terms of the contracts, (*id*. at 22).  Plaintiff points to the fact that defendants have paid identical claims to other reinsureds under the same contracts, (McNamara Aff. ¶¶ 8-10), and that defendants had "agreed" to plaintiff's claims both in written and oral communications and by virtue of their issuance of a "signing number and date" with respect to each claim, (Tyler Aff. ¶¶ 6-9).

While plaintiff makes interesting points concerning the ultimate resolution of this dispute, it mistakes defendants' burden for demonstrating that a dispute arises under the contracts.  The Court of Appeals has found clauses very similar to this one to be broad in scope.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (characterizing the clause "any and all differences and disputes of whatsoever nature arising out of this Charter" as "broad").  Indeed, in *JLM Industries*, the Court of Appeals held that this clause was broad enough to encompass such "collateral matters" as an antitrust claim under the Sherman Antitrust Act.  *Id*.  Such a holding is consistent with the general proscription that "any doubts concerning the scope of arbitrable issues should

---

[1] Defendants point also to arbitration clauses in its reinsurance contracts executed after Citizens entered liquidation.  (Def. Br. at 3-5.)  These clauses and the contracts containing them are completely irrelevant to this dispute because Citizens could not have been a party.

6

be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. at 171 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  Here, the subject matter of the parties' dispute is not even collateral to the contract.  Indeed, plaintiff seeks to recover in an action for breach of contract where the contract at issue contains the arbitration clause.  To the extent the words "arising under" denote a "causal connection" between the cause of action and the contract, *see Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001), there is clearly such a connection between the contracts and each of plaintiff's claims.  After all, absent these contracts, plaintiff would not have a claim for damages, and there would be no case or controversy upon which plaintiff could request a declaratory judgment.

The cases plaintiff cites are not to the contrary.  In *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 33 n.9 (2d Cir. 2002), the Court of Appeals actually holds that the phrase "any dispute that shall arise between the parties" was "broad" enough to encompass a fraudulent inducement claim.  *Id*. at 26.  To the extent the Court of Appeals articulated a narrower standard in a much earlier case, *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961), the panel in *ACE Capital* reaffirmed that that decision should be "limited to its precise facts."  *Id*.  Accordingly, the Court holds that the parties' dispute is encompassed by the arbitration clause and therefore falls under the Convention within the meaning of 9 U.S.C. §§ 203, 205.

## II.     Plaintiff is not Exempt from Arbitration under the Assignment

Plaintiff argues at length that the Convention does not apply, and therefore that remand is appropriate, under an exception for an agreement that is "null and void, inoperative or incapable of being performed." (Pl. Remand Br. at 12-13, citing the Convention, 21 U.S.T. 2517, *reprinted at* 9. U.S.C.A. § 201, Art. II, ¶¶ 1, 2, 3 (December 29 , 1970)).  The arbitration agreements, plaintiff argues, have been "incapable of being performed" since Citizens's insolvency in 1971.  Plaintiff's argument finds its basis in the holding of New York courts that a statutory liquidator—the Superintendent in Citizens's case—cannot be compelled to submit to arbitration.  *See Corcoran v. Ardra Ins. Co.*, 77 N.Y.2d 225, 232-33 (1990); *Knickerbocker Agency, Inc. v. Holz*, 4 N.Y.2d 245, 252-53 (1958); *see also Washburn v. Corcoran*, 643 F. Supp. 554, 556 (S.D.N.Y. 1986).  Accordingly, either operation of the arbitration clauses ceased upon the New York Supreme Court's liquidation order, or the Superintendent assigned his exemption from arbitration to plaintiffs.  Both arguments fail.

Plaintiff has cited no authority for the proposition that the liquidation extinguished defendants' right to arbitrate disputes under the contract.  Defendants included this clause in many contracts, and to the extent claims accrued under the contracts to third-party beneficiaries or co-signers, there is no reason why the clauses would not continue to operate against those parties.  The cases cited by plaintiff merely stand for the proposition that the clauses could not be enforced against the liquidator, and the Court has no reason to disagree with this proposition.  In *Corcoran v. Ardra Ins. Co.*, the New York Court of Appeals held that the state legislature had granted the New York Supreme Court exclusive jurisdiction over liquidation proceedings for insurance

8

companies, and that therefore the liquidator could not be compelled to arbitrate under the Convention's exception for contracts "incapable of being performed." In distinguishing the liquidator from private parties the court wrote,

> As a result of Nassau's insolvency, and [the Superintendent's] substitution to liquidate its assets, the contractual parties and their relationship have changed. Nassau no longer exists. [The Superintendent] steps into its shoes, in the sense that he succeeds to its property, but he is a fiduciary, appointed by the court, subject to its exclusive jurisdiction and possessing only the powers authorized by the Legislature. He holds office as liquidator solely to protect the interests of policyholders, stockholders and the public and has no authority to pursue the commercial interests which motivated the original parties to conclude the reinsurance agreements

*Corcoran*, 77 N.Y.2d at 232.

Defendants' inability to compel the liquidator to arbitrate, however, does not imply an inability to compel plaintiff to arbitrate. Assuming *arguendo* that the Superintendent's right not to be compelled to arbitrate was assignable, the Court finds that it is clear from the terms of the assignment that this right was not assigned. The relevant portion of the assignment assigns to plaintiffs "[a]ny Reinsurance Agreements and Excess of Loss agreements running in favor of Citizens or the Liquidator of Citizens effective as from July 1, 1994 . . . together with all the rights which Assignor would have had *under such agreements* if the Citizens estate were not closed pursuant to Assignor's Plan for the closing of the Citizens' liquidation." (Tafuro Aff. Ex. 15 (emphasis added).) Nothing in the contract purports to assign any rights accruing to the liquidator besides reinsurance recoverables or other rights Citizens had under its contracts. In particular, there is nothing in the assignment that supports an assignment of the liquidator's right not to arbitrate disputes. The provision of the state court's order approving "continuing jurisdiction" for the resolution of disputes does not change this interpretation. (Tafuro

9

Aff. Ex. 5.)  It merely permits the state court to hear such disputes rather than requires it to the exclusion of other forums.

Although nothing more needs be said on this point, the Court notes that this interpretation is entirely consistent with the *Corcoran* court's description of why the liquidator is different.  The liquidator "steps into [Citizens's] shoes" but only "in the sense that he succeeds to its property."  *Corcoran*, 77 N.Y.2d at 232.  In fact, the liquidator is a fiduciary who exists "solely to protect the interests of policyholders, stockholders and the public and has no authority to pursue the commercial interests" of the parties.  *Id*.  It would make no sense, therefore, to interpret the assignment, against its clear text, to grant plaintiff a right to which it would not ordinarily be entitled.  Indeed, plaintiff is most certainly *not* acting as a fiduciary or protecting the interests of the public.

**III.     Defendants Did not Waive their Right to Removal**

Plaintiff's last argument is that defendants waived their right to renewal the instant they signed the very contracts in question.  Plaintiff points to the following "SERVICE OF SUIT" provision that, at least in the exemplar contracts proffered to the Court, directly follows the "ARBITRATION" provision:

> It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.  It is further agreed that . . . in any suit instituted against any one of them upon this contract, the Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

10

(McNamara Aff. Exs. 1-9.)  Plaintiff argues, citing *Travelers Ins. Co. v. Keeling*, No. 91 Civ. 7753, 1993 WL 18909 (S.D.N.Y. Jan. 19, 1993), *appeal dismissed*, 996 F.2d 1485 (2d Cir. 1993), that this clause constitutes a waiver of defendants' right to removal and that it is for the state court to decide whether the dispute is arbitrable.

In *Travelers*, the court held that, at least prior to the United States' adoption of the Convention in 1970, this service-of-suit clause had historically been interpreted to deprive reinsurers of the right to removal.  *Id*. at *3-4 ("As Underwriters well know, since 1949 service-of-suit clauses identical to the one disputed here have long been held to waive unequivocally the defendant's right of removal.").  While the court conceded that the Fifth Circuit had found ambiguous the presence of two forum-selecting clauses— namely the arbitration and service-of-suit clauses—the court rejected this conclusion and found that the appropriate interpretation was that the clauses were consistent and simply provided that the court of plaintiff's choosing would decide whether to refer the matter to arbitration.  *Id*. at *5.

The result in *Travelers* stands at odds with the law in the Third and Fifth Circuits, and, at the very least, in tension with other decisions in this district.  The Court of Appeals for both the Third and the Fifth Circuit concluded that given the strong federal policy that federal courts should decide arbitrability issues under the Convention, waiver of removal would be found only where it was explicit.  *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 158 (3d Cir. 2000) (holding that "there can be no waiver of a right to remove under the Convention Act in the absence of clear and unambiguous language requiring such a waiver"); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1209 (5th Cir. 1991) ("we will give effect only to explicit waivers of

11

Convention Act removal rights"). Both courts reasoned that there was an ambiguity created by the presence of both clauses, and that the strong federal policy in favor of arbitration should weigh in favor of removal. *Suter*, 223 F.3d at 159-160; *McDermott Int'l, Inc.*, 944 F.2d at 1209-1213. In *NECA Ins., Ltd v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 595 F. Supp. 955 (S.D.N.Y. 1984), a court in this district held that the service-of-suit clause "does not by its terms limit the obligation to arbitrate but simply provides a consent to jurisdiction to enforce payments by Reinsurers granted through arbitration." *Id*. at 958. Granted, the plaintiff in *NECA Ins.* did not move to remand and the court therefore did not consider what import the service-of-suit clause had for the question of which court should decide arbitrability. All three courts examined arbitration and service-of-suit clauses virtually identical to the one at issue in this case.

The Court concludes that the historical interpretation noted by the court in *Travelers* actually marshals against that court's conclusion regarding ambiguity. Prior to the insertion of an arbitration clause, the service to suit clause provided for resolution of the parties' disputes by *litigation* in the court of plaintiff's choosing. Requiring arbitration was a radical change in this practice, and the simple insertion of an arbitration clause without any change in the service to suit clause reflects, at best, clumsy drafting. The juxtaposition of these clauses creates an ambiguity, leaving the courts to resolve this ambiguity using the various applicable legal rules.

The Court concludes that these rules favor no waiver of removal, at least on the facts of this case. The Court of Appeals for both the Fifth and Third Circuits resolved the ambiguity by interpreting the service-of-suit clause as a waiver of personal jurisdiction, an interpretation supported by the fact that the reinsurers were foreign entities. *Suter*, 223

F.3d at 159-160; *McDermott Int'l, Inc.*, 944 F.2d at 1205-1206. While this Court finds that interpretation cramped considering the clause's history, it appears to be the least damaging to the balance of the contracts and consistent with the policy of favoring arbitration and removal to the federal courts. *See JLM Indus., Inc.*, 387 F.3d at 172. It is also consistent with the observation from *NECA Ins.* that such service-to-suit clauses ensure that arbitral awards will be enforced in whatever jurisdiction contains defendants' assets.

## CONCLUSION

For the reasons stated, defendants' motion to compel arbitration in New York, NY pursuant to the excess-of-loss contracts and to stay plaintiff's action [14] is GRANTED, and plaintiff's motion to remand [7] is DENIED.

SO ORDERED.

Dated: New York, New York
March 31, 2009

Richard J. Holwell
United States District Judge