UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

B.D. COOKE & PARTNERS LIMITED, as Assignee of Citizens Casualty Company of New York (in liquidation),

     Plaintiff,

- against -

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

     Defendants.

08 Civ. 3435 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

  Plaintiff B.D. Cooke & Partners Ltd. ("B.D. Cooke") brought an action in New York state court to recover money as the assignee of rights under certain reinsurance contracts with the defendants. After defendants removed the case to this Court, the plaintiff moved to remand the action to state court. Defendants cross-moved to compel arbitration pursuant to the contracts. By Memorandum Opinion and Order dated March 31, 2009, *B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London*, 606 F. Supp. 2d 420 (S.D.N.Y. 2009) ("*B.D. Cooke I*"), this Court granted defendants' motion and denied plaintiff's motion. On April 15, plaintiff filed a motion for reconsideration. For the reasons given below, that motion is denied.

1

## BACKGROUND[1]

The genesis of the current dispute lies in the liquidation of a now-defunct reinsurance company, Citizens Casualty Insurance Company ("Citizens"). Citizens indemnified other insurers for losses they suffered on policies they had issued. In turn, other reinsurers, including certain underwriters at Lloyd's, London (the "defendants" or the "Underwriters"), provided reinsurance to Citizens. Some 40 years ago, a state court declared Citizens insolvent and, pursuant to New York insurance law, appointed the Superintendent of Insurance of the State of New York (the "Superintendent") as liquidator, vesting the Superintendent with "title to all property, contracts and rights of action of Citizens." Over the next several decades, the Superintendent acted as liquidator. But because claims were still being filed as late as the mid-1990s against Citizens, the estate never closed. So, in 1996, the Superintendent agreed to assign the estate's remaining claims to a group of Citizens' largest creditors, represented by B.D. Cooke; in return, B.D. Cooke agreed to surrender its claims against the estate. In 1998, following state court approval of the plan, the Citizens liquidation proceeding finally terminated.

In 2008, B.D. Cooke sued the Underwriters in New York Supreme Court, acting as assignee of the rights previously held by Citizens' liquidator. It asked for a declaration that the assignment entitled it to pursue Citizens' claims against the Underwriters "without limitation." It also sued for breach of contract and account stated. Defendants then removed the case to this Court. B.D. Cooke moved to remand; Underwriters cross-moved to compel arbitration. In *B.D. Cooke I*, the Court found that the arbitration clause was still in effect, could be invoked by the Underwriters against B.D. Cooke, and had not

---

[1] The interested reader is directed to *B.D. Cooke I*, from which this background draws, for a detailed account of the facts underlying this action.

2

been waived. It granted Underwriters' motion and denied B.D. Cooke's. This motion for reconsideration followed.

## DISCUSSION

Under Local Civil Rule 6.3, a party may move for reconsideration, "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Loc. Civ. R. 6.3. The moving party must show "that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Akhenaten v. Najee, LLC*, No. 07-970, 2010 WL 305309, at *1 (S.D.N.Y. Jan. 26, 2010) (internal quotation marks and citation omitted). It "may not advance new facts, issues or arguments not previously presented to the Court." *Hamilton v. Garlock, Inc.*, 115 F. Supp. 2d 437, 439 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). Nor is this a chance "to reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996). "The decision to grant or deny a motion such as the one before the Court is within the sound discretion of the Court." *Davey v. Dolan*, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007).

### I.     Timeliness

At the outset, defendants argue that B.D. Cooke's motion for reconsideration should be denied as untimely filed. A motion for reconsideration under Local Civil Rule 6.3 must be served within "ten (10) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within ten (10) days after the entry of the judgment." Loc. Civ. R. 6.3. Plaintiff's motion was filed on

3

April 15, 2009 within ten days of April 1 but not of March 31.[2]  Plaintiff argues that April 1 is the relevant date, because it says that is the date on which a judgment was entered. The Court cannot agree.  Its order, which was entered on March 31, 2009, did not result in a judgment; it simply resolved the original motion.  Specifically, the Court granted defendants' motion to compel arbitration and stay the action, and it denied plaintiff's motion to remand the case.  That should not have caused the case to be closed, but it apparently did.  The opinion itself only stated that defendants' motion was granted it did not explicitly state that the action would be stayed.  This omission evidently caused some confusion for the Clerk of the Court, who interpreted the opinion as a final judgment. The Clerk dutifully entered a judgment [31] on April 1, 2009 and, on the same day, terminated the case.  The Court now corrects that administrative error.  The case will be reopened on the ground that the Court's original order both compelled arbitration and stayed the action in this Court.

Even though the motion was technically filed a day late, the late filing is wholly excusable in light of the docket entry that purported to enter judgment.  Accordingly, the Court exercises its discretion to consider the merits of the motion.  *See Kargo, Inc. v. Pegaso PCS, S.A. DE C.V.*, No. 05-10528, 2009 WL 1289259, at *5 (S.D.N.Y. May 11, 2009) (exercising discretion to consider the merits of a potentially untimely motion for reconsideration, where consideration did not prejudice the other side); *Cartier, a Division of Richemont North America, Inc. v. Samo's Sons, Inc.*, No. 04-2268, 2006 WL 213090, at *2 (S.D.N.Y. Jan. 26, 2006) (noting that movant should "provide a compelling reason to ignore the time limit"); *Darby v. Societe des Hotels Meridien*, No. 88-7604, 1999 WL

---

[2] This calculation excludes weekends, pursuant to Federal Rule of Civil Procedure 6(a)).

4

642877, at *2 (S.D.N.Y. Aug. 24, 1999) (plaintiff should offer "sufficient justification for her failure to meet the time limit").

B.D. Cooke moved for reconsideration on three grounds: that no arbitration agreement exists between these two parties; that, even if it did, the parties' contracts waived the right to remove from state to federal court; and, finally, that the parties' disputes fall outside the scope of the relevant arbitration clause. The Court finds that reconsideration is unwarranted on any of these grounds.

## II.    Enforceability of Arbitration Clause Against B.D. Cooke

B.D. Cooke argues that no agreement to arbitration exists between it and Underwriters. (Pltf.'s Mem. 5–10.) Its logic is that the relevant arbitration clauses were between Citizens and Underwriters; that the liquidator of Citizens' estate could not be compelled to arbitrate under New York law; and, thus, that B.D. Cooke, as the liquidator's assignee, has the same right to refuse arbitration. The plaintiff has made this argument before, in precisely the same form, and it has already been rejected. *See B.D. Cooke*, 606 F. Supp. 2d at 425 (reasoning that "[d]efendants' inability to compel the liquidator to arbitrate . . . does not imply an inability to compel plaintiff to arbitrate"). Indeed, as the Court noted in that opinion, B.D. Cooke cites not a single case for the proposition that the liquidator's right to reject arbitration is assignable pursuant to an assignment agreement. *Id.* at 424. The Court considered each of the plaintiff's arguments but found them wanting. Accordingly, reconsideration on this ground will be denied.

## III.   Waiver

In its motion to remand and its opposition to the Underwriters' motion to compel arbitration, B.D. Cooke argued that the Underwriters had contractually waived their right to remove the action. In *B.D. Cooke I*, the Court decided that Underwriters had not. Plaintiff contends that this finding overlooked the fact that the relevant contracts were signed prior to the effective date[3] of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention"). The plaintiff raised precisely this point in its original motion papers. (*See* Pltf.'s Mem. in Support of Motion to Remand 24-25 ("[T]his Court has confirmed that such clauses included in reinsurance contracts executed prior to the implementation of the New York Convention in 1970 waive the right to removal and thus require[] remand.").) And the Court implicitly rejected it. It decided that while *Travelers* offered one plausible way to interpret the Convention's relevance to service-of-suit clauses, the Third and Fifth Circuits offered a better interpretive approach. *See B.D. Cooke*, 606 F. Supp. 2d at 426 (citing *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1209 (5th Cir. 1991), and *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 158 (3d Cir. 2000)). Nothing in either *McDermott* or *Suter* compels the conclusion that contracts entered into prior to the Convention Act should be treated any differently from contracts entered into after its enactment. Because B.D. Cooke's motion only rehashes earlier arguments, reconsideration on this ground will be denied.

### IV.   Scope of the Arbitration Clause

---

[3] The Convention was opened for signature on June 10, 1958, but the United States did not ratify it and implement it with domestic legislation until late 1970. *See* 9 U.S.C. §§ 201 *et seq.*

In *B.D. Cooke I*, the Court concluded that the parties' dispute was covered by the arbitration clause in the relevant reinsurance contracts. It did so after finding that that clause was broad. *B.D. Cooke*, 606 F. Supp. 2d at 424. Plaintiff argues that this finding overlooked the facts of *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961). To the contrary, the Court expressly considered *Kinoshita* and concluded that the Second Circuit had limited the decision to its "precise facts." *B.D. Cooke*, 606 F. Supp. 2d at 424. Although the Court did not spell out its conclusions in great detail, the opinion certainly implied that *Kinoshita*'s precise facts were different from the facts here. And indeed they are. It is true that the arbitration clauses here and in *Kinoshita* are indistinguishable in that both require arbitration of disputes that "arise under" the respective contracts. *See Kinoshita*, 287 F.2d at 952 (clause required arbitration of "any dispute or difference [that] should arise under this Charter"); *B.D. Cooke*, 606 F. Supp. 2d at 423 (clause required arbitration of "[a]ny dispute arising under this Contract"). And *Kinoshita* read "arising under" to restrict arbitration to "disputes and controversies relating to the interpretation of the contract and matters of performance." *Kinoshita*, 287 F.2d at 953. But although the clauses are the same, the underlying *disputes* are wholly different. In *Kinoshita*, the claim was for fraud in the inducement. *Kinoshita* reasoned that fraud in the inducement related to pre-contract behavior that induced the agreement, not to interpreting the contract or to performance. The disputes here are about the extent of the Underwriters' performance obligations under the reinsurance contracts that they signed with Citizens and that B.D. Cooke now holds the rights to. That makes *Kinoshita* distinguishable, and it formed the basis for the Court's conclusion in *B.D. Cooke I*.

Even if *Kinoshita* did apply, however, the Court's conclusion would be the same. B.D. Cooke's claims relate to matters of performance in a way fraud in the inducement does not. As a matter of pleading, B.D. Cooke has brought three claims against the Underwriters: First, it sued for a declaration "as to the meaning and effect of the Assignment, including without limitation that (A) there is no cap on the amount that B.D. Cooke is entitled to collect under the Assignment; and (B) the Assignment is an assignment and does not constitute a novation of any of the assigned reinsurance agreements." (Child Aff. in Support of Motion to Remand Ex. 1, Verified Compl. 13.) Second, it sued for breach of the reinsurance contracts. (*Id.*) Third, it sued for account stated. (*Id.*) B.D. Cooke emphasizes that asking for a declaration as to the assignment's scope does not go to "a literal interpretation of performance of the contract."[4] (Pltf.'s Mem. 3.) But in assessing "whether a claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987).

Here, what the parties are fighting about is the extent of the Underwriters' obligations to perform under the reinsurance contracts. While this is not a dispute about interpretation of the contracts, it does go to matters of performance. The breadth of B.D. Cooke's assignment directly affects the performance obligations of the Underwriters under the contracts. Moreover, B.D. Cooke's claims for breach of contract and account stated plainly seek to compel the Underwriters' performance under the contracts. Trying

---

[4] The arbitrable disputes under *Kinoshita* are actually broader than that; they extend to matters of interpretation under the contract as well as matters of performance—not just "interpretation of performance." *See ACE Capital Re Overseas Ltd. v. Central United Life Insurance Co.*, 307 F.3d 24, 33 (2d Cir. 2002) (quoting *Kinoshita* as holding that the "clause restricts arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance).

to escape this reality, B.D. Cooke contends that the parties have no disagreement about the contracts themselves—that the Underwriters have agreed to the claims. (Pltf.'s Opp. to Motion to Compel 8–11.) But the Underwriters do not actually agree that they have agreed to the claims. (Defs.' Reply in Support of Motion to Compel 5–6.) In the Court's view, this is nothing if not a dispute.[5] Accordingly, plaintiff's motion for reconsideration on this ground will be denied.

## CONCLUSION

For the reasons given above, the action is reopened and is stayed pending the parties' arbitration, and plaintiff's motion for reconsideration [32] is denied.

SO ORDERED.

Dated: New York, New York
March 9, 2010

Richard J. Holwell
United States District Judge

---

[5] B.D. Cooke also points to the rather unusual way in which its second and third causes of action are framed in the complaint. Accompanying both claims is an assertion that

> there are no apparent disputes between the parties concerning the Excess-of-Loss Reinsurance Agreements with respect to the Agreed Claims, which were instead agreed to by Lloyd's Underwriters . . . . Lloyd's Underwriters, through Equitas, have explained their failure to pay the Agreed Claims solely on bases other than the Excess-of-Loss Reinsurance Agreements. If, and to the extent, there are, or there are deemed to be, disputes within any arbitration provision of any of the Excess-of-Loss Reinsurance Agreements, B.D. Cooke expressly reserves the right to arbitrate such disputes.

(Verified Compl. ¶ 44.) The plaintiff says that this proves the dispute is not about the underlying contracts. The Court is not persuaded. If B.D. Cooke's argument were right, a party could escape arbitration simply by bringing suit for otherwise-arbitrable claims and then declaring them to be undisputed—even over the other side's protests.

9